Adrian A. Miller
Michelle M. Sullivan
Sullivan Miller Law PLLC
2812 1st Avenue North
Suite 225
Billings, MT 59101
Telephone:  406-403-7066
michelle.sullivan@sullivanmiller.com
adrian.miller@sullivanmiller.com

Aaron Bieber
The Law Offices of Aaron Bieber PLLC
2245 Texas Drive
Suite 300
Sugar Land, TX 77479
Telephone: (713) 899-3893
aaron@aaronbieberlaw.com
*Pro Hac Vice Admission Forthcoming

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| PHOENIX ENERGY ONE, LLC )<br>f/k/a PHOENIX CAPITAL )<br>GROUP HOLDINGS, LLC, )<br>  )<br>Plaintiff, )<br>  )<br>vs. )<br>  )<br>KRAKEN OIL AND GAS, LLC, )<br>KRAKEN OPERATING, LLC, and )<br>UNITED STATES BUREAU OF )<br>LAND MANAGEMENT, )<br>  )<br>Defendants. | Cause No. CV-25-65-BLG-TJC<br><br><br>**COMPLAINT FOR<br>DECLARATORY JUDGMENT** |

Plaintiff Phoenix Energy One, LLC, formerly known as Phoenix Capital Group Holds, LLC, by and through its attorneys of record, for its Complaint against Defendants Kraken Oil and Gas, LLC, Kraken Operating, LLC, and United States Bureau of Land Management, alleges and states as follows:

## PARTIES

1.      Phoenix Energy One, LLC, formerly known as Phoenix Capital Groups Holdings, LLC ("Phoenix") is a Delaware limited liability company with its principal place of business located in Irvine, California.

2.      Kraken Oil and Gas, LLC ("Kraken Oil") is a Delaware limited liability company with its principal place of business located in Houston, Texas.

3.      Kraken Operating, LLC ("Kraken Operating") is a Texas limited liability company with its principal place of business located in Houston, Texas.

4.      The United States Bureau of Land Management ("BLM") is an agency within the United States Department of the Interior responsible for administering U.S. federal lands.

## JURISDICTION AND VENUE

5.      Venue is proper because the mineral interests at issue in this litigation are in Richland County, Montana, which is located in the Billings Division for the District of Montana.

6. Jurisdiction is proper pursuant to 28 U.S.C. § 1331 as this case involves claims arising out of federal law and is brought pursuant to 28 U.S.C. § 2201.

## FACTS COMMON TO ALL COUNTS

7. This case involves an undivided one half (1/2) of the oil, gas and associated hydrocarbons in certain lands in Richland County, Montana, more particularly described as follows:

> Township 26 North, Range 59 East, MPM
> Section 21:  W1/2NW1/4 and NW1/4SW1/4

(the "Lands").

8. The surface estate is privately owned, and the United States owns an undivided one half (1/2) of the oil, gas and associated hydrocarbons in the Lands (the "Federal Minerals").

9. Kraken Oil and/or Kraken Operating (collectively, "Kraken") leased the other undivided one half (1/2) of the oil, gas and associated hydrocarbons from their private owner(s).

10. Kraken Oil leased the Federal Minerals in 2018.

11. There are three oil and gas wells producing from the Lands: The Dagney 21-28 #1H well, the Dagney 33-21 #3H well, and the Dagney 33-21 #4H well (collectively, the "Wells").

12.    The Dagney 21-28 #1H well was spud in December 2017 and began producing in June of 2018.

13.    On December 13, 2018, Sections 21 and 28 of Township 26 North, Range 59 East were pooled by the Montana Board of Oil and Gas ("MBOG") "on the basis of surface acreage for production of oil and associated natural gas from the Bakken/Three Forks Formation." ("21-28 Pooling Order").

14.    In June 2020, in litigation challenging the prior federal lease sale, Judge Morris ordered that Kraken's federal lease for the Federal Minerals be vacated. *WildEarth Guardians v. United State Bureau of Land Management*, 458 F.Supp.3d 880, 897 (D. Mont. 2020) ("WildEarth Guardians Litigation").

15.    The Dagney 33-21 #3H well was spud on October 19, 2020, and the Dagney 33-21 #4H was spud on October 17, 2020.  Both wells began producing on January 1, 2021.

16.    Both the Dagney 33-21 #3H well and the Dagney 33-21 #4H well were spud after Kraken Oil's lease was vacated for the Federal Minerals.

17.    Approximately nine months after its previous federal lease was vacated, BLM approved a Communitization Agreement (a "CA") that Kraken Oil submitted for the BLM's approval before its previous federal lease was vacated, adding the unleased Federal Minerals to a 1280-acre spacing unit (the "2021 CA").

18.     The 2021 CA was approved by BLM, and Section 5 of the 2021 CA required Kraken Oil to place all the proceeds attributable to the unleased Federal Minerals into an escrow or trust account until the Federal Minerals were leased or ownership was established.

19.     On April 8, 2021, Kraken Oil submitted its Application to MBOG for Permanent Spacing Unit and Application for Compulsory Pooling for the Wells, to create a permanent spacing unit for the Wells and to pool oil and gas in all of Sections 21, 28, and 33 in Township 26 North, Range 59 East.

20.     In its petition, Kraken Oil represented to MBOG that it was the working interest owner covering the Federal Minerals.

21.     Kraken Oil and Kraken Operating did not have a lease covering the Federal Minerals when it submitted its petition to MBOG on April 8, 2021; Kraken's previous federal lease was vacated by the Court in the WildEarth Guardians Litigation.

22.     That same day, MBOG pooled Sections 21, 28, and 33 of Township 26 North, Range 59 East for the Wells "on the basis of surface acreage for production of oil and associated natural gas from the Bakken/Three Forks Formation" (the "21-28-33 Pooling Order").

23.    On September 21, 2021, Kraken requested that BLM enter into a Compensatory Royalty Agreement (a "CRA") for the unleased Federal Minerals. BLM refused.

24.    Kraken Oil appealed BLM's decision refusing to enter a CRA to the Interior Board of Land Appeals ("IBLA") of the United States Department of the Interior.

25.    The IBLA issued a decision on September 14, 2022, finding that BLM had authority to enter a CRA in that instance and remanding to BLM for further consideration of Kraken's request for a CRA (the "2022 IBLA Decision").  The IBLA offered "no opinion on whether BLM must, or should, grant the CRA."

26.    BLM and Kraken did not subsequently enter into a CRA.  There is no document entitled Compensatory Royalty Agreement between BLM and Kraken covering the Federal Minerals.

27.    Instead, Kraken Operating entered into an Amended Communitization Agreement with BLM in June 2023 for the Dagney 21-28#1H well (the "21-28 CA").  A true and correct copy of the 21-28 CA is attached hereto as Exhibit A.

28.    In Section 5 of the 21-28 CA, the language contemplates that there might be a future lessee of the Federal Minerals – "Upon issuance of the Federal lease and payment of its proportionate cost of the well(s), including drilling, completing and equipping the well, the acquiring party(s) [lessee] shall own the

working interest described in the tract, as described on Exhibit B, and shall have the rights and obligations of said working interest as to the effective date of the Federal Lease."

29.    Kraken Oil also entered into a new CA in June 2023 for the Dagney 33-21 #4H and Dagney 33-21 #3H wells (the "33-21 CA").  A true and correct copy of the 32-31 CA is attached hereto as Exhibit B.  The 33-21 CA includes the same language in Section 5 as the 21-28 CA, requiring a future lessee of the Federal Minerals to pay its proportionate share of costs of the wells, including drilling, completing and equipping the wells, as a condition precedent to exercise its rights and obligations under a federal lease covering the Federal Minerals.

30.    Section 5 of both the 21-28 CA and the 33-21 CA (collectively, the "2023 CAs") also purport to "allocate" to the operator (Kraken Oil or Kraken Operating) "the percentage of production attributable to the unleased Federal land within the communitized area" until "the effective date of a lease covering the Federal tract and payment of its proportionate cost of the well(s)," or until production ceases, or the CA is terminated.

31.    The language in Section 5 of both 2023 CAs purporting to "allocate" production to Kraken appears to be language from a CRA even though there is no separate document establishing a CRA.

32.     Kraken inserted Section 5 language in both 2023 CAs in an attempt to mirror a CRA and create the same effect as a CRA.

33.     The 2023 CAs purport to be effective retroactively; even though they were both executed in June 2023, the 21-28 CA purports to be effective as of June 1, 2018, and the 33-21 CA purports to be effective as of January 11, 2021.

34.     It is unclear what happened to the revenue from the unleased Federal Minerals between June 2020 when Kraken's federal leases were vacated and June 2023 when Kraken and BLM entered into the 2023 CAs.

35.     Upon information and belief, the only agreement between BLM and Kraken covering the three years between June 2020 and June 2023 was the 2021 CA, applicable only to the Dagney 21-28 #1H well. The 2021 CA required Kraken to place all the proceeds attributable to the unleased Federal Minerals into an escrow or trust account until the Federal Minerals were leased or ownership was established.

36.     Upon information and belief, Kraken did not deposit the proceeds attributable to the unleased Federal Minerals into an escrow or trust account between June 2020 and June 2023 as required by the 2021 CA.

37.     Upon information and belief, the Dagney 21-28 #1H well paid out sometime between June 2019 and December 2019.

38.     Upon information and belief, the Dagney 33-21 #3H well and the Dagney 33-21 #4H well paid out sometime between January 2022 and June 2022.

39.    Phoenix was awarded a lease for the Federal Minerals effective as of October 1, 2024, after bidding successfully at a competitive bidding auction (the "Lease"). *See* Lease for Oil and Gas, MTMT106370202 (dated September 19, 2024, effective October 1, 2024), attached hereto as Exhibit C.

40.    After Phoenix was awarded the Lease, pursuant to the 2023 CAs, it reached out to Kraken for an accounting to pay its proportionate share of the Wells, including drilling, completing, and equipping the Wells so that it may exercise its rights to net revenue for the Federals Minerals since inception.

41.    Kraken refused to provide an accounting for the unleased Federal Minerals prior to October 1, 2024.

42.    Despite clear language in the 2023 CAs that Phoenix is responsible to pay its proportionate share of the Wells, including drilling, completing, and equipping the Wells, Kraken has taken the stance that it is entitled to all revenues for the unleased Federal Minerals until the effective date of the Lease.

43.    According to the language in Section 5 of the 2023 CAs, it is a condition precedent for Phoenix to pay its proportionate share of the costs of the Wells, including from drilling the wells until present, in order for Phoenix to exercise its rights under the Lease, including the right to receive its proportionate share of revenues.

44.     Under the 2023 CAs and federal law, once Phoenix pays its proportionate share of costs, it is, correspondingly, entitled to its proportionate share of revenues.

45.     Upon information and belief, Kraken has kept all revenue attributable to the unleased Federal Minerals from the date the Wells were drilled until October 1, 2024, the effective date of Phoenix's Lease.

## COUNT I – DECLARATORY JUDGMENT
### (Violation of 30 U.S.C. § 226 & 43 CFR § 3105.22)

46.     Phoenix reasserts the allegations in paragraphs 1 through 45 as if fully set forth herein.

47.     The 21-28 CA and the 33-21 CA each have language in Section 5 that purports to determine the contract and property rights among lessees within a pooled interest area.

48.     In the 2023 CAs, Kraken has attempted to mirror language from a CRA by allocating to itself the proceeds from production in the unleased Federal Minerals.

49.     The definition of a "communitization agreement" includes: "[w]hen separate tracts cannot be independently developed and operated in conformity with an established well-spacing or development program, any lease, or a portion thereof, may be pooled with other lands, whether or not owned by the United States, under a communitization or drilling agreement providing for an apportionment of production or royalties among the separate tracts of land comprising the drilling or spacing unit

when determined by the Secretary of the Interior to be in the public interest, and operations or production pursuant to such an agreement shall be deemed to be operations or production as to each such lease committed thereto." 30 U.S.C. § 226(m) (emphasis added).

50.     A further definition of a communitization agreement is: "the agreement to combine small tracts for the purpose of committing enough acreage to form the spacing and proration unit necessary to comply with the applicable state conservation requirements." L. Cox, "Unitization and Communitization," 2 Law of Federal Oil and Gas Leases § 18.01[2], at 18-5 (LexisNexis Matthew Bender).

51.     The purpose of a CA is set forth in 43 CFR § 3105.22.  According to that regulation, "when a lease or a portion thereof cannot be independently developed and operated in conformity with an established well-spacing or well-development program, the authorized officer may approve a communitization agreement for such lands with other lands . . . ."

52.     The Federal Minerals could always be developed through a lease and operated in conformity with a well-spacing program, as is evident from the fact that Kraken held a lease covering the Federal Minerals until June 2020 and Phoenix now holds the Lease covering the Federal Minerals.

53.     According    to    the    BLM    Handbook    on    Communitization, communitization cannot be construed as "[j]ustification for allowing two or more

lessees, working interest owners, or operators to share drilling costs and revenues." Rather, "[t]his can only be done by contractual agreement between interested parties without sacrificing portion of the federal royalties or splitting royalties among various leases." BLM Handbook 3160-9 – Communitization, § .1.11(B).

54.     Phoenix is not a party to the 21-28 CA or the 33-21 CA.

55.     Phoenix is not a party to any agreement with Kraken regarding the Federal Minerals.

56.     Paragraph 5 of the 2023 CAs exceeds and is outside of the purpose of and effect of a CA, namely the agreement to combine small tracts for the purpose of committing enough acreage to form the spacing and proration unit necessary to comply with the applicable state conservation requirements.

57.     According to 28 U.S.C. § 2201, this Court may declare the rights and other legal relations of any parties in an actual case or controversy.

58.     There is an actual controversy among Phoenix, Kraken, and the BLM as to whether Section 5 of the 2023 CAs is applicable to Phoenix and/or whether it is an unlawful provision.

59.     Phoenix is entitled to a declaration that by entering into CAs containing Section 5 of the 21-28 CA and the 33-21 CA, BLM exceeded its authority under 30 U.S.C. § 226(m) and 43 CFR § 3105.22  and violated said statute and regulation.

60.    Phoenix is entitled to a declaration that Section 5 of the 21-28 CA and the 33-21 CA violates 30 U.S.C. § 226(m) and 43 CFR § 3105.22 because a CA cannot be used to determine contractual and property rights among lessees within a pooled unit, as determining such rights are outside the purpose and effect of a communitization agreement.

61.    Phoenix is entitled to a declaration that the provisions of Section 5 of the 21-28 CA and the 33-21 CA, attempting to allocate revenue from the unleased Federal Minerals to Kraken, is unlawful, invalid, and of no force and effect.

## COUNT II – DECLARATORY JUDGMENT
### (Section 5 of the 2023 CAs Violates Already Settled Law)

62.    Phoenix reasserts the allegations in paragraphs 1 through 61 as if fully set forth herein.

63.    Section 5 of the 2023 CAs has language that mirrors language from a Compensatory Royalty Agreement, including the language purporting to allocate to Kraken the revenue attributable to the unleased Federal Minerals.

64.    The IBLA has already determined that if federal minerals are subject to a CRA, they cannot subsequently be leased. *Enron Oil and Gas Co.*, 152 IBLA 153 (2000).

65.    Inversely, federal minerals that are leased cannot also be subject to a CRA.

66.    In addition, "a compensatory agreement for small tracts of unleased lands may also be negotiated pursuant to 43 CFR § 3100.2-1 in lieu of leasing such tracts." BLM Handbook 3160-9 -  Communitization  .1.11(H)(3) (emphasis added).

67.    If a well is draining federal minerals, the BLM can:  enter into a CRA; or offer the minerals for lease.  43 CFR § 3162.2-2(b), (c)  The term "or" appears between 43 CFR § 3162.2-2(b) and (c) subsections, and they are mutually exclusive.

68.    BLM cannot both enter into a CRA (or a de facto CRA) and subsequently offer the minerals for lease as it did in the instant case.

69.    According to 28 U.S.C. § 2201, this Court may declare the rights and other legal relations of any parties in an actual case or controversy.

70.    There is an actual controversy among Phoenix, Kraken, and the BLM as to whether Section 5 of the 2023 CAs is applicable to Phoenix and/or whether it is an unlawful provision.

71.    Phoenix is entitled to a declaration that Section 5 of the 21-28 CA and the 33-21 CA violates established federal law because the Federal Minerals cannot be subject to what is effectively a CRA, allocating production to Kraken in the instant case, and also be leased.

72.    In the alternate, if Section 5 remains in place with the language that mirrors a CRA, Phoenix is entitled to cancellation of the Lease and a refund of all expenditures for bid and award of the Lease.

## COUNT III- DECLARATORY JUDGMENT
### (Allocation from Unleased Federal Minerals Absent a CRA not Authorized)

73.    Phoenix reasserts the allegations in paragraphs 1 through 72 as of fully set forth herein.

74.    Under applicable federal law, the only way that BLM can allocate production revenue for unleased federal minerals to a non-lessee party is through a Compensatory Royalty Agreement.

75.    The 2022 IBLA Decision determined that BLM may enter into a CRA with Kraken, but it did not determine that BLM was required to enter such an agreement.

76.    BLM and Kraken did not enter into a CRA after the 2022 IBLA Decision.

77.    Instead, Kraken added de facto CRA language into the 21-28 CA and the 33-21 CA. However, the 2023 CAs are not Compensatory Royalty Agreements and did not follow the formal requirements of a CRA.

78.    According to 28 U.S.C. § 2201, this Court may declare the rights and other legal relations of any parties in an actual case or controversy.

79.    There is an actual controversy among Phoenix, Kraken, and the BLM as to whether BLM had any authority to allocation production payments from the unleased Federal Minerals to Kraken in a CA.

80.     Phoenix is entitled to a declaration that under federal regulations, BLM could not allocate production payments from the Federal Minerals to a non-lessee through a communitization agreement, and that language Section 5 of the 2023 CAs that attempts to allocation production payments from the Federal Minerals to a non-lessee is unlawful and invalid.

## COUNT IV – DECLARATORY JUDGMENT
### (Allocation of Production Must be Based upon Leasehold Interests)

81.     Phoenix reasserts the allegations in paragraphs 1 through 80 as if fully set forth herein.

82.     The 21-28 Pooling Order and the 21-28-33 Pooling Order for the Wells order that the lands covered are pooled and production from such Wells are allocated "on the basis of surface acreage."

83.     CAs simply adopt the production allocation method of state pooling orders.

84.     Paragraph 5 of the 2023 CAs state, "The communitized area shall be operated as an entirety, with the understanding and agreement between the parties hereto that all communitized substances produced therefore shall be allocated among leaseholds comprising said area in the production that the acreage interest of each leasehold bears to the entire acreage committed to this agreement." (emphasis added).

85.     Kraken does not have a lease covering the Federal Minerals, nor any interest in the Federal Minerals.

86.     Kraken cannot be allocated revenue for the Federal Minerals under federal communitization agreement regulations, state pooling laws, and/or the actual language of the 2023 CAs.

87.     According to 28 U.S.C. § 2201, this Court may declare the rights and other legal relations of any parties in an actual case or controversy.

88.     There is an actual controversy among Phoenix, Kraken, and BLM as to whether BLM and Kraken could allocate any production revenue from the Federal Minerals to Kraken under the Pooling Orders, federal law, and the language in the CAs.

89.     Phoenix is entitled to a declaration that BLM and Kraken could not allocate any production revenue to Kraken for the unleased Federal Minerals.

## COUNT V – DECLARATORY JUDGMENT
## (Violation of 30 U.S.C. § 226(m) and (j))

90.     Phoenix reasserts paragraphs 1 through 89 as if fully set forth herein.

91.     30 U.S.C. § 226(m) requires that a communitization agreement be "in the public interest."

92.     Under Section 5 of the 2023 CAs, the federal government is paid a 12.5% (1/8) royalty from production associated with the Federal Minerals.

93.    Under Kraken's interpretation of Section 5 of the 2023 CAs, the federal government gets paid the 12.5% royalty from inception of the Wells until October 1, 2024 (the effective date of the Lease).

94.    Under the Lease, the federal government gets paid a 1/6 (16.67%) royalty.

95.    Under applicable federal statutes, regulations, and Phoenix's interpretation of Section 5 of the 2023 CAs, the federal government gets paid a 1/6 royalty from inception the Wells forward.

96.    The 2022 IBLA Decision determined that BLM may enter into a CRA with Kraken.  BLM did not enter into a CRA with Kraken, but Section 5 of the 2023 CAs contains de facto CRA language making those portions of the 2023 CAs an impermissible CRA.

97.    According to 28 U.S.C. § 226(j), a CRA requires: (1) a determination by the Secretary of Interior that federal lands are being drained by wells on adjacent lands, (2) BLM to negotiate agreements with the lessees of adjacent lands to compensate the federal government for drainage of federal minerals, and (3) if the federally owned lands that are being drained are subject to a lease, such agreements "shall be made with the consent of the lessees, if any, affected thereby."

98.    The requirements of 28 U.S.C. § 226(j) were not followed by BLM or Kraken in formulating and adopting the CRA language in Section 5 of the 2023 CAs.

99.    Phoenix has not consented to the 2023 CAs and is not a party to them as required by law.

100.    According to 28 U.S.C. § 2201, this Court may declare the rights and other legal relations of any parties in an actual case or controversy.

101.    There is an actual controversy among Phoenix, Kraken, and the BLM as to whether Section 5 of the 2023 CAs is in the "public interest" as required by law.

102.    Phoenix is entitled to a declaration that Section 5 of the CAs must be interpreted in accordance with the Lease and federal law to: (1) require Phoenix to pay its proportionate share of costs from the Wells' inception, being the spud dates forward; (2) require Phoenix to be allocated its proportionate share of revenue associated with the Federal Minerals from the Wells' inception, being the spud dates forward; and (3) require that the federal government be paid its 1/6 (and not 1/8) royalty from the Federal Minerals from the Wells' respective first dates of production.

103.    Phoenix is entitled to a declaration that Section 5 of the 2023 CAs is effectively a CRA, and that BLM and Kraken did not follow the requirements of U.S.C. § 226(j) for obtaining a CRA.

104.    Phoenix is entitled to a declaration that it was a necessary party to Section 5 of the 2023 CAs and that Section 5 is, accordingly, unlawful and invalid.

## COUNT VI – DECLARATORY JUDGMENT
### (In the Alternative - Violation of 43 C.F.R. § 3105.23)

105.    Phoenix reasserts the allegations in paragraphs 1 through 104 as if fully set forth herein.

106.    This claim is brought in the alternative if Section 5 of the 2023 CAs is determined to be valid and lawful.

107.    The 21-28 CA and the 33-21 CA were not entered into until June 2023. However, the 21-28 CA has language purporting to make it effective as of June 1, 2018, and the 33-21 CA has language purporting to make it effective as of January 11, 2021.

108.    The 2023 CAs affect the rights of Phoenix, who has an interest in the production and royalties from the Wells and Federal Minerals.

109.    A necessary party to a federal oil and gas communitization agreement includes all parties who have an interest in the production or royalties from the communitized formation.  43 C.F.R. § 3105.23.

110.    A communitization agreement must be signed by or on behalf of all necessary parties and must be filed prior to the expiration of the federal lease(s) involved to confer the benefits of the agreement upon such lease(s). 43 C.F.R. § 3105.23.

111.    All indispensable parties to an agreement are parties whose rights are effected by the agreement. *See, e.g., Whelan v. Placid Oil Co.*, 198 F.2d 39 (5th Cir. 1952) (all mineral owners who joined in the unitization agreement had an interest in all the unitized lands and were necessary and indispensable parties in related legal actions).

112.    The IBLA has expressly held that if there is a new lease, a CA may not be effective prior to the date of the lease issuance. *Lee Oil Properties, Inc.*, 85 IBLA 291, at FN. 4 (March 13, 1985).

113.    A CA may be made retroactive and effective to first production only if all parties agree, including the new lessee. *Id.*

114.    Phoenix is the new lessee of the Federal Minerals. Phoenix is not a party to the 2023 CAs and has not agreed to the retroactive language in those CAs.

115.    According to 28 U.S.C. § 2201, this Court may declare the rights and other legal relations of any parties in an actual case or controversy.

116.    There is an actual controversy among Phoenix, Kraken, and BLM as to whether Phoenix's interest in the Federal Minerals and the Wells are controlled by the 2023 CAs.

117.    Phoenix is entitled to a declaration that under federal regulations and general law that the 2023 CAs are not effective as to Phoenix's interest unless or until it executes the 2023 CAs.

## COUNT VII- DECLARATORY JUDGMENT
### (In the Alternative - Interpretation of Section 5 of the 2023 CAs)

118.    Phoenix reasserts the allegations in paragraphs 1 through 117 as if fully set forth herein.

119.    This claim is brought in the alternative if the Court finds that the 2023 CAs and, specifically, that Section 5 of the 2023 CAs is lawful and valid.

120.    Section 5 of the 21-28 CA and the 33-21 CA includes the following language:

> "Upon issuance of the Federal lease and payment of its proportionate cost of the well(s), including drilling, completing and equipping the well, the acquiring party(s) shall own the working interest" and "shall have the rights and obligations of said working interest as to the effective date of the Federal lease."

121.    In order for Phoenix to exercise its "rights and obligations" under the Lease, Section 5 of the 2023 CAs requires Phoenix to pay its proportionate cost of "drilling", "completing" and "equipping" the Wells, including all costs from the Wells' inception, being the spud dates until present.

122.    Since Phoenix is required to pay its proportionate share of costs of the Wells from inception until present as a condition precedent to receiving revenue under the Lease, it is also entitled to its proportionate share of revenue for the Federal Minerals under the Lease from inception.

123.    In the alternative, the language in Section 5 of the 2023 CAs is ambiguous.

124.    Upon information and belief, Kraken and/or Kraken's attorneys drafted Section 5 of both the 21-28 CA and the 33-21 CA, and the ambiguity must be interpreted against Kraken.

125.    According to 28 U.S.C. § 2201, this Court may declare the rights and other legal relations of any parties in an actual case or controversy.

126.    There is an actual controversy between Kraken, Phoenix, and the BLM as to interpretation of Section 5 of the 2023 CAs.

127.    Phoenix is entitled to a declaration that Section 5 of the 2023 CAs should be interpreted against Kraken and that Section 5 entitles Phoenix to: (1) pay its proportionate share of the costs, including drilling, completing, and equipping the Wells, (2) after paying its proportionate share of costs, obtain its proportionate share of revenue from the Wells from inception, (3) upon payment of such costs, "own the working interest" covering the Federal Minerals and be entitled to exercise all rights and obligations associated with its interest.

WHEREFORE, Plaintiff Phoenix Energy One LLC f/k/a Phoenix Capital Group Holdings, LLC prays for the following relief:

A. For entry of judgment against Defendants;

B. For a declaratory judgment finding that Section 5 of the 2023 CAs is unlawful, invalid, and of no force and effect;

C.  For a declaratory judgment finding that Defendants Kraken Oil and Gas, LLC and Kraken Operating, LLC are required to provide accounting information to Plaintiff so that Plaintiff may pay its proportionate share of costs, including drilling, completing, and equipping the Wells.

D.  For a declaratory judgment finding that Plaintiff is entitled to its proportionate share of revenue from inception of the Wells upon payment of its proportionate share of the costs;

E.  In the alternate, for a declaratory judgment finding that Phoenix is a necessary party to the 2023 CAs, and the 2023 CAs are not effective as to Phoenix's interest unless executed by Phoenix;

F.  In the alternate, for a declaratory judgment finding that Plaintiff is entitled to cancellation of the Lease and a refund of all expenditures for bid and award of the Lease;

G.  For costs and attorneys' fees as allowed by law; and

H.  For any other and further relief as the Court deems appropriate.

Dated this 15th day of May, 2025.

/s/  Adrian Miller
Adrian A. Miller
ATTORNEY FOR PLAINTIFF