Brianne C. McClafferty
Holland & Hart LLP
401 North 31st Street, Suite 1200
P.O. Box 639
Billings, Montana 59103-0639
Telephone: 406.252.2166
Fax: 406.252.1669
*bcmcclafferty@hollandhart.com*

Matthew J. Salzman, *pro hac vice*
Holland & Hart LLP
2811 W. 66th Terrace
Mission Hills, KS 66208
Telephone: 913.558.1221
*mjsalzman@hollandhart.com*

Utsarga Bhattarai, *pro hac vice*
Holland & Hart LLP
555 17th Street, Suite 3200
Denver, CO 80202-3921
Telephone: 303.295.8168
*ubhattarai@hollandhart.com*

Attorneys for Defendants Kraken Oil & Gas,
LLC, and Kraken Operating, LLC

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | | |
|---|---|---|
| PHOENIX ENERGY ONE, LLC f/k/a PHOENIX CAPITAL GROUP HOLDINGS, LLC, | ) ) ) ) | Cause No. CV-25-65-BLG-TJC |
| Plaintiff, | ) ) ) | **DEFENDANTS KRAKEN OIL & GAS LLC AND KRAKEN OPERATING LLC'S BRIEF IN** |
| KRAKEN OIL & GAS, LLC, KRAKEN OPERATING, LLC, and UNITED STATES BUREAU OF LAND MANAGEMENT, | ) ) ) ) | **SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, TO DISMISS** |
| Defendants. | ) ) | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... ii

INTRODUCTION ............................................................................................... 1

LEGAL STANDARD ......................................................................................... 3

ARGUMENT ...................................................................................................... 4

I.    The MLA's Oil and Gas Statute of Limitations Bars Phoenix's
Untimely Complaint. ............................................................................... 4

    A.    Phoenix's Complaint challenges BLM's authority to make
decisions under 30 U.S.C. § 226 of the MLA. ............................ 4

    B.    Courts (and IBLA) consistently enforce the ninety-day statute of
limitations in 30 U.S.C. § 226-2 of the MLA. ............................ 6

    C.    The Complaint is barred by the statute of limitations, regardless of
what BLM final decision Phoenix purports to challenge. ........... 10

II.    Laches Bars Phoenix from Bringing this Action because Phoenix Slept
on its Rights, Ignoring Multiple BLM Notices. ................................... 14

III.    Alternatively, Phoenix's Complaint should be Dismissed because Its
Claims Lie Squarely Within IBLA's Primary Jurisdiction. ................. 18

    A.    Congress has subjected the issues involved here to the Department
of the Interior's comprehensive regulatory scheme. ................... 20

    B.    The issues involved here require IBLA expertise and uniformity in
administration. ............................................................................. 22

    C.    Dismissing Phoenix's claims under the primary jurisdiction
doctrine would effectively be a dismissal with prejudice. .......... 25

CONCLUSION ................................................................................................. 27

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aguayo v. Jewell*,
827 F.3d 1213 (9th Cir. 2016) ................................................................3

*Amigos Bravos v. United States BLM*,
2010 U.S. Dist. LEXIS 146962 (D.N.M., Feb. 9, 2010) ......................................9

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) ...........................................19, 20, 22, 24

*Best v. Humboldt Placer Mining Co.*,
83 S. Ct. 379 (1963).................................................................20

*California Co. v. Udall*,
296 F.2d 384 (D.C. Cir. 1961)..................................................4

*Clark v. Time Warner Cable*,
523 F.3d 1110 (9th Cir. 2008) .................................................18

*Ctr. for Biological Diversity v. United States*,
255 F. Supp. 2d 1030 (D. Ariz. 2003) ......................................24, 25

*Danjaq Ltd. Liab. Co. v. Sony Corp.*,
263 F.3d 942 (9th Cir. 2001) ................................................14, 18

*Davel Communs., Inc. v. Qwest Corp.*,
460 F.3d 1075 (9th Cir. 2006) .................................................4

*Dine Citizens Against Ruining Our Env't v. Klein*,
676 F. Supp. 2d 1198 (D. Colo. 2009)......................................8

*Gene R. And Mary J. Hilton*,
187 IBLA 1 (2015) .............................................................22, 23

*Geosearch, Inc. v. Andrus*,
508 F. Supp. 839 (D. Wyo. 1981)............................................4

*Green v. Gustafson*,
482 N.W.2d 842 (N.D. 1992) ...............................................11

*Hathaway v. Santa Barbara Unified Sch. Dist.*,
　2024 U.S. Dist. LEXIS 47649 (C.D. Cal. Feb. 26, 2024) .....................................3

*Impact Energy Res., LLC v. Salazar*,
　2010 U.S. Dist. LEXIS 91095 (D. Utah Aug. 31, 2010) (*aff'd Impact
　Energy*, 693 F.3d at 1242) .......................................................................13

*Impact Energy Res., LLC v. Salazar*,
　693 F.3d 1239 (10th Cir. 2012) ..............................................................8

*Inexco Oil Co*,
　45 IBLA 377 (1980) ........................................................................22, 23

*Jackson v. Axton*,
　25 F.3d 884 (9th Cir. 1994) ..............................................................3, 14

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
　304 F.3d 829 (9th Cir. 2002) .....................................................14, 17, 18

*Jewell Scott, Jr.*,
　88 IBLA 307 (1985) ..........................................................................9, 26

*Kirkpatrick Oil and Gas Co.*,
　15 IBLA 216 (1974) ........................................................................22, 23

*Kling v. Hallmark Cards, Inc.*,
　225 F.3d 1030 (9th Cir. 2000) ................................................................14

*Kraken Oil & Gas LLC*,
　198 IBLA at 122 .....................................................................................15

*Moncrief v. United States*,
　43 Fed. Cl. 276 (Fed. Cl. 1999) .......................................................passim

*Mont. Wilderness Ass'n v. Fry*,
　310 F. Supp. 2d 1127 (D. Mont. 2004)......................................................7

*Naartex Consulting Corp. v. Watt*,
　722 F.2d 779 (D.C. Cir. 1983).................................................................20

*Nelson v. Hartford Ins. Co.*,
2012 U.S. Dist. LEXIS 165944, at *4-5 (D. Mont., Nov. 20, 2012) (*aff'd Nelson v. Hartford Ins. Co of Midwest*, 570 Fed. Appx. 695, 695 (9th Cir. 2014) (Memorandum Opinion)........................................................................3, 12

*Park County Res. Council, Inc. v. U.S. Dep't of Agric.*,
817 F.2d 609 (10th Cir. 1987), *overruled on other grounds*, *Villa. of Los Ranchos De Albuquerque v. Marsh*, 956 F.2d 970 (10th Cir. 1992)
........................................................................................................................7, 8, 9

*S. Utah Wilderness Alliance v. BLM*,
425 F.3d 735 (10th Cir. 2005) ...............................................................................24

*San Juan Citizens All. v. U.S. Bureau of Land Mgmt.*,
326 F. Supp. 3d 1227 (D.N.M. 2018).....................................................................25

*Sloan v. Drummond Co.*,
102 F.4th 1169 (11th Cir. 2024) ......................................................................12, 13

*Syntek Semiconductor Co. v. Microchip Tech. Inc.*,
307 F.3d 775 (9th Cir. 2002) .....................................................................19, 20, 22

*Turtle Island Restoration Network v. United States*,
438 F.3d 937 (9th Cir. 2006) ............................................................................9, 11

*United States v. General Dynamics Corp.*,
828 F.2d 1356 (9th Cir. 1987) ...............................................................................25

*United States v. Kwai Fun Wong*,
575 U.S. 402 (2015)................................................................................................12

*Vern H. Bolinder*,
22 IBLA 130 (1975) ...............................................................................................26

*WildEarth Guardians v. United States BLM*, 457 F. Supp. 3d 880 (D. Mont. 2020) .....................................................................................................................25

*Wilkins v. United States*,
598 U.S. 152 (2023)..........................................................................................12, 13

## STATUTES

28 U.S.C. § 1331 ......................................................................................................6

Mineral Leasing Act..................................................................................passim

Mineral Leasing Act, 30 U.S.C. § 181 *et seq.* ...........................................................1

30 U.S.C. § 226.......................................................................................passim

30 U.S.C. § 226-2....................................................................................passim

30 U.S.C. § 226(a) ...................................................................................4, 20

30 U.S.C. § 226(e) .......................................................................................4

30 U.S.C. § 226(j) .................................................................................4, 5, 8, 21

30 U.S.C. § 226(m) ...............................................................................4, 5, 8, 21

Magnuson Act............................................................................................9

National Environmental Policy Act.........................................................................7

## OTHER AUTHORITIES

43 C.F.R. Part 4.......................................................................................21

43 C.F.R. Parts 3000 ..................................................................................21

43 C.F.R. § 3000.40 ...................................................................................21

43 C.F.R. §§ 3105.21–24 ..............................................................................21

43 C.F.R. § 3105.23 ....................................................................................5

43 C.F.R. § 3162.2-2................................................................................5, 21

43 C.F.R. § 3165.3(b) .................................................................................21

43 C.F.R. § 3165.4(a)..................................................................................21

43 C.F.R. § 3170.1 ..................................................................................5, 20

43 C.F.R. § 3181.5 ....................................................................................21

43 C.F.R. § 4.403(c)(1)................................................................................26

Land Appeals, available at https://www.doi.gov/oha/about-interior-board-
land-appeals (last visited, Nov. 20, 2025) ............................................................21

1 *Law of Federal Oil and Gas Leases* § 1.02 (2025)...........................................20, 23

*Hydraulic Fracturing Law and Practice* § 4.01 (2025) ..........................................20

Mineral Leasing Act Amendments: Hearing Before the Subcomm. on Public
Lands of the Committee on Interior and Insular Affairs, 86 Cong. 304-05
(1960) (remarks of Mr. Smith in response to Senator Allott) ........................7, 13

Report of the Senate Committee on Interior and Insular Affairs. S. Rep. No.
1549, 86th Cong., 2d Sess. at pp. 4-5 ................................................................13

Rule 12(b)(1)..................................................................................................12, 14

Rule 12(b)(6)........................................................................................................4

Rule 56 ....................................................................................................3, 12, 14

U.S. Department of the Interior, About the Interior Board of Land Appeals,
available at https://www.doi.gov/oha/about-interior-board-land-appeals
(last visited, Nov. 20, 2025)..............................................................................23

Defendants Kraken Oil & Gas, LLC and Kraken Operating, LLC (collectively, "Kraken") respectfully submit this brief in support of their Motion for Summary Judgment or, in the Alternative, to Dismiss.

## INTRODUCTION

Phoenix alleges that BLM violated the Mineral Leasing Act, 30 U.S.C. § 181 *et seq.* ("MLA"), and its regulations when BLM amended a communitization agreement ("CA"), entered into another CA, and later issued a lease to Phoenix of a 50% federally owned mineral interest subject to those CAs. Congress passed the MLA to promote the development of federal lands through private enterprise and empowered BLM (by designation of the Secretary of the Interior) to oversee the development and production of oil and gas from federally owned minerals.

Each of Phoenix's causes of action is premised on 30 U.S.C. § 226 of the MLA and/or its regulations. For sound policy reasons, the statute of limitations for such claims, 30 U.S.C. § 226-2, prohibits Phoenix from maintaining its Complaint unless "such action is commenced or taken within ninety days after the final decision of the Secretary [or BLM]." Based on the undisputed material facts—namely, the dates of the BLM decisions challenged by Phoenix and the date of its Complaint—Phoenix chose to pursue its claims somewhere between 226 to 702 days after the BLM decisions it now seeks to challenge. This action is grossly untimely, and summary judgment should be entered in Defendants' favor.

1

In addition, BLM issued at least five notices that the lease was subject to a CA and that the party who purchased it through a bidding process should contact the operator, Kraken, to determine its rights. Phoenix admits to having received and considered each of these five notices before it became the winning bidder. Phoenix, however, also admits that it did not contact Kraken to determine its rights, and that it did not decide to contact BLM until after the limitations period already had expired. Phoenix has only itself to blame for failing to act timely, which has prejudiced Defendants. Given the length of Phoenix's delay, courts generally presume laches applies, and here laches is an independent basis to grant summary judgment.

Further, the MLA oil and gas provisions and its implementing regulations establish a comprehensive regulatory scheme for uniformly managing and promoting the development and production of oil and gas from federal minerals. Part of that framework involves review of final agency decisions by the Interior Board of Land Appeals ("IBLA"), which has experience reviewing BLM decisions under the MLA provisions and regulations involved in this case. IBLA has primary jurisdiction over this action. Moreover, Phoenix's claims raise an issue of first impression concerning the appropriateness of certain CA terms that BLM approved following vacatur of a lease after production from the federal minerals had already commenced. The primary jurisdiction doctrine is particularly strong in a case like

2

this to defer judicial review until there is the benefit of an IBLA review, interpretation, and decision.

Consequently, in the alternative, this case should be dismissed without prejudice under the primary jurisdiction doctrine. That said, dismissal now likely would terminate this case because IBLA regularly enforces the MLA's ninety-day limitations period, which suggests the Court should avoid the extra step and grant summary judgment now based on the MLA's statute of limitations and/or laches. Afterall, had Phoenix brought its claims before IBLA rather than this Court when Phoenix filed its Complaint, this case would have been over long ago.

## **LEGAL STANDARD**

Summary judgment under Rule 56(a) is appropriate when there is no genuine material factual dispute that the claim was filed outside of the statute of limitations. *Nelson v. Hartford Ins. Co.*, 2012 U.S. Dist. LEXIS 165944, at *4-5 (D. Mont., Nov. 20, 2012) (*aff'd Nelson v. Hartford Ins. Co of Midwest*, 570 Fed. Appx. 695, 695 (9th Cir. 2014) (Memorandum Opinion); *Aguayo v. Jewell*, 827 F.3d 1213, 1221 (9th Cir. 2016); *Hathaway v. Santa Barbara Unified Sch. Dist.*, 2024 U.S. Dist. LEXIS 47649, at *4 (C.D. Cal. Feb. 26, 2024).

Similarly, summary judgment is also appropriate under the doctrine of laches when there is no genuine dispute as to a material fact. *Jackson v. Axton*, 25 F.3d 884, 889 (9th Cir. 1994).

3

In the alternative, under the prudential doctrine of primary jurisdiction, claims should be dismissed without prejudice under Rule 12(b)(6) when "the reasons for the existence of the doctrine are present" and "[no] set of facts could be proved which would avoid application of the doctrine." *Davel Communs., Inc. v. Qwest Corp.*, 460 F.3d 1075, 1088 (9th Cir. 2006).

## ARGUMENT

**I.    The MLA's Oil and Gas Statute of Limitations Bars Phoenix's Untimely Complaint.**

**A.    Phoenix's Complaint challenges BLM's authority to make decisions under 30 U.S.C. § 226 of the MLA.**

The "purpose of the [MLA] is to promote the orderly development of oil and gas deposits in publicly owned lands of the United States through private enterprise." *Geosearch, Inc. v. Andrus*, 508 F. Supp. 839, 842 (D. Wyo. 1981). Subchapter IV of the MLA sets forth Congress' comprehensive statutory scheme for managing federal oil-and-gas leasing, development, and operations. *See* 30 U.S.C. § 226. Subsection 226(a) authorizes oil and gas leasing; subsection (e) governs lease terms; subsection (j) governs drainage; and subsection (m) empowers the Secretary of the Interior to determine when to enter into CAs.

The "Secretary must administer the [MLA] so as to provide some incentive for development." *California Co. v. Udall*, 296 F.2d 384, 388 (D.C. Cir. 1961). Congress entrusted the implementation of the MLA's comprehensive statutory

4

scheme to the Secretary of the Interior, and the Secretary, in turn, delegated that power to the BLM. *See* 43 C.F.R. § 3170.1. Thus, BLM's decisions at issue in this case were made pursuant to BLM's authority under the MLA.

In each count of its Complaint, Phoenix alleges that BLM did not properly follow the MLA's oil and gas provisions or their implementing regulations when deciding to amend the original CA, enter into a new CA, and issue Phoenix a lease subject to the CAs. *See* Compl. ¶¶ 49, 58 (Count I—requesting a declaratory judgment that BLM violated 30 U.S.C. § 226(m) of the MLA and alleging that BLM unlawfully decided that Section 5 of the CAs would be applicable to Phoenix's lease); ¶¶ 67, 71-72 (Count II—alleging violation of 43 CFR § 3162.2-2, which governs BLM's discretion under 30 U.S.C. § 226(j) of the MLA on matters of drainage, and requesting cancellation of its lease and a refund of its bid expenditures); ¶¶ 74, 80 (Count III—alleging that BLM violated "applicable federal law," *i.e* the MLA and its regulations); ¶ 86 (Count IV—alleging a violation of "federal [CA] regulations" meant to effectuate 30 U.S.C. § 226(m) of the MLA); ¶¶ 91, 98, 101 (Count V—alleging that BLM violated 30 U.S.C. §§ 226(m) and (j) of the MLA): ¶¶ 110, 117 (Count VI—alleging that 43 C.F.R. § 3105.23, which governs the requirements for a CA under the MLA, was violated); ¶ 127 (Count VII—seeking an interpretation of the CAs in alignment with Phoenix's interpretation of the MLA and its regulations).

Phoenix's alleged basis for the Court's jurisdiction over this case is federal question jurisdiction. Compl. ¶ 6 (citing 28 U.S.C. § 1331). The only referenced federal law is the MLA. Although Phoenix does not use the phrase "Mineral Leasing Act," there is no mistaking that Phoenix's claims are wholly dependent on 30 U.S.C. § 226 and its implementing regulations. Thus, the MLA's statute of limitations in 30 U.S.C. § 226-2 applies.

## B.    Courts (and IBLA) consistently enforce the ninety-day statute of limitations in 30 U.S.C. § 226-2 of the MLA.

Producing oil and gas on federal lands is an expensive, complex, multi-year process. Oil and gas companies obtain geological data, determine where oil and gas may be found, enter into leases or otherwise acquire development rights, obtain the necessary state and federal permitting and approvals, prepare drilling sites, drill and complete wells that reach thousands of feet into the earth, and either construct or arrange for the infrastructure to transport and market the production. The costs and capital investment required are significant, and uncertainty is the death knell of development. *See* SUF ¶ 1.

Recognizing this reality, the MLA requires that any action contesting a BLM decision involving an oil and gas lease be brought within ninety days after the final agency decision:

> No action contesting a decision of the Secretary involving any oil and gas lease shall be maintained unless such action is commenced or taken

6

within ninety days after the final decision of the Secretary relating to such matter.

30 U.S.C. § 226-2. The legislative history confirms that Congress was concerned about the ability for "final determination[s]" to be challenged long after they were made or "without limit except as … may be limited by laches." Mineral Leasing Act Amendments: Hearing Before the Subcomm. on Public Lands of the Committee on Interior and Insular Affairs, 86 Cong. 305 (1960) (remarks of Mr. Smith in response to Senator Allott). Congress understood that leaving in question the parties' rights would "place[] an obstacle in the way of the development" and production of federal oil and gas. *Id.* Thus, Congress determined this ninety-day period was "in the best interests of orderly development of public lands." *Id.*

In line with congressional intent, courts consistently enforce this statute of limitations "when a plaintiff is alleging failure to comply with the Mineral Leasing Act." *Mont. Wilderness Ass'n v. Fry*, 310 F. Supp. 2d 1127, 1142 (D. Mont. 2004) (citing Ninth and Tenth circuit case law).[1] As a leading case on the scope of 30 U.S.C. § 226-2 held, the ninety-day limitation "applies in cases challenging lack of compliance with all the intricate requirements of Subchapter IV of the [MLA] which deals with oil and gas leasing." *Park County Res. Council, Inc. v. U.S. Dep't*

---

[1] The court in *Fry* held that the ninety-day limitations period did not apply, because, unlike Phoenix, the plaintiffs in that case brought an action under the National Environmental Policy Act ("NEPA"), not the MLA. *Id.*

*of Agric.*, 817 F.2d 609, 616 (10th Cir. 1987), *overruled on other grounds*, *Villa. of Los Ranchos De Albuquerque v. Marsh*, 956 F.2d 970 (10th Cir. 1992); *see also Dine Citizens Against Ruining Our Env't v. Klein*, 676 F. Supp. 2d 1198 (D. Colo. 2009) (citing this test). Subchapter IV of the MLA encompasses Sections 221-237, including both the ninety-day statute of limitations, 30 U.S.C. § 226-2, and the specific provisions of the MLA that Phoenix invokes, 30 U.S.C. §§ 226(m) and (j). Compl. ¶¶ 49, 59, 60, 91, 97-98, 103.

When applying 30 U.S.C. § 226-2 to "substantive decision[s] relating to federal leases," like Phoenix's claims here, courts unapologetically enforce the MLA's ninety-day statute of limitations. *Moncrief v. United States*, 43 Fed. Cl. 276, 290 (Fed. Cl. 1999); *see also Impact Energy Res., LLC v. Salazar*, 693 F.3d 1239, 1241, 1246 (10th Cir. 2012) (enforcing 30 U.S.C. § 226-2 to bar claims even when the suit was only a week late).

In *Moncrief*, a lessee sought to appeal a decision regarding royalties due under the lease a year after the agency's decision. 43 Fed. Cl. at 281-82. The court rejected the plaintiff's argument that the MLA's ninety-day statute of limitations was limited solely to "contests regarding the issuance of leases." *Id.* at 290. Rather, citing *Park County,* the court held that the limitations applied to all "cases challenging lack of compliance with all the intricate requirements of Subchapter IV of the [MLA]" and, thus, dismissed the case with prejudice even though the

8

plaintiff allegedly paid over $1.7 million in royalties that were not owed. *Id*. at 282, 290.

Moreover, when Congress provides a "clear and uncomplicated" directive to limit judicial review such as 30 U.S.C. § 226-2, courts strictly adhere to it, even when the time is short. *See, e.g., Turtle Island Restoration Network v. United States*, 438 F.3d 937, 943 (9th Cir. 2006). In *Turtle Island*, the Ninth Circuit applied the thirty-day time limit for challenging regulations promulgated under the Magnuson Act. *Id.* at 944. The plaintiff sought to challenge those regulations but attempted to plead around the thirty-day limitations period by "assiduously avoiding citation to the Magnuson Act." *Id.* at 944. The "decisive question," however, was whether the regulations were being attacked by the "essence" of the complaint. *Id.* at 944-45. Because the claims were "directed at" Magnuson Act regulations, the Ninth Circuit applied the thirty-day time limitation and affirmed dismissal of the case. *Id.* at 945, 949.

This Court should follow the well-founded precedent and apply the ninety-day statute of limitations. *See Amigos Bravos v. United States BLM*, 2010 U.S. Dist. LEXIS 146962, at *21-22 (D.N.M., Feb. 9, 2010) ("To the extent that [the plaintiff] contests either the lease issuances or substantive decisions relating to the leases themselves under the [MLA], Section 226-2 would apply to such claim.") (citing *Park Cty.*, 817 F.2d at 616); *see also Jewell Scott, Jr.*, 88 IBLA 307, 309

(1985) ("since 30 U.S.C. § 226-2 (1982) requires that any action 'contesting a decision of the Secretary involving any oil and gas lease' must be brought within 90 days of the decision, appellant is barred by statute from relitigating this matter").

### C. The Complaint is barred by the statute of limitations, regardless of what BLM final decision Phoenix purports to challenge.

The ninety-day period under 30 U.S.C. § 226-2 begins to run upon a final decision by BLM. In this matter, BLM made the following final decisions:

- On April 8, 2021, BLM decided to execute the original CA, effective June 1, 2018, with Kraken. (Phoenix does not challenge this decision in its Complaint.)

- On June 13, 2023, BLM decided both to amend the original CA by executing the "Amended CA," effective June 1, 2018, and to execute the "New CA," effective January 11, 2021, with Kraken.

- On August 5, 2024 (if not before), BLM decided to offer its 50% interest in the 120-acre parcel subject to the CAs at the lease sale.

- On September 19, 2024, BLM decided to issue the lease subject to the CAs to Phoenix, effective October 1, 2024.

SUF ¶¶ 12, 18, 24, 26-27.

The "essence" of the Complaint is that issuing Phoenix's lease subject to Section 5 of the Amended CA and of the New CA violates 30 U.S.C. § 226. *Cf.*

10

*Turtle Island*, 438 F.3d at 943 (examining "essence" of a complaint to bar claims under a thirty-day statute of limitations). Because Phoenix contests BLM's June 13, 2023 decision to amend and enter into these CAs as being unlawful and exceeding BLM's authority under the MLA, the ninety-day statute of limitations arguably began to run on that date and expired on September 11, 2023.[2] *See* SUF ¶¶ 18, 39.

Phoenix also challenges the BLM decision to issue the lease subject to those CAs. Although that process began in 2023—and included at least five notices that Phoenix admits to having received and considered indicating the lease would be subject to a CA—BLM's final decision was made on August 5, 2024, when it completed the necessary actions to open the bidding for the leases by potential buyers the next day. Under this reasoning, the statutory limitations period expired no later than November 4, 2024. *See* SUF ¶¶ 24, 39.

Even if Phoenix claims that the statute did not begin to run until BLM issued the actual lease to Phoenix stating all of its terms, that issuance occurred on

---

[2] Phoenix had not yet acquired its lease in 2023 and, thus, may not have had an interest in the minerals affected by the CAs or grounds to challenge BLM's decisions. But, when Phoenix acquired its lease, it assumed the working interest formerly owned by the federal government, and it took that interest subject to the pre-existing commitments BLM had made, just like any other successor-in-interest. BLM could not grant Phoenix that which the agency did not have, *i.e.* an unencumbered working interest. *See, e.g., Green v. Gustafson*, 482 N.W.2d 842, 849 (N.D. 1992) ("It is axiomatic that a deed cannot convey a greater interest or estate in the property than the grantor has.").

September 19, 2024, meaning the statutory limitations expired on December 18, 2024. *See* SUF ¶¶ 26, 39.

Fortunately, the Court need not wade into exactly when the limitations period began to run because Phoenix's filing was so untimely that it moots any potential dispute of that issue. Giving Phoenix every benefit of the doubt and choosing the latest possible date—the October 1, 2024, effective date of Phoenix's lease—the limitations period was over by December 30, 2024. Phoenix, however, waited 226 days—over two-and-a-half times the ninety-day limitations period—to bring its claims on May 15, 2025.

As a matter of law, Phoenix "cannot maintain" this action because it was not "commenced or taken within ninety days" of BLM's decisions. *See* 30 U.S.C. § 226-2. Based on the undisputed facts, summary judgment should now be entered in Defendants' favor. *See, e.g., Nelson*, 2012 U.S. Dist. LEXIS 165944, at *4-5.[3]

---

[3] While this Motion focuses on Rule 56, the Court could also dismiss this case with prejudice under Rule 12(b)(1) because the MLA's statute of limitations is jurisdictional. While many statutes of limitations are claim-processing rules, a statute of limitations is "jurisdictional" when Congress provides a clear statement to that effect. *Wilkins v. United States*, 598 U.S. 152, 158-59 (2023). Congress need not use "magic words," rather the "traditional tools of statutory construction must plainly show that Congress imbued a procedural bar with jurisdictional consequences." *Sloan v. Drummond Co.*, 102 F.4th 1169, 1174 (11th Cir. 2024) (citing, in part, *United States v. Kwai Fun Wong*, 575 U.S. 402, 410 (2015)). "A procedural requirement is jurisdictional if [1] the statutory provision speaks in jurisdictional terms or refers to jurisdiction, [2] is placed within a jurisdictional section of the statute, *or* [3] is part of a scheme that is not designed to be flexible

for claimants but instead places strict requirements on them." *Id.* at 1174-75 (emphasis added). Here, all three apply.

First, the text of 30 U.S.C. § 226-2 speaks in jurisdictional terms. It dictates that "no action … shall be maintained" if the action is not brought within ninety days after the Secretary/BLM's final decision. "Unlike a general statute of limitation that begins with the accrual of a claim … [,] the Mineral Leasing Act statute of limitation clearly indicates the event that triggers the time limit—the final decision of the Secretary." *Impact Energy Res., LLC v. Salazar*, 2010 U.S. Dist. LEXIS 91095 (D. Utah Aug. 31, 2010) (*aff'd Impact Energy*, 693 F.3d at 1242) ("[T]he MLA's limitations period is not notice-based. The MLA very clearly starts the clock on the date of 'the final decision of the Secretary,' 30 U.S.C. § 226-2, not when notice of that decision is received."). While mandatory language itself—*e.g.*, "shall be barred"—is not necessarily enough to make a statute of limitations jurisdictional (*see, e.g., Wilkins*, 598 U.S. at 159), the MLA's language goes one step further. Unlike the mandatory language in *Wilkins* and several other cases that say existing claims are barred, the MLA's language prohibits claims from being "maintained" in the first place, meaning they should not even be filed—*i.e.*, it is jurisdictional.

Second, the MLA provision providing Phoenix with a cause of action against Kraken provides the link between the ninety-day limitation and the "jurisdictional section of the statute." *Sloan*, 102 F.4th at 1169. This also confirms Congress' intent to make 30 U.S.C. § 226-2 a jurisdictional statute of limitations. *See Wilkins*, 598 U.S. at 159 (the proximity to the statute's jurisdictional grant is a factor in determining whether the limitations period is jurisdictional).

Third, 30 U.S.C. § 226-2 "is part of a scheme that is not designed to be flexible for claimants but instead places strict requirements on them." *Sloan*, 102 F.4th at 1174-75. As explained above, and as confirmed by the legislative history, the limitations period is part of Congress's comprehensive scheme to regulate and promote the development and production of oil and gas from public lands to benefit the public interest. *See supra* Part I.B.; *see also* Mineral Leasing Act Amendments: Hearing Before the Subcomm. on Public Lands of the Committee on Interior and Insular Affairs, 86 Cong. 304-05 (1960) (remarks of Mr. Smith in response to Senator Allott); Report of the Senate Committee on Interior and Insular Affairs. S. Rep. No. 1549, 86th Cong., 2d Sess. at pp. 4-5. This time limit was created not for claim-processing purposes, but rather to establish a definitive ninety-day deadline on which parties involved in developing federal lands could rely. *See id.*

13

## II.    Laches Bars Phoenix from Bringing this Action because Phoenix Slept on its Rights, Ignoring Multiple BLM Notices.

Laches bars an action when a claimant's unreasonable delay in bringing the action prejudices the defendant. *Danjaq Ltd. Liab. Co. v. Sony Corp.*, 263 F.3d 942, 951 (9th Cir. 2001); *Jackson v. Axton*, 25 F.3d 884, 888 (9th Cir. 1994) ("laches may apply whether or not any statutory limitations period runs"). Laches can bar claims even if a plaintiff brought the action before the statutory limitations period expired. *See, e.g., Danjaq LLC*, 263 F.3d at 954 ("laches may sometimes bar a statutorily timely claim"); *Kling v. Hallmark Cards, Inc.*, 225 F.3d 1030, 1039 (9th Cir. 2000). Here, however, Kraken's argument is even stronger because the limitations period expired more than two-and-a-half times over, and "if suit is filed outside of the analogous limitations period, courts often have presumed that laches is applicable." *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 836 (9th Cir. 2002).

Because of the MLA's strict timeframes, which are meant to promote, rather than inhibit, development of federal resources (*see supra* Part I.A-B), companies often file timely appeals of BLM decisions (mostly to IBLA—*see infra* Part III) while simultaneously negotiating with BLM and/or continuing to investigate. Phoenix is aware of this practice and alleged an example of it in its Complaint. *See*

---

In short, even if there were disputed material facts under Rule 56 (which there are not), the Court should dismiss Phoenix's claims pursuant to Rule 12(b)(1).

Compl. ¶¶ 23-25 (alleging that Kraken timely appealed BLM's decision not to enter a CRA to IBLA and continued to negotiate with BLM); *Kraken Oil & Gas LLC,* 198 IBLA at 122; SUF ¶¶ 15-16.

BLM gave Phoenix at least five separate notifications—on December 28, 2023, on February 26, 2024, twice on May 21, 2024, and again on August 5, 2024—that, if Phoenix bid on and won the lease, the lease would be subject to a CA and Phoenix should contact the operator, Kraken, "to determine [its] rights" under the CA. *See* SUF ¶¶ 22-25. Phoenix admits that it reviewed each of these notices even before bidding on the lease. *See* SUF ¶¶ 23, 25 (Ex. N, Nos. 16, 23, 30, 37, 44). But did Phoenix contact Kraken to determine the conditions of the CAs before or after successfully bidding on the lease? No. *Id*. (Ex. N, Nos. 49-51) (admitting that "Phoenix did not contact Kraken, but deny any implication that the notices or parcel lists required a bidder to do so before being awarded the lease"); *id.* (Ex. N, Nos. 52-53) (apparently, Phoenix did not contact Kraken as BLM notices instructed because "Phoenix expressly denies that Kraken has any right to determine Phoenix's rights").

Instead, after submitting the winning bid, Phoenix reviewed, accepted, and executed the lease from BLM. SUF ¶ 26. Section 3(d) of the lease states that Phoenix's signature to the lease "constitutes acceptance of this lease, including all terms, conditions, and stipulations of which the lessee has been give notice." *Id.* ¶

15

26-27 (Compl. Ex. C). This, of course, includes the condition of the lease being subject to the CAs. Also, the lease was effective on October 1, 2024. *Id.* So, unlike BLM's approval of the CAs with retroactive effective dates back to first production (*see* SUF ¶¶ 12, 18), Phoenix's rights under the lease did not commence until October 1, 2024, even though production from the newly-leased federal minerals began six years earlier. *See* SUF ¶¶ 6, 26.

Even assuming that the clock for Phoenix's claims first began to run on October 1, 2024, Phoenix waited seven-and-a-half months, until May 15, 2025, to pursue its Complaint. The undisputed facts establish that Phoenix knew its lease came with conditions and had every opportunity to timely determine and challenge those conditions. Phoenix has only itself to blame for not doing so.[4]

In fact, Phoenix admits that it did not even contact BLM to try to determine its rights under the CAs until after the MLA's limitations period expired. "*[S]tarting* in January 2025," Phoenix finally began "conversations" with BLM "to understand BLM's position regarding interpretation of the CAs at issue in this litigation" *See* SUF ¶¶ 34-35 (emphasis added). But, by then, Phoenix had known for well over a year—since at least December 2023—that the lease would be

---

[4] For example, when Phoenix first asked Kraken about the amount of funds held in suspense, Kraken responded twice within nine days, provided copies of both CAs, and explained that under them and Phoenix's lease, Phoenix's rights commenced on October 1, 2024. *See* SUF ¶¶ 31-33.

subject to a CA; Phoenix had known for over five months that it was the winning bidder for that lease; and Phoenix knew or should have known that its time to challenge any of the BLM decisions in its Complaint had already expired. Phoenix's delay of over two-and-a-half times longer than the time allowed to bring its claims in the first place is more than enough for laches to bar Phoenix's Complaint. *See Jarrow Formulas*, 304 F.3d at 836 ("if suit is filed outside of the analogous limitations period, courts often have presumed that laches is applicable").

From Defendants' perspective, BLM and Kraken entered the Amended CA on June 13, 2023, effective June 1, 2018, and no one timely appealed that BLM decision to IBLA or otherwise. Similarly, BLM and Kraken entered the New CA on June 13, 2023, effective January 11, 2021. No one timely appealed that BLM decision either. As the operator and counterparty to the CAs, Kraken paid all the costs for developing the federal minerals and paid the federal royalties with the reasonable expectation that the CAs were valid and Kraken would be compensated as they provide. *See* SUF ¶¶ 40-41.

BLM decided to lease the federal 50% undivided interest in the minerals subject to the CAs, consistent with their terms. That process and the related BLM decisions began by at least December 2023 and concluded when BLM executed Phoenix's lease on September 19, 2024, effective October 1, 2024. Again, no one

timely appealed those BLM decisions to IBLA or otherwise. Relying on these decisions, Kraken has invested millions that it could have deployed in other projects. SUF ¶ 41. Defendants have been prejudiced by Phoenix's delay.

Phoenix seeks to recover a windfall, namely, the revenue dating back to first production—six years before its lease became effective—even though Kraken incurred and paid for all the risk of developing the wells with the expectation that it would be compensated according to the CAs. The very certainty and investor confidence that Congress intended to instill to encourage responsible development of federal resources for the public good by enacting the statute upon which Phoenix's claims depend would be undermined if Phoenix is now allowed to pursue its claims. Instead, summary judgment should be entered to bar Phoenix's untimely claims based on laches. *See Danjaq LLC*, 263 F.3d at 954; *Jarrow Formulas*, 304 F.3d at 836.

## III. Alternatively, Phoenix's Complaint should be Dismissed because Its Claims Lie Squarely Within IBLA's Primary Jurisdiction.

Courts invoke the primary jurisdiction doctrine if "an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). Courts analyze four factors to determine whether to dismiss a case based on primary jurisdiction: "(1) the need to resolve an issue that (2) has been

18

placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 760 (9th Cir. 2015) (citations omitted).

Here the first factor should be dispositive. Phoenix's untimely action should be dismissed with prejudice based on the statute of limitations and/or laches—meaning there is no "need" to invoke the primary jurisdiction doctrine to send the action to IBLA "to resolve an issue." But, if there were such a need, then all factors favor dismissal because Phoenix's claims and should first be addressed (if at all) by IBLA—the forum established to handle challenges to BLM decisions, including those related to entering CAs that burden federal minerals and leases.

Tellingly, the two cases Phoenix cites in its Complaint concerning the application of the statutes and regulations on which its claims are based are IBLA opinions. What's more, Phoenix's claims raise issues of first impression. There are no IBLA decisions or other cases on which this Court could rely that address the crux of this case—the CA language to which Phoenix's lease is subject in the context of production commenced under a previously vacated lease. Respectfully, this is not the case for this Court or any other to break new legal ground without the benefit of IBLA's consideration. *See Syntek Semiconductor Co. v. Microchip*

19

*Tech. Inc.*, 307 F.3d 775, 781 (9th Cir. 2002) ("protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme.") (citations omitted).

**A.    Congress has subjected the issues involved here to the Department of the Interior's comprehensive regulatory scheme.**

Congress has entrusted the implementation of the MLA's comprehensive statutory scheme to the Secretary of the Department of the Interior. *See* 30 U.S.C. § 226; 1 *Law of Federal Oil and Gas Leases* § 1.02 (2025); *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 790 (D.C. Cir. 1983). The Department of the Interior has "plenary authority over the administration of public lands, including mineral lands; and it has been given broad authority to issue regulations concerning them." *Best v. Humboldt Placer Mining Co.*, 83 S. Ct. 379, 382 (1963). "This authority includes the administration of oil and gas leases on federal lands." *Moncrief*, 43 Fed. Cl. at 289 (citing 30 U.S.C. § 226(a)).

The Secretary, in turn, has developed a "comprehensive regulatory authority." *See Astiana*, 783 F.3d at 760. As part of this "regulatory scheme" (*see Syntek Semiconductor*, 307 F.3d at 781), the Secretary has delegated its regulatory authority over onshore oil and gas development and operations on federal lands to BLM. *See* 43 C.F.R. § 3170.1. And, "BLM has used [MLA] authority to develop regulations governing all aspects of oil and gas operations." 1 *Hydraulic Fracturing Law and Practice* § 4.01 (2025). The process to apply for a CA, the

20

purpose of a CA, and the requirements of a CA are all governed by BLM regulations. *See* 43 C.F.R. §§ 3105.21–24; *see also id.* at §§ 3181.5, 3162.2-2 (governing compensatory royalty payments for unleased lands).

This comprehensive regulatory scheme also calls for IBLA review of matters involving BLM decisions. *See Moncrief*, 43 Fed. Cl. at 289 ("the DOI has developed a comprehensive and orderly scheme for decision-making and consideration of appeals of [DOI agency] decisions"). IBLA's "mission is to provide an impartial forum within the Department of the Interior for the resolution of disputes involving public lands and natural resources under the Department's jurisdiction."[5] Thus, when BLM's decisions under the MLA are challenged, those decisions are first subject to review by the State Director of BLM (43 C.F.R. § 3165.3(b)) and/or IBLA. *Id.* § 3165.4(a); 43 C.F.R. Part 4. Indeed, BLM regulations explicitly state that "any party adversely affected by a decision of the authorized officer made pursuant to the provisions of 43 CFR parts 3000 or 3100 [which includes decisions involving CAs], has a right of appeal pursuant to 43 C.F.R. part 4 [the IBLA appeals procedures]." 43 C.F.R. § 3000.40.

Any time a BLM decision involves alleged violations of the statues that Phoenix invokes here (30 U.S.C. §§ 226(m) and 226(j)) or validity of CAs (or

---

[5] U.S. Department of the Interior, About the Interior Board of Land Appeals, available at https://www.doi.gov/oha/about-interior-board-land-appeals (last visited, Nov. 20, 2025).

CRAs), parties typically challenge those decisions before IBLA. *See*, *e.g.*, *Gene R. And Mary J. Hilton,* 187 IBLA 1, 3 (2015) (reviewing whether BLM's decision to approve a CA satisfied the MLA, including whether a lease subject to the CA could be "independently developed" and whether the agency's decision was "in the public interest"); *Kirkpatrick Oil and Gas Co.*, 15 IBLA 216 (1974) (similar); *Inexco Oil Co,* 45 IBLA 377 (1980) (reviewing decision involving compensatory royalty).

The crux of Phoenix's claims—BLM's decisions to enter into these CAs and issue a lease subject to them—falls squarely within the Department of the Interior's comprehensive regulatory scheme and is explicitly subject to IBLA's primary review. There is "nothing unique about [Phoenix's] situation which should allow [it] to bypass the DOI review process." *Moncrief*, 43 Fed. Cl. at 289. The second and third Ninth Circuit factors strongly favor dismissal based on IBLA's primary jurisdiction. *See Astiana*, 783 F.3d at 760; *Syntek Semiconductor*, 307 F.3d at 781.

### B.    The issues involved here require IBLA expertise and uniformity in administration.

The Ninth Circuit's final factor also points to IBLA as the proper forum.

*First*, Phoenix's claims warrant IBLA's expertise and experience in reviewing federal agencies' implementation of the comprehensive regulatory scheme under the MLA. For example, Phoenix challenges BLM's highly technical

determination as to whether the minerals subject to the CAs could have instead been "developed through a lease and operated in conformity with a well-spacing program" (Compl. ¶ 52) and, thus, whether BLM violated the MLA. *Id.* ¶¶ 59–61. Phoenix's complaint also appears to raise issues of first impression as Defendants have found no IBLA (or judicial) decision addressing a lease subject to the CA language about which Phoenix complains, much less in the context of a vacatur of a producing lease.

IBLA was created to handle "appeals of decisions issued by the Department's bureaus [like BLM] and offices relating to the use and disposition of public lands and resources"[6]—the exact decisions at issue here. It is accustomed to dealing with the MLA and its regulations, which are "overlaid with numerous judicial and agency decisions, as well as informal agency policies regarding the interpretation of the statutes and regulations." 1 *Law of Federal Oil and Gas Leases* § 1.02 (2025); *see also Gene R. And Mary J. Hilton,* 187 IBLA at 3; *Kirkpatrick Oil and Gas Co.*, 15 IBLA at 216; *Inexco Oil Co,* 45 IBLA at 377.

Evaluating Phoenix's claims requires understanding how federal minerals are developed, the time, effort and expense involved for developing those minerals and, crucially, the regulatory framework and agency policies designed to manage

---

[6] U.S. Department of the Interior, About the Interior Board of Land Appeals, available at https://www.doi.gov/oha/about-interior-board-land-appeals (last visited, Nov. 20, 2025).

that entire process and how they interact with the State's regulatory framework and well-spacing program. Respectfully, the Court should not wade through the technicalities of BLM's decision without the benefit of a complete administrative record, including an IBLA decision; it should instead allow IBLA to "have the first word on [the] complex or novel issue" involved here. *Ctr. for Biological Diversity v. United States*, 255 F. Supp. 2d 1030, 1037 (D. Ariz. 2003).

*Second*, the IBLA is the proper forum to ensure "uniformity in administration." *See Astiana*, 783 F.3d at 760. The statutes and comprehensive regulatory scheme governing oil and gas production from federal minerals are intended to be applied uniformly and consistently throughout the country. This uniformity is intended in part to promote development of federal resources through private enterprise for the public good. Further, companies rely on regulatory predictability and consistency across all jurisdictions to assess risks, secure financing, and make informed investment decisions. *Supra* Part I.B.

The primary jurisdiction doctrine "promotes regulatory uniformity by preventing courts from interfering sporadically with a comprehensive regulatory scheme" and ensures that courts resort to administrative agencies' expertise on "issues of fact not within the conventional experience of judges." *S. Utah Wilderness Alliance v. BLM*, 425 F.3d 735, 751 (10th Cir. 2005) (citations omitted). When courts fail to defer to centralized administrative forums like IBLA,

24

there is a significant risk of inconsistent decisions, which can stymie private investments, undermine public confidence, and frustrate the Interior's goal of ensuing "uniformity" in administration of federal laws and policies regardless of jurisdiction. *See Ctr. for Biological Diversity*, 255 F. Supp. 2d at 1037 (staying case in part because "IBLA has an interest both in applying its expertise and establishing a uniform interpretation of the policies under the Mining Law" (citing *United States v. General Dynamics Corp.*, 828 F.2d 1356 (9th Cir. 1987)).

This risk of inconsistent application of federal law here is not abstract. Increasing federal-environmental-statutes-based lawsuits in recent years have resulted in the vacatur of many previously issued federal leases, including leases already producing oil and gas or subject to CAs. *See*, *e.g.*, *WildEarth Guardians v. United States BLM*, 457 F. Supp. 3d 880, 897 (D. Mont. 2020); *San Juan Citizens All. v. U.S. Bureau of Land Mgmt.*, 326 F. Supp. 3d 1227, 1256 (D.N.M. 2018). In such cases, BLM's discretion to enter into tailored CAs or similar mechanisms to prevent waste of mineral resources and ensure continuity of production is essential.

Thus, the Ninth Circuit's final factor also heavily favors dismissal.

### C.    Dismissing Phoenix's claims under the primary jurisdiction doctrine would effectively be a dismissal with prejudice.

IBLA, like federal courts, heeds to the MLA's ninety-day statute of limitations and bars stale claims. Indeed, IBLA appeal regulations go a step further and generally require a party challenging BLM's decision to file a notice of appeal

25

no later than thirty days after receiving the decision. *See* 43 C.F.R. § 4.403(c)(1). When there are no shorter regulatory deadlines, IBLA defaults and adheres to the MLA's ninety-day statute of limitations to bar untimely claims. *See*, *e.g.*, *Jewell Scott, Jr.*, 88 IBLA at 309 ("since 30 U.S.C. § 226-2 (1982) requires that any action 'contesting a decision of the Secretary involving any oil and gas lease' must be brought within 90 days of the decision, appellant is barred by statute from relitigating this matter"); *Vern H. Bolinder,* 22 IBLA 130, 132 (1975) ("This Board has maintained a consistent practice of declining to entertain petitions for reconsideration of decisions relating to oil and gas leases filed more than 90 days after receipt of an original decision.").

Thus, though Phoenix may argue that the Court should not dismiss this case under primary jurisdiction because, as a practical matter, doing so would have the same effect as a dismissal with prejudice, that is not a reason to keep this case in court.[7] To the contrary, IBLA is the most appropriate forum to initially address the merits of Phoenix's claims. That the IBLA would reject those claims as untimely reinforces that dismissal with prejudice of this case is now appropriate. Afterall, had Phoenix followed the statutory and regulatory framework under which it

---

[7] Similarly, Phoenix could argue that the Court also should not stay the case because that would merely result in the parties coming back to court after IBLA refuses to hear Phoenix's untimely claims. For the same reasons, however, that argument reinforces that this case is ripe for judgment in Defendants' favor.

26

asserts its claims and attempted to bring them before IBLA when it finally decided to pursue them, this case would have been over long ago.

## CONCLUSION

For all the foregoing reasons, summary judgment should be entered in Defendants' favor.

Dated this 15th day of December, 2025.

/s/ Brianne C. McClafferty

/s/ Matthew J. Salzman
Brianne C. McClafferty
Matthew J. Salzman
Utsarga Bhattarai
Holland & Hart LLP

ATTORNEYS FOR DEFENDANTS
KRAKEN OIL AND GAS, LLC AND
KRAKEN OPERATING, LLC

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d), I certify that the above brief is printed with proportionately spaced Times New Roman text typeface of 14 points; is double-spaced, and the word count, calculated by Microsoft Office Word, is 5,757 words, excluding the caption, signature block, and Certificate of Compliance.

/s/ Brianne C. McClafferty

36538214_v3