Brianne C. McClafferty
Holland & Hart LLP
401 North 31st Street, Suite 1200
P.O. Box 639
Billings, Montana 59103-0639
Telephone: 406.252.2166
Fax: 406.252.1669
*bcmcclafferty@hollandhart.com*

Matthew J. Salzman, *pro hac vice*
Holland & Hart LLP
2811 W. 66th Terrace
Mission Hills, KS 66208
Telephone: 913.558.1221
*mjsalzman@hollandhart.com*

Utsarga Bhattarai, *pro hac vice*
Holland & Hart LLP
555 17th Street, Suite 3200
Denver, CO 80202-3921
Telephone: 303.295.8168
*ubhattarai@hollandhart.com*

Attorneys for Defendants Kraken Oil & Gas,
LLC, and Kraken Operating, LLC

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

|  |  |
|---|---|
| PHOENIX ENERGY ONE, LLC f/k/a PHOENIX CAPITAL GROUP HOLDINGS, LLC,<br><br>    Plaintiff,<br><br>KRAKEN OIL & GAS, LLC, KRAKEN OPERATING, LLC, and UNITED STATES BUREAU OF LAND MANAGEMENT,<br><br>    Defendants. | Cause No. CV-25-65-BLG-TJC<br><br>**DEFENDANTS KRAKEN OIL & GAS LLC AND KRAKEN OPERATING LLC'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, TO DISMISS** |

Pursuant to Local Rule 56.1, Defendants Kraken Oil & Gas, LLC and Kraken Operating, LLC (collectively, "Kraken") respectfully submit this Statement of Undisputed Facts in support of their Motion for Summary Judgment or, in the Alternative, to Dismiss. Kraken accepts the following facts as undisputed:

| TABLE OF EXHIBITS ||
| --- | --- |
| EXHIBIT | DESCRIPTION |
| A | 12/12/2025 Affidavit of Andrew McGhee |
| B | 6/25/2017 MBOGC TSU Order |
| C | 9/12/2017 MBOGC Drilling Permit |
| D | 12/13/2018 MBOGC PSU Order |
| E | 12/13/2018 MBOGC Pooling Order |
| F | April 2021 Kraken-BLM Email Exchange |
| G | 4/8/2021 BLM Approval of Communitization Agreement |
| H | 10/14/2021 BLM Letter |
| I | IBLA Decision 2022-28 |
| J | 12/28/2023 BLM Scoping Letter |
| K | Kraken's First Set of Requests for Admission to Phoenix |
| L | Phoenix's Responses to Kraken's First Set of Interrogatories |
| M | 8/5/2024 BLM Decision Record |
| N | Phoenix's Response to Kraken's Requests for Admissions |
| O | 8/5/2024 Phoenix's Slack Messages |
| P | 8/6/2024 Phoenix's Winning Bid |
| Q | 10/2/2024 to 12/11/2024 Kraken-Phoenix Emails |
| R | 1/14/25 Demand Letter |
| S | 2/3/2025 Kraken's Response to Phoenix Demand Letter |

1.      Producing oil and gas on federal lands is an expensive, complex, multi-year process. Oil-and-gas companies obtain geological data to determine where oil and gas may be found, enter into oil and gas leases or otherwise acquire rights to develop those hydrocarbons from the subsurface minerals, obtain the

necessary state and federal permitting and approvals, determine and prepare drilling sites, drill and complete wells that often reach thousands of feet into the earth, and either construct or arrange for the necessary infrastructure to transport and market the production. The costs and capital investment required is significant, and uncertainty is the death knell of development. *See* Exhibit A, Affidavit of Andrew McGhee ("McGhee Aff.") at ¶¶ 5, 9.

**A.     The Interest at Issue and Original Development Efforts.**

2.     The subsurface mineral interest in question is located in Richland County, Montana, and its ownership is split—the United States owns a 50% undivided interest, and the remaining 50% of those same minerals are privately owned. Compl. (Doc. 1) ¶¶ 7-8; Kraken's Amended Answer (Doc. 41) ¶¶ 7-8; BLM's Answer (Doc. 15) ¶¶ 7-8.

3.     Kraken has leased the majority of the privately owned 50% undivided interest. *See* Compl. ¶ 9; Kraken's Amended Answer ¶ 9; BLM's Answer ¶ 9.

4.     Kraken also acquired a lease from the BLM for the federally owned 50%, and sought to develop oil and gas from the minerals jointly owned by the United States and private owners along with the surrounding minerals. Compl. ¶ 10; Kraken's Amended Answer ¶ 10; BLM's Answer ¶ 10.

5.     Without objection from BLM (or anyone else), Kraken received an order from the state regulators, the Montana Board of Oil and Gas Conservation

("MBOGC"), forming a temporary spacing unit encompassing the jointly owned minerals and a drilling permit authorizing Kraken to drill a well to try to produce oil and gas from the minerals in the spacing unit. Exhibit B, 06/25/2017 MBOGC TSU Order; Exhibit C, 09/12/2017 MBOGC Drilling Permit.

6.      Kraken completed the Dagney 21-28 #1H in June 2018, after which it began producing oil and gas. Compl. ¶ 12; Amended Answer ¶ 12; BLM's Answer ¶ 12.

7.      In December 2018, the MBOGC entered a permanent spacing unit order and a pooling order, which effectively merged or "pooled" all of the non-federal interests in the spacing unit, thereby allowing them to share proportionately in the benefits of the oil and gas production. Exhibit D, 12/13/2018 MBOGC PSU Order; Exhibit E, 12/13/2018 MBOGC Pooling Order.

8.      The MBOGC has no jurisdiction over federally owned minerals or, in this case, the federally owned portion of the minerals. Consequently, as is common practice, Kraken applied to BLM for a communitization agreement ("CA") specifying the terms by which BLM would agree to pool the federal minerals Kraken leased with the other minerals in the State-approved spacing unit. *See* Compl. ¶ 17; Amended Answer ¶ 17; BLM's Answer ¶ 17; Exhibit A, McGhee Aff. at ¶¶ 6, 7.

9.      Kraken made plans to continue to invest, drill more wells, and further develop oil and gas from the spacing unit. Exhibit A, McGhee Aff. at ¶¶ 7-9.

**B.      Vacatur of Kraken's Lease, IBLA Action, and the Amended CA and New CA.**

10.     Around the same time, non-profit groups brought a lawsuit alleging that BLM had violated federal environmental statutes when issuing several leases in Montana, including Kraken's lease, and, on May 1, 2020, Judge Morris ordered those leases to be vacated. *Wildearth Guardians v. United States BLM*, 457 F. Supp. 3d 880 (D. Mont. 2020).

11.     BLM and Kraken were not sure how to proceed, given that development of the now-unleased minerals already was underway and Kraken already was producing oil and gas from them. Exhibit F, April 2021 Kraken-BLM Email Exchange at USA_000714-715.

12.     On April 8, 2021, BLM approved Kraken's application for a CA submitted before its lease was vacated, and BLM issued Federal CA MTM111087, effective as of June 1, 2018.[1] Exhibit G, 4/8/2021 BLM Approval of CA.

---

[1] Because state regulators typically require a producing well before they will pool the subsurface mineral interests, and BLM typically will not agree to pool federal minerals until after a state has pooled the other interests, it is common for CAs to be retroactively effective to at least the date of first production so that operator can properly account for all of the production. *See* Exhibit A, McGhee Aff. at ¶ 8.

13.     In light of the vacatur of its lease, Kraken asked BLM to issue a Compensatory Royalty Agreement ("CRA") for the then-unleased lands. Compl. ¶ 23; Amended Answer ¶ 23; BLM's Answer ¶ 23.

14.     In an October 14, 2021 letter, BLM indicated that issuing a CRA was "not the proper legal course of action" and outside of its discretion. Exhibit H, 10/14/2021 BLM Letter at USA_000735.

15.     Kraken timely appealed BLM's decision to IBLA within thirty days. *See* Compl. ¶ 24; Amended Answer ¶ 24; BLM's Answer ¶ 24.

16.     On September 14, 2022, IBLA issued its decision, noting the breadth of BLM's discretion under the MLA and reversing the BLM's decision that it lacked discretion to enter into a CRA as an "inappropriately narrow interpretation of BLM's legal authority," but taking no position concerning whether a CRA was appropriate in this case. Exhibit I, IBLA Decision 2022-28 at USA_000771.

17.     In exercising its discretion, BLM chose not to enter a CRA with Kraken. Compl. ¶ 26; Amended Answer ¶ 26; BLM's Answer ¶ 26.

18.     Instead, on June 13, 2023, BLM entered into an amended 21-28 CA, MTM111087, effective June 1, 2018 ("Amended CA") and a new 33-21 CA, MTM112222, effective January 11, 2021 ("New CA") with Kraken. Compl. Ex. A, Amended CA; Compl. Ex. B, New CA.

19.     The Amended CA amended the original CA for the Dagney #1H well, while the New CA accounted for two new, longer wells Kraken had drilled, the Dagney #3H and #4H wells. *Id.*

20.     Both CAs state: "Any party acquiring a Federal lease of the unleased Federal land included in the communitized area established hereunder, will be subject to this agreement as of the effective date of the Federal lease to said party(s)." Compl. Ex. A, Amended CA, Section 5 at 2; Compl. Ex. B, New CA, Section 5 at 2.

**C.     Phoenix Acquires and Accepts a Lease Subject to a CA through BLM's August 2024 Lease Sale.**

21.     BLM eventually made the decision to re-lease the 50% federally owned portion of the minerals subject to the CAs. This process began at least by December 28, 2023, when BLM released a public scoping letter notifying the public of a list of parcels potentially available for bidding at an upcoming lease sale. Exhibit J, 12/28/2023 BLM Scoping Letter.

22.     As to the parcel for the 50% federally owned portion of the minerals involved in this case, Parcel Number MT-2024-07-0360, BLM informed prospective buyers on December 28, 2023, that this Parcel:

> is committed to Communitization Agreement (CA) MTM 111087, Bakken/Three Forks Formation, effective 6/01/2018, which includes the entire area of this parcel. ***The operator of this CA is Kraken Oil & Gas, LLC. The successful bidder should contact the CA operator to determine their rights under this CA.*** The CA operator may require the

successful bidder to pay a proportionate cost of the well, including drilling, completing, equipping, and operating the well as a condition of participating in the CA.

Exhibit K, Kraken's First Set of Requests for Admission to Phoenix, Ex. 4 at Kraken_000141 (emphasis added).

23.    BLM provided notice that a lease of this Parcel was subject to a preexisting CA operated by Kraken and that "the successful bidder should contact" Kraken, "the CA operator to determine their rights under this CA" at least *four more times*: with the Draft Environmental Assessment ("EA") that the agency released for public comments on February 26, 2024, twice alongside the Final EA that the agency issued for public protest three months later on May 21, 2024, and again when BLM released the final parcels list and lease stipulations on August 5, 2024. *Id*., Ex. 2 at Kraken_000093; *id*., Ex. 4 at Kraken_000151; *id*., Ex. 5 at Kraken_000160; *id*., Ex. 6 at Kraken_000180; *see also* Exhibit L, Phoenix's Resp. to Kraken's First Set of Interrogatories at Answer No. 8 (noting the presence of this language within the BLM's Notice of Competitive Lease Sale dated May 21, 2024 and four separate parcel lists issued by the BLM).

24.    The BLM issued its Decision Record on August 5, 2024, deciding to offer the 50% interest in the 120-acre Parcel at the lease sale, subject to the CAs. Exhibit M, 08/05/2024 BLM Decision Record at USA_001397.

25.     After receiving and reviewing each of these five BLM notices stating that the lease was subject to a CA and that the winning bidder should contact the operator, Kraken, to determine its rights under the CA, Phoenix then bid on a lease of this Parcel. Exhibit N, Phoenix's Resp. to Kraken's Requests for Admissions at Response Nos. 14-48; Exhibit O, 8/5/2024 Phoenix's Slack Messages at PHX_001501.

26.     On August 6, 2024, BLM notified Phoenix that it had submitted the winning bid and the agency awarded Phoenix the lease dated September 19, 2024, effective October 1, 2024. Exhibit P, 8/6/2024 Phoenix's Winning Bid; Compl. Ex. C, Phoenix Lease at 1.

27.     The lease states that Phoenix's signature "constitutes acceptance of this lease, including all terms, conditions, and stipulations of which the lessee [*i.e.*, Phoenix] has been given notice."  Compl. Ex. C, Phoenix Lease, Section 3(d) at 2.

28.     Phoenix admits that it received and "reviewed" each of the five above-referenced BLM notices. Exhibit N, Phoenix's Resp. to Kraken's Requests for Admissions at Response Nos. 14-48.

29.     Yet, Phoenix did not contact Kraken to determine or inquire about its rights under the CAs. *Id.* at Response Nos. 49-51.

**D.      Phoenix's Demands to Kraken and Communications with BLM.**

30.      Almost immediately after Phoenix's lease subject to the CAs became effective, Phoenix sent the lease to Kraken, but it did not make any inquiry about its rights. Exhibit Q, 10/02/2024 to 12/11/2024 Kraken-PHX Emails at PHX_001519.

31.      When Phoenix did contact Kraken and began asking questions in December 2024, Phoenix did not inquire about its rights as the BLM notices had directed; instead, Phoenix requested information about the funds in suspense and demanded Kraken pay Phoenix all of the production revenue dating back to first production (meaning six years before the effective date of Phoenix's lease), which Phoenix assumed were being held in suspense.[2] *Id*. at PHX_001516-1517.

32.      Yet, when Phoenix made this inquiry about the funds in suspense and discussed internally about being entitled to revenues back to first production even though it did not acquire any interest in that production until six years later, Phoenix had not reviewed and did not even have a copy of the CAs that it knew its lease was subject to. Exhibit N, Phoenix's Resp. to Kraken's Requests for

---

[2] Participation in an oil and gas well allows all the participating interest owners to contribute to the cost (and share the risks) of drilling the well. If the proceeds from the well fail to exceed the costs of drilling, all the participating owners lose money. If their proportionate share of the proceeds exceed costs, the participating owners profit. Phoenix's demand for retroactive participation in the Dagney wells would allow it to profit after-the-fact, without taking on any of the risks associated with participating before the well was drilled. Exhibit A, McGhee Aff. ¶¶ 10-11.

Admissions at Response Nos. 64-70; Exhibit Q, 10/02/2024 to 12/11/2024 Kraken-PHX Emails at PHX_001516.

33.    Kraken responded to Phoenix twice within nine days, and pointed out that Phoenix's lease was not effective until October 1, 2024 and that its terms only granted lease rights prospectively; Kraken sent Phoenix copies of the CAs, which also granted Phoenix no rights until the effective date of its lease; and Kraken agreed to provide Phoenix accounting information from October 1, 2024, onwards. Exhibit Q, 10/02/2024 to 12/11/2024 Kraken-PHX Emails at PHX_001516-1517.

34.    On January 14, 2025, apparently for the first time, Phoenix contacted BLM to determine its rights under the CAs. *See* Exhibit L, Phoenix's Resp. to Kraken's First Set of Interrogatories at Answer Nos. 2, 3.

35.    When asked to explain under oath "why Phoenix filed its Complaint on May 15, 2025," Phoenix began its answer with "Phoenix spent several months engaging in conversations with BLM ***starting*** in January 2025," and it wasn't until after those communications that Phoenix decided to pursue its claims. *Id*. at Answer No. 3 (emphasis added).

36.    On the same day it began those conversations with BLM, Phoenix sent a demand letter to Kraken reciting the same material facts it alleges in its Complaint and demanding, among other things, the same relief it seeks in its Complaint. Exhibit R, 01/14/25 Demand Letter at PHX 000102-104.

11

37.     On February 3, 2025, Kraken provided a response to each of the points raised in Phoenix's demand letter, set forth its understanding of Phoenix's rights under its lease and the CAs, including that Phoenix was not entitled to production proceeds prior to October 1, 2024, and providing copies of the relevant documents. Exhibit S, 02/03/2025 Kraken's Response to Phoenix's Demand at PHX 000012-13.

### E.     Phoenix's Failure to Timely Bring Its Claims.

38.     30 U.S.C. 226-2 states: "No action contesting a decision of the Secretary involving any oil and gas lease shall be maintained unless such action is commenced or taken within ninety days after the final decision of the Secretary relating to such matter."

39.     Phoenix did not file this lawsuit until May 15, 2025—which was 702 days after BLM decided to issue the CAs to which Phoenix's lease are subject (June 13, 2023); 504 days after BLM first provided notice during the lease sale process that the lease would be subject to a CA (December 28, 2023); 283 days after BLM final decision to offer the lease for sale subject to the CAs (August 5, 2024); 282 days after Phoenix learned it had submitted the winning bid for the lease subject to the CAs at the lease sale (August 6, 2024); 238 days after the date BLM issued the lease to Phoenix (September 19, 2024); and 226 days after the effective date of the lease subject to the CAs (October 1, 2024). Compl.; Compl.

12

Ex. A, Amended CA; Compl. Ex. B, New CA; Exhibit J, 12/28/2023 BLM

Scoping Letter; Exhibit P, 8/6/2024 Phoenix's Winning Bid; Compl. Ex. C,

Phoenix Lease.

40.    As the operator and counterparty to the CAs, Kraken reasonably

carried all the costs for developing the federal minerals and paying the federal

royalties with the expectation that the CAs were valid and would be compensated

according to their terms. *See* Exhibit A, McGhee Aff. at ¶¶ 5-9.

41.    Kraken has invested millions in the Dagney wells to develop the lands

subject to the Amended CA and New CA. Kraken could have easily deployed

those funds elsewhere if it had known it could not rely on the CAs. *See* Exhibit A,

McGhee Aff. at ¶ 9.

Dated this 15th day of December, 2025.

*/s/ Brianne McClafferty*

*/s/ Matthew J. Salzman*
Brianne C. McClafferty
Matthew J. Salzman
Utsarga Bhattarai
Holland & Hart LLP

ATTORNEYS FOR DEFENDANTS
KRAKEN OIL AND GAS, LLC AND
KRAKEN OPERATING, LLC