# EXHIBIT I

# United States Department of the Interior

## Office of Hearings and Appeals
### Interior Board of Land Appeals
801 N. Quincy Street, Suite 300
Arlington, VA 22203

(703) 235-3750 ibla@oha.doi.gov

KRAKEN OIL & GAS LLC

IBLA 2022-28 Decided September 14, 2022

Appeal from a Bureau of Land Management letter denying the appellant's request for a compensatory royalty agreement. MTM110144.

Motion to dismiss denied; set aside and remanded.

APPEARANCES: Kathleen C. Schroder, Esq., Davis Graham & Stubbs LLP, Denver, Colorado, for Appellant; Lisa S. Bruno, Office of the Solicitor, Department of the Interior, Billings, Montana, for the Bureau of Land Management.

OPINION BY ACTING DEPUTY CHIEF ADMINISTRATIVE JUDGE IDZIOREK

Kraken Oil & Gas LLC appeals an October 14, 2021, letter (Letter) issued by the Montana/Dakotas State Office, Bureau of Land Management (BLM). In the Letter, BLM denied Kraken's request to enter a compensatory royalty agreement. BLM has asked the Board to dismiss this appeal, arguing that the Letter is not a decision subject to the Board's review. In this Decision, we deny BLM's motion to dismiss and resolve Kraken's appeal.

## SUMMARY

A decision that is subject to the Board's review is one that is final for the bureau and authorizes or prohibits some action that affects a person having or seeking some right, title, or interest in public lands or their resources. The Letter Kraken appeals meets this definition because it is a final determination on Kraken's request for a compensatory royalty agreement, and BLM's determination affects Kraken's right to revenues from production of the Federal government's mineral interest. We conclude that the Letter is a decision subject to our review, and we deny BLM's motion to dismiss.

On the merits, we set aside BLM's decision. The relevant regulations and guidance provide discretion to BLM to enter into a compensatory royalty agreement, but in its decision, BLM concluded that it lacked discretion to enter into such an agreement when, as here, the Federal minerals could be leased. Because BLM incorrectly determined that it lacked discretion, we conclude that BLM erred, and we set aside the Letter and remand this matter to BLM.

198 IBLA 118

USA_000762

## BACKGROUND

This appeal involves Federal minerals underlying a 120-acre parcel in Richland County, Montana.[1] The surface of the land is privately-owned,[2] and the United States owns 50% of the mineral interest.[3] Kraken leases the non-Federal minerals from their non-Federal owner[4] and leased the Federal minerals in 2018.[5] Later in 2018, Kraken began producing from a well it drilled from the private surface.[6] In 2020, in litigation challenging the Federal lease sale, a Federal court ordered that Kraken's Federal lease be vacated,[7] and BLM cancelled the lease in June 2020.[8]

Approximately nine months after Kraken's Federal lease was cancelled, BLM approved a communitization agreement (CA) that Kraken submitted for BLM's approval before cancellation, adding the now-unleased Federal minerals to a 1280-acre spacing unit.[9] The CA "communitizes all rights as to the crude oil and associated natural gas"[10] that can be produced from the underlying formation and is based on BLM's determination that the Federal minerals "cannot be independently developed and operated in conformity with the well spacing program established for the field or area . . . and that consummation and approval of the agreement will be in the public interest."[11]

The approved CA requires Kraken to place all proceeds attributable to unleased Federal, State, or fee land, including unleased Federal minerals, in the CA area into an

---

[1] Statement of Reasons at 1 (filed Dec. 15, 2021) (SOR).

[2] BLM's Answer at 2 (filed Feb. 14, 2022) (Answer).

[3] SOR at 1; SOR, Exhibit (Ex.) B, Declaration of Andrew McGhee ¶ 3 (signed Nov. 15, 2021) (McGhee Decl.); Answer at 2.

[4] McGhee Decl. ¶ 4.

[5] SOR, Ex. C, Offer to Lease and Lease for Oil and Gas (effective date Jan. 1, 2018) (Lease); McGhee Decl. ¶ 2.

[6] McGhee Decl. ¶ 8; Answer at 2.

[7] *WildEarth Guardians v. United States Bureau of Land Management*, 457 F. Supp. 3d 880, 897 (D. Mont. 2020); *see also* Answer at 2-3.

[8] Answer at 3; *see also* Administrative Record at unpaginated 75-77, Notice, Lease Vacated Per Court Order (June 25, 2020).

[9] SOR, Ex. F, Letter from BLM to Kraken (Apr. 8, 2021) (enclosing the approved CA) (CA Letter). The record is inconsistent regarding when Kraken submitted the CA to BLM, but that issue is immaterial to our resolution of the appeal. *See* Answer at 2 (stating that Kraken submitted the CA on June 1, 2018); SOR at 4 (stating that Kraken submitted the CA in January 2020).

[10] CA Letter at 1.

[11] CA Letter, Attached Determination – Approval – Certification (signed Apr. 8, 2021).

USA_000763

escrow or trust account until such "land is leased or ownership is established."[12] In the cover letter accompanying the CA, however, BLM advised Kraken to pay the Federal government its one-eighth (12.5%) royalty on the unleased Federal minerals "since leasing . . . may take longer than anticipated" and put the remaining seven-eighths of proceeds—less drilling, completion, and production costs—into the escrow or trust account.[13]

Following BLM's approval of the CA, Kraken wrote to BLM asserting its view that BLM should enter a compensatory royalty agreement (CRA) covering the unleased Federal minerals and requested a meeting with BLM to discuss the terms of a CRA.[14] A CRA is an agreement under which "the mineral estate owner is compensated for lost royalties due to drainage on unleased lands."[15] For Kraken, a CRA would permit it to keep revenues from production of the Federal government's mineral interest, less the Federal government's royalty, rather than hold those revenues in an escrow account for the benefit of a future lessee as it is required to do under the CA.[16] In its letter, Kraken acknowledged that BLM had declined in the past to execute a CRA with Kraken based on BLM's belief that it "only may utilize such agreements when lands are unleasable."[17] Kraken contended, however, that BLM has authority to enter a CRA and that doing so is necessary to prevent inequities to Kraken.[18]

BLM responded the following month with the Letter on appeal.[19] BLM characterized Kraken's letter as "propos[ing] a compensatory royalty agreement."[20] Citing to its regulation governing CRAs, 43 C.F.R. § 3120.7-3,[21] BLM stated that "a CRA is not the proper legal course of action" because the "lands are open to leasing," and BLM has "decided to offer these lands up for lease in our next available oil and gas lease

---

[12] CA Letter, Attached Communitization Agreement § 5 (effective June 29, 2018).

[13] CA Letter at 1-2.

[14] SOR, Ex. G, Letter from Kraken to BLM at 1, 6 (Sept. 21, 2021) (Kraken Letter).

[15] BLM Manual MS-3160, Drainage Protection Manual (Public) at G-1 (Sept. 21, 2015), https://www.blm.gov/sites/blm.gov/files/uploads/mediacenter_blmpolicymanual3160.pdf (last visited Sept. 14, 2022).

[16] See SOR at 13-15.

[17] Kraken Letter at 3.

[18] Id. at 3-6.

[19] SOR, Ex. A, Letter from BLM to Kraken (Oct. 14, 2021) (BLM Letter).

[20] Id.

[21] In this Decision, all citations to Title 43 of the Code of Federal Regulations are to the current (2021) edition. Although BLM does not identify the applicable code edition for its reference to 43 C.F.R. § 3120.7-3, that regulation has not changed since 1988. See 53 Fed. Reg. 22,814, 22,846 (June 17, 1988) (final rulemaking).

USA_000764

sale, which is anticipated to be in the 2nd quarter of 2022."[22] BLM then advised Kraken to continue paying royalties on production from the unleased Federal minerals.[23]

Kraken appealed BLM's Letter, arguing that BLM has the authority to enter and should enter a CRA with Kraken.[24] Kraken also filed a petition for stay,[25] which BLM did not oppose.[26] We granted Kraken's petition and stayed the effect of the Letter while this appeal is pending.[27]

Kraken then filed its statement of reasons,[28] and BLM filed an answer.[29] In its answer, BLM includes a motion to dismiss Kraken's appeal because the Letter does not constitute a decision that is subject to appeal.[30] Kraken opposes dismissal of the appeal.[31]

## ANALYSIS

### A. The Letter Is an Appealable Decision

The Department's regulations define this Board's jurisdiction and specify that we have authority to review "decisions rendered by Departmental officials."[32] The existence of a decision is essential to our jurisdiction.[33] We have defined a decision that triggers our review authority as "one that is final for the bureau and authorizes or prohibits some action that affects a person having or seeking some right, title, or interest in public lands or their resources."[34] In deciding whether BLM has issued a final, appealable decision, we assess, first, whether the decision "mark[s] the consummation of [BLM's] decision[-] making process" and, second, whether the decision is "an action from which rights or obligations have been determined or legal consequences will flow."[35] Neither BLM's

---

[22] BLM Letter.

[23] Id.

[24] Notice of Appeal (filed with BLM Nov. 17, 2021).

[25] Petition for Stay (filed Nov. 15, 2021).

[26] BLM's Notice of Non-Opposition to Appellant's Petition for Stay (filed Nov. 22, 2021).

[27] Petition for Stay Granted (Nov. 26, 2021).

[28] SOR.

[29] Answer.

[30] Id. at 1, 4-6.

[31] Reply of Kraken Oil & Gas LLC at 1 (filed Mar. 1, 2022) (Reply).

[32] 43 C.F.R. § 4.1(b)(2); see also 43 C.F.R. § 4.410(a) (providing for appeal by a party who is adversely affected by a decision).

[33] International Petroleum, LLC, 190 IBLA 130, 134 (2017).

[34] Burning Man Project, 197 IBLA 66, 73 (2021).

[35] Id. (citing Bennett v. Spear, 520 U.S. 154, 177-78 (1997)).

USA_000765

labeling of a document as a "decision" nor the inclusion of appeal rights controls whether a particular document is a decision subject to our review.[36]

BLM contends that the Letter is not a decision because it does not "authorize or prohibit an action," "announce or propose a decision," or "determine or adjudicate a right or an obligation."[37] Instead, according to BLM, the Letter merely responds to Kraken's request to meet and discuss a CRA and explains BLM's view that a CRA is not appropriate.[38] BLM notes that it was not obligated to enter a CRA with Kraken or even respond to Kraken's inquiry and that any concerns regarding drainage of Federal minerals are already addressed by the CA.[39]

We conclude that the Letter is a decision subject to appeal for our review. The Letter meets the first requirement for a decision because it "mark[s] the consummation of [BLM's] decision[-]making process."[40] In the Letter, BLM quotes its regulation at 43 C.F.R. § 3120.7-3, which provides that CRAs are required "when leasing is not available [sic] in situations where the interest of the United States in the oil and gas deposit include[s] both a present and a future fractional interest in the same tract containing a producing well."[41] BLM then concludes that because the minerals at issue "are open to leasing, a CRA is not the proper legal course of action."[42] In so concluding, BLM rejects Kraken's proposal to enter into a CRA. Although BLM invites Kraken to contact a BLM employee with any questions, BLM does not suggest in the Letter that Kraken should expect any further communication from BLM regarding the matter or that there is any possibility of BLM changing its position after more deliberation.[43]

BLM argues that its Letter "does not rise to the level of a decision,"[44] but we disagree. The Letter is distinguishable from agency communications that we have concluded are not final for purposes of our review. For example, in *Burning Man Project*, we considered an appeal by the organizer of the annual Burning Man event in Nevada of two letters from BLM.[45] In the letters, BLM explained that, in the context of the event, certain contractors would be required to either obtain their own special recreation permit (SRP) or be covered under the appellant's SRP, and BLM set a deadline for the

---

[36] *International Petroleum, LLC*, 190 IBLA at 135.

[37] Answer at 5.

[38] *Id.*

[39] *Id.*

[40] *Burning Man Project*, 197 IBLA at 73.

[41] BLM Letter (emphasis omitted). The regulation uses the word "possible" instead of "available."

[42] *Id.*

[43] *See id.*

[44] Answer at 5.

[45] *See Burning Man Project*, 197 IBLA at 66-67.

USA_000766

submission of SRP applications.[46] We concluded that the letters were not subject to appeal because they merely explained BLM's interpretation of relevant legal requirements and, although further action was required from the appellant to continue its permit application process, BLM had not denied any SRP application or taken any other final action with respect to the appellant or the contractors.[47] We also explained that the interlocutory nature of the letters left open future choices—e.g., whether the contractors would file individual SRP applications—that would affect any future appeal.[48] We also noted that the letters would be reviewable on appeal of a final permitting decision from BLM.[49]

These same considerations do not apply to the Letter. Unlike in *Burning Man*, here there is no further action left for either BLM or Kraken to take regarding the CRA because BLM has categorically rejected Kraken's proposal for a CRA. As a result, Kraken will not have an opportunity at a later stage to challenge BLM's position. The absence of a future opportunity to appeal signals that BLM is not "in the middle of its decision-making process[]," as it was in *Burning Man*,[50] but rather has completed its process and arrived at a final position.

The Letter also meets the second element of our test: It is "an action from which rights or obligations have been determined or legal consequences will flow."[51] BLM's determination that a CRA is "not the proper legal course of action" has legal consequences for Kraken. It means that Kraken will be required to continue holding revenues attributable to the Federal government's mineral interest for the benefit of a future lessee, rather than being able—as its requested CRA would have allowed it—to retain those revenues.[52]

We acknowledge that, had BLM not responded to Kraken's inquiry, Kraken would have no right to appeal.[53] But that hypothetical situation is irrelevant because BLM did respond, and the response communicates BLM's determination that it could not enter

---

[46] *See id.* at 68-70.
[47] *See id.* at 74.
[48] *See id.*
[49] *See id.* at 78.
[50] *Id.* at 76.
[51] *Id.* at 73.
[52] Reply at 2 (arguing that BLM's rejection of a CRA "deprives Kraken of the right to 7/8 of production from the Tract conveyed by a compensatory royalty agreement").
[53] *See* Answer at 5 ("[T]here was no obligation or requirement that BLM . . . even respond to Kraken's inquiry."); *see also William C. Kirkwood*, 175 IBLA 292, 319 (2008) (stating that claims of inaction "are beyond this Board's authority"), overruled in part on other grounds, *Benson-Montin-Greer Drilling Corp.*, 178 IBLA 11, 17-18 (2009).

USA_000767

into Kraken's proposed CRA.[54] In this way, the Letter is similar to when an operator proposes, and BLM rejects, a unit or communitization agreement.[55] As in those situations, BLM's rejection constitutes an appealable decision. And although BLM is correct that the Letter preserves the "status quo" for the unleased minerals,[56] it does not follow that the Letter lacks legal consequences. BLM denial of any proposal, request, or application would preserve the status quo for the rejected party, and such decisions are routinely subject to our review.[57] Nor are we persuaded otherwise by the decisions that BLM cites in support of its request for dismissal,[58] all of which concern agency communications that are not analogous to the Letter.[59]

Because the Letter marks the consummation of BLM's decision-making process and has legal consequences for Kraken, it constitutes a final, appealable decision. We therefore deny BLM's motion to dismiss the appeal.

---

[54] *See* BLM Letter.

[55] *See, e.g., Benson-Montin-Greer Drilling Corp.*, 118 IBLA 8 (1991) (adjudicating appeal of a State Director decision affirming a District Office's denial of a proposed logical exploratory unit); *Kirkpatrick Oil and Gas Company*, 15 IBLA 216 (1974) (adjudicating appeal of an Acting Director decision affirming a Regional Office's denial of a proposed communitization agreement). The posture of *Benson-Montin-Greer Drilling Corp.* and *Kirkpatrick Oil and Gas Company* differs from the present appeal because those appeals involved denials of proposed agreements that were reviewed by a Director before coming to us. However, the appeals support the conclusion that such denials are "decisions" within the meaning of our regulations because the existence of a decision is also required for State Director Review, and we interpret the term "decision" in that context to have the same meaning as in our regulations and accompanying case law. *See Bruin E&P Operating, LLC*, 195 IBLA 101, 105 (2020).

[56] *See* Answer at 5 (asserting that BLM's Letter explained "that the parties should continue with the status quo, which is the payment of royalties pursuant to the CA").

[57] *See, e.g., Pete Mott d/b/a Trout Trickers*, 192 IBLA 313 (2018) (denial of an SRP); *Kirk Brown*, 151 IBLA 221 (1999) (denial of a right-of-way application); *Coors Energy Co.*, 110 IBLA 250 (1989) (denial of a request to exclude unleased Federal lands from a participating area under a unit agreement).

[58] *See* Answer at 5.

[59] *See Citizens Alliance for Responsible Urban Gas Drilling*, 179 IBLA 38 (2010) (letter providing status report and summarizing agency requests for additional information regarding an application for permit to drill); *Nevada Outdoor Recreation Association*, 158 IBLA 207 (2003) (recommendation from the United States Fish and Wildlife Service to BLM); *Blackwood & Nichols Co.*, 139 IBLA 227 (1997) (letter providing guidelines for computing royalties on coalbed methane gas); *Joe Trow*, 119 IBLA 388 (1991) (narration of management actions taken from 1975 until 1989 to establish management boundaries).

USA_000768

## B. BLM Erred by Improperly Limiting Its Discretion to Enter a CRA

We now turn to the merits of Kraken's appeal. The issue before us is whether BLM erred in concluding that its regulation at 43 C.F.R. § 3120.7-3 precludes BLM from entering into a CRA with Kraken. Because this is a legal question, we review it de novo, without deference to BLM's interpretation.[60]

BLM stated in its Letter that because the Federal minerals at issue "are open to leasing, a CRA is not the proper legal course of action."[61] This statement could reflect a policy decision by BLM that leasing is more appropriate than a CRA in this instance to protect the Federal interest. But that is not what the decision says. Instead, BLM states that a CRA is "not the proper legal course of action," which indicates—consistent with Kraken's interpretation[62]—that BLM considered itself obligated by the regulation to deny a CRA. BLM's legal conclusion is incorrect.

First, the plain language of the regulation does not support BLM's conclusion. The text of 43 C.F.R. § 3120.7-3, titled "Compensatory royalty agreements," reads as follows:

> The terms and conditions of compensatory royalty agreements involving acquired lands in which the United States owns a future or fractional interest shall be established on an individual case basis. Such agreements shall be required when leasing is not possible in situations where the interest of the United States in the oil and gas deposit includes both a present and a future fractional interest in the same tract containing a producing well.

The first sentence relates to the terms and conditions of a CRA, not when a CRA is appropriate. The second sentence, which is the basis of BLM's decision, states when a CRA is required—that is, when the Federal interest "includes both a present and a future fractional interest in the same tract containing a producing well." But the second sentence does not prohibit the use of CRAs in other situations. As Kraken notes, it "does not limit the use of compensatory royalty agreements to situations when leasing is 'not possible' or 'unavailable.'"[63] The regulation, therefore, does not prohibit BLM from entering into a CRA with Kraken.

The governing statute, like the regulation, does not preclude BLM from using a CRA to prevent drainage in other situations. In 30 U.S.C. § 226(j) (2018), Congress gave

---

[60] WildEarth Guardians, 198 IBLA 13, 21 (2022).

[61] BLM Letter.

[62] See SOR at 7 ("BLM incorrectly applied 43 C.F.R. § 3120.7-3 . . . ."); see also id. (noting that the conditions set forth in the second sentence of § 3120.7-3 do not exist "[b]ecause the United States only has a fractional interest in the Tract, and lacks a future interest in it").

[63] Id.

USA_000769

the Secretary of the Interior authority to negotiate CRAs "[w]henever it appears to the Secretary that lands owned by the United States are being drained of oil or gas by wells drilled on adjacent lands." BLM argues that this provision is not applicable because "there is a well located on the private surface tract that is penetrating federal minerals and drainage is addressed by virtue of the CA."[64] But BLM's decision to address drainage through a CA does not preclude the use of a CRA. And while there is no relevant adjacent surface tract, the private well is draining minerals from a Federal mineral estate that is, in practical effect, "adjacent" to the overlying leased surface estate and the leased private mineral estate. Although the statutory provision does not apply neatly to Kraken's situation, it is not clearly inapplicable, either.

Furthermore, contrary to BLM's argument that both its Competitive Leasing Handbook and its Oil and Gas Leasing Handbook indicate that a CRA is only used for lands that are not otherwise leasable,[65] these handbooks do not on their face compel BLM to reject a CRA with Kraken. In fact, the BLM Oil and Gas Leasing Handbook states that BLM has discretion to use a CRA when unleased lands are being drained: "Compensatory royalty agreements may be entered into in situations where unleased lands are being drained of oil or gas."[66] The Handbook continues: "Normally, such unleased lands are those which have been withdrawn from the mineral leasing laws or for which a lease has been offered by competitive bidding but inadequate bids or no bids were received."[67] "Normally" does not mean "only," and this guidance does not expressly limit compensatory royalty agreements to the two identified examples of unleased lands. While the Handbook does not specify that a CRA may be entered into when unleased Federal minerals underlying privately-owned lands are being drained, the Handbook broadly states that a CRA may be used to address drainage.

Similarly, BLM's Competitive Leasing Handbook states that "[a] compensatory royalty agreement (CRA) may be entered into for lands which are not otherwise leasable, i.e., lands withdrawn from the mineral leasing laws, or lands that are legally leasable but are not suitable for leasing, e.g., environmental concerns that prohibit leasing."[68] It then states that a "CRA also may be entered into" under the terms of 43 C.F.R. § 3120.7-3— "in lieu of leasing where the United States owns both a present and a future fractional interest in the same tract which contains a producing well."[69] This Handbook provides

---

[64] Answer at 7.

[65] See id. at 6-7.

[66] BLM Handbook H-3100-1, Oil and Gas Leasing at II-1 (Sept. 6, 1985), https://www.blm.gov/sites/blm.gov/files/uploads/Media_Library_BLM_Policy_H-3100-1.pdf (last visited Sept. 14, 2022).

[67] Id.

[68] BLM Handbook H-3120-1, Competitive Leases at 59 (Feb. 18, 2013), https://www.blm.gov/sites/blm.gov/files/uploads/Media_Library_BLM_Policy_h3120.pdf (last visited Sept. 14, 2022).

[69] Id.

USA_000770

two examples of situations in which BLM "may" enter into a CRA; it does not limit CRAs to lands that are not leasable, and it does not preclude BLM from entering into a CRA with Kraken.

On appeal, BLM argues that a CA is more "appropriate" in this circumstance than a CRA.[70] But that conclusion was not the stated basis for its decision. Although the Letter notes the existence of the CA, BLM did not identify the CA as a reason it will not enter into a CRA or otherwise explain that the existence of the CA was the basis for its rejection of Kraken's proposed CRA.[71] And, as Kraken points out, BLM's Communitization Manual contemplates the possibility of a CRA for small tracts of unleased lands subject to a CA.[72]

Because BLM's Letter is premised on an incorrect interpretation of BLM's authority, we set aside BLM's decision and remand for further consideration of Kraken's request in light of the discretion available to BLM. We offer no opinion on whether BLM must, or should, grant the CRA. We only hold that BLM denied the CRA on the incorrect legal conclusion that it lacked authority to do so.

## CONCLUSION

We hold that BLM's Letter is a decision that is subject to appeal to this Board. Furthermore, we conclude that the Letter is based on an inappropriately narrow interpretation of BLM's legal authority. Accordingly, we deny BLM's motion to dismiss, and we set aside the Letter and remand this matter to BLM.

**SILVIA IDZIOREK** Digitally signed by SILVIA IDZIOREK Date: 2022.09.14 15:53:41 -04'00'

I concur: **AMY SOSIN** Digitally signed by AMY SOSIN Date: 2022.09.14 16:39:51 -04'00'

Silvia Riechel Idziorek
Acting Deputy Chief Administrative Judge

Amy B. Sosin
Administrative Judge

---

[70] Answer at 7 ("[A]ny drainage concerns are covered by the CA which directs that the royalties that are due to the United States for its 50% mineral interests in the tract are to be deposited in an unleased lands account. . . . A communitization agreement is the appropriate mechanism here and it was reasonable for the BLM to determine that the CA provides adequate protection from drainage . . . .").

[71] BLM Letter.

[72] BLM Manual 3160-9, Communitization § .11H (July 7, 1988), https://www.blm.gov/sites/blm.gov/files/uploads/mediacenter_blmpolicymanual3160-9.pdf (last visited Sept. 14, 2022).

USA_000771