# EXHIBIT M

# United States Department of the Interior
# Bureau of Land Management
## Montana / Dakotas State Office
## 5001 Southgate Drive
## Billings MT 59101

**BLM**

## Decision Record

## Environmental Assessment

## DOI-BLM-MT-0000-2024-0001-EA

## August 2024 Oil and Gas Lease Parcel Sale

### Decision

It is my decision to select Alternative B, modified, for the August 2024 Oil and Gas Lease Parcel Sale. Under Alternative B, modified, the Bureau of Land Management (BLM) will offer 26 parcels for sale, with standard federal lease terms and conditions, and required stipulations and/or lease notices as identified in Appendix A and B of the Environmental Assessment (EA) DOI-BLM-MT-0000-2024-0001-EA. The 26 parcels encompass approximately 5,569.64 Federal mineral acres in Dunn, McKenzie, Mountrail, and Slope counties in North Dakota, and Big Horn, Blaine, Liberty, Richland, Rosebud and Roosevelt counties in Montana. The BLM intends to issue leases for parcels sold at the sale.

### Authorities

The authority for this decision is contained in 30 USC § 226, 43 C.F.R. 3100, and 43 C.F.R. 3120.

### Compliance and Monitoring

Should the parcels be sold, leases issued, and a proposal for development approved, monitoring may be required and will be addressed under future environmental documentation and decisions.

### Terms, Conditions, and Stipulations

Standard terms and conditions, as well as the mitigation measures identified in the lease notices and stipulations identified by parcel in Appendix A and B of the EA, would apply and be made part of any issued lease.



## Plan Conformance and Consistency

The 26 parcels, covering approximately 5,569.64 federal mineral acres, are located in areas designated as open to oil and gas leasing in the following land use plans (LUPs): The North Dakota Field Office Approved RMP/FEIS; HiLine FEIS and 2015 Rocky Mountain Region Record of Decision and the applicable Approved Resource Management Plans (ARMPs); the Miles City ARMP and FEIS of September 2015 and the 2023 Draft MCFO SEIS; the U.S. Forest Service (USFS) Dakota Prairie Grasslands Oil and Gas Leasing Record of Decision (ROD) (2003 and 2020) and associated FEIS; and the 2020 U.S. Army Corps of Engineers (USACE) Garrison Dam/Lake Sakakawea Project Oil and Gas Management Plan. The 26 parcels are subject to standard lease terms, moderate constraints such as stipulations that require timing limitations, or major constraints such as stipulations that prohibit surface occupancy and use. The BLM applied stipulations to the 26 lease parcels consistent with management decisions in the applicable RMPs and LUPs (EA Appendix A and B).

## Alternatives Considered

**No Action.** The No Action Alternative (Alternative A) would not make available 27 lease parcels for competitive auction. Surface management would remain the same and any ongoing oil and gas development would continue on surrounding federal, private, and state leases.

**Selected Action.** The Selected Action Alternative (Alternative B, modified) as set forth by implementation of policy contained in BLM Instruction Memorandums 2023-007 and 008 and described in the associated FONSI, would make 26 lease parcels covering approximately 5,569.64 federal mineral acres available for competitive oil and gas lease, with standard federal lease terms and conditions, and required stipulations and/or lease notices as identified in Appendix A and B of the EA. The BLM applied lease stipulations required by Title 43 C.F.R. §3101.1-3) to individual parcels to address specific resource concerns and ensure consistency with the applicable RMP or LUP.

The subject EA analyzes greenhouse gas emissions and the social cost thereof. BLM has not determined to lease individual parcels (or not) based on greenhouse gas emissions or their projected social costs, alone. For this sale, BLM will offer all parcels. MT-2024-08-6937, MT-2024-08-0360, MT-2024-08-0365, MT-2024-08-0366, MT-2024-08-0376, MT-2024-08-0381, MT-2024-08-0382, MT-2024-08-0401, MT-2024-08-0402, MT-2024-08-6941, MT-2024-08-6945, MT-2024-08-6946, MT-2024-08-6947, MT-2024-08-0270, MT-2024-08-0403, ND-2024-08-0163, ND-2024-08-0164, ND-2024-08-0165, ND-2024-08-0178, ND-2024-08-0179, ND-2024-08-0733, ND-2024-08-0735, ND-2024-08-6850, ND-2024-08-6870, ND-2024-08-6871, MT-2024-08-0367.

## Public Comments

On December 28, 2023, the BLM initiated a scoping comment period by uploading project information to the BLM's NEPA ePlanning register, issuing a press release, and mailing notices to interested parties (including private surface owners), tribes, and local, state, and federal agencies. The BLM received 26 written comments during the scoping period.

On February 26, 2024, the BLM posted the EA (DOI-BLM-MT-0000-2024-0001-EA) and a draft unsigned Finding of No Significant Impact (FONSI) to the ePlanning register for a 30-day public review and comment period. The BLM also issued a press release and emailed a notice to interested parties that the EA was available for review (i.e., people/non-government organizations that commented on scoping, tribes, and local, State, other Federal agencies).

During the 30-day public comment period, on the EA and unsigned FONSI, the BLM received 6 comment letters during the comment period: Two (2) Anonymous comments and four (4) others from the National Wildlife Federation, Friends of the Earth et. al, Wild Montana, and WELC et. al. Appendix K of the EA

2

provides a summary of the comments as well as the BLM's responses to those comments. The BLM reviewed and considered all the comments that were submitted and modified the EA in response to substantive public comments.

On May 21, 2024, the BLM posted an updated EA, response to comments, and unsigned FONSI to the e-Planning register that initiated a 30-day protest period. The BLM received four written protest submissions on the August lease sale from Western Energy Alliance, Friends of the Earth, Fredericks Law Firm on behalf of the MHA Nation, and Western Environmental Law Center. The protests included notification of tribal resolution and potential land jurisdiction transfer but did not include any significant changes from previous protests and included arguments against oil and gas leasing regulations and policies, climate change, application of IM 2023-007, and overall analysis. BLM responded to these parties and subsequently addressed the protests on August 5, 2024.

## **Rationale for the Decision**

My decision to approve Alternative B, modified is based on the following: 1) RMP and LUP conformance; 2) national policy and regulation; 3) agency statutory requirements; 4) relevant resource issues; 5) application of stipulations that are incorporated as design criteria to mitigate environmental impacts, and 6) public comment and protest.

1. **RMP and LUP Conformance.** My decision to make 26 parcels available for a competitive lease sale tier to, and is in conformance with, the analysis in the 1988 North Dakota RMP and ROD; the 2023 Draft North Dakota RMP and associated RFD; the HiLine FEIS; the 2015 Rocky Mountain Region Record of Decision; the Miles City ARMP and FEIS of September 2015 and the 2023 Draft MCFO SEIS; and the applicable Approved Resource Management Plans (ARMPs). For the parcels within the administrative boundary of the USDA Forest Service Dakota Prairie Grasslands, the lease sale tiers to the analysis in the 2002 Dakota Prairie Grasslands RMP, the 2003 Oil and Gas Leasing ROD, the 2020 Oil and Gas SEIS, and associated ROD. For the parcel within the administrative boundary of the U.S. Army Corps of Engineers Garrison Dam Lake Sakakawea Project, the EA tiers to information and analysis contained in the June 2020 USACE Oil and Gas Management Plan. All parcels are located in areas designated as open to oil and gas leasing and development subject to standard lease terms, moderate constraints such as stipulations that require timing limitations, or major constraints such as stipulations that prohibit surface occupancy and use. Stipulations were applied to all of the lease parcels in conformance with the requirements in the applicable RMP or LUP.

2. **National Policy and Regulations**. BLM Manual Section 3120 sets forth the policy and procedures required for competitive oil and gas leasing in accordance with the regulations in 43 CFR Subpart § 3120 (2022), and 43 CFR § 3101. It is the BLM's policy to provide for the orderly development of Federal onshore oil and gas resources by offering lands for oil and gas leasing by competitive bidding when eligible lands are available. It is also BLM's policy to exercise its discretionary authorities, including its oil and gas leasing authority, through the use of an informed, deliberative process that includes:

   - Communication with the public, tribal governments, and Federal, state, and local agencies;
   - Consideration of current science and other available data;
   - Consideration of important resources and values.

   BLM must also consider the effects of its onshore oil and gas lease sales on greenhouse gas emissions and climate change, and the Mineral Leasing Act provides the Secretary of the Interior with discretion to tailor those sales—including which parcels are offered for sale and the terms of leases— in light of climate effects. See, e.g., *Wilderness Soc'y v. Dept. of the Interior*, No. 22-cv-1871 (CRC),

USA_001396

2024 U.S. Dist. LEXIS 51011, at *91-92 (D.D.C. Mar. 22, 2024). For this sale, the Bureau of Land Management relied on its own specialist report and other data to compare the sale's emissions with national and global emissions, and further explained that it lacks the data and tools to estimate specific, climate-related effects from the sale. [See FONSI at page 5: Short and Long-Term Effects]. These methodological shortcomings prevent BLM from relying on the methodology described herein to qualitatively compare alternatives, and BLM has therefore not exercised its discretion to tailor this lease sale to account for global climate change.

As for greenhouse gas (GHG) emissions, the BLM acknowledges that all GHGs contribute incrementally to climate change. The BLM must consider the effects of its onshore oil and gas lease sales on GHG emissions and climate change, and the Mineral Leasing Act provides the Secretary of the Interior with discretion to tailor those sales—including which parcels are offered for sale and the terms of leases—in light of climate effects. See, e.g., Wilderness Soc'y v. Dept. of the Interior, No. 22-cv-1871 (CRC), 2024 U.S. Dist. LEXIS 51011, at *91-92 (D.D.C. Mar. 22, 2024). For this sale, the BLM relied on its own specialist report (the Annual GHG Report) and other data to compare the sale's potential emissions with national and global emissions, and to contextualize the GHG emissions by estimating the social cost of the GHGs produced by future development of the lease, displaying the GHG emissions in comparison to commonly understood emissions sources such as motor vehicles, analyzing the real-world effects of climate change based on current scientific literature, and considering the emissions against climate action goals. The BLM further explained that it lacks the data and tools to estimate specific, climate-related effects from the sale. See Section 3.3.2 of EA and Appendix F, as well as the 2022 Annual GHG Report. As of the publication of this FONSI, there are no established thresholds, qualitative or quantitative, for NEPA analysis to assess the greenhouse gas emissions or social cost of an action in terms of the action's effect on the climate, incrementally or otherwise. There are also no scientific data in the record, including scientific data submitted during the comment period for this lease sale, that would allow the BLM, in the absence of an agency carbon budget or similar standard, to evaluate the significance of the greenhouse gas emissions from this proposed lease sale. These methodological shortcomings prevent BLM from qualitatively comparing alternatives, and BLM has therefore not exercised its discretion to tailor this lease sale to account for global climate change.

On June 16, 2023, Onshore Orders (OOs) #1, #2, #6, and #6 were codified into the Code of Federal Regulations (CFRs) as follows: OO#1: 43 CFR § 3171, OO#2: 43 CFR § 3172, OO#6: 43 CFR § 3176. OO#7: 43 CFR § 3177. Any reference to the Onshore Orders after June 16, 2023, should be directed to the Code of Federal Regulations, as listed here.

3. **Statutory Requirements**: My decision to make 26 parcels available for lease is consistent with requirements under the Mineral Leasing Act to authorize leases of federally owned minerals for oil and gas development through a competitive bidding process; and multiple-use and sustained yield mandated by the Federal Land Policy and Management Act (FLPMA). This decision is also in compliance with the Federal Onshore Oil and Gas Leasing Reform Act of December 22, 1987, and the Mining and Mineral Policy Act, 30 USC § 21(a). All of the procedural requirements under NEPA have been satisfied in the EA and FONSI processes and publications.

4. **Relevant Resource Issues**: The EA analyzes the environmental effects to resources that are present in proposed lease parcels and/or resources that could be affected by oil and gas leasing. Consistent with 43 CFR § 3101.1-3, the BLM identified lease stipulations for proposed parcels based upon resource concerns that were identified during previous land use planning processes. Based upon the analysis presented in the EA, and as described in the FONSI, I have not identified any significant effects from making 26 parcels available for competitive lease that would require analysis in an Environmental Impact Statement (EIS), as defined in 40 CFR §1508.27. Additional site-specific environmental review would occur at the Application for Permit to Drill (APD) stage of development, at which time additional conditions of approval may be identified to address specific resource concerns.

4

USA_001397

5. **Stipulations**: Appendix D of the North Dakota RMP, Appendix G of the HiLine ARMP, the Miles City ARMP and FEIS of September 2015 and the 2023 Draft MCFO SEIS Garrison Dam/Lake Sakakawea Project Oil and Gas Management Plan, Appendix D of the Dakota Prairie Grasslands LRMP, and the 2020 Dakota Prairie Grasslands SEIS describe all of the stipulations applicable to the planning areas that would be applied to future leases within the planning area under the Approved Plan. BLM resource specialists (and USFS and USACE resource specialists, for parcels within the other administrative boundaries) reviewed and applied applicable stipulations to all the lease parcels consistent with these appendices, which are identified by parcel in Appendix A of the EA, and described in Appendix B. The BLM will incorporate stipulations as design criteria or applied as Conditions of Approval into any future decision that authorizes oil and gas development.

   A stipulation included in an oil and gas lease shall be subject to exception, modification, or waiver only if the stipulation allows them under certain conditions (refer to Appendix B of the EA), and additional site-specific analysis supports the exemption, modification, or waiver. For example, NSO 11-70 (streams, waterbodies, riparian, wetland, and floodplains) does not allow exceptions in streams, natural lakes, or wetlands. However, an exception may be granted for riparian areas, floodplains, and artificial ponds or reservoirs if the lessee/operator can demonstrate that there are no practicable alternatives to locating facilities in these areas, the proposed actions would maintain or enhance resource functions, and all reclamation goals and objectives would be met.

   Any requests for exceptions, modifications, and waivers to the attached stipulations would be processed in accordance with 43 CFR § 3101.1-4.

6. **Public Comment:** The public participation process that provided the opportunity for public comment through a 30-day scoping and EA 30-day comment period, and coordination with other state, federal, and tribal resource management agencies. The EA describes the effects of two alternatives, including no action. The BLM received public comments during the scoping and EA comment periods, as well as four (4) protests that alleged BLM failed to consider an important resource issues and failed to follow oil and gas leasing regulations and policies, that the decision to make 26 parcels available for competitive lease does not comply with NEPA, FLPMA or other federal laws, or general disagreement with the lease sale. BLM reviewed scoping comments to identify issues for analysis. BLM reviewed public comments to help inform the effects analysis and provided a detailed response to comments that were submitted during the 30-day comment period on the EA (Appendix K) and provided additional review and response dismissing protests that were made on the lease sale.

# Administrative Review and Appeals

This Decision may be appealed to the Interior Board of Land Appeals, Office of the Secretary, in accordance with the regulations set forth in 43 CFR § 4, summarized in Form 1842-1, Information on Taking Appeals to the Interior Board of Land Appeals. If an appeal is taken, a Notice of Appeal must be filed in writing with the BLM Montana State Office, no later than 30 days from receipt or issuance of this Decision Record. A copy of the Notice of Appeal and any statement of reasons, written arguments, or briefs must also be served to the Office of the Solicitor at the address shown on Form 1842-1. It is also requested that a copy of any statement of reasons, written arguments, or briefs be sent to the BLM Montana State Office. The appellant has the burden of showing that the Decision being appealed is in error.

If you wish to file a petition for a stay of this Decision, pursuant to 43 CFR § 4.21, the petition must accompany your Notice of Appeal. Except as otherwise provided by law or other pertinent regulation, a petition for a stay of a Decision pending appeal shall show sufficient justification based on:

5

1)      the relative harm to the parties if the stay is granted or denied;

2)      the likelihood of the appellant's success on the merits;

3)      the likelihood of immediate and irreparable harm if the stay is not granted; and

4)      whether or not the public interest favors granting the stay.

Copies of the Notice of Appeal and petition for a stay must also be submitted to each party named in the Decision and to the Interior Board of Land Appeals and the appropriate Office of the Solicitor (see 43 CFR § 4.413) at the same time the original documents are filed with the BLM Montana State Office. If you request a stay, you have the burden of proof to demonstrate that a stay should be granted.

Approved by:

SONYA GERMANN
Digitally signed by SONYA GERMANN
Date: 2024.08.05 15:24:02 -06'00'

_____          _____

Sonya I. Germann                                         Date
State Director
Montana Dakotas State Office

6