# EXHIBIT 1

Form 1221-2
(June 1969)



**UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF LAND MANAGEMENT**

MANUAL TRANSMITTAL SHEET

| Release |
|---|
| 3-215 |
| Date |
| 7/7/88 |

Subject

### 3160-9 - COMMUNITIZATION

1.  <u>Explanation of Material Transmitted</u>:  This release updates R28-CDM 645.3 (formerly USGS Conservation Division Manual 645.3, maintained in the BLM directives system via Instruction Memorandum #85-681) and converts it to the BLM Manual System for the Oil and Gas Operations Program.

2.  <u>Reports Required</u>:  None.

3.  <u>Material Superseded</u>:  None.

4.  <u>Filing Instructions</u>:  File as directed below.

<u>REMOVE</u>:                 <u>INSERT</u>:

None                        All of 3160-9

                            (Total:  24 Sheets)

Assistant Director,
Energy and Mineral Resources

Exhibit 1

USA_000064

3160-9 - COMMUNITIZATION


Table of Contents

.01  Purpose
.02  Objectives
.03  Authority
.04  Responsibility
.05  References
.06  Policy

.1  Communitization Involving Federal Lands
    .11  Guidelines
        A.  Justification for Communitization
        B.  Nonjustification for Communitization
        C.  Model Communitization Agreement Forms and Instructions
        D.  Approval and Effective Dates of Communitization Agreements
        E.  Preliminary Approval of Communitization Agreements
        F.  Effects of State Orders
        G.  Authority to Approve Communitization Agreements
        H.  Communitization of Unleased Tracts
        I.  Report of Production from Communitized Areas
        J.  Bond Requirements
        K.  Compensatory Royalty
        L.  Communitization Agreements Involving Step- or Sliding-Scale Leases
        M.  Communitizing Multiple Formations
        N.  Communitization Involving Unitized and Nonunitized Lands
        O.  Numbering of Communitization Agreements
        P.  Termination of Communitization Agreements
        Q.  Supervision of Operations
        R.  Payment for Oil and Gas Lost
        S.  Other Items Related to Communitization Agreements
    .12  Procedures
        A.  Reviewing State Orders
        B.  Noting Action Affecting Communitization
        C.  Monitoring Drilling
        D.  Preparing a First Production/Discovery Report
        E.  Notifying Lessees of Necessary Communitization
        F.  Notifying MMS of the Necessity to Assess Compensatory Royalty
        G.  Preliminary Approval
        H.  Monitoring Status
        I.  Final Approval
        J.  Distributing Copies of the Agreement
        K.  Further Coordination with MMS
        L.  Production Decline or Nonproduction
        M.  Notification of Termination

Rel. 3-215
BLM MANUAL                                                          7/7/88

Exhibit 1

USA_000065

TC-2

3160-9 - COMMUNITIZATION

.2  Communitization Involving Indian Lands
    .21  Guidelines
        A.  Model Communitization Agreements Forms and Instructions
        B.  Effects of State Orders
        C.  Communitizing Multiple Formations
        D.  Termination of Communitization Agreements
    .22  Procedures
        A.  Reviewing State Orders
        B.  Noting Action Affecting Communitization
        C.  Monitoring Drilling
        D.  Preparing a First Production/Discovery Report
        E.  Notifying Lessees of Necessary Communitization
        F.  Review Procedures
        G.  Approval
        H.  Notifying the Operator
        I.  Distributing Copies of the Agreement
        J.  Further Coordination with MMS
        K.  Production Decline or Nonproduction
        L.  Notification of Termination

Illustrations
1.  Format of a Letter Informing a Lessee of a Federal Communitization
2.  Format of a Letter Informing a Lessee of an Indian Communitization

Appendices
1.  Summary Information, Instructions, and Model Form of a Federal
    Communitization Agreement
2.  Model Form for Designation of Successor Operator
3.  Uintah and Ouray Agency Office Standard Communitization Agreement

Bibliography

Rel. 3-215
7/7/88

**BLM MANUAL**

Exhibit 1

USA_000066

.01

3160-9 - COMMUNITIZATION

.01 <u>Purpose</u>.  This Manual Section provides guidelines and procedures for submitting, reviewing, and approving communitization agreements involving Federal (except the National Petroleum Reserve in Alaska) and Indian lands.

.02 <u>Objectives</u>.  Communitization allows for the development of a separate lease or a portion thereof that cannot be independently developed and operated in conformity with an established well-spacing or well-development program.

03 <u>Authority</u>.

   A.  43 CFR 3105.2, Communitization or drilling agreements

   B.  43 CFR 3107.4, Extension by elimination.

   C.  25 CFR 213.31, Restrictions on operations.

   D.  25 CFR Parts 211 and 212

   E.  25 CFR 227.21, Restrictions on operations.

04 <u>Responsibility</u>.

   A.  <u>State Director</u>.  The State Director is responsible for the following actions regarding communitization agreements:

      1.  Monitoring all drilling well starts and completions and advising lessees under BLM supervision and the appropriate Superintendent of the Bureau of Indian Affairs (BIA) as appropriate, and the operator of a well if on State or fee land, when communitization is necessary.

      2.  Ensuring that appropriate follow-up action is taken on any requests for communitization or changes in the status of communitized areas.

      3.  Reviewing applications, including preliminary applications if submitted, for approval to communitize.

      4.  Approving communitization agreements involving Federal lands.  For those agreements involving Indian lands, recommendations are made promptly to BIA for approval or disapproval.  For those agreements involving both Federal (leased or unleased) and Indian lands, joint approval by BLM and BIA is required.

Exhibit 1

USA_000067

3160-9 - COMMUNITIZATION

5. Ensuring that copies of all communitization agreements and action documents are furnished to the Minerals Management Service (MMS) and other appropriate BLM offices.

6. Advising MMS, the operator (for BLM approved agreements), and appropriate BLM offices of the date a communitization agreement terminates.

B. <u>District Manager</u>. If delegated, the District Manager will be responsible for any or all the responsibilities of the State Director described above.

.05 <u>References</u>.

A. 43 CFR 3100.2-1, Compensation for drainage.

B. BLM Manual Sections.

1. 3100  Oil and Gas Leasing.

2. 3104, Bonds.

3. 3107, Continuation, Extension, or Renewal.

4  3109, Leasing Under Special Acts

5. 3160-2, Drainage Protection

6. 3160-3, First Production/Discovery Reports.

C. Former USGS Conservation Division Manual Chapters.

1. R65-CDM 644.4, Measurement of Crude Oil.

2. R66-CDM 644.4A, Measurement of Natural Gas.

D. NTL-4A, Royalty or Compensation for Oil and Gas Lost.

Exhibit 1

USA_000068

.06

3160-9 - COMMUNITIZATION

.06  Policy.

    A.  Communitization agreements may be approved when a lease or a portion thereof cannot be independently developed and operated in conformity with an established well spacing or well development program.

    B.  The Bureau usually will not approve, or recommend approval of, in the case of Indian lands, agreements communitizing more than 640 acres for oil or gas production irrespective of well location and Federal or Indian acreage within the drilling and spacing unit.  Nor will the Bureau approve, or recommend approval of, in the case of Indian lands, agreements when the proposed area is not contiguous.

    C.  The Bureau will not approve, or recommend approval of, in the case of Indian lands, a communitization agreement with any uncommitted working interest for the lease containing the well.

    D.  The Bureau usually will require operators of Federal and Indian leases to adhere to the well spacing and well location requirements established by the appropriate State regulatory bodies, while reserving the right to impose different requirements in those instances where adherence to a State's requirement is considered not to be in the public interest or in the interest of the Indian lessors.

Rel. 3-215
7/7/88

Exhibit 1

USA_000069

1

3160-9 - COMMUNITIZATION

.1  Communitization Involving Federal Lands.  The following guidelines and procedures apply to communitization of Federal leases or a Federal lease communitized with State or fee leases.

.11  Guidelines.

A.  Justification for Communitization.  Communitization is authorized when a Federal lease cannot be independently developed in conformity with an established spacing pattern.  The following circumstances will constitute sufficient justification for communitization.

1.  Conforming to an Acceptable State Spacing Pattern.  Communitization is required in order to form a drilling unit that conforms to an acceptable nonoptional spacing pattern established by State order.  As a general guideline, communitization will not be authorized when a single Federal lease or unleased Federal acreage can be fully developed and still conform to an optional (North-South or East-West spacing) pattern established by State order.  If the Federal tract cannot be independently developed and there are a number of spacing options, the authorized officer should require the one that is in the best interest of the Federal Government, i.e., the one that provides the largest Federal participation.

2.  Providing More Efficient Reservoir Management.  Adequate engineering and/or geological data is presented to indicate that communitizing two or more leases or unleased Federal acreage will result in more efficient reservoir management of an area.  For example, justification for approval of communitization exists when sufficient control is available to generally define productive reservoir limits and communitization is necessary to confine a spacing unit within the defined reservoir limits.

3.  Spacing Comprising Both Unit and Nonunit Lands.  Communitization is required when the logical spacing for a well includes both unit and nonunit land, i.e., is located outside the unit boundary or is not committed to the unit agreement.

4.  Conforming to Development Pattern.  Where, in the absence of State field or area spacing or statewide rules, the area has been developed by the actual drilling of at least three wells on a fixed pattern in reasonable proximity, with the closest well not more than 2 miles away from the proposed well location, a written statement of intentions to develop the leases in the area on this pattern should usually be required from the operator.

BLM MANUAL

Rel. 3-215
7/7/88

Exhibit 1

USA_000070

.11A5

3160-9 - COMMUNITIZATION

5. Other Justification. In wildcat areas, the authorized officer can approve the communitization of more than one lease or unleased Federal acreage on such reasonable basis as deemed appropriate in order to conform with general statewide spacing for oil or gas or the spacing in a nearby pool or field that appears to be applicable; provided, however, that the Federal lease or unleased Federal acreage proposed for inclusion cannot be independently developed. However, it is normally preferable to wait until a well has been successfully completed in order to review the well data and consider the appropriate spacing for the reservoir prior to approval of communitization.

B. Nonjustification for Communitization. Communitization is not to be construed as:

1. Justification for allowing two or more lessees, working interest owners, or operators to share drilling costs and revenues. This can be accomplished by contractual agreement between interested parties without sacrificing a portion of Federal royalties or splitting royalties among various leases.

2. A method for promoting future development drilling on the premise that additional drilling or development may result from the approval of communitization.

3. A method designed primarily to extend one or more Federal leases by the drilling of a single well.

4. Required in a unit where all lands within the spacing unit are effectively committed to the unit agreement, unless the dedicated well is noncommercial for unit purposes.

C. Model Communitization Agreement Forms and Instructions. Appendix 1 provides the model communitization agreement form and applicable instructions. (The model communitization agreement includes a provision for selecting a successor operator, which is accomplished by execution of a form for designation of successor operator, as shown in Appendix 2.) As a general guideline, the applicants should be encouraged to use the model form whenever possible. If deviations from the form are justified, the revised or changed form shall:

1. Describe the separate tracts comprising the drilling or spacing unit.

2. Show the tract allocation, based on surface acreage, of communitized substances to the communitized tracts.

BLM MANUAL

Rel. 3-215
7/7/88

Exhibit 1

11C3

3160-9 - COMMUNITIZATION

3. Specify the formation(s) communitized and define the communitized substances (e.g., natural gas and associated liquid hydrocarbons).

4. Show the name of the operator

5. Contain adequate provisions for the protection of the interests of all parties, including the United States.

6. Be signed by or on behalf of all necessary parties.

7. Be effective from the date of the agreement or from the onset of production (i.e., the date on which the well begins production on which royalty is due), whichever is earlier.

D. <u>Approval and Effective Dates of Communitization Agreements</u>. The agreement shall be signed by or on behalf of all necessary parties and shall be effective only if approved by the authorized officer. Approval of the agreement by the authorized officer will commit the Federal lands. Approved communitization agreements are considered effective from the date of the agreement or from the date of the onset of production from the communitized parcels, whichever is earlier. An exception to this rule would be when the spacing unit is force pooled by State order after the date of first sales. In this instance, the effective date of the communitization agreement may be the effective date of the order. Execution by or on behalf of all necessary parties to a communitization agreement covering a Federal lease shall precede the expiration of that lease in order to confer the benefits of the agreement upon it. Generally, a lessee should file a communitization agreement for approval by the authorized officer as soon as the agreement has been signed by or on behalf of all necessary parties. The information submitted by the operator concerning ownership of operating rights in leases shall be accepted and the Bureau's determination of the commitment status of the various tracts shall be based solely on this information. No independent review of Bureau lease files shall be made in this regard. However, the procedures used to verify <u>record title</u> interest will remain in effect. An agreement filed with the authorized officer for approval after the subject Federal lease was due to expire may be approved only if it is filed before the Bureau has given notice to the public that the subject lands are available for lease. No communitization agreement shall be approved with respect to lands that have been subsequently leased to a different lessee.

E. <u>Preliminary Approval of Communitization Agreements</u>. Requests for preliminary approval to communitize may be filed at any time with the authorized officer. Such procedure is recommended when the model form of agreement is not to be followed or if there is any doubt as to whether the proposed tracts are logically subject to the communitization. Preliminary approval as to form of agreement and the lands proposed for communitization may be made; however, a preliminary conference in lieu of submitting such an application may be more appropriate.

BLM MANUAL

Rel. 3-215
7/7/88

Exhibit 1

USA_000072

.11F

3160-9 - COMMUNITIZATION

F. <u>Effects of State Orders</u>. Generally, the operator should be required to submit a communitization agreement signed by all necessary parties for the authorized officer's approval, even if the area has been force-pooled by State order. Non-Federal royalty interest owners must either sign the agreement, be force-pooled by a State order, or be signers of a lease that already contains a force-pooling provision. However, a communitization agreement signed by the operator and complete in all respects, except for signatures of all working interest and royalty owners, may be accepted and approved by the authorized officer when a State order force-pooling such interests in the lands in question is also submitted. Should the authorized officer determine that an existing or proposed State spacing or pooling order is not in the public interest, the State Commission should be notified, and if the order is not modified satisfactorily, the authorized officer will furnish the State Director with a complete report. If the State Director concurs with the recommendation of the authorized officer, but the problem cannot be resolved with the State Commission to the BLM's satisfaction, the State Commission and all interested parties must be advised that no Federal lands will be made subject to the order. Similar action must be taken when evidence shows that an existing order is no longer appropriate.

G. <u>Authority to Approve Communitization Agreements</u>. The authority to approve a communitization agreement (CA) involving jurisdictional lands is vested in the authorized officer. The well location and dedication plat attached to an application for permit to drill (APD) should indicate the acreage that the operator proposes to dedicate to that well. Where the acreage proposed to be dedicated to the well is embraced by two or more tracts of diverse ownership, experience has shown that some operators interpret the approval of the APD as a commitment by the Bureau to approve a communitization agreement for that acreage. Guidelines in this regard are as follows.

1. <u>Required State Spacing</u>. When the applicable State spacing order explicitly defines the areal extent and orientation of spacing units, i.e., no optional directions for spacing are authorized, and the acreage proposed for dedication conforms therewith for a well drilled at the proposed location, the authorized officer, in approving the APD, should advise the operator that a CA will be required for the acreage shown on the well location and dedication plat if the well is productive.

2. <u>Optional State Spacing</u>. When the applicable State spacing order provides for optional spacing units (e.g., for 320-acre spacing, the N1/2, or S1/2, or E1/2 or W1/2 of a section), <u>and</u>

a. The acreage proposed to be dedicated conforms therewith and the drillsite lease cannot be independently developed by selecting another of the optional spacing units, the authorized officer, in approving the APD, should notify the operator that a CA will be required for the dedicated acreage if the well is productive; <u>or</u>

**BLM MANUAL**

Rel. 3-215
7/7/88

Exhibit 1

USA_000073

11G2b

3160-9 - COMMUNITIZATION

b. The acreage proposed to be dedicated conforms therewith but the drillsite lease could be independently developed by dedicating another of the optional spacing units, the authorized officer, in approving the APD, should notify the operator of the Bureau's objection to the proposed dedicated acreage and advise as to the acreage dedication that will be required.

3. <u>Absence of State Spacing</u>. When no applicable State spacing exists, the authorized officer, in approving the APD, should notify the operator that once the target formation in the area has been spaced, the appropriate acreage to be dedicated to the well will be determined and that a CA may be required at that time if the well is productive.

H. <u>Communitization of Unleased Tracts</u>. Generally, communitization agreements for areas that contain unleased Federal lands may be approved if (1) There is at least one leased tract (Federal, State, Indian, or fee) containing a producible well within the area to be communitized; and (2) there will be a long delay (over 6 months) in leasing the Federal land.

1. <u>Establishment of Escrow Account</u>. The second paragraph of section 5 of the model form of agreement requires the operator to establish an escrow account for any unleased tract in the communitized area. At the time of leasing, a disclosure of the dollar amount in escrow shall be submitted to the authorized officer. The amount in escrow is to be included, for information purposes, in the notice of sale.

2. <u>Competitive Leasing of the Federal Tracts</u>. The unleased Federal lands should be offered for competitive leasing as soon as possible. The lease sale notice for such Federal land will be subject to a stipulation that the successful bidder must negotiate a subsequent joinder to the communitization agreement so that proceeds may be distributed.

3. <u>Compensatory Agreement</u>. A compensatory agreement for small tracts of unleased lands may also be negotiated pursuant to 43 CFR 3100.2-1 (see also Manual Sections 3100 and 3160-2) in lieu of leasing such tracts.

I. <u>Report of Production from Communitized Areas</u>. The operator will submit a separate Lessee's Monthly Report of Operations (Forms 3160-6 and 3160-7) for the communitized area.

J. <u>Bond Requirements</u>. A bond for a Federal lease will be required only if operations are actually being conducted on that lease. See Manual Section 3104 for details.

Exhibit 1

USA_000074

.11K

3160-9 - COMMUNITIZATION

K.  Compensatory Royalty.  When communitization is the logical method of protecting against drainage, the Federal lessees holding interest in the leases being drained will be notified accordingly.  If an application for approval to communitize or other acceptable plan to protect against drainage is not submitted within 60 days from the date of notification, it will be handled as a drainage case in accordance with Manual Section 3160-2.  When compensatory royalty is assessed against a lease that could logically be communitized, the monthly assessment will equal the value of products (based on surface acreage rather than reservoir parameters) that would have been received if the lease was actually communitized.  If retroactive communitization occurs at a later date, compensatory royalty payments will be reapplied as royalty to the date of first production.

L.  Communitization Agreements Involving Step- or Sliding-Scale Leases.  Section 6 of the model form of a communitization agreement should contain the following statements, as appropriate, when step- or sliding-scale leases are involved:

1.  Step-Scale Leases.  It is stipulated and agreed that the rate of royalty applicable to oil or gas under lease _____ shall be determined separately as to production from each communitization agreement to which this lease is committed and determined separately as to any noncommunitized lease production.

2.  Sliding-Scale Leases.  It is stipulated and agreed that the rate or rates of royalty applicable to oil under lease _____ shall be determined separately as to production from each communitization agreement to which this lease is committed and determined separately as to any noncommunitized lease production; however, the rate of royalty applicable to gas production shall be determined on the basis of the combined communitized and noncommunitized production.

3.  Modification of the Model Form.  The following language may be used, in lieu of the above, as a second paragraph of section 6 of the model form, as appropriate:

a.  The royalty rate for oil and condensate on leases subject to a step- or sliding-scale royalty rate shall be determined separately for the production from the communitized well(s) and for the production from noncommunitized wells.

b.  For a step-scale lease, the royalty rate for gas shall be determined separately as to production from each communitization agreement to which the lease is committed and separately for any noncommunitized lease production.  For a sliding-scale lease, the rate or royalty applicable to gas production shall be determined by the sum of all communitized production allocated to the lease and any noncommunitized production.

BLM MANUAL

Rel. 3-215
7/7/88

Exhibit 1

USA_000075

M.  Communitizing Multiple Formations.  Generally, a communitization agreement should communitize only one specific formation or zone, which must be designated by name and/or depth interval.  However, multiple zones or formations may be covered by a single agreement where it is desirable to do so, provided that the spacing pattern and ownership are the same.  Communitization agreements of this nature should provide in Section 10 of the model form that the agreement ". . .shall remain in force and effect as to the _____ and _____ formations . . ."  In addition, the following sentence should be added to the end of section 1:  "This agreement shall apply separately to the _____ and _____ formations in the same manner as though a separate agreement for each formation had been entered into."  Agreements proposing communitization for an indefinite number of formations should not be approved.

N.  Communitization Involving Unitized and Nonunitized Lands.  Since a communitization agreement involving unitized lands will modify the terms of the unit agreement, all basic royalty and working interest owners in the unit must sign the communitization agreement, unless the unit operator's execution of the communitization agreement is specifically conditioned to state that the unit operator is executing on behalf of all such parties.

O.  Numbering of Communitization Agreements.  The agreement number is to be assigned on receipt of the application.  The number is assigned in the same manner as any other BLM case, using the standard Case Recordation System (CRS) numbering format.  This format requires two alphabetic characters in the first two positions, representing the geographic State; one or two alphabetic characters in the second two positions, representing the adminis- trative State Office; and up to six numeric characters in the next six positions, representing the body number.  Note that for agreements established prior to January 1, 1988, other numbering systems have been employed.  Although a CRS number will be assigned to these older cases for automated data entry, their official number will remain the number originally assigned.

P.  Termination of Communitization Agreements.  The model form of communitization agreement provides that the agreement shall remain in effect for a period of 2 years and as long thereafter as communitized substances can be produced in paying quantities.  Any lease eliminated from any communitization agreement and any lease in effect at the termination of such agreement, unless relinquished, shall continue in effect for the original term of the lease or for 2 years after its elimination from the agreement or after the termination of the agreement, whichever is longer, and for as long thereafter as oil or gas is produced in paying quantities.  However, no lease should be considered for the 2-year extension if the operator fails to drill a well.  On the other hand, if the well is drilled to a potential oil or gas formation but fails to reach the communitized formation, then lease extension could be recommended for the lease where the well is actually located, but not for other communitized leases.  Additional information on lease extensions and terminations is contained in Manual 3107 and Handbook H-3107-1.  There are two circumstances under which agreements may be terminated.

Exhibit 1

USA_000076

.11P1

### 3160-9 - COMMUNITIZATION

1.  **Cessation of Production.**  A communitization agreement in its extended term due to production will terminate, effective the date of last production, if such paying production ceases, unless drilling (to the communitized formation) or workover operations commence within 60 days from cessation of production and are successful in restoring production.

2.  **Mutual Consent of Authorized Officer and Committed Parties.**  The agreement may also be terminated by mutual consent of the authorized officer and the committed parties at any time prior to the production of communitized substances.

Q.  **Supervision of Operations.**  All drilling and completion, certain reworking, and all abandonment operations on BLM supervised leases in approved communitization agreements must be approved in advance by the authorized officer.  Such operations on non-BLM supervised lands need no BLM approval and should be accepted for the record only.  However, the authorized officer should be furnished prior notice and subsequent reports of such operations, along with all necessary data within 30 days of the completion of each said operation.  These reports are accepted for the record only. Facilities for handling or measurement of communitized production may require approval and periodical inspection by the authorized officer, regardless of the ownership of the land on which they are located.  All measurement facilities must conform with the requirements outlined in R65-CDM 644.4 and R66-CDM 644.4A.

R.  **Payment for Oil and Gas Lost.**  NTL-4A, Royalty or Compensation for Oil and Gas Lost, provides guidelines and procedures for the requirement that royalty or other compensation be collected on the value of all gas produced from, or for the benefit of, Federal oil and gas leases.  A well drilled on State or fee land does not require the prior approval of the authorized officer.  However, if such land is later communitized with Federal land, the authorized officer's approval of the communitization agreement will also be considered as approval of the flaring for royalty purposes, provided that such flaring would have been approved had the BLM had jurisdiction at the time drilling commenced.

Exhibit 1

USA_000077

11S

3160-9 - COMMUNITIZATION

S.  Other Items Related to Communitization Agreements

1.  Effect of Lease Expirations.  A communitization agreement can survive lease expirations as long as two or more leases remain in full force and effect.  However, in instances involving a single effective lease and unleased Federal acreage, the communitization agreement should be allowed to remain in full force and effect in order to protect the public interest.

2.  Future Interest and Protective Leases.  There is no authority to communitize a future interest lease in advance of the effective date of the lease.  However, there is no bar to communitization of protective leases (leases issued for lands not generally available for leasing, such as national parks and monuments, in order to protect the United States from drainage by wells on adjacent non-Federal lands), but a copy of the agreement should be supplied to the agency having jurisdiction over the surface.

3.  Federal Farm Mortgage Corporation Leases.  While leases issued by the Federal Farm Mortgage Corporation on a commercial form are subject to State spacing orders, they may, nevertheless, be communitized at the lessee's request.  The model form of communitization agreement is appropriate and requires no change in the agreement or certificate.  If other lessees have signed a different form of agreement or if a declaration of pooling pursuant to lease pooling clauses has been filed, such instruments should be attached to the Federal form as a collateral document.

4.  Right-of-way Leases.  Right-of-way leases have fixed terms that are not extended by production, drilling, or workovers.  This should be considered when reviewing the agreement.  See Manual 3109.

5.  Optional State Spacing Pattern.  If optional State spacing (e.g., East-West or North-South) depends on the location of the well, the authorized officer may question the proposed location of the well or may request the Federal operator to apply for an exception so that communitization would not be necessary.  If the operator presents an adequate case for exception but is denied State approval, the authorized officer may approve communitization based on the State spacing for the desired well location.

Rel. 3-215
7/7/88

Exhibit 1

USA_000078

.11S6

## 3160-9 - COMMUNITIZATION

6. _Decrease in Spacing Unit._ If spacing is changed, e.g., from 160 acres to 80 acres, a second well may be approved for an existing communitization agreement. If the operator does not want to drill a second well in the communitized area, the authorized officer may choose one of the following options after considering the effects each will have on the Federal interests involved: (a) Terminate the agreement by mutual consent and recommunitize on the basis of the smaller spacing unit; (b) require the drilling of an additional well if a paying well can be completed; or (c) assess compensatory royalty to protect the public interest, unless the lessee can demonstrate to the satisfaction of the authorized officer that there has never been a time between the effective date of the decrease in the size of the spacing unit and the present during which it would have been possible to drill an economic, protective well, regardless of whether an economic well now can be drilled.

7. _Unleased Federal Acreage in Spacing Unit._ Where a well is completed on State or fee land and unleased Federal land is contained within the spacing unit, the establishment of an escrow account as required in section 5 of the model form of agreement should protect the Government's interest. However, should these actions prove ineffectual, the case should be sent to the State Director for referral to the Regional Solicitor so that measures can be promptly initiated to prevent the taking of Federal production without due process.

8. _Spacing Unit Containing Both Federal and Indian Lands._ For those agreements involving both Federal and Indian lands, joint approval by BLM and BIA is required. Unless the authorized officer has a different arrangement with the Superintendent, the agreement should be filed directly with the Superintendent.

BLM MANUAL

Rel. 3-215
7/7/88

## Exhibit 1

USA_000079

3160-9 - COMMUNITIZATION

.12  Procedures.  The following steps are general procedures involved in administering actions related to Federal communitization agreements.

A.  Reviewing State Orders.  Ensure that all State orders, rulings, or approvals affecting supervised lands are obtained and reviewed.

B.  Noting Action Affecting Communitization.  Appropriately note APD's, sundry notices, and reports when such actions affect and/or necessitate communitization.

C.  Monitoring Drilling.  Monitor all drilling well starts and completions.

D.  Preparing a First Production/Discovery Report.  Prepare a first production/discovery report and appropriately note when communitization is required.  (A first production/discovery report may also be required for wells completed in a noncommunitized formation within a communitized area.)  In addition to the customary information supplied under "Remarks" in a first production/discovery report, show the date that a communitization request was made (see Manual 3160-3, First Production/Discovery Reports).

E.  Notifying Lessees of Necessary Communitization.  Advise the Federal lessee(s) of the requirement for a communitization agreement, usually no later than when a producible well is completed in a spacing unit that consists of a Federal lease and at least one (Federal, State, fee, or Indian) tract, or an unleased Federal tract and at least one (Federal, State, fee, or Indian) lease.  Illustration 1 or an adaptation of it may be used to notify the lessee of the need for communitization.

F.  Notifying MMS of the Necessity to Assess Compensatory Royalty.  Notify MMS to assess compensatory royalty when any lessee(s) or operator fails to respond to demands for the submission of a communitization agreement for approval.  The effective date that compensatory royalty is to be assessed and the basis for assessment must be detailed to the MMS.  See Manual 3160-2.

G.  Preliminary Approval.  Review internal geological reports and preliminary applications for approval to communitize when submitted and advise either approval or disapproval.  (When preliminary applications are disapproved, the applicant must be advised as to why the application was disapproved.)

BLM MANUAL

Rel. 3-215
7/7/88

Exhibit 1

USA_000080

.12H

3160-9 - COMMUNITIZATION

H.  Monitoring Status.  Ensure that appropriate follow-up action is taken on any requests for communitization or changes in the status of communitized areas.

I.  Final Approval.  Approve or disapprove, as appropriate, all final requests for approval to communitize.  Advise of the 5-day production reporting requirement in the approval letter.

J.  Distributing Copies of the Agreement.  Ensure that copies of all communitization agreements and action documents are furnished to the State Office, MMS, and any other affected agencies.  The staff responsible for processing right-of-way applications shall be notified so that proper action can be taken.

K.  Further Coordination with MMS.  Determination and notification of first and last production shall be in accordance with the current BLM/MMS Memorandum of Understanding.

L.  Production Decline or Nonproduction.  Promptly notify the State Office, and MMS where appropriate, when paying production has ceased or when drilling to the communitized formation or workover operations did not result in paying production.

M.  Notification of Termination.  When a communitization agreement terminates, advise the State Office, MMS, the operator, and any other affected agencies of the date of the termination.  The staff responsible for processing right-of-way applications shall be notified so that proper action can be taken.

Rel. 3-215
7/7/88

**BLM MANUAL**

Exhibit 1

USA_000081

.2

3160-9 - COMMUNITIZATION

.2 <u>Communitization Involving Indian Lands</u>.  The following guidelines and procedures apply to communitization of Indian leases or an Indian lease communitized with non-Indian leases.  For communitization involving Indian leases, the BIA Superintendents and/or Area Directors are authorized to execute the agreements.

.21 <u>Guidelines</u>.  A provision of the 1938 Indian Mineral Leasing Act requires approval of a tribe prior to communitization or unitization.  This approval can be granted through a "pooling clause" contained within a lease. Not all Indian leases contain pooling clauses.  For those that do not, proponents of communitization are required to provide evidence showing tribal approval prior to BIA approval of communitization.  Provision of the Act of March 3, 1909, does not require prior approval of allotted land lease owners, but such a requirement is contained within 25 CFR.  Paragraphs .11A, .11I, .11K, .11N, .11O, .11Q, .11R, and .11S5, 6, and 8 of this Manual apply to Indian agreements; however, the Indian interest rather than the Federal interest is considered.  Those agreements that are special for Indian lands are as follows:

A.  <u>Communitization Agreement Forms and Instructions</u>.  The BIA does not currently utilize a standard model form of communitization agreement. However, the Uintah and Ouray Agency form, Appendix 3, is adaptable to other regions, because it segregates lease portions that are not within the sections being communitized (section 6).  Copies of the Uintah and Ouray Agency form should be available from either the appropriate BLM or BIA office.  As a general guideline, applicants should be encouraged to use this form whenever possible.  If deviations from the form are justified, the revised or changed form shall:

1.  Describe the separate tracts comprising the drilling or spacing unit

2.  Show the tract allocation of communitized substances to the communitized tracts.

3.  Specify the formation(s) communitized and define the communitized substances (e.g., dry gas and associated liquid hydrocarbons).

4.  Identify the operator.

5.  Contain adequate provisions for the protection of the interests of all parties.

6.  Be signed by or on behalf of all necessary parties.

7.  Be effective on the date the proposed agreement was submitted to the Department or the date of first production, whichever is earlier.

8.  Contain the segregation clause as stated in section 6 of the Uintah and Ouray Agency form.

Rel. 3-215
7/7/88

**BLM MANUAL**

Exhibit 1

USA_000082

21B

3160-9 - COMMUNITIZATION

B. **Effects of State Orders.** Should the authorized officer determine that an existing or proposed State spacing or pooling order is not in the Indian interest, the State Commission and the Superintendent should be notified. If the adverse pending order is issued, the authorized officer will furnish the State Director and the Superintendent with a complete report. If the State Director concurs with the recommendation of the authorized officer but the problem cannot be resolved with the State Commission to the BLM's and BIA's satisfaction, the State Commission and all interested parties must be advised that no Indian lands will be subject to the order. Similar action must be taken when evidence shows that an existing order is no longer appropriate.

C. **Communitizing Multiple Formations.** Generally, a communitization agreement should communitize only one specific formation or zone, which must be designated by name and/or depth interval. However, multiple zones or formations may be covered by a single agreement where it is desirable to do so, provided that the spacing pattern and ownership are the same. Communitization agreements of this nature should provide in the model form that the agreement ". . .shall remain in force and effect as to the _____ and ___  _____ formations . . ." In addition, the following sentence should be added to the end of section 1: "This agreement shall apply separately to the _____ and _____ formations in the same manner as though a separate agreement for each formation had been entered into." Agreements proposing communitization for an indefinite number of formations should not be recommended for approval.

D. **Termination of Communitization Agreements.** The suggested model form of communitization agreement provides that the agreement shall remain in effect for a period of 1 to 2 years or during the primary term of any of the Indian leases, whichever is the lesser, and as long thereafter as communitized substances are produced in paying quantities. In contrast to Federal leases, there is no provision for Indian lease extensions due to termination of a communitization agreement. Additional information on lease extensions and terminations is contained in Handbook H-3107-1. There are two circumstances under which agreements may be terminated.

1. **Cessation of Production.** A communitization agreement in its extended term by production will terminate upon cessation of production in paying quantities, unless a suspension of production has been approved.

2. **Mutual Consent of Superintendent and Committed Parties.** The agreement may also be terminated by mutual consent of the Superintendent and the committed parties at any time prior to the production of communitized substances.

Rel. 3-215
7/7/88

**BLM MANUAL**

Exhibit 1

USA_000083

.22  Procedures.  The following steps are general procedures involved in administering actions related to Indian communitization agreements.

A.  Reviewing State Orders.  Ensure that all State orders, rulings, or approvals affecting supervised lands are obtained and reviewed.

B.  Noting Action Affecting Communitization.  Appropriately note APD's, sundry notices, and reports when such actions affect and/or necessitate communitization.  Advise the Superintendent accordingly.

C.  Monitoring Drilling.  Monitor all drilling well starts and completions.

D.  Preparing a First Production/Discovery Report.  Prepare a first production/discovery report and appropriately note when communitization is required.  (A first production/discovery report may also be required for wells completed in a noncommunitized formation within a communitized area.)  In addition to the customary information supplied under "Remarks" in a first production/discovery report, show the date that a communitization request was made (see Manual 3160-3).  Copies of first production/discovery report should be sent to the Superintendent.

E.  Notifying Lessees of Necessary Communitization.  Advise the Indian lessee(s) of the requirement for a communitization agreement, usually no later then when a producible well is completed in a spacing unit that consists of an Indian lease and at least one (Federal, State, fee, or Indian) tract.  Illustration 2 or an adaptation of it may be used to notify the lessee of the need for communitization.

F.  Review Procedures.  Upon receipt of a proposed communitization agreement from the BIA, the authorized officer will, before returning the agreement with an approval/disapproval recommendation, review the following items:

1.  Where the BIA office has requested BLM to provide the communitization agreement number, this number should be assigned on receipt of the application for review and should be assigned using the Case Recordation System, as described at .110 for communitization agreements on Federal lands.

2.  Land description and acreage against General Land Office plats for accuracy.

3.  Working interest and royalty interests against lease records

Exhibit 1

USA_000084

22F4

## 3160-9 - COMMUNITIZATION

4. The requested area, to ensure it meets the State spacing requirements and that the area requested gives the Indian leases the largest participation possible, considering best ultimate recovery of the reservoir fluids.

5. The effective date of the agreement, to ensure that it is prior to the date of the onset of production from the communitized parcels.

G. Approval. The approval authority for an agreement involving Indian lands is with the Superintendent or Area Directors. The Bureau's responsibility is to recommend approval or disapproval based on the engineering and technical aspects of the agreement. This recommendation must be made promptly. The Bureau should only deal directly with the operator in order to clarify the documents submitted, and leave all other contacts to the Superintendent.

H. Notifying the Operator. If approval of the communitization agreement is recommended, the authorized officer should advise BIA to notify the operator of BLM's 5-day production reporting requirement.

I. Distributing Copies of the Agreemeent. Ensure that copies of all agreements and action documents are furnished to MMS and other appropriate BLM offices.

J. Further Coordination with MMS. Determination and notification of first and last production shall be in accordance with the current BLM/MMS Memorandum of Understanding.

K. Production Decline or Nonproduction. Promptly notify the Superintendent and the BLM State Office, and MMS where appropriate, when paying production has ceased, when drilling to the communitized formation, or when workover operations did not result in continuous paying production.

L. Notification of Termination. When advised by the Superintendent that an agreement was terminated, notify the other appropriate BLM offices and MMS.

Rel. 3-215
7/7/88

**BLM MANUAL**

# Exhibit 1

USA_000085

Illustration 1
(.12E)

3160-9 - COMMUNITIZATION

Format of a Letter Informing a Lessee of a Federal Communitization

Gentlemen:

The State of _____ , by order/docket No. _____ , has established field spacing for the _____ . sec. _____ , T. _____ , R. _____ , _____ Mer., as a drilling unit for the production of the _____ (formation) (zone).

A well has been (proposed for the) (completed in the) _____ (formation) (zone) at a location in the _____ of said section .

(Part) or (All) of your Federal oil and gas leases(s) _____ (is) (are) within the spacing unit for this well, and, by Federal regulations, an approved communitization agreement, effective prior to the initial production from the well, will be required.

If an agreement is not submitted for approval, compensatory royalty will be assessed in the amount of the royalty rate for lease _____ times the ratio of the acreage of lease _____ within the spacing unit to the total acreage within the spacing unit times the total value of the production from the spacing unit well, on a monthly basis effective the first of the month during which production is established.

Standard instructions and a copy of the model communitization agreement form are available upon request. The instructions provide guidance concerning execution and final submittal for approval. If you decide to proceed without securing the model form and instructions, please be advised that _____ executed copies of the agreement, at least one of which must contain the original execution by all signatory parties, should be filed with the (authorized officer), _____ (address) _____ , for approval. _____ copies of the approved agreement, including the copy containing the original signatures, will be retained, and the remaining copies will be returned to the operator designated in the agreement. If you require an original for recording purposes or duplicate copies for other distribution, the number of copies submitted should be increased accordingly.

Please submit an application to communitize or a plan to protect against drainage within 60 days from the date of this notification.

Sincerely yours

Authorized Officer

cc: State Office

Rel. 3-215
7/7/88

Exhibit 1

USA_000086

Illustration 2
(.22E)

### 3160-9 - COMMUNITIZATION

### Format of a Letter Informing a Lessee of an Indian Communitization

Gentlemen:

The State of _____, by order No. _____, has established field spacing for the _____ sec. _____, T. _____, R. _____, _____ Mer., as a drilling unit for the production of _____ from the _____ (formation) (zone).

A well has been (proposed for the) (completed in the) _____ (formation) (zone) at a location in the _____ of said section _____.

(Part) or (All) of your Indian oil and gas leases(s) _____(is) (are) within the spacing unit for this well and by Indian regulations, an approved communitization agreement, effective prior to the initial production from the well, will be required.

If an agreement is not submitted for approval, compensatory royalty will be assessed in the amount of the royalty rate for lease _____ times the ratio of the acreage of lease _____ within the spacing unit to the total acreage within the spacing unit times the total value of the production from the spacing unit well, on a monthly basis.

Standard instructions and a copy of a suggested model communitization agreement form are available upon request from either this Office or the Superintendent, (address).  The instructions provide guidance concerning execution and final submittal for approval.  If you decide to proceed without securing the model form and instructions, please be advised that a minimum of six executed copies must be filed with the Superintendent of the Bureau of Indian Affairs 90 days prior to the expiration date of the first Indian oil and gas contract to expire in the unit.

Within 60 days from the date of this notification, please submit an application to communitize to the appropriate Superintendent of the Bureau of Indian Affairs or a plan to protect against drainage to this Office.

Sincerely yours,

Authorized Officer

cc:  State Office
     Superintendent, BIA

BLM MANUAL

Rel. 3-215
7/7/88

# Exhibit 1

USA_000087

Appendix 1, Page 1<br>(.11C)

## 3160-9 - COMMUNITIZATION

Summary Information, Instructions, and
Model Form of a Federal Communitization Agreement

<u>Summary Information on Communitization</u>

<u>Conformance with Acceptable State Well Spacing</u>.

The communitization of Federal leases is authorized only for areas where
well-spacing or a well development program has been established.  If the area
is spaced by a State order, attach a copy of the order to each of the Federal
copies of the agreement.  If the area is not spaced by a State order, a
report should be furnished in triplicate showing that the proposed
communitized tract conforms with the existing spacing pattern for the area.
The report should include a development map of the area showing wells
completed in the zone or formation being communitized.  Although a
communitization agreement is approved for an initial 2-year term, committed
Federal leases that would otherwise terminate during this period can only be
extended if:  (1) Paying communitized production is effected prior to such
lease termination date, or (2) extension is applicable under other provisions
of 43 CFR 3107.

II.  <u>Execution of the Agreement</u>

   A.  The operator of the communitized area and all owners of record title
and working interests in Federal leases as reflected by current records must
execute the agreement.  If Exhibit B indicates a different ownership, all
lessees and working interest owners on the effective date of the agreement
should also execute the agreement.  However, agreements may be approved with
only the signatures of current interests if previous owners cannot be located
or refuse to sign.

   B.  All working interest owners of non-Federal leases must execute the
agreement, unless such interests have been effectively integrated or pooled
by State order (an order that involuntarily "force-pools" all interests) or
other pooling agreement.  Copies of the State order or pooling agreement
should be furnished and made a part of the agreement if such interest owners
do not execute the agreement.

   C.  All basic royalty owners under non-Federal leases must execute the
agreement, unless such interests have been effectively pooled by State order,
a pooling clause in the lease, or other pooling agreement.  Evidence of such
pooling should be furnished and made a part of the agreement if such owners
do not execute the agreement.  Each such tract shown on Exhibit B of the
standard form must include either the verbatim pooling provision of the
lease, or the statement, "Lease contains a provision authorizing pooling in
accordance with the acreage requirement of the agreement."

   D.  Execution by overriding royalty interests under Federal and
non-Federal leases is not mandatory for Federal approval.  However, execution
by such parties as are provided should be accepted, as it will ensure more
effective protection of the interests of other parties.

BLM MANUAL

<em>Rel. 3-215</em><br>7/7/88

# Exhibit 1

USA_000088

Appendix 1, Page 2

3160-9 - COMMUNITIZATION

E.  All signatures should be witnessed by another party or acknowledged before a notary public, and, if the signature is by an agent, attorney-in-fact, or other representative, evidence of authority to act for the principal is necessary.  Execution by a corporate officer should show title and carry proper attestation and the corporate seal.  When executed by a corporate officer with proper attestation, acknowledgment before a notary is not required for Departmental approval.

III.  Required Copies.

The operator must submit a sufficient number of copies to satisfy Federal requirements as specified by the authorized officer, plus as many as the operator wants approved and returned.  One of the copies must be a complete original in every respect and will be retained by the District Office on approval.  Reproductions of signatures are acceptable for the other copies, but the operator will receive one of these upon approval.  Thus, duplicate originals must be submitted if the operator wishes to receive an approved original for recording or other purposes.

The filing of "Preliminary Application for Approval to Communitize" is not mandatory.  However, such procedure is recommended when:  (1) The suggested form of agreement is revised, or (2) when there is some doubt as to whether the proposed communitized tract may be considered as logically subject to communitization.  Such procedure may prevent the necessity of revision and reexecution of an executed agreement considered to be unacceptable.  At times, a preliminary conference in lieu of such application may be appropriate.

BLM MANUAL

Rel. 3-215
7/7/88

Exhibit 1

USA_000089

3160-9 - COMMUNITIZATION

### Instructions for Completing Communitization Agreement Forms

<u>Determination - Approval - Certification</u>

Under "B," in the first blank, enter complete legal description all the land to be communitized, e.g., NE-1/4 sec. 24, T. 19S., R. 32E., N.M.P.M., Lea County, New Mexico.

Following "as to," enter either "natural gas and associated liquid hydrocarbons," or "crude oil and associated natural gas," as applicable

Following "from the," enter the accepted formation or zone name in general use in the vicinity, or as specified in the State spacing order for the formation or zone to be communitized.

Do not fill in the blanks at the bottom of the page

<u>Communitization Agreement</u>

Under "Heading," leave the "Contract No." blank, since it will be assigned by the authorized officer.

Under Section 1, the land description should be the same as under "B" on the Determination - Approval - Certification.

"Acres" should be the exact acreage to be communitized, such as "316.10."

"Formation" or "zone" should be the same as shown under "B" on the Determination - Approval - Certification.

In the last blank, insert either "natural gas and associated liquid hydrocarbons" or "crude oil and associated natural gas," as applicable.

Under Section 10, fill in the date of the agreement.

Under Last Paragraph:

For signature information, refer to "Summary Information on Communitization" of this illustration.

Attachments to the Agreement:

Attach Exhibits "A" and "B" to each copy of the agreement, supplying the information in the prescribed format.

BLM MANUAL

Rel. 3-215
7/7/88

## Exhibit 1

USA_000090

Appendix 1, Page 4

## 3160-9 - COMMUNITIZATION

### Determination - Approval - Certification

Pursuant to the authority vested in the Secretary of the Interior under Section 17(j) of the Mineral Leasing Act of 1920, as amended (74 Stat. 784; 30 U.S.C. 226(j)), and delegated to the authorized officer of the Bureau of Land Management, I do hereby:

A.  Determine that the Federal lease or leases as to the lands committed to the attached agreement cannot be independently developed and operated in conformity with the well-spacing program established for the field or area in which said lands are located, and that consummation and approval of the agreement will be in the public interest.  Approval of this agreement does not warrant or certify that the operator thereof and other holders of operating rights hold legal or equitable title to those rights in the subject leases which are committed hereto.

B.  Approve the attached communitization agreement covering the

    _____

    _____
    County, _____, as to (natural gas and associated liquid hydrocarbons) (crude oil and associated natural gas) producible from the _____ formation.  This approval will become invalid should the public interest requirements under section 3105.2-3(e) are not met.

C.  Certify and determine that the drilling, producing, rental, minimum royalty and royalty requirements of the Federal lease or leases committed to said agreement are hereby established, altered, changed, or revoked to conform with the terms and conditions of the agreement.


Approved: _____        _____



Effective: _____        Authorized Officer



Contract No.:  Com. Agr.



BLM MANUAL

Rel. 3-215
7/7/88

## Exhibit 1

USA_000091

3160-9 - COMMUNITIZATION

### Model Form of a Federal Communitization Agreement
Contract No. _____

THIS AGREEMENT, entered into as of the date shown in Section 10 hereof by and between the parties subscribing, ratifying, or consenting hereto, such parties being hereinafter referred to as "parties hereto."

W I T N E S S E T H:

WHEREAS, the Act of February 25, 1920 (41 Stat. 437), as amended and supplemented, authorizes communitization or drilling agreements communitizing or pooling a Federal oil and gas lease, or any portion thereof, with other lands, whether or not owned by the United States, when separate tracts under such Federal lease cannot be independently developed and operated in conformity with an established well-spacing program for the field or area and such communitization or pooling is determined to be in the public interest; and

WHEREAS, the parties hereto own working, royalty or other leasehold interests, or operating rights under the oil and gas leases and lands subject to this agreement which cannot be independently developed and operated in conformity with the well-spacing program established for the field or area in which said lands are located; and

WHEREAS, the parties hereto desire to communitize and pool their respective mineral interests in lands subject to this agreement for the purpose of developing and producing communitized substances in accordance with the terms and conditions of this agreement:

NOW, THEREFORE, in consideration of the premises and the mutual advantages to the parties hereto, it is mutually covenanted and agreed by and between the parties hereto as follows:

1.  The lands covered by this agreement (hereinafter referred to as "communitized area") are described as follows:

    containing _____ acres, and this agreement shall include only the _____ Formation(s) underlying said lands and the _____ hereinafter referred to as "communitized substances," producible from such formation(s).

BLM MANUAL

Rel. 3-215
7/7/88

## Exhibit 1

USA_000092

Appendix 1, Page 6

3160-9 - COMMUNITIZATION

2. Attached hereto, and made a part of this agreement for all purposes, is Exhibit B, designating the operator of the communitized area and showing the acreage, percentage and ownership of oil and gas interests in all lands within the communitized area, and the authorization, if any, for communitizing or pooling any patented or fee lands within the communitized area.

3. All matters of operation shall be governed by the operator under and pursuant to the terms and provisions of this agreement. A successor operator may be designated by the owners of the working interest in the communitized area, and four executed copies of a designation of successor operator shall be filed with the Authorized Officer

4. Operator shall furnish the Secretary of the Interior, or his authorized representative, with a log and history of any well drilled on the communitized area, monthly reports of operations, statements of oil and gas sales and royalties and such other reports as are deemed necessary to compute monthly the royalty due the United States, as specified in the applicable oil and gas regulations.

5. The communitized area shall be developed and operated as an entirety, with the understanding and agreement between the parties hereto that all communitized substances produced therefrom shall be allocated among the leaseholds comprising said area in the proportion that the acreage interest of each leasehold bears to the entire acreage interest committed to this agreement.

   All proceeds, 8/8ths, attributed to unleased Federal, State or fee land included within the CA area are to be placed in an interest earning escrow or trust account by the designated operator until the land is leased or ownership is established.

BLM MANUAL

Rel. 3-215
7/7/88

Exhibit 1

USA_000093

3160-9 - COMMUNITIZATION

6.  The royalties payable on communitized substances allocated to the individual leases comprising the communitized area and the rentals provided for in said leases shall be determined and paid on the basis prescribed in each of the individual leases. Payments of rentals under the terms of leases subject to this agreement shall not be affected by this agreement except as provided for under the terms and provisions of said leases or as may herein be otherwise provided. Except as herein modified and changed, the oil and gas leases subject to this agreement shall remain in full force and effect as originally made and issued. It is agreed that for any Federal lease bearing a sliding- or step-scale rate of royalty, such rate shall be determined separately as to production from each communitization agreement to which such lease may be committed, and separately as to any noncommunitized lease production, provided, however, as to leases where the rate of royalty for gas is based on total lease production per day, such rate shall be determined by the sum of all communitized production allocated to such a lease plus any noncommunitized lease production.

7.  There shall be no obligation on the lessees to offset any well or wells completed in the same formation as covered by this agreement on separate component tracts into which the communitized area is now or may hereafter be divided, nor shall any lessee be required to measure separately communitized substances by reason of the diverse ownership thereof, but the lessees hereto shall not be released from their obligation to protect said communitized area from drainage of communitized· substances by a well or wells which may be drilled offsetting said area.

8.  The commencement, completion, continued operation, or production of a well or wells for communitized substances on the communitized area shall be construed and considered as the commencement, completion, continued operation, or production on each and all of the lands within and comprising said communitized area, and operations or production pursuant to this agreement shall be deemed to be operations or production as to each lease committed hereto.

Exhibit 1

USA_000094

Appendix 1, Page 8

3160-9 - COMMUNITIZATION

9.   Production of communitized substances and disposal thereof
     shall be in conformity with allocation, allotments, and
     quotas made or fixed by any duly authorized person or
     regulatory body under applicable Federal or State statutes.
     This agreement shall be subject to all applicable Federal
     and State laws or executive orders, rules and regulations,
     and no party hereto shall suffer a forfeiture or be liable
     in damages for failure to comply with any of the provisions
     of this agreement if such compliance is prevented by, or if
     such failure results from, compliance with any such laws,
     orders, rules or regulations.

10.  The date of this agreement is _____ _____, _____
                                    (Month)   (Day)  (Year)
     and it shall become effective as of this date or
     from the onset of production of communitized
     substances, whichever is earlier upon execution by
     the necessary parties, notwithstanding the date of
     execution, and upon approval by the Secretary of
     the Interior or by his duly authorized representa-
     tive, and shall remain in force and effect for a
     period of 2 years and for as long as communitized
     substances are, or can be, produced from the
     communitized area in paying quantities:  Provided,
     that prior to production in paying quantities from
     the communitized area and upon fulfillment of all
     requirements of the Secretary of the Interior, or
     his duly authorized representative, with respect
     to any dry hole or abandoned well, this agreement
     may be terminated at any time by mutual agreement
     of the parties hereto.  This agreement shall not
     terminate upon cessation of production if, within
     60 days thereafter, reworking or drilling
     operations on the communitized area are commenced
     and are thereafter conducted with reasonable
     diligence during the period of nonproduction.  The
     2-year term of this agreement will not in itself
     serve to extend the term of any Federal lease
     which would otherwise expire during said period.

BLM MANUAL

Rel. 3-215
7/7/88

Exhibit 1

USA_000095

3160-9 - COMMUNITIZATION

11. The covenants herein shall be construed to be covenants running with the land with respect to the communitized interests of the parties hereto and their successors in interests until this agreement terminates and any grant, transfer, or conveyance of any such land or interest subject hereto, whether voluntary or not, shall be and hereby is conditioned upon the assumption of all obligations hereunder by the grantee, transferee, or other successor in interest, and as to Federal land shall be subject to approval by the Secretary of the Interior, or his duly authorized representative.

12  It is agreed between the parties hereto that the Secretary of the Interior, or his duly authorized representative, shall have the right of supervision over all fee and State mineral operations within the communitized area to the extent necessary to monitor production and measurement, and assure that no avoidable loss of hydrocarbons occurs in which the United States has an interest pursuant to applicable oil and gas regulations of the Department of the Interior relating to such production and measurement.

13  This agreement shall be binding upon the parties hereto and shall extend to and be binding upon their respective heirs, executors, administrators, successors, and assigns.

14. This agreement may be executed in any number of counterparts, no one of which needs to be executed by all parties, or may be ratified or consented to by separate instrument, in writing, specifically referring hereto, and shall be binding upon all parties who have executed such a counterpart, ratification or consent hereto with the same force and effect as if all parties had signed the same document.

Exhibit 1

USA_000096

## 3160-9 - COMMUNITIZATION

15. <u>Nondiscrimination</u>:  In connection with the
performance of work under this agreement, the
operator agrees to comply with all of the
provisions of Section 202(1) to (7) inclusive, of
Executive Order 11246 (30 F.R. 12319), as amended,
which are hereby incorporated by reference in this
agreement.

     IN WITNESS WHEREOF, the parties hereto have executed this agreement as
of the day and year first above written and have set opposite their
respective names the date of execution.

_____          _____

_____          _____

_____          _____

BLM MANUAL                                                    Rel. 3-215
                                                              7/7/88

Exhibit 1

USA_000097

3160-9 – COMMUNITIZATION

EXHIBIT A

Plat of communitized area covering ___NE 1/4___ sec. __24__ , T. __19 S.__ ,
R. __32 E.__ , N.M.P.M., __Lusk Strawn__ field, __Lea__ County, _____ (State)



NOTE    Show well location and tract numbers.

BLM MANUAL

Rel. 3-215
7/7/88

Exhibit 1

USA_000098

3160-9 - COMMUNITIZATION

EXHIBIT B

To Communitization Agreement dated _____
embracing

Operator of Communitized Area:  BC Oil Company

<u>DESCRIPTION OF LEASES COMMITTED</u>

<u>Tract No. 1</u>

Lease Serial No.:  NM 14251

Lease Date:  October 1, 1970

Lease Term:  10 years

Lessor:  United States of America

Lessee on effective date of agreement if different from present lessee:
Not applicable

Present Lessee:  AB Company

Description of Land Committed:

<u>Township  19 South     Range  32 East, N.M.P.M.</u>

<u>NW1/4 NE1/4 sec. 24</u>

Number of Acres:  40.00

Royalty Rate:  12-1/2 percent

Name and Percent ORRI Owners:  John Doe 3%

Name and Percent WI Owners:  AB Company 100%

BLM MANUAL

Rel. 3-215
7/7/88

Exhibit 1

USA_000099

3160-9 - COMMUNITIZATION

Tract No. 2

Lease Serial No.:  O-G 1728

Lease Date:  November 1, 1972

Lease Term:  10 years

Lessor(s):  State of New Mexico


Lessee on effective date of agreement if different from present lessee: Not Applicable

Present Lessee:  BC Oil Company


Description of Land Committed:

Township  19 South     Range  32 East, N.M.P.M.

E1/2 NE1/4  and  SW1/4 NE1/4  sec. 24

Number of Acres:  120.00

Pooling Clause:  Not Applicable

Basic Royalty Rate:  12-1/2 percent

Name and Percent ORRI Owners:  None

Name and Percent WI Owners:  BC Oil Company 100%


R E C A P I T U L A T I O N

| Tract No. | No. of Acres Committed | Percentage of Interest in Communitized Area |
|---|---|---|
| 1 | 40.00 | 25.0000% |
| 2 | 120.00 | 75.0000% |
| | 160.00 | 100.0000% |


BLM MANUAL

Rel. 3-215
7/7/88

Exhibit 1

USA_000100

Appendix 2
(.11C)

## 3160-9 - COMMUNITIZATION

### Model Form for Designation of Successor Operator

Designation of successor operator, communitization agreement no. _____, covering the _____ sec._____, T._____., R._____., _ County, _____

This indenture, dated as to the _____ day of _____, 19_____, by and between _____, hereinafter designated as "First Party," and the owners of communitized working interest, hereinafter designated as "Second Parties,"

Witnesseth:  Whereas under the provision of section 17(j) of the Act of February 25, 1920, as amended (74 Stat. 784; 30 U.S.C. 266(J)), and by authority delegated, the_____ on the _____ day of _____ 19_____, approved communitization agreement no. _____ _____ whereby _____ is designated as Operator of the communitized area; and

Whereas the designation of a successor operator is now desired pursuant to section No. 3 of the communitization agreement; and

Whereas the First Party has been and hereby is designated by Second Parties as Operator of the communitized area, and said First Party desires to assume all the rights, duties and obligations of Operator under said communitization;

Now, therefore, in consideration of the premises hereinbefore set forth and the promises hereinafter stated, the First Party hereby covenants and agrees to fulfill the duties and assume the obligations of Operator of the communitized area under and pursuant to all the terms of communitization agreement no._____ and the Second Parties covenant and agree that effective as of the date herein specified, and upon receipt of this indenture, properly executed, by the Authorized Officer, the First Party shall be granted the exclusive right and privilege of exercising any and all rights and privileges as Operator, pursuant to the terms and conditions of said communitization agreement, said communitization agreement being hereby incorporated herein by reference and made a part hereof as fully and effectively as though said agreement were expressly set forth in this instrument.

In witness whereof, the parties hereto have executed this instrument as of the date hereinabove set forth.

_____
(Witness)

_____
(Witness)

_____
(Witness)

_____
(Witness)

_____
(First Party)

_____
(Second Party)

Rel. 3-215
7/7/88

BLM MANUAL

Exhibit 1

USA_000101

3160-9 – COMMUNITIZATION

Uintah and Ouray Agency Office
Standard Communitization Agreement

---

P.A.O. H62-OG2
(March 1982)

CONTRACT NO. _____

## COMMUNITIZATION AGREEMENT

THIS AGREEMENT, WITNESSETH, That:

WHEREAS, the parties hereto own working, royalty, patented or fee or leasehold interests, or operating rights under oil and gas leases, on lands subject to this agreement which can be best developed and operated in conformity with a well spacing program; and

WHEREAS, to conserve natural resources the parties hereto desire to communitize and pool their respective mineral interests for the purpose of developing and producing communitized substances in accordance with the Acts of May 11, 1938, 52 Stat. 347, as amended, 25 U.S.C. 396a *et seq.*, and March 3, 1909, 35 Stat. 783, as amended, 25 U.S.C. 396;

NOW, THEREFORE, the parties agree as follows:

1. **Communitized Area.**

The lands covered by this agreement (hereinafter referred to as "communitized area") are described as follows:

This agreement shall include only the following formations:

2. **Acreage and Ownership.**

Attached hereto is a plat designed as Exhibit "A" showing the communitized area.

Attached hereto is Exhibit "B" showing the acreage, percentage and ownership of oil and gas interests in all lands within the communitized area, and the authorization, if any, for communitizing or pooling any patented or fee lands within the communitized area.

3. **Operator.**

The Operator of the communitized area shall be _____

Matters of operation shall be governed by the designated Operator. Owners of the working interest in the communitized area may nominate a successor operator by filing four (4) executed copies of a Designation of Successor Operator with the Authorized Officer, Bureau of Land Management (herein referred to as D.M.M.), for approval by the Superintendent.

4. **Reports.**

Operator shall furnish the Secretary of the Interior, or his authorized representative, with (1) monthly reports of operations, statements of oil and gas sales therefrom and such other reports as are deemed necessary to compute monthly the royalty due as specified in the applicable oil and gas leases or operating regulations by the 15th day following the month reported on; (2) a log and history of each well drilled in the communitized area within 15 days of completion of the well or approval of this agreement; and (3) such other reports as may be required by applicable oil and gas regulations.

5. **Communitized Substances Allocated According to Acreage.**

The communitized area shall be developed and operated as a unit. All communitized substances produced therefrom shall be allocated among the interest owners in the proportion that the acreage interests of each interest owner bears to the entire acreage interests committed to this agreement. Operations and production on one parcel in the communitized area shall be considered as operations and production on each parcel therein.

(1)

Rel. 3-215
7/7/88

BLM MANUAL

Exhibit 1

USA_000102

3160-9 – COMMUNITIZATION

(2)

6. Segregation of Leases.

Any portion of an Indian leasehold interest not included within the communitized area is hereby segregated from that portion included within the communitized area, and is considered as a separate lease with the same parties subject to all of the terms of the original lease, excepting only the portion committed thereto.

7. Royalties.

The royalties payable on communitized substances allocated to the individual leases comprising the communitized area and the rentals provided for in said leases shall be determined and paid on the basis described in each of the individual leases.

8. Full Development.

The A.O. may either require the drilling and production of such wells as, in his opinion, are necessary, to insure reasonable diligence in the development and operation of the communitized area, or in lieu thereof, require the payment of an amount as determined by the A.O. to compensate the interest owners in full each month for the estimated loss of royalty.

The Operator shall:

(1) Drill and produce all wells necessary to offset or protect the communitized area from drainage, or in lieu thereof, to compensate the interest owners in full each month for the estimated loss of royalty through drainage. The necessity for offset wells shall be determined by the A.O. Payment in lieu of drilling and production shall be with the consent of, and in an amount determined by, the A.O.

(2) Drill and produce other wells, at the election of the Operator, subject to any system of well spacing or production allotments authorized and approved under applicable law or regulations, approved by the Secretary and affecting the communitized area.

9. Production and Disposal under Federal Law.

Production of communitized substances and disposal thereof shall be in conformity with allocation, allotments and quotas made or fixed by any duly authorized person or regulatory body under applicable Federal statutes. No party hereto shall suffer a forfeiture or be liable in damages for failure to comply with any of the provisions of this agreement if such compliance is prevented by, or if such failure results from compliance with, Federal laws and regulations or orders issued thereunder.

10. Effective Date.

This agreement becomes effective when all interest owners or someone authorized to act in their stead have executed this instrument or a counterpart thereof and the same has been approved by the Superintendent. The terms of the agreement shall apply to all production, either prior to or subsequent to the effective date, as of the date of first production and shall remain in force and effect so long thereafter as communitized substances are produced from the communitized area in paying quantities. In the event that any lease committed to this agreement is beyond its primary term prior to production in paying quantities, the lease terms apply.

11. Secretarial Supervision.

The Secretary of the Interior or his designate shall have the right of supervision over all operations within the communitized area to the same extent and degree as provided in the oil and gas lease in which owners of Indian Lands are lessors and in the applicable oil and gas regulations of the Department of the Interior.

12. Covenants Running with the Land.

The covenants herein shall be construed to be covenants running with the land with respect to the communitized interests of the parties hereto and their successors in interests until this agreement terminates. Any grant, transfer or conveyance of any such land or interest subject hereto, whether voluntary or not, shall be and hereby is conditioned upon the assumption of all obligations hereunder by the grantee, transferee or other successor in interest, and as to Indian Lands shall be subject to approval by the Secretary of the Interior.

13. Nondiscrimination.

In connection with the performance of work under this agreement, the operator agrees to comply with all of the provisions of Section 202 (1) to (7), inclusive, of Executive Order 11246 (30 FR 12319), giving, however, such preference to Indians as applicable law permits.

14. Signing of Agreement by Counterparts.

This agreement may be executed in any number of counterparts, no one of which needs to be executed by all parties, or may be ratified or consented to by separate instrument, in writing, specifically referring hereto, and shall be binding upon all parties who have executed such counterpart, ratification or consent hereto with the same force and effect as if all parties had signed the same document.

15. Lease Terms Control as Modified.

Oil and gas leases in the communitized area shall remain in full force except as herein modified.

Exhibit 1

USA_000103

3160-9 – COMMUNITIZATION

(3)

DATED AND APPROVED this _____ day of _____ , 19_____ , by the United States of America, acting through the Bureau of Indian Affairs, and delegated to the Superintendent by Phoenix Area Redelegation Order No. 3, Sec. 2:17 (34 Fed. Reg. 11109).

_____
*Superintendent*

## ACKNOWLEDGEMENT OF SUPERINTENDENT

State of _____
                                                            } ss.
County of _____

BEFORE ME, a Notary Public, in and for said County and State, on this _____ day of _____ , 19_____ , personally appeared _____ , whose name is subscribed to the foregoing instrument as Superintendent, Uintah and Ouray Agency, Bureau of Indian Affairs, and who acknowledged that he now is and was at the time of signing the same, Superintendent of the Uintah and Ouray Agency, Bureau of Indian Affairs, and he personally acknowledged to me that he executed this said document in his official capacity and pursuant to authority delegated to him for the use and purpose set forth therein.

_____
*Notary Public*

My Commission Expires: _____

Exhibit 1

USA_000104

3160-9 - COMMUNITIZATION

## Bibliography

Anderson v E ison, et al., 285 F. 2d 484  10th Cir. 1960).

Kirkpatrick Oil and Gas Co. v. United States, 675 F. 2d 1122 (10th Cir., April 19, 1982)

Kenai Oil and Jas, Inc. v. Department of Interior, 671 F. 2d 383  10th Cir 1982).

Texas Oil and Gas Corporation v. Phillips Petroleum Company, 277 F. Supp. 366 (1967).

Cotton Petroleum Corporation, et al. v. Department of Interior, et al., Civ.-84-1769-E (W.D. Oklahoma), November 3, 1986.

Anderson v. Corporation Commission, Okla., 327 P.2d 699, cert. denied U.S. 642, 79 S. Ct. 536, 3 L.Ed. 2d 567 (1959).

Shell Oil Company v. Corporation Commission, Okla., 389 P.2d 951  1963).

Kirkpatrick Oil and Gas Company, 15 IBLA 216, 74-187 (April 9, 1974).

Hoover & Bracken Energies, Inc.,    IBLA 220, 80-277 (March 7, 1983

Bruce Anderson, 80 IBLA 286, 9    .D. 203 (May 4, 1984)

Solicitor's Opinion M-36580, December 30, 1959

Director's Decision GS-52-O&G, July 17, 1973

Exhibit 1

USA_000105