# EXHIBIT 4



# United States Department of the Interior



BUREAU OF LAND MANAGEMENT
Montana/Dakotas State Office
5001 Southgate Drive
Billings, MT 59101-4669
www.blm.gov

**May 21, 2024**

### Notice of Competitive
### Oil and Gas Internet Lease Sale

In accordance with the *Mineral Leasing Act*, as amended by the *National Defense Authorization Act for Fiscal year 2015* (Pub. L. 113-291; 128 Stat. 3762) (Dec. 19, 2014), the Inflation Reduction Act 2022, and the BLM regulations at 43 CFR 3120, the Bureau of Land Management (BLM) is offering 27 parcel(s) containing 5574.461 acres in Montana and North Dakota for internet-based competitive oil and gas leasing.  This notice describes:

- · The date, time, and place of the sale;
- · How to participate in the bidding process;
- · The sale process;
- · The conditions of the sale; and
- · How to file a protest

Attached is a list of lands we are offering by serial number, parcel number, and land description. We have included any stipulations, lease notices, special conditions or restrictions that will be made a part of the lease at the time we issue it.  We have also identified those parcels where the United States owns less than 100% interest in the oil and gas mineral rights and less than 16.67% royalty interest.

For your convenience, additional sale documentation is located on https://nflss.blm.gov/.

**When and where will the sale take place?**

**When**: The sale date is July 16, 2024. The open bidding period will begin at 8:00 a.m. Mountain Standard Time (MST) / 9:00 a.m. Central Standard Time (CST). Each parcel will have its own unique open bidding period, with start and stop times clearly identified on the auction website. The open bidding period for each parcel will run for 1 hour(s), from start to finish, and bids will *only* be accepted during a parcel's open bidding period.

**Where:** The sale is held online at https://www.energynet.com/. Click on the Government Lease Sales icon to view this online lease sale.   Parcels may be viewed online at the EnergyNet website approximately 10 business days after the posting of this Notice of Competitive Oil and Gas Internet Based Lease Sale on the National Fluids Lease Sale System (NFLSS) website at https://nflss.blm.gov/.

Exhibit 4          Page 1 of 77

Kraken_000062

**Access:** The auction website is open to the public. The internet-based lease sale can be observed in real-time. However, you must register as a bidder on the website, in advance, to submit bids for a parcel. The auction website will be active and available for use approximately 10 days after the date of this Notice of Competitive Lease Sale and will remain available for viewing until the completion of the auction. The available parcels listed in this Notice will be detailed on the website. Interested parties may visit the website at any time.

Potential bidders may register for the online auction as soon as the auction website is active. Further, potential bidders are encouraged to visit the website prior to the start of the open bidding period to become familiar with the site and review the bidding tutorial. Supporting documentation is available on the website to familiarize new users with the process and answer frequently asked questions.

**How will the sale be conducted?**

The sale will be conducted *by online bidding only*. The online auction will be a sequential, ascending clock, fixed period, English auction. Each parcel will have its own unique open bidding period, with start and stop times clearly identified on the auction website. The open bidding period for each parcel will run for 1 hour(s), from start to finish. Bids will only be accepted for each parcel during its open bidding period. Each parcel will close bidding sequentially so that each bidder will know if they are the highest winning bid before subsequent parcels close. The website will display each current high bid, and the high bid bidder's number. The winning bid is the highest bid per acre received, equal to or exceeding the minimum acceptable bid, which is on record in the online auction system by the close of the auction period.

The online system allows participants to submit maximum bids to enable a bidder to participate in the online auction without having to be logged into the website at the time the auction period closes. The auction website provides a full explanation of placing maximum bids, as well as an explanation of how the bids are placed on your behalf to maintain your high bidder status up to the selected maximum bid amount. The BLM strongly encourages potential bidders to review the bidding tutorial, in the Frequently Asked Questions area on the auction website in advance of the online lease sale.

**How do I participate in the bidding process?**

To participate in the BLM bidding process, you must register and obtain a bidder number. A participant can register to bid at the auction website https://www.energynet.com/ approximately 10 days after posting of this Notice on the NFLSS website. Participants are encouraged to register early, to familiarize themselves with the bidding instructions and ensure they have ample time to complete all required registration steps before the open bidding period commences.

If an entity is bidding for more than one party, they **must register separate credentials**, satisfy all registration requirements and **obtain a separate bidder number for each company or individual** they wish to represent.

You do not have to be "present" in the auction to participate as a bidder. The online auction provides a "maximum bid" bidding option. By using this "maximum bid" option, you are asking the system to bid automatically on your behalf, up to an amount you specify.

When registering as a bidder on the auction website, you will be required to sign a statement to confirming any bid you cast will represent a good-faith intention to acquire an oil and gas lease and

Exhibit 4        Page 2 of 77

Kraken_000063

you understand any winning bid will constitute a legally binding commitment to accept the terms of the lease and pay monies owed. Further, you will acknowledge, through self-certification of the enhanced bidder form, that you understand it is a crime under 18 U.S.C. 1001 and 43 U.S.C. 1212 to knowingly and willfully make any false, fictitious, or fraudulent statements or representations regarding your qualifications; bidder registration and intent to bid; acceptance of a lease; or payment of monies owed; and that any such offense may result in a fine or imprisonment for not more than 5 years or both. You will also acknowledge that you understand it is a crime under 30 U.S.C. 195 (a) and (b) to organize or participate in any scheme to defeat provisions of the mineral leasing regulations. Any person who knowingly violates this provision will be punished by a fine of not more than $500,000, imprisonment for not more than 5 years, or both.

If you, or the party you represent, owe the United States any monies due the day of a previous oil and gas lease auction conducted by any BLM office (the minimum monies owed the day of sale), or any monies owed EnergyNet for a previous oil and gas lease auction conducted by EnergyNet for any BLM office, you will not be allowed to register to bid at this lease sale.

The Mineral Leasing Act requires that leases be issued to a "responsible qualified bidder" (30 U.S.C. 226(b)(1)(A)). Any bidder, or party represented by a bidding agent, that does not pay the minimum monies owed the day of the sale is not a "responsible qualified bidder" and will be barred from participating in any oil and gas lease auction nationwide until the bidder settles that debt to the United States. In addition, if you or the party you represent defaults at any three sales conducted by any BLM office, you or the party you represent will be barred permanently from participating in any other BLM oil and gas lease sale auction.

<u>Provisions Pertaining to Certain Transactions by Foreign Persons Involving Real Estate in the United States</u>

The Office of Investment Security, Department of the Treasury issued a final rule, **effective February 13, 2020,** establishing regulations to implement the provisions relating to real estate transactions in section 721 of the Defense Production Act of 1950, as amended by the Foreign Investment Risk Review Modernization Act of 2018. The final rule was published at 85 Fed. Reg. 3158 (Jan. 17, 2020), and codified at 31 C.F.R. part 802.

The new rule sets forth the process relating to the national security review by the Committee on Foreign Investment in the United States (CFIUS) of certain transactions, referred to in the rule as "covered real estate transactions," that involve the purchase or lease (including an assignment or other transfer) by, or concession to, a foreign person of certain real estate in the United States. Covered real estate transactions could include some transactions involving the Federal mineral estate.

The CFIUS looks not only at the entities that are lessees, but also to any [legal] person with the ability to exercise control, as defined by the statute and its implementing regulations, over the lessee. CFIUS is authorized to review covered real estate transactions and to mitigate any risk to the national security of the United States that arises as a result of such transactions. This could result in the modification, suspension, or prohibition of a lease or interest therein.

Accordingly, BLM recommends that each potential bidder, lessee, or [other] interest holder review the final rule before bidding on or acquiring an interest in a Federal oil and gas lease.

Exhibit 4         Page 3 of 77

Kraken_000064

For further information, please refer to the CFIUS page:

https://home.treasury.gov/policy-issues/international/the-committee-on-foreign-investment-in-the-united-states-cfius

**What is the sale process?**

Starting at the posted opening date and time for each parcel:

- All bids are on the gross (total) per-acre basis, rounded up to whole acres, for the entire acreage in the parcel. If a parcel contains fractional acreage, round it up to the next whole acre. For example, a parcel of 100.51 acres requires a minimum bid of $1,010 ($10 x 101 acres).

- All bids start at the minimum acceptable bid of $10 per acre, or fraction of an acre, thereof.

- All bids are made in minimum increments of $1.00 per acre, or fraction of an acre, thereof.

- The winning bid is the highest received bid, equal to or exceeding the minimum acceptable bid, which is on record in the online auction system at the close of the auction period.

- You cannot withdraw a bid once a bid is placed and the auction system determines you are the high bidder.

- **The decision of the BLM, as presented on the auction website's bid history at** https://www.energynet.com, **is final.**

**How long will the sale last?**

Each parcel will have its own unique open bidding period, with start and stop times clearly identified on the auction website. The open bidding period for each parcel will run for 1 hour(s), from start to finish. The length of the sale depends on the number of parcels we are offering.

**What conditions apply to the lease sale?**

- **Parcel withdrawal or sale postponement:** We reserve the right to withdraw any or all parcels before the sale begins. If we withdraw a parcel or a sale is postponed, we will post a notice on the NFLSS website, on the auction website, and post information in the Montana/Dakotas State Office Information Access Center (Public Room) before the sale begins.

- **Fractional mineral interests:** 43 CFR 3120.1-2(c) We will indicate in the parcel listing if the United States owns less than 100 percent of the oil and gas mineral interest for the land(s) in a parcel. When we issue the lease, it will be for the percentage or fraction of interest the United States owns. However, the bonus bid and advance rental payment is calculated based on the gross (total) acreage in the parcel, not the United States net interest. For example, if a parcel contains 199.31

Exhibit 4    Page 4 of 77

Kraken_000065

acres and the United States owns 50 percent of the oil and gas mineral interest, the minimum bonus bid will be $2,000 ($10 x 200 acres) and the advance first year annual rental will be $600 ($3.00 x 200 acres) for the first 2 years and $1,000 ($5.00 x 200 acres) for lease years 3 thru 8 and $3,000 ($15.00 x 200 acres) for the remainder of the lease term. Conversely, your chargeable acreage and royalty on production will be calculated on the United States net acreage.

- **Fractional royalty interests:** We will indicate as part of the parcel listing if the United States owns less than 16.67 percent of the oil and gas royalty interest for the land(s) in a parcel. When we issue the lease, it will be for the percentage or fraction of interest the United States owns.

- **Payment due:** You cannot withdraw a bid. Your bid is a legally binding contract. For **each parcel you are the successful high bidder, on the day the parcel closes you must pay the minimum bonus bid of $10 per acre or fraction of an acre; the first year's advance rental of $3.00 per acre or fraction of an acre; and a non-refundable administrative fee of $3,100.00.** These are monies you owe the United States, whether or not a lease is issued. **You must provide notification of the payment process of these monies to the BLM Montana/Dakotas State Office prior to 4 p.m. Mountain Standard Time, the day the auction closes, confirmation (via email or fax) that the payment for the parcel(s) has been initiated and the type of payment method.** Payment will be made directly to the BLM Montana/Dakotas State Office, or as otherwise directed by the BLM. **Payments to the BLM will not be made through the auction website.** At the conclusion of each parcel's bidding period, the winning bidder will be provided instructions by the online auction system on how to make the required payment to the BLM. You will be required to pay the buyer's premium to EnergyNet, 1.5% of any successful bid, in order to participate in the internet-based lease sale.

If your bonus bid was more than $10 per acre or fraction of an acre and you do not pay the full amount on the day of the sale for the parcel, you must pay any balance due by the close of business on the 10th working day after the last day of the internet-based auction closes. **Remaining balance will be due in the Montana/Dakotas State Office by 4:00 p.m. Mountain Standard Time, July 30, 2024. If you do not pay in full by this date, you lose the right to the lease and all money paid the day of the sale.** If you forfeit a parcel, we may offer it again at a future sale.

The minimum monies owed on the day of the sale for a winning bid are monies owed to the United States [43 CFR 3120.5-2(b) and 43 CFR 3120.5-3(a)]. If we do not receive notification of the payment process of the minimum monies owed the day of the sale by the date and time above, the BLM will continue to pursue collection by issuing a bill for the monies owed and your offer will be rejected. If we do not receive payment by the bill due date, we will send a demand letter to you that will include additional fees. If we do not receive payment as requested by the demand letter, the U.S. will immediately pursue collection by all appropriate methods, and when appropriate, collect late fees, interest, administrative charges, and assess civil penalties on past-due amounts. "All appropriate methods" include, but are not limited to, referral to collection agencies and credit reporting bureaus; salary or administrative offset; offset of Federal and State payments, including goods or services; and Federal and State tax refund offset; and

Exhibit 4        Page 5 of 77

Kraken_000066

retirement payment offset. We may send debts to the Internal Revenue Service (IRS) and the IRS may charge them as income to you on Form 1099C, Cancellation of Debt (Federal Claims Collection Act of 1966, as amended; The Debt Collection Improvement Act of 1996; 31 CFR Part 285).

- **Forms of payment:** Specific payment instructions will be provided by the online auction system to winning bidders. You may pay by:

  - Personal check, certified check, money order (expedited mailing methods);
  - Electronic Funds Transfer (EFT);
  - Automated Clearing House (ACH); and/or
  - Credit card (Discover, Visa, American Express, or MasterCard only).
  - We cannot accept cash.

To meet the payment requirement, you must provide BLM contacts with confirmation that the transaction has been initiated on the day the parcel closes before 4:00 p.m. An email or fax containing confirmation must include but is not limited to the following appropriate documents: overnight shipping tracking document, a copy of the payment instrument, and/or a bank provided electronic confirmation of EFT or ACH. **Do not email or fax privacy information.**

*__Please note,__ in accordance with the Department of Treasury Financial Manual, Announcement No. A-2014-04, the BLM cannot accept credit card payments for an amount equal to or greater than $24,999.99.  The BLM cannot accept aggregated smaller amounts to bypass this requirement.* An amount owed that exceeds the maximum dollar amount for a credit card payment transaction may not be split into two or more payment transactions in the same day by using one or more credit cards. The BLM does not have Personal Identification Number (PIN) equipment for the purpose of processing PIN authorized debit cards. All debit card transactions will be processed as credit cards and the dollar value limits will apply.

If you plan to make your payment using a credit card, you should contact your bank prior to the sale to let them know that you will be making a substantial charge against your account.  If the credit card transaction is refused, we will try to notify you early enough so that you can make other payment arrangements; *__however, we cannot grant you any extension of time to provide confirmation of payment to the BLM contacts.__*

If you pay by check, please make your check payable to: **Department of the Interior-BLM**. If a check you have sent to us in the past has been returned for insufficient funds, we may ask that you give us a guaranteed payment, such as a certified check.

- **Bid form:** On the day of the sale, if you are a successful winning high bidder, you must submit (email or fax) to the BLM a properly completed and signed competitive bid form (Form 3000-2) with the required payment. This form is a legally binding offer **by the prospective lessee** to accept a lease and all its terms and conditions. Once you sign the form, you cannot change it. The online auction system will provide the successful winning bidder with a fillable pdf of this bid form and instructions on how to submit the form to the Montana/Dakotas State Office after the auction. We will not accept any bid form that has information crossed out or is otherwise altered. **We will not issue a lease until we receive a signed copy of the bid form in accordance with**

Exhibit 4        Page 6 of 77

Kraken_000067

**43 CFR 3102.4(a).**

The bid form will be provided as a part of the bidder registration process and you will be required to certify that you will complete and execute the form should you be the winning high bidder at the close of the auction. This notice also includes a copy of the bid form.

Your completed bid form certifies that:

1. You and/or the prospective lessee are qualified to hold an oil and gas lease under our regulations 43 CFR 3102.5-2; and

2. Both of you have complied with 18 U.S.C. 1860, a law that prohibits unlawful combinations, intimidation of, or collusion among bidders.

·**Federal acreage limitations:** Qualified individuals, associations, or corporations may only participate in a competitive lease sale and purchase Federal oil and gas leases from this office if such purchase will not result in exceeding the state limit of 246,080 acres of public domain land and 246,080 acres of acquired land (30 U.S.C. 184(d)).

For the purpose of chargeable acreage limitations, you are charged with your proportionate share of the lease acreage holdings of partnerships or corporations in which you own an interest greater than 10 percent. Lease acreage committed to a unit agreement, communitization agreement or development contract that you hold, own or control and was paid in the preceding calendar year is excluded from chargeability for acreage limitation purposes.  The acreage limitations and certification requirements apply for competitive oil and gas lease sales, noncompetitive lease offers, transfer of interest by assignment of record title or operating rights, and options to acquire interest in leases regardless of whether an individual, association, or corporation has received additional time under 43 CFR 3101.2-4, to divest excess acreage acquired through merger or acquisition.

• **Lease Issuance:** After we receive the signed bid form, all monies due, and protests have been resolved, we can issue the lease. Usually, a lease is effective the first day of the month following the month in which we sign it. If you want your lease to be effective the first day of the month in which we sign it, you must request in writing to do this. The request must be received before the lease is signed.

• **Lease terms:** A lease issued as a result of this sale will have a primary term of 10 years. It will continue beyond its primary term as long as oil or gas in paying quantities is produced on or for the benefit of the lease. **Rental at $3.00 per acre for the first 2 years, $5.00 per acre for years 3 thru 8, and $15.00 per acre thereafter is due <u>on or before</u> the anniversary date with the first year's rental paid to the BLM and subsequent payments paid to the Office of Natural Resources Revenue (ONRR) each year until production begins.** If subsequent rental payments are not received by ONRR <u>**on or before**</u> the lease anniversary date (also known as lease effective date), the lease will automatically terminate by operation of law.  It is strongly recommended to make rental payments at least 7 to 10 days prior to the lease anniversary date.  Any lease rental payments misfiled to

Exhibit 4          Page 7 of 77

Kraken_000068

the BLM will not be forwarded to ONNR and a misfiled payment does not constitute an excuse for not making the payment **on or before** the lease anniversary date.

The royalty rate that applies to the lands offered in this lease sale is a fixed 16.67 percent. Once a lease is producing, you must pay a royalty of 16.67 percent (or as the lease is amended) of the value or the amount of production removed or sold from the lease. This royalty rate supersedes the royalty rate stated in the BLM's standard lease form (Form 3100-11). You will find other lease terms on the standard lease form.

• **Split Estate:** Information regarding leasing of Federal minerals under private surface, referred to as "Split Estate," is available at the following Washington Office website: https://www.blm.gov/programs/energy-and-minerals/oil-and-gas/leasing/split-estate. A Split Estate brochure is available at this site. The brochure outlines the rights, responsibilities, and opportunities of private surface owners and oil and gas operators in the planning, lease sale, permitting/development, and operations/production phases of the oil and gas program.

• **Stipulations:** Stipulations are part of the lease and supersede any inconsistent provisions of the lease form. They are requirements or restrictions on how you conduct operations. These stipulations are included in the parcel descriptions on the attached list.

All Federal oil and gas lease rights are granted subject to applicable laws under Section 6 of the lease terms including requirements under the Endangered Species Act, as amended, 16 U.S.C. 1531 *et seq*. In accordance with Washington Office (WO) Instruction Memorandum (IM) No. 2002-174, each parcel included in this lease sale will be subject to the Endangered Species Act Section 7 Consultation Stipulation. In accordance with WO IM No. 2005-003, Cultural Resources and Tribal Consultation, for Fluid Minerals Leasing, each parcel in this sale will be subject to the Cultural Resource Protection Stipulation.

• **Unit and Communitization Agreements:** Parcels offered in this Notice may fall within an authorized Unit or Communitization Agreement. If the parcel falls within an authorized Unit or Communitization Agreement, the successful bidder may be required to join the agreement. Any lands included in this Notice that are determined to be in a unit prior to lease issuance are subject to regulation 43 CFR 3101.3-1.

### How do I file an oil and gas presale or post sale noncompetitive offer?

As of August 16, 2022, the Inflation Reduction Act (IRA), eliminated the oil and gas noncompetitive leasing process; therefore, no presale or post-sale noncompetitive oil and gas lease offers will be accepted. Any submitted noncompetitive oil and gas lease offers will be automatically rejected.

### How do I submit an Expression of Interest (EOI) Application?

An Expression of Interest (EOI) application is an informal nomination requesting certain lands be included in an oil and gas competitive lease sale. Regulations pertaining to competitive oil and gas

Exhibit 4          Page 8 of 77

Kraken_000069

leasing can be found in 43 CFR 3120.  This request must be submitted via the National Fluids Lease Sale System (NFLSS) at https://nflss.blm.gov.

- · A nonrefundable filing fee of $5.00 per acre, or fraction thereof, (rounded up to the nearest whole acre) is required to be paid to the appropriate BLM State Office prior to the EOI application being processed.

- · The EOI application must contain a complete legal land description (including metes and bounds description, if applicable).

- · Provide proof of Federal mineral ownership (e.g. Deed(s), Patent(s), or other form of mineral interest conveyance to the United States), if applicable.

- · Provide the name and address of all current surface owner(s), if applicable.

If you are submitting an EOI application which includes split estate lands (private surface/federal minerals), you must provide the name and address of the current private surface owner(s) along with your EOI application. The BLM will send a courtesy letter to the surface owner(s) providing notice of the scheduled auction as well as information about the BLM's regulations and procedures for Federal oil and gas leasing and development on split estate lands. An EOI application that does not provide the name and address of the private surface owner(s) will not be processed by the BLM.

All EOI applications, including the name of the nominator, will be made available for public review and inspection in their entirety.

**When is the next competitive oil and gas lease sale scheduled?**

We have tentatively scheduled our next competitive sale for October 22, 2024. We can make no guarantee as to when a given parcel will be offered for competitive sale.  We will try to put EOIs in the earliest possible sale.

**How can I find out the results of this sale?**

The sale results will be posted on the BLM NFLSS website at https://nflss.blm.gov and on the EnergyNet auction website at www.energynet.com. Paper copies are available for viewing or purchase at the BLM Montana/Dakotas State Office Information Access Center. Please be advised the name of the successful high bidder (lessee) of the lease shall be made publicly available.

**May I protest the BLM's decision to offer the lands in this Notice for lease?**

Yes, under regulation 43 CFR 3120.1-3, you may protest the inclusion of a parcel listed in this sale notice. All protests must meet the following requirements:

- • We must receive a protest within 30 calendar days of the posting date of this Notice. All protests must be received no later than **4:00 pm Mountain Standard Time on June 20, 2024**. If our office is not open on the 30th day after the posting, a protest received on the next day our office is open to the public will be considered timely filed. **We will dismiss a late-filed protest.**

- • The protest must include a statement of reasons to support the protest. We will

Exhibit 4          Page 9 of 77

Kraken_000070

dismiss a protest filed without a statement of reasons.

- To the extent you submit exhibits or attachments to any submitted protest, you must provide a summary of the attached documents, and explain why they are important for us to consider. If the submittal fails to include the requested summary, BLM may not consider any information in the exhibits or attachments during its decision-making process.

- A protest must state the interest of the protesting party in the matter, including the name the name and address of the protesting party, **and reference the specific serial number that is being protested**.

- You may file a protest either by hand delivery, by fax, or mailed in hardcopy form. You may not file a protest by electronic mail. A protest filed by fax must be sent to (406) 896-5298. **We will dismiss a protest sent to a fax number other than the fax number identified or a protest filed by electronic mail.**

- If the party signing the protest is doing so on behalf of an association, partnership, or corporation, the signing party must reveal the relationship between them. For example, unless an association authorizes an individual member of its group to act on their behalf, the individual cannot make a protest in the group's name.

- The protest document must be signed. **Unsigned protest documents will be dismissed.**

- Please be advised that all protest information and correspondence shall be made publicly available.

Any protests, including names and street addresses, you submit will be made available for public review on the BLM NFLSS website at https://nflss.blm.gov. Individual respondents may request confidentiality. If you wish to withhold your personal identifiable information from public review or from disclosure under the Freedom of Information Act (FOIA), you must state this prominently at the beginning of your written comment. Such requests will be honored to the extent allowed by law. All submissions from organizations or businesses, and from individuals identifying themselves as representatives or officials of organizations or businesses, will be made available for public inspection in their entirety.

**If the BLM receives a timely protest of a parcel advertised on this Sale Notice, how does it affect bidding on the parcel?**

We will announce receipt of any protests on the BLM NFLSS website and the auction website prior to the start of the online auction. We will also announce on the websites a decision to either withdraw the parcel or proceed with the auction. If the protest is resolved prior to the sale, we will provide copies of our decision on the BLM NFLSS website at https://nflss.blm.gov.

**If I am the high bidder at the sale for a protested parcel, when will the BLM issue my lease?**

We will make every effort to decide the protest prior to the sale, but no later than 60 days after the sale. We will not issue a lease for a protested parcel until the protest is either upheld or denied.

**If I am the successful bidder of a protested parcel, may I withdraw my bid and receive a**

Exhibit 4    Page 10 of 77

Kraken_000071

**refund of my first year's rental and bonus bid?**

No. In accordance with BLM regulations (43 CFR 3120.5-3), you may not withdraw your bid.

**If the BLM upholds the protest, how does that affect my competitive bid?**

If we uphold a protest and withdraw the parcel from leasing, we will reject your bid and refund the first year's rental, bonus bid, and administrative fee. The buyer's premium will be handled between EnergyNet and the buyer. If the decision upholding the protest results in additional stipulations, we will offer you an opportunity to accept or reject the lease with the additional stipulations. If you do not accept the additional stipulations, we will reject your bid and refund the first year's rental, bonus bid, and administrative fee.

**If the BLM's decision to uphold the protest results in additional stipulations, may I appeal that decision?**

Yes. An appeal from the State Director's decision must meet the requirements of 43 CFR 4.411 and Part 1840.

You may file a notice of appeal by paper hardcopy only. The BLM will not accept a notice of appeal transmitted electronically (e.g., by email, fax, or social media means). Also, the BLM will not accept a petition for stay that is transmitted electronically (e.g., by email, fax, or social media means). Even if the BLM has previously corresponded with you by email, fax, or social media means, the BLM will not accept a notice of appeal transmitted electronically. Both the notice of appeal and any petition for stay must be received on paper at the office address above.

**May I appeal the BLM's decision to deny my protest?**

Yes. An appeal from the State Director's decision must meet the requirements of 43 CFR 4.411 and Part 1840.

You may file a notice of appeal by paper hardcopy only. The BLM will not accept a notice of appeal transmitted electronically (e.g., by email, fax, or social media means). Also, the BLM will not accept a petition for stay that is transmitted electronically (e.g., by email, fax, or social media means). Even if the BLM has previously corresponded with you by email, fax, or social media means, the BLM will not accept a notice of appeal transmitted electronically. Both the notice of appeal and any petition for stay must be received on paper at the office address above.

**May I withdraw my bid if the protestor files an appeal?**

No. If the protestor appeals our decision to deny the protest, you may not withdraw your bid. We will issue your lease concurrently with the decision to deny the protest. If resolution of the appeal results in lease cancellation, we will authorize a refund of the bonus bid, rentals, administrative fees, and EnergyNet's buyer premium, if:

- There is no evidence that the lessee(s) derived any benefit from possession of the lease during the time they held it; and
- There is no indication of bad faith or other reasons not to refund the rental, bonus bid, administrative fee, and EnergyNet's buyer premium.

**Who should I contact if I have questions?**

Exhibit 4        Page 11 of 77

Kraken_000072

If you have questions on BLM stipulations, lease notices, etc., please contact the appropriate BLM Field Office for assistance.

If you have questions on another surface management agency's stipulations or restrictions, etc., please contact that agency.

For general information about the competitive oil and gas lease sale process, or this Notice of Competitive Lease Sale, you may e-mail or call: crowland@blm.gov or (406) 896-5092.

MERRY PRESTRIDGE

Digitally signed by MERRY PRESTRIDGE
Date: 2024.05.21 14:11:32 -06'00'

Merry Prestridge,
Acting Chief, Fluids Adjudication Section

Exhibit 4      Page 12 of 77

Kraken_000073



# BLM Montana Dakotas July 16, 2024 Competitive Oil and Gas Lease Sale



Total Parcels: 27
5,574 acres

BLM Surface:
887 acres

Forest Service
Surface:
935 acres

Split_Estate:
2,943 acres

U.S. Army Corps of
Engineers Surface:
288 acres

▲ Parcel Location

☐ BLM Field Office Boundary

HAVRE FIELD OFFICE

MALTA FIELD OFFICE

GLASGOW FIELD OFFICE

LEWISTOWN FIELD OFFICE

MISSOULA FIELD OFFICE

MONTANA

MILES CITY FIELD OFFICE

NORTH DAKOTA FIELD OFFICE

BUTTE FIELD OFFICE

BILLINGS FIELD OFFICE

DILLON FIELD OFFICE

SOUTH DAKOTA FIELD OFFICE

WYOMING

N

0        40 Miles

Maps prepared by:
U.S. Department of the
Interior Bureau of Land
Management Montana
Dakotas State Office
5001 Southgate Drive
Billings, MT 59101

Exhibit 4

Page 13 of 77

Kraken_000074

Form 3000-2
(March 2023)

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF LAND MANAGEMENT
**COMPETITIVE OIL AND GAS OR
GEOTHERMAL RESOURCES LEASE BID**

Mineral Leasing Act of 1920 (30 U.S.C. 181 et seq.)
Mineral Leasing Act for Acquired Lands of 1947 (30 U.S.C. 351-359)
Geothermal Steam Act of 1970 (30 U.S.C. 1001-1025)
Department of the Interior Appropriations Act, Fiscal Year 1981 (42 U.S.C. 6508)

Geographic State

Date of Sale

| THE BID IS FOR (check one): | AMOUNT OF TOTAL BID (see instructions below) | |
|---|---|---|
| ☐ Oil and Gas Serial/Parcel No. _____ | | |
| ☐ Geothermal Serial/Parcel No. _____ | | |
| ☐ NPR-A Tract No. _____ | AMOUNT OF TOTAL BID | PAYMENT SUBMITTED WITH BID |
| ☐ Joint Bidders (see instructions below) | | |

The appropriate regulations applicable to this bid are (1) for oil and gas leases—43 CFR 3120; (2) for National Petroleum Reserve-Alaska (NPR-A) leases—43 CFR 3132; and (3) for Geothermal resources leases—43 CFR 3203. (See details concerning lease qualifications on next page.)

I CERTIFY THAT (1) I have read and am in compliance with, and not in violation of the lessee qualification requirements under the applicable regulations for this bid; (2) this bid is not in violation of 18 U.S.C. 1860, which prohibits unlawful combination or intimidation of bidders; and (3) that this bid was arrived at independently and is tendered without collusion with any other bidder for the purpose of restricting competition.

**IMPORTANT NOTICE:** Execution of this form, where the offer is the high bid, constitutes a binding lease offer, including all applicable terms and conditions. Failure to comply with the applicable laws and regulations under which this bid is made will result in rejection of the bid and forfeiture of all monies submitted.

_____
Print or Type Name of Lessee

_____
Signature of Lessee or Bidder

_____
Address of Lessee

_____
(Name of President of Company for Lessee)

_____
(City)        (State)        (Zip Code)

_____
(Name of Vice President of Company for Lessee)
☐ See Attachment for additional principals

**INSTRUCTIONS FOR OIL AND GAS OR GEOTHERMAL RESOURCES BID**
*(Except NPR-A)*

1. Separate bid form for each lease/parcel or block is required. Identify by the serial/parcel number assigned in the *Notice of Competitive Lease Sale*.

2. Bid must be accompanied by the national minimum acceptable bid (oil and gas: $10.00 per acre; geothermal: twenty percent of the total bid), the first year's rental (oil and gas: $3.00 per acre; geothermal: $2.00 per acre), and the administrative fee (see 43 CFR 3000.12). The remittance must be in the form specified: (1) for oil and gas leases in 43 CFR 3103.1-1; and (2) for geothermal resources leases in 43 CFR 3203.17. The remainder of the bonus bid, if any, must be submitted to the proper Bureau of Land Management (BLM) office within 10 working days for oil and gas, and 15 calendar days for geothermal, after the last day of the competitive auction. **Failure to submit the remainder of the bonus bid within the statutory (or regulatory) timeframe will result in rejection or revocation, as appropriate, of the bid offer and forfeiture of all monies paid.**

3. If the bidder is not the sole party in interest in the lease for which the bid is submitted, all other parties in interest may be required to furnish evidence of their qualifications upon written request by the BLM.

4. This bid may be executed (*signed*) before the competitive auction. If signed before the competitive auction, this form cannot be modified without being executed again. In view of this requirement, the bidder may wish to leave the AMOUNT OF TOTAL BID section blank so that final bid amount may be either completed by the bidder or the BLM at the close of the competitive auction.

5. See 2 CFR 180.995 for the definition of principals.

**INSTRUCTIONS FOR OIL AND GAS:**

**NATIONAL PETROLEUM RESERVE—ALASKA (NPR-A)
SEALED BID**

1. Separate bid form for each tract is required.

2. AMOUNT OF TOTAL BID must be in whole dollar figure. Bid must be accompanied by one-fifth of the amount of the bid. The remittance must be in the form specified in 43 CFR 3132 for a NPR-A lease bid.

3. Mark the envelope "Sealed Bid for NPR-A Oil and Gas Lease Sale". Be sure correct tract number on which the bid is submitted and date of bid opening are noted plainly on envelope. Use standard size envelopes not to exceed 4-1/2" x 10-1/2". No bid may be modified or withdrawn unless such modification or withdrawal is received prior to time fixed for opening of bids.

4. Mail or deliver bid to the proper BLM office or place indicated in the *Notice of Competitive Lease Sale*.

5. There is no limit to the number of joint bidders that may participate. If joint bidders is marked above, attach on a separate sheet the name and address of the additional bidders, percent of interest of each bidder (total of all bidders must equal 100%), and signature for each joint bidder.

6. See 2 CFR 180.995 for the definition of principals.

Title 18 U.S.C. Section 1001 and Title 43 U.S.C. Section 1212 make it a crime for any person knowingly and willfully to make to any Department or agency of the United States any false, fictitious, or fraudulent statements or representations as to any matter within its jurisdiction.

(Continued on page 2)

Exhibit 4        Page 14 of 77

Kraken_000075

## QUALIFICATIONS

**For all leases that may be issued:** The bidder/lessee shall comply with the Departments of the Interior's nonprocurement debarment and suspension regulations as required by 2 CFR 1400 subpart B and shall communicate the requirement to comply with these regulations to persons with whom it does business related to this lease by including this term in its contracts and transactions.

**For leases that may be issued as a result of this sale under the Mineral Leasing Act (The Act) of 1920, as amended, the bidder must:** (1) Be a citizen of the United States; an association *(including partnerships and trusts)* of such citizens; a municipality; or a corporation organized under the laws of the United States or of any State or Territory thereof; (2) Be in compliance with the acreage limitation requirements wherein the bidder's interests, direct and indirect, in oil and gas leases in the State identified do not exceed 246,080 acres each in public domain or acquired lands including acreage covered by this bid, of which not more than 200,000 acres are under options. If this bid is submitted for lands in Alaska, the bidder's holdings in each of the Alaska leasing districts do not exceed 300,000 acres, of which no more than 200,000 acres are under options in each district; (3) Be in compliance with Federal coal lease holdings as provided in sec. 2(a)2(A) of the Act (Title 30 U.S.C. Section 201(a)(2)(A)); (4) Be in compliance with reclamation requirements for all Federal oil and gas holdings as required by sec. 17 of the Act (Title 30 U.S.C. Section 226(g)); (5) Not be in violation of sec. 41 of the Act (Title 30 U.S.C. Section 195)); and (6) Certify that all parties in this bid are in compliance with 43 CFR parts 3000 and 3100 and the leasing authority cited herein.

**For leases that may be issued as a result of this sale under the Geothermal Steam Act of 1970, as amended, the bidder must:** (1) Be a citizen of the United States who is at least 18 years of age; an association of such citizens; a municipality; a corporation organized under the laws of the United States or of any State or Territory thereof; or a domestic governmental unit; and (2) Be in compliance with the acreage limitation requirements wherein the bidder's interests, direct and indirect, do not exceed 51,200 acres, and (3) Certify that all parties in this bid are in compliance with 43 CFR part 3200 and the leasing authority cited herein.

**For leases that may be issued as a result of this sale under the Department of the Interior Appropriations Act of 1981, the bidder must:** (1) Be a citizen or national of the United States; an alien lawfully admitted for permanent residence; a private, public or municipal corporation organized under the laws of the United States or of any State or Territory thereof; an association of such citizens, nationals, resident aliens or private, public or municipal corporations; and (2) Certify that all parties in interest in this bid are in compliance with 43 CFR part 3130 and the leasing authority cited herein.

## NOTICES

This form is exempt from the Paperwork Reduction Act of 1995 (P.L. 104-13) under 5 CFR 1320.3(h)(1).

The Privacy Act of 1974 and the regulations in 43 CFR 2.48(d) provide that you be furnished with the following information in connection with information required by this bid for a competitive oil and gas or geothermal resource lease.

AUTHORITY: 30 U.S.C. 181 et seq.; 30 U.S.C 351-359; 30 U.S.C. 1001-1025; 42 U.S.C. 6508.

PRINCIPAL PURPOSE: The information is to be used to process your bid.

ROUTINE USES: (1) The adjudication of the bidder's rights to resources for which this bid is made. (2) Documentation for public information. (3) Transfer to appropriate Federal agencies when consent or concurrence is required prior to granting a right in public lands or resources. (4)(5) Information from the record and/or the record will be transferred to appropriate Federal, State, local or foreign agencies, when relevant to civil, criminal or regulatory investigations or prosecutions.

EFFECT OF NOT PROVIDING INFORMATION: Disclosure of the information is voluntary. If all the information is not provided, your bid may be rejected.

Exhibit 4          Page 15 of 77

Kraken_000076

Form 3100-011
(March 2023)

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF LAND MANAGEMENT

Serial Number

**LEASE FOR OIL AND GAS**

The undersigned (page 2) offers to lease all or any of the lands in Item 2 that are available for lease pursuant to the Mineral Leasing Act of 1920, as amended and supplemented (30 U.S.C. 181 et seq.), the Mineral Leasing Act for Acquired Lands of 1947, as amended (30 U.S.C. 351-359), or

_____ (other)

**READ INSTRUCTIONS BEFORE COMPLETING**

1. Name

   Street

   City, State, Zip Code

2. This lease is for: *(Check only One)* ☐ PUBLIC DOMAIN LANDS ☐ ACQUIRED LANDS (percent U.S. interest _____ )

   Surface managing agency if other than Bureau of Land Management (BLM): _____ Unit/Project _____

   Land included in lease:

| T. | R. | Meridian | State | County |
|----|----|----------|-------|--------|

Total acres in lease _____

Rental retained    $ _____

This lease is issued granting the exclusive right to drill for, mine, extract, remove and dispose of all the oil and gas (except helium) in the lands described in Item 2 together with the right to build and maintain necessary improvements thereupon for the term indicated below, subject to renewal or extension in accordance with the appropriate leasing authority. Rights granted are subject to applicable laws, the terms, conditions, and attached stipulations of this lease, the Secretary of the Interior's regulations and formal orders in effect as of lease issuance, and to regulations hereafter promulgated when not inconsistent with lease rights granted or specific provisions of this lease.

**For a competitive lease, this lease is issued to the high bidder pursuant to the highest bidder's duly executed bid form submitted under 43 CFR 3120 and is subject to the provisions of that bid and those specified on this form.**

Type and primary term of lease:

THE UNITED STATES OF AMERICA

by _____
                         (BLM)

☐ Competitive lease (ten years)

_____
(Title)                          (Date)

☐ Other _____

EFFECTIVE DATE OF LEASE _____

Continued on Page 2

(Form 3100-11, page 1)

Exhibit 4          Page 16 of 77

Kraken_000077

3. (a) Undersigned certifies that lessee shall comply with the Department of the Interior's nonprocurement debarment and suspension regulations as required by 2 CFR 1400 subpart B and shall communicate the requirement to comply with these regulations to persons with whom it does business related to this lease by including this term in its contracts and transactions.

(b) For leases that may be issued as a result of the Mineral Leasing Act (MLA) of 1920, the undersigned certifies that: (1) the lessee is a citizen of the United States; an association (including partnerships and trusts) of such citizens; a municipality; or a corporation organized under the laws of the United States or of any State or Territory thereof; (2) all parties holding an interest in the lease are in compliance with 43 CFR parts 3000 and 3100 and the leasing authorities cited herein; (3) they are in compliance with the acreage limitation requirements wherein the bidder's/lessee's chargeable interests, direct and indirect, in each public domain and acquired lands separately in the same State, do not exceed 246,080 acres in oil and gas leases (of which up to 200,000 acres may be in oil and gas options, or 300,000 acres in leases in each leasing District in Alaska of which up to 200,000 acres may be in options); (4) the lessee is not considered a minor under the laws of the State in which the lands covered by this lease are located; (5) the lessee is in compliance with qualifications concerning Federal coal lease holdings provided in sec. 2(a)2(A) of the MLA (Title 30 U.S.C. Section 201(a)(2)(A)); (6) the lessee is in compliance with reclamation requirements for all Federal oil and gas lease holdings as required by sec. 17(g) of the MLA (Title 30 U.S.C. Section 226(g)); and (7) the lessee is not in violation of sec. 41 of the MLA (Title 30 U.S.C. Section 195)) .

(c) For leases that may be issued as a result of this sale under the Department of the Interior Appropriations Act of 1981, the undersigned must: (1) be a citizen or national of the United States; a citizen of another country lawfully admitted for permanent residence; a private, public or municipal corporation organized under the laws of the United States or of any State or Territory thereof; an association (including partnerships and trusts) of such citizens, nationals, resident citizens of another country or private, public or municipal corporations; and (2) certify that all parties in interest are in compliance with 43 CFR part 3130 and the leasing authority cited herein.

(d) Undersigned agrees that signature to this lease constitutes acceptance of this lease, including all terms, conditions, and stipulations of which the lessee has been given notice, and any amendment or separate lease that may include any land described in this lease open to leasing at the time this lease was filed but omitted for any reason from this lease.

Duly executed this _____ day of _____, 20_____

_____
(Signature and Title of Lessee or Attorney-in-fact)

_____        _____        ☐ See Attachment for
(Name of President of Company)       (Name of Vice President of Company)      additional principals

Title 18 U.S.C. Section 1001 and Title 43 U.S.C. Section 1212 make it a crime for any person knowingly and willfully to make to any Department or agency of the United States any false, fictitious, or fraudulent statements or representations as to any matter within its jurisdiction.

## LEASE TERMS

Sec. 1. Rentals - Rentals must be paid to proper office of lessor in advance of each lease year. Annual rental rates per acre or fraction thereof are:

(a) Competitive lease, $3.00 for the first 2 years; $5.00 for years 3 through 8; thereafter $15.00;
(b) Other, see attachment; or
as specified in regulations at the time this lease is issued.

If this lease or a portion thereof is committed to an approved cooperative or unit plan which includes a well capable of producing leased resources, and the plan contains a provision for allocation of production, royalties must be paid on the production allocated to this lease. However, annual rentals must continue to be due at the rate specified in (a) or (b) rentals for those lands not within a participating area.

Failure to pay annual rental, if due, on or before the anniversary date of this lease (or next official working day if office is closed) must automatically terminate this lease by operation of law. Rentals may be waived, reduced, or suspended by the Secretary upon a sufficient showing by lessee.

Sec. 2. Royalties - Royalties must be paid to proper office of lessor. Royalties must be computed in accordance with regulations on production removed or sold. Royalty rates are:

(a) Competitive lease, 16.67%;
(b) Other, see attachment; or
as specified in regulations at the time this lease is issued.

Lessor reserves the right to specify whether royalty is to be paid in value or in kind, and the right to establish reasonable minimum values on products after giving lessee notice and an opportunity to be heard. When paid in value, royalties must be due and payable on the last day of the month following the month in which production occurred. When paid in kind, production must be delivered, unless otherwise agreed to by lessor, in merchantable condition on the premises where produced without cost to lessor. Lessee must not be required to hold such production in storage beyond the last day of the month following the month in which production occurred, nor must lessee be held liable for loss or destruction of royalty oil or other products in storage from causes beyond the reasonable control of lessee.

Minimum royalty in lieu of rental of not less than the rental which otherwise would be required for that lease year must

Continued on Page 3                                                    (Form 3100-11, page 2)

Exhibit 4          Page 17 of 77

Kraken_000078

be payable at the end of each lease year beginning on or after a discovery in paying quantities. This minimum royalty may be waived, suspended, or reduced, and the above royalty rates may be reduced, for all or portions of this lease if the Secretary determines that such action is necessary to encourage the greatest ultimate recovery of the leased resources, or is otherwise justified.

An interest charge will be assessed on late royalty payments or underpayments in accordance with the Federal Oil and Gas Royalty Management Act of 1982 (FOGRMA) (30 U.S.C. 1701). Lessee must be liable for royalty payments on oil and gas lost or wasted from a lease site when such loss or waste is due to negligence on the part of the operator, or due to the failure to comply with any rule, regulation, order, or citation issued under FOGRMA or the leasing authority.

Sec. 3. Bonds - A bond must be filed and maintained for lease operations as required under regulations.

Sec. 4. Diligence, rate of development, unitization, and drainage - Lessee must exercise reasonable diligence in developing and producing, and must prevent unnecessary damage to, loss of, or waste of leased resources. Lessor reserves right to specify rates of development and production in the public interest and to require lessee to subscribe to a cooperative or unit plan, within 30 days of notice, if deemed necessary for proper development and operation of area, field, or pool embracing these leased lands. Lessee must drill and produce wells necessary to protect leased lands from drainage or pay compensatory royalty for drainage in amount determined by lessor.

Sec. 5. Documents, evidence, and inspection - Lessee must file with proper office of lessor, not later than 30 days after effective date thereof, any contract or evidence of other arrangement for sale or disposal of production. At such times and in such form as lessor may prescribe, lessee must furnish detailed statements showing amounts and quality of all products removed and sold, proceeds therefrom, and amount used for production purposes or unavoidably lost. Lessee may be required to provide plats and schematic diagrams showing development work and improvements, and reports with respect to parties in interest, expenditures, and depreciation costs. In the form prescribed by lessor, lessee must keep a daily drilling record, a log, information on well surveys and tests, and a record of subsurface investigations and furnish copies to lessor when required. Lessee must keep open at all reasonable times for inspection by any representative of lessor, the leased premises and all wells, improvements, machinery, and fixtures thereon, and all books, accounts, maps, and records relative to operations, surveys, or investigations on or in the leased lands. Lessee must maintain copies of all contracts, sales agreements, accounting records, and documentation such as billings, invoices, or similar documentation that supports costs claimed as manufacturing, preparation, and/or transportation costs. All such records must be maintained in lessee's accounting offices for future audit by lessor. Lessee must maintain required records for 6 years after they are generated or, if an audit or investigation is underway, until released of the obligation to maintain such records by lessor.

During existence of this lease, information obtained under this section will be closed to inspection by the public in accordance with the Freedom of Information Act (5 U.S.C. 552).

Sec. 6. Conduct of operations - Lessee must conduct operations in a manner that minimizes adverse impacts to the land, air, and water, to cultural, biological, visual, and other resources, and to other land uses or users. Lessee must take reasonable measures deemed necessary by lessor to accomplish the intent of this section. To the extent consistent with lease rights granted, such measures may include, but are not limited to, modification to siting or design of facilities, timing of operations, and specification of interim and final reclamation measures. Lessor reserves the right to continue existing uses and to authorize future uses upon or in the leased lands, including the approval of easements or rights-of-way. Such uses must be conditioned so as to prevent unnecessary or unreasonable interference with rights of lessee.

Prior to disturbing the surface of the leased lands, lessee must contact lessor to be apprised of procedures to be followed and modifications or reclamation measures that may be necessary. Areas to be disturbed may require inventories or special studies to determine the extent of impacts to other resources. Lessee may be required to complete minor inventories or short term special studies under guidelines provided by lessor. If in the conduct of operations, threatened or endangered species, objects of historic or scientific interest, or substantial unanticipated environmental effects are observed, lessee must immediately contact lessor. Lessee must cease any operations that would result in the destruction of such species or objects.

Sec. 7. Mining operations - To the extent that impacts from mining operations would be substantially different or greater than those associated with normal drilling operations, lessor reserves the right to deny approval of such operations.

Sec. 8. Extraction of helium - Lessor reserves the option of extracting or having extracted helium from gas production in a manner specified and by means provided by lessor at no expense or loss to lessee or owner of the gas. Lessee must include in any contract of sale of gas the provisions of this section.

Sec. 9. Damages to property - Lessee must pay lessor for damage to lessor's improvements, and must save and hold lessor harmless from all claims for damage or harm to persons or property as a result of lease operations.

Sec. 10. Protection of diverse interests and equal opportunity - Lessee must pay, when due, all taxes legally assessed and levied under laws of the State or the United States; accord all employees complete freedom of purchase; pay all wages at least twice each month in lawful money of the United States; maintain a safe working environment in accordance with standard industry practices; and take measures necessary to protect the health and safety of the public.

Lessor reserves the right to ensure that production is sold at reasonable prices and to prevent monopoly. If lessee operates a pipeline, or owns controlling interest in a pipeline or a company operating a pipeline, which may be operated accessible to oil derived from these leased lands, lessee must comply with section 28 of the Mineral Leasing Act of 1920.

Continued on Page 4

(Form 3100-11, page 3)

Exhibit 4          Page 18 of 77

Kraken_000079

Lessee must comply with Executive Order No. 11246 of September 24, 1965, as amended, and regulations and relevant orders of the Secretary of Labor issued pursuant thereto. Neither lessee nor lessee's subcontractors must maintain segregated facilities.

Sec. 11. Transfer of lease interests and relinquishment of lease - As required by regulations, lessee must file with lessor any assignment or other transfer of an interest in this lease. Lessee may relinquish this lease or any legal subdivision by filing in the proper office a written relinquishment, which will be effective as of the date of filing, subject to the continued obligation of the lessee and surety to pay all accrued rentals and royalties.

Sec. 12. Delivery of premises - At such time as all or portions of this lease are returned to lessor, lessee must place affected wells in condition for suspension or abandonment, reclaim the land as specified by lessor and, within a reasonable period of time, remove equipment and improvements not deemed necessary by lessor for preservation of producible wells.

Sec. 13. Proceedings in case of default - If lessee fails to comply with any provisions of this lease, and the noncompliance continues for 30 days after written notice thereof, this lease will be subject to cancellation unless or until the leasehold contains a well capable of production of oil or gas in paying quantities, or the lease is committed to an approved cooperative or unit plan or communitization agreement which contains a well capable of production of unitized substances in paying quantities. This provision will not be construed to prevent the exercise by lessor of any other legal and equitable remedy, including waiver of the default. Any such remedy or waiver will not prevent later cancellation for the same default occurring at any other time. Lessee will be subject to applicable previsions and penalties of FOGRMA (30 U.S.C. 1701).

Sec. 14. Heirs and successors-in-interest - Each obligation of this lease will extend to and be binding upon, and every benefit hereof will inure to the heirs, executors, administrators, successors, beneficiaries, or assignees of the respective parties hereto.

A. General:

1. The BLM will complete page 1 of the form.

2. For competitive leases, a bidder must submit a completed bid form (3000-002). For all other leases, the lessee must sign item 3. If additional principals need to be listed, please include those on a separate sheet. See 2 CFR 180.995 for the definition of principals.

## NOTICES

This form is exempt from the Paperwork Reduction Act of 1995 (P.L. 104-13) under 5 CFR 1320.3(h)(1).

The Privacy Act of 1974 and the regulations in 43 CFR 2.48(d) provide that you be furnished with the following information in connection with information required by this oil and gas lease.

AUTHORITY: 30 U.S.C. 181 et seq.; 30 U.S.C 351-359; 42 U.S.C. 6508.

PRINCIPAL PURPOSE: The information is to be used to process oil and gas leases.

ROUTINE USES: (1) The adjudication of the lessee's rights to the land or resources. (2) Documentation for public information in support of notations made on land status records for the management, disposal, and use of public lands and resources. (3) Transfer to appropriate Federal agencies when consent or concurrence is required prior to granting a right in public lands or resources. (4)(5) Information from the record and/or the record will be transferred to appropriate Federal, State, local or foreign agencies, when relevant to civil, criminal or regulatory investigations or prosecutions.

EFFECT OF NOT PROVIDING INFORMATION: Disclosure of the information is voluntary. If all the information is not provided, the lease may be rejected. See regulations at 43 CFR 3100.

(Form 3100-11, page 4)

Exhibit 4        Page 19 of 77

Kraken_000080

## Parcels

# Montana

### MT-2024-07-6937 Split Estate
### MTMT106370188

MT, Havre Field Office, BLM, PD

T. 37  N., R. 4  E., MONTANA PRINCIPAL

   Sec. 24 NW1/4NW1/4.

Liberty County

40 Acres

Rental $120.00

16.670% Royalty Rate

Stipulations:

   **Standard 16-3** BLM Stipulation for Oil And Gas Lease Stipulations
   **CSU 12-60** BLM Stipulation CSU for Cultural Resource Survey
   **CSU 12-62** BLM Stipulation CSU for Soils - Sensitive Soils
   **HQ-CR-1** BLM Lease Notice LN for Cultural Resource Protection
   **HQ-MLA-1** BLM Lease Notice LN for Notice to Lessee Concerning Mineral Leasing Act Section 2(a)(2)(A)
   **HQ-TES-1** BLM Lease Notice LN for Threatened and Endangered Species Act
   **LN 14-2** BLM Lease Notice LN for Cultural Resources
   **LN 14-12** BLM Lease Notice LN for Paleontological Resource Inventory Requirement
   **LN 14-18** BLM Lease Notice LN for Air Resource Analysis
   **LN 14-20** BLM Lease Notice LN for Migratory Bird Treaty Act
   **NSO 11-137** BLM Stipulation NSO for National Register of Historic Places (NRHP) Eligible Properties/Districts

EOI #MT00018392

### MT-2024-07-0367 Split Estate
### MTMT106352693

MT, Havre Field Office, BLM, ACQ

T. 34  N., R. 21  E., MONTANA PRINCIPAL

   Sec. 1 SW1/4;
   Sec. 2 LOTS 2 thru 4;
   Sec. 2 SW1/4NE1/4, S1/2NW1/4, E1/2SE1/4;
   Sec. 3 LOTS 1.

Blaine County

521.66 Acres

Rental $1,566.00

16.670% Royalty Rate

Stipulations:

   **Standard 16-3** BLM Stipulation for Oil And Gas Lease Stipulations
   **CSU 12-25** BLM Stipulation CSU for Riparian, Wetlands

Exhibit 4     Page 20 of 77

Kraken_000081

For the following lands:

T. 34 N., R. 21 E., MONTANA PRINCIPAL, Sec. 2 LOTS 2 thru 4, SW1/4NE1/4, S1/2NW1/4, E1/2SE1/4; Sec. 3 LOTS 1;

**CSU 12-62** BLM Stipulation CSU for Soils - Sensitive Soils

For the following lands:

T. 34 N., R. 21 E., MONTANA PRINCIPAL, Sec. 1 NW1/4SW1/4; Sec. 2 LOTS 2 thru 4, SW1/4NE1/4, S1/2NW1/4, E1/2SE1/4; Sec. 3 LOTS 1;

**CSU 12-64** BLM Stipulation CSU for Visual Resources

**CSU 12-67** BLM Stipulation CSU for Greater Sage-Grouse Nesting Habitat (General Habitat Management Areas)

**HQ-CR-1** BLM Lease Notice LN for Cultural Resource Protection

**HQ-MLA-1** BLM Lease Notice LN for Notice to Lessee Concerning Mineral Leasing Act Section 2(a)(2)(A)

**HQ-TES-1** BLM Lease Notice LN for Threatened and Endangered Species Act

**LN 14-11** BLM Lease Notice LN for Greater Sage-Grouse Habitat

**LN 14-12** BLM Lease Notice LN for Paleontological Resource Inventory Requirement

**LN 14-15** BLM Lease Notice LN for Sprague's Pipit

**LN 14-18** BLM Lease Notice LN for Air Resource Analysis

**LN 14-20** BLM Lease Notice LN for Migratory Bird Treaty Act

**LN 14-23** BLM Lease Notice LN for Setback From Human Occupied Residences Requirement

**LN 14-37** BLM Lease Notice LN for Greater Sage-Grouse Habitat Conservation

**LN 14-39** BLM Lease Notice LN for Raptors

**NSO 11-70** BLM Stipulation NSO for Streams, Waterbodies, Riparian, Wetland, And Floodplains

For the following lands:

T. 34 N., R. 21 E., MONTANA PRINCIPAL, Sec. 2 SW1/4NE1/4, SW1/4NW1/4, SE1/4NW1/4;

**TL 13-47** BLM Stipulation TL for Sprague's Pipit

**TL 13-48** BLM Stipulation TL for Winter Range - Big Game and Greater Sage-Grouse

EOI #MT00018193


**MT-2024-07-6947 Split Estate**
**MTMT106370189**

MT, Miles City Field Office, BLM, PD

T. 9  S., R. 41  E., MONTANA PRINCIPAL

Sec. 21 ALL.

Big Horn County

640 Acres

Rental $1,920.00

16.670% Royalty Rate

Stipulations:

**Standard 16-3** BLM Stipulation for Oil And Gas Lease Stipulations

**CSU 12-24** BLM Stipulation CSU for Soils, Sensitive Soils

**CSU 12-25** BLM Stipulation CSU for Riparian, Wetlands

For the following lands:

Exhibit 4   Page 21 of 77

Kraken_000082

T. 9 S., R. 41 E., MONTANA PRINCIPAL, Sec. 21 NW1/4SE1/4;
**CSU 12-26** BLM Stipulation CSU for Big Game Crucial Winter Range
**CSU 12-27** BLM Stipulation CSU for Sharp-Tailed Grouse Leks and Nesting Habitat
**CSU 12-28** BLM Stipulation CSU for Bighorn Sheep Habitat
**CSU 12-30** BLM Stipulation CSU for Sage-Grouse General Habitat Management Areas
**HQ-CR-1** BLM Lease Notice LN for Cultural Resource Protection
**HQ-MLA-1** BLM Lease Notice LN for Notice to Lessee Concerning Mineral Leasing Act Section 2(a)(2)(A)
**HQ-TES-1** BLM Lease Notice LN for Threatened and Endangered Species Act
**LN 14-1** BLM Lease Notice LN for Land Use Authorization
**LN 14-2** BLM Lease Notice LN for Cultural Resources
**LN 14-11** BLM Lease Notice LN for Greater Sage-Grouse Habitat
**LN 14-12** BLM Lease Notice LN for Paleontological Resource Inventory Requirement
**LN 14-18** BLM Lease Notice LN for Air Resource Analysis
**LN 14-20** BLM Lease Notice LN for Migratory Bird Treaty Act
**LN 14-33** BLM Lease Notice LN for Cultural Inventory Requirement
**LN 14-37** BLM Lease Notice LN for Greater Sage-Grouse Habitat Conservation
**LN 14-39** BLM Lease Notice LN for Raptors
**LN 14-40** BLM Lease Notice LN for Big Game Winter Range and Migration Corridors
**NSO 11-73** BLM Stipulation NSO for Raptors
For the following lands:
T. 9 S., R. 41 E., MONTANA PRINCIPAL, Sec. 21 NE1/4NE1/4, NW1/4NE1/4, S1/2SW1/4, SW1/4SE1/4;
**NSO 11-79** BLM Stipulation NSO for Sage-Grouse Habitat - Priority Areas, West Decker Restoration Area, South Carter Restoration Area
**TL 13-33** BLM Stipulation TL for Raptors
EOI #MT00018777


**MT-2024-07-6946 Split Estate**
**MTMT106370190**

MT, Miles City Field Office, BLM, PD
<u>T. 9  S., R. 41  E., MONTANA PRINCIPAL</u>
Sec. 28 NE1/4, E1/2NW1/4, S1/2.
Big Horn County
560 Acres
Rental $1,680.00
16.670% Royalty Rate
Stipulations:
**Standard 16-3** BLM Stipulation for Oil And Gas Lease Stipulations
**CSU 12-24** BLM Stipulation CSU for Soils, Sensitive Soils
**CSU 12-25** BLM Stipulation CSU for Riparian, Wetlands
For the following lands:
T. 9 S., R. 41 E., MONTANA PRINCIPAL, Sec. 28 SW1/4NE1/4, SE1/4NE1/4;
**CSU 12-26** BLM Stipulation CSU for Big Game Crucial Winter Range
**CSU 12-27** BLM Stipulation CSU for Sharp-Tailed Grouse Leks and Nesting Habitat

Exhibit 4        Page 22 of 77

Kraken_000083

**CSU 12-30** BLM Stipulation CSU for Sage-Grouse General Habitat Management Areas

**HQ-CR-1** BLM Lease Notice LN for Cultural Resource Protection

**HQ-MLA-1** BLM Lease Notice LN for Notice to Lessee Concerning Mineral Leasing Act Section 2(a)(2)(A)

**HQ-TES-1** BLM Lease Notice LN for Threatened and Endangered Species Act

**LN 14-1** BLM Lease Notice LN for Land Use Authorization

**LN 14-2** BLM Lease Notice LN for Cultural Resources

**LN 14-11** BLM Lease Notice LN for Greater Sage-Grouse Habitat

**LN 14-12** BLM Lease Notice LN for Paleontological Resource Inventory Requirement

**LN 14-18** BLM Lease Notice LN for Air Resource Analysis

**LN 14-20** BLM Lease Notice LN for Migratory Bird Treaty Act

**LN 14-37** BLM Lease Notice LN for Greater Sage-Grouse Habitat Conservation

**LN 14-39** BLM Lease Notice LN for Raptors

**LN 14-40** BLM Lease Notice LN for Big Game Winter Range and Migration Corridors

**NSO 11-73** BLM Stipulation NSO for Raptors

For the following lands:

     T. 9 S., R. 41 E., MONTANA PRINCIPAL, Sec. 28 W1/2NE1/4, E1/2NW1/4;

**NSO 11-79** BLM Stipulation NSO for Sage-Grouse Habitat - Priority Areas, West Decker Restoration Area, South Carter Restoration Area

For the following lands:

     T. 9 S., R. 41 E., MONTANA PRINCIPAL, Sec. 28 E1/2;

**TL 13-33** BLM Stipulation TL for Raptors

For the following lands:

     T. 9 S., R. 41 E., MONTANA PRINCIPAL, Sec. 28 NE1/4, E1/2NW1/4, N1/2SW1/4, NW1/4SE1/4;

EOI #MT00018777


**MT-2024-07-6945**

**MTMT106370191**

MT, Miles City Field Office, BLM, PD

<u>T. 24 N., R. 52 E., MONTANA PRINCIPAL</u>

   Sec. 8 S1/2SE1/4.

Richland County

80 Acres

Rental $240.00

16.670% Royalty Rate

Stipulations:

  **CSU 12-24** BLM Stipulation CSU for Soils, Sensitive Soils

  **HQ-CR-1** BLM Lease Notice LN for Cultural Resource Protection

  **HQ-MLA-1** BLM Lease Notice LN for Notice to Lessee Concerning Mineral Leasing Act Section 2(a)(2)(A)

  **HQ-TES-1** BLM Lease Notice LN for Threatened and Endangered Species Act

  **LN 14-1** BLM Lease Notice LN for Land Use Authorization

  **LN 14-2** BLM Lease Notice LN for Cultural Resources

  **LN 14-12** BLM Lease Notice LN for Paleontological Resource Inventory

Exhibit 4      Page 23 of 77

Kraken_000084

Requirement
**LN 14-18** BLM Lease Notice LN for Air Resource Analysis
**LN 14-20** BLM Lease Notice LN for Migratory Bird Treaty Act
**LN 14-33** BLM Lease Notice LN for Cultural Inventory Requirement
**LN 14-39** BLM Lease Notice LN for Raptors
**LN 14-40** BLM Lease Notice LN for Big Game Winter Range and Migration
Corridors
EOI #MT00018687

**MT-2024-07-6941**
**MTMT106370192**

MT, Miles City Field Office, BLM, PD
T. 26 N., R. 57 E., MONTANA PRINCIPAL
    Sec. 5 LOTS 1;
    Sec. 5 S1/2NE1/4, SE1/4.
Richland County
279.57 Acres
Rental $840.00
16.670% Royalty Rate
Stipulations:
    **Standard 16-3** BLM Stipulation for Oil And Gas Lease Stipulations
    **CSU 12-24** BLM Stipulation CSU for Soils, Sensitive Soils
    **CSU 12-28** BLM Stipulation CSU for Bighorn Sheep Habitat
    **HQ-CR-1** BLM Lease Notice LN for Cultural Resource Protection
    **HQ-MLA-1** BLM Lease Notice LN for Notice to Lessee Concerning Mineral
    Leasing Act Section 2(a)(2)(A)
    **HQ-TES-1** BLM Lease Notice LN for Threatened and Endangered Species Act
    **LN 14-2** BLM Lease Notice LN for Cultural Resources
    **LN 14-12** BLM Lease Notice LN for Paleontological Resource Inventory
    Requirement
    **LN 14-14** BLM Lease Notice LN for Cultural Visual Setting
    **LN 14-18** BLM Lease Notice LN for Air Resource Analysis
    **LN 14-20** BLM Lease Notice LN for Migratory Bird Treaty Act
    **LN 14-22** BLM Lease Notice LN for Cultural Resources Setting Consideration Zones
    **LN 14-33** BLM Lease Notice LN for Cultural Inventory Requirement
    **LN 14-39** BLM Lease Notice LN for Raptors
    **LN 14-40** BLM Lease Notice LN for Big Game Winter Range and Migration
    Corridors
    **NSO 11-69** BLM Stipulation NSO for Badlands, Rock Outcrop
    For the following lands:
        T. 26 N., R. 57 E., MONTANA PRINCIPAL, Sec. 5 SW1/4SE1/4, SE1/4SE1/4;
    **NSO 11-70** BLM Stipulation NSO for Streams, Waterbodies, Riparian, Wetland, And
    Floodplains
EOI #MT00018442

**MT-2024-07-0376 Split Estate**
**MTMT106370193**

Exhibit 4        Page 24 of 77

Kraken_000085

MT, Miles City Field Office, BLM, PD

<u>T. 26  N., R. 57  E., MONTANA PRINCIPAL</u>
   Sec. 6 LOTS 1,4,6,7;
   Sec. 6 SE1/4NE1/4, W1/2SE1/4.

Richland County

262.42 Acres

Rental $789.00

16.670% Royalty Rate

Stipulations:
   **Standard 16-3** BLM Stipulation for Oil And Gas Lease Stipulations
   **CSU 12-24** BLM Stipulation CSU for Soils, Sensitive Soils
   **CSU 12-27** BLM Stipulation CSU for Sharp-Tailed Grouse Leks and Nesting Habitat
   **HQ-CR-1** BLM Lease Notice LN for Cultural Resource Protection
   **HQ-MLA-1** BLM Lease Notice LN for Notice to Lessee Concerning Mineral Leasing Act Section 2(a)(2)(A)
   **HQ-TES-1** BLM Lease Notice LN for Threatened and Endangered Species Act
   **LN 14-2** BLM Lease Notice LN for Cultural Resources
   **LN 14-12** BLM Lease Notice LN for Paleontological Resource Inventory Requirement
   **LN 14-14** BLM Lease Notice LN for Cultural Visual Setting
   **LN 14-18** BLM Lease Notice LN for Air Resource Analysis
   **LN 14-19** BLM Lease Notice LN for Special Status Species
   **LN 14-20** BLM Lease Notice LN for Migratory Bird Treaty Act
   **LN 14-22** BLM Lease Notice LN for Cultural Resources Setting Consideration Zones
   **LN 14-33** BLM Lease Notice LN for Cultural Inventory Requirement
   **LN 14-39** BLM Lease Notice LN for Raptors
   **LN 14-40** BLM Lease Notice LN for Big Game Winter Range and Migration Corridors
   **NSO 11-69** BLM Stipulation NSO for Badlands, Rock Outcrop
   **NSO 11-70** BLM Stipulation NSO for Streams, Waterbodies, Riparian, Wetland, And Floodplains
   For the following lands:
      T. 26 N., R. 57 E., MONTANA PRINCIPAL, Sec. 6 LOTS 1,4,6, SW1/4SE1/4;
EOI #MT00018443


**MT-2024-07-0381 Split Estate**
**MTMT106370194**

MT, Miles City Field Office, BLM, PD

<u>T. 26  N., R. 57  E., MONTANA PRINCIPAL</u>
   Sec. 7 LOTS 1,2;
   Sec. 7 NE1/4, E1/2NW1/4, NE1/4SW1/4, N1/2SE1/4.

Richland County

430.21 Acres

Rental $1,293.00

16.670% Royalty Rate

Stipulations:
   **Standard 16-3** BLM Stipulation for Oil And Gas Lease Stipulations

Kraken_000086

**CSU 12-24** BLM Stipulation CSU for Soils, Sensitive Soils
**CSU 12-27** BLM Stipulation CSU for Sharp-Tailed Grouse Leks and Nesting Habitat
**HQ-CR-1** BLM Lease Notice LN for Cultural Resource Protection
**HQ-MLA-1** BLM Lease Notice LN for Notice to Lessee Concerning Mineral Leasing Act Section 2(a)(2)(A)
**HQ-TES-1** BLM Lease Notice LN for Threatened and Endangered Species Act
**LN 14-1** BLM Lease Notice LN for Land Use Authorization
**LN 14-2** BLM Lease Notice LN for Cultural Resources
**LN 14-12** BLM Lease Notice LN for Paleontological Resource Inventory Requirement
**LN 14-14** BLM Lease Notice LN for Cultural Visual Setting
**LN 14-18** BLM Lease Notice LN for Air Resource Analysis
**LN 14-19** BLM Lease Notice LN for Special Status Species
**LN 14-20** BLM Lease Notice LN for Migratory Bird Treaty Act
**LN 14-22** BLM Lease Notice LN for Cultural Resources Setting Consideration Zones
**LN 14-33** BLM Lease Notice LN for Cultural Inventory Requirement
**LN 14-39** BLM Lease Notice LN for Raptors
**LN 14-40** BLM Lease Notice LN for Big Game Winter Range and Migration Corridors
**NSO 11-69** BLM Stipulation NSO for Badlands, Rock Outcrop
**NSO 11-70** BLM Stipulation NSO for Streams, Waterbodies, Riparian, Wetland, And Floodplains
For the following lands:
   T. 26 N., R. 57 E., MONTANA PRINCIPAL, Sec. 7 LOTS 2, NE1/4NW1/4, SE1/4NW1/4;
EOI #MT00018444

**MT-2024-07-0382**
**MTMT106370195**

MT, Miles City Field Office, BLM, PD
T. 26 N., R. 57 E., MONTANA PRINCIPAL
   Sec. 8 N1/2, N1/2SW1/4, SW1/4SW1/4, N1/2SE1/4.
Richland County
520 Acres
Rental $1,560.00
16.670% Royalty Rate
Stipulations:
   **Standard 16-3** BLM Stipulation for Oil And Gas Lease Stipulations
   **CSU 12-24** BLM Stipulation CSU for Soils, Sensitive Soils
   **CSU 12-27** BLM Stipulation CSU for Sharp-Tailed Grouse Leks and Nesting Habitat
   **HQ-CR-1** BLM Lease Notice LN for Cultural Resource Protection
   **HQ-MLA-1** BLM Lease Notice LN for Notice to Lessee Concerning Mineral Leasing Act Section 2(a)(2)(A)
   **HQ-TES-1** BLM Lease Notice LN for Threatened and Endangered Species Act
   **LN 14-1** BLM Lease Notice LN for Land Use Authorization
   **LN 14-2** BLM Lease Notice LN for Cultural Resources
   **LN 14-12** BLM Lease Notice LN for Paleontological Resource Inventory Requirement

Exhibit 4        Page 26 of 77

Kraken_000087

**LN 14-14** BLM Lease Notice LN for Cultural Visual Setting
**LN 14-18** BLM Lease Notice LN for Air Resource Analysis
**LN 14-19** BLM Lease Notice LN for Special Status Species
**LN 14-20** BLM Lease Notice LN for Migratory Bird Treaty Act
**LN 14-22** BLM Lease Notice LN for Cultural Resources Setting Consideration Zones
**LN 14-33** BLM Lease Notice LN for Cultural Inventory Requirement
**LN 14-39** BLM Lease Notice LN for Raptors
**LN 14-40** BLM Lease Notice LN for Big Game Winter Range and Migration Corridors
**NSO 11-69** BLM Stipulation NSO for Badlands, Rock Outcrop
**NSO 11-70** BLM Stipulation NSO for Streams, Waterbodies, Riparian, Wetland, And Floodplains
For the following lands:
    T. 26 N., R. 57 E., MONTANA PRINCIPAL, Sec. 8 NW1/4NE1/4,
SW1/4NE1/4, SE1/4NW1/4, NW1/4SE1/4;
EOI #MT00018445

## MT-2024-07-0365 Split Estate
## MTMT106370196

MT, Miles City Field Office, BLM, PD
<u>T. 27 N., R. 57 E., MONTANA PRINCIPAL</u>
    Sec. 8 NW1/4SW1/4;
    Sec. 9 W1/2NW1/4;
    Sec. 17 E1/2NE1/4, NE1/4SE1/4.
Roosevelt County

240 Acres
Rental $720.00
16.670% Royalty Rate
Stipulations:
    **Standard 16-3** BLM Stipulation for Oil And Gas Lease Stipulations
    **CSU 12-24** BLM Stipulation CSU for Soils, Sensitive Soils
    **CSU 12-35** BLM Stipulation CSU for Significant Cultural Resources, NRHP - Eligible Properties and Districts, And TCPs, NHLs And Historic Battlefields
    For the following lands:
        T. 27 N., R. 57 E., MONTANA PRINCIPAL, Sec. 9 W1/2NW1/4;
    **HQ-CR-1** BLM Lease Notice LN for Cultural Resource Protection
    **HQ-MLA-1** BLM Lease Notice LN for Notice to Lessee Concerning Mineral Leasing Act Section 2(a)(2)(A)
    **HQ-TES-1** BLM Lease Notice LN for Threatened and Endangered Species Act
    **LN 14-2** BLM Lease Notice LN for Cultural Resources
    **LN 14-12** BLM Lease Notice LN for Paleontological Resource Inventory Requirement
    **LN 14-18** BLM Lease Notice LN for Air Resource Analysis
    **LN 14-19** BLM Lease Notice LN for Special Status Species
    **LN 14-20** BLM Lease Notice LN for Migratory Bird Treaty Act
    **LN 14-22** BLM Lease Notice LN for Cultural Resources Setting Consideration Zones
    **LN 14-33** BLM Lease Notice LN for Cultural Inventory Requirement
    **LN 14-39** BLM Lease Notice LN for Raptors

Exhibit 4      Page 27 of 77

Kraken_000088

**LN 14-40** BLM Lease Notice LN for Big Game Winter Range and Migration Corridors

**NSO 11-69** BLM Stipulation NSO for Badlands, Rock Outcrop

For the following lands:

T. 27 N., R. 57 E., MONTANA PRINCIPAL, Sec. 8 NW1/4SW1/4, E1/2NE1/4;

EOI #MT00018397

### MT-2024-07-0366 Split Estate
### MTMT106370197

MT, Miles City Field Office, BLM, PD

T. 28 N., R. 57 E., MONTANA PRINCIPAL

Sec. 13 SW1/4SE1/4;

Sec. 23 LOTS 2,3.

Roosevelt County

112.26 Acres

Rental $339.00

16.670% Royalty Rate

Stipulations:

**Standard 16-3** BLM Stipulation for Oil And Gas Lease Stipulations

**CSU 12-24** BLM Stipulation CSU for Soils, Sensitive Soils

For the following lands:

T. 28 N., R. 57 E., MONTANA PRINCIPAL, Sec. 13 SW1/4SE1/4;

**HQ-CR-1** BLM Lease Notice LN for Cultural Resource Protection

**HQ-MLA-1** BLM Lease Notice LN for Notice to Lessee Concerning Mineral Leasing Act Section 2(a)(2)(A)

**HQ-TES-1** BLM Lease Notice LN for Threatened and Endangered Species Act

**LN 14-2** BLM Lease Notice LN for Cultural Resources

**LN 14-12** BLM Lease Notice LN for Paleontological Resource Inventory Requirement

**LN 14-18** BLM Lease Notice LN for Air Resource Analysis

**LN 14-19** BLM Lease Notice LN for Special Status Species

**LN 14-20** BLM Lease Notice LN for Migratory Bird Treaty Act

**LN 14-33** BLM Lease Notice LN for Cultural Inventory Requirement

**LN 14-39** BLM Lease Notice LN for Raptors

**LN 14-40** BLM Lease Notice LN for Big Game Winter Range and Migration Corridors

**NSO 11-70** BLM Stipulation NSO for Streams, Waterbodies, Riparian, Wetland, And Floodplains

For the following lands:

T. 28 N., R. 57 E., MONTANA PRINCIPAL, Sec. 23 LOTS 2;

EOI #MT00018465

### MT-2024-07-0401
### MTMT106370198

MT, Miles City Field Office, BLM, PD

T. 26 N., R. 59 E., MONTANA PRINCIPAL

Sec. 4 POR OF LOT 11 WITHIN THE LINEAR CONFINES OF SEC 5.

Exhibit 4        Page 28 of 77

Kraken_000089

Roosevelt County

4.388 Acres

Rental $15.00

16.670% Royalty Rate

Agreements:

**MTMT105738329** The land within this parcel is committed to Communitization Agreement (CA) MTM 111531, Bakken/Three Forks Formation, effective 12/01/2020, which includes the entire area of this parcel. The operator of this CA is Kraken Oil & Gas LLC. The successful bidder should contact the CA operator to determine their rights under this CA. The CA operator may require the successful bidder to pay a proportionate cost of the well, including drilling, completing, equipping, and operating the well as a condition of participating in the CA.

Stipulations:

**CSU 12-24** BLM Stipulation CSU for Soils, Sensitive Soils

**CSU 12-25** BLM Stipulation CSU for Riparian, Wetlands

**CSU 12-33** BLM Stipulation CSU for VRM Classes II

**CSU 12-35** BLM Stipulation CSU for Significant Cultural Resources, NRHP - Eligible Properties and Districts, And TCPs, NHLs And Historic Battlefields

**HQ-CR-1** BLM Lease Notice LN for Cultural Resource Protection

**HQ-MLA-1** BLM Lease Notice LN for Notice to Lessee Concerning Mineral Leasing Act Section 2(a)(2)(A)

**HQ-TES-1** BLM Lease Notice LN for Threatened and Endangered Species Act

**LN 14-12** BLM Lease Notice LN for Paleontological Resource Inventory Requirement

**LN 14-18** BLM Lease Notice LN for Air Resource Analysis

**LN 14-19** BLM Lease Notice LN for Special Status Species

**LN 14-20** BLM Lease Notice LN for Migratory Bird Treaty Act

**LN 14-22** BLM Lease Notice LN for Cultural Resources Setting Consideration Zones

**LN 14-33** BLM Lease Notice LN for Cultural Inventory Requirement

**LN 14-39** BLM Lease Notice LN for Raptors

**LN 14-40** BLM Lease Notice LN for Big Game Winter Range and Migration Corridors

**NSO 11-70** BLM Stipulation NSO for Streams, Waterbodies, Riparian, Wetland, And Floodplains

**NSO 11-75** BLM Stipulation NSO for Piping Plover

**NSO 11-78** BLM Stipulation NSO for Pallid Sturgeon Habitat

**NSO 11-81** BLM Stipulation NSO for Recreation

**NSO 11-83** BLM Stipulation NSO for National Historic Trails

EOI #MT00018725


**MT-2024-07-0402**

**MTMT106370199**

MT, Miles City Field Office, BLM, PD

T. 26  N., R. 59  E., MONTANA PRINCIPAL

    Sec. 5 LOTS 2,15.

Roosevelt County

3.383 Acres

Exhibit 4          Page 29 of 77

Kraken_000090

Rental $12.00

16.670% Royalty Rate

Agreements:

**MTMT105738329** The land within this parcel is committed to Communitization Agreement (CA) MTM 111531, Bakken/Three Forks Formation, effective 12/1/2020, which includes the entire area of this parcel. The operator of this CA is Kraken Oil & Gas LLC. The successful bidder should contact the CA operator to determine their rights under this CA. The CA operator may require the successful bidder to pay a proportionate cost of the well, including drilling, completing, equipping, and operating the well as a condition of participating in the CA.

Stipulations:

**Standard 16-3** BLM Stipulation for Oil And Gas Lease Stipulations

**CSU 12-24** BLM Stipulation CSU for Soils, Sensitive Soils

**CSU 12-25** BLM Stipulation CSU for Riparian, Wetlands

**CSU 12-33** BLM Stipulation CSU for VRM Classes II

**CSU 12-35** BLM Stipulation CSU for Significant Cultural Resources, NRHP - Eligible Properties and Districts, And TCPs, NHLs And Historic Battlefields

**HQ-CR-1** BLM Lease Notice LN for Cultural Resource Protection

**HQ-MLA-1** BLM Lease Notice LN for Notice to Lessee Concerning Mineral Leasing Act Section 2(a)(2)(A)

**HQ-TES-1** BLM Lease Notice LN for Threatened and Endangered Species Act

**LN 14-2** BLM Lease Notice LN for Cultural Resources

**LN 14-12** BLM Lease Notice LN for Paleontological Resource Inventory Requirement

**LN 14-14** BLM Lease Notice LN for Cultural Visual Setting

**LN 14-18** BLM Lease Notice LN for Air Resource Analysis

**LN 14-20** BLM Lease Notice LN for Migratory Bird Treaty Act

**LN 14-22** BLM Lease Notice LN for Cultural Resources Setting Consideration Zones

**LN 14-33** BLM Lease Notice LN for Cultural Inventory Requirement

**LN 14-39** BLM Lease Notice LN for Raptors

**LN 14-40** BLM Lease Notice LN for Big Game Winter Range and Migration Corridors

**NSO 11-70** BLM Stipulation NSO for Streams, Waterbodies, Riparian, Wetland, And Floodplains

**NSO 11-75** BLM Stipulation NSO for Piping Plover

**NSO 11-78** BLM Stipulation NSO for Pallid Sturgeon Habitat

**NSO 11-81** BLM Stipulation NSO for Recreation

**NSO 11-83** BLM Stipulation NSO for National Historic Trails

EOI #MT00018728

**MT-2024-07-0403 Split Estate**
**MTMT106370200**

MT, Miles City Field Office, BLM, PD

T. 7 N., R. 39 E., PRINCIPAL MER

Sec. 30 LOTS 3,4.

Rosebud County

68.78 Acres

Exhibit 4          Page 30 of 77

Kraken_000091

Rental $207.00

16.670% Royalty Rate

Stipulations:

    **Standard 16-3** BLM Stipulation for Oil And Gas Lease Stipulations

    **CSU 12-24** BLM Stipulation CSU for Soils, Sensitive Soils

    **CSU 12-25** BLM Stipulation CSU for Riparian, Wetlands

    For the following lands:

        T. 7 N., R. 39 E., PRINCIPAL MER, Sec. 30 LOTS 3;

    **CSU 12-30** BLM Stipulation CSU for Sage-Grouse General Habitat Management Areas

    **HQ-CR-1** BLM Lease Notice LN for Cultural Resource Protection

    **HQ-MLA-1** BLM Lease Notice LN for Notice to Lessee Concerning Mineral Leasing Act Section 2(a)(2)(A)

    **HQ-TES-1** BLM Lease Notice LN for Threatened and Endangered Species Act

    **LN 14-2** BLM Lease Notice LN for Cultural Resources

    **LN 14-11** BLM Lease Notice LN for Greater Sage-Grouse Habitat

    **LN 14-12** BLM Lease Notice LN for Paleontological Resource Inventory Requirement

    **LN 14-14** BLM Lease Notice LN for Cultural Visual Setting

    **LN 14-18** BLM Lease Notice LN for Air Resource Analysis

    **LN 14-20** BLM Lease Notice LN for Migratory Bird Treaty Act

    **LN 14-22** BLM Lease Notice LN for Cultural Resources Setting Consideration Zones

    **LN 14-33** BLM Lease Notice LN for Cultural Inventory Requirement

    **LN 14-37** BLM Lease Notice LN for Greater Sage-Grouse Habitat Conservation

    **LN 14-40** BLM Lease Notice LN for Big Game Winter Range and Migration Corridors

EOI #MT00017183

### MT-2024-07-0270 Split Estate
### MTMT106370201

MT, Miles City Field Office, BLM, PD

<u>T. 7 N., R. 39 E., PRINCIPAL MER</u>

    Sec. 30 NW1/4NE1/4, E1/2SW1/4, SW1/4SE1/4.

Rosebud County

160 Acres

Rental $480.00

16.670% Royalty Rate

Stipulations:

    **Standard 16-3** BLM Stipulation for Oil And Gas Lease Stipulations

    **CSU 12-24** BLM Stipulation CSU for Soils, Sensitive Soils

    **CSU 12-25** BLM Stipulation CSU for Riparian, Wetlands

    For the following lands:

        T. 7 N., R. 39 E., PRINCIPAL MER, Sec. 30 NW1/4NE1/4;

    **HQ-CR-1** BLM Lease Notice LN for Cultural Resource Protection

    **HQ-MLA-1** BLM Lease Notice LN for Notice to Lessee Concerning Mineral Leasing Act Section 2(a)(2)(A)

    **HQ-TES-1** BLM Lease Notice LN for Threatened and Endangered Species Act

    **LN 14-2** BLM Lease Notice LN for Cultural Resources

Exhibit 4    Page 31 of 77

Kraken_000092

**LN 14-11** BLM Lease Notice LN for Greater Sage-Grouse Habitat
**LN 14-12** BLM Lease Notice LN for Paleontological Resource Inventory Requirement
**LN 14-14** BLM Lease Notice LN for Cultural Visual Setting
**LN 14-18** BLM Lease Notice LN for Air Resource Analysis
**LN 14-19** BLM Lease Notice LN for Special Status Species
**LN 14-20** BLM Lease Notice LN for Migratory Bird Treaty Act
**LN 14-22** BLM Lease Notice LN for Cultural Resources Setting Consideration Zones
**LN 14-33** BLM Lease Notice LN for Cultural Inventory Requirement
**LN 14-37** BLM Lease Notice LN for Greater Sage-Grouse Habitat Conservation
**NSO 11-70** BLM Stipulation NSO for Streams, Waterbodies, Riparian, Wetland, And Floodplains
For the following lands:
     T. 7 N., R. 39 E., PRINCIPAL MER, Sec. 30 NW1/4NE1/4;
EOI #MT00017183


**MT-2024-07-0360 Split Estate**
**MTMT106370202**

MT, Miles City Field Office, BLM, ACQ
T. 26 N., R. 59 E., PRINCIPAL MER
     Sec. 21 W1/2NW1/4, NW1/4SW1/4.
Richland County
120 Acres
Rental $360.00
50 % US Mineral Interest
16.670% Royalty Rate
Agreements:

> **MTMT105667610** The land within this parcel is committed to Communitization Agreement (CA) MTM 111087, Bakken/Three Forks Formation, effective 6/01/2018, which includes the entire area of this parcel. The operator of this CA is Kraken Oil & Gas, LLC. The successful bidder should contact the CA operator to determine their rights under this CA. The CA operator may require the successful bidder to pay a proportionate cost of the well, including drilling, completing, equipping, and operating the well as a condition of participating in the CA.

Stipulations:

**Standard 16-3** BLM Stipulation for Oil And Gas Lease Stipulations
**CSU 12-24** BLM Stipulation CSU for Soils, Sensitive Soils
**CSU 12-35** BLM Stipulation CSU for Significant Cultural Resources, NRHP - Eligible Properties and Districts, And TCPs, NHLs And Historic Battlefields
**HQ-CR-1** BLM Lease Notice LN for Cultural Resource Protection
**HQ-MLA-1** BLM Lease Notice LN for Notice to Lessee Concerning Mineral Leasing Act Section 2(a)(2)(A)
**HQ-TES-1** BLM Lease Notice LN for Threatened and Endangered Species Act
**LN 14-2** BLM Lease Notice LN for Cultural Resources
**LN 14-12** BLM Lease Notice LN for Paleontological Resource Inventory Requirement
**LN 14-14** BLM Lease Notice LN for Cultural Visual Setting

Exhibit 4          Page 32 of 77

Kraken_000093

**LN 14-18** BLM Lease Notice LN for Air Resource Analysis
**LN 14-19** BLM Lease Notice LN for Special Status Species
**LN 14-20** BLM Lease Notice LN for Migratory Bird Treaty Act
**LN 14-22** BLM Lease Notice LN for Cultural Resources Setting Consideration Zones
**LN 14-33** BLM Lease Notice LN for Cultural Inventory Requirement
**LN 14-39** BLM Lease Notice LN for Raptors
**NSO 11-70** BLM Stipulation NSO for Streams, Waterbodies, Riparian, Wetland, And Floodplains
EOI #MT00017966


## North Dakota

### ND-2024-07-0735 Split Estate
### NDMT106370203

ND, North Dakota Field Office, BLM, PD
T. 157 N., R. 92 W., FIFTH PRINCIPAL

Sec. 16 BED OF LAKE RIPAR TO LOTS 1-6 DESC BY M&B.
That portion of the bed of a lake located in Township 157 North, Range 92
West, 5th P.M., Mountrail County, North Dakota which is riparian to Lots
1, 2, 3, 4, 5 and 6 in Section 15 of said township and described as follows:
Beginning on the Southerly side of said lake at the meander corner of; fractional
sections 16 and 17; thence in section 16 with the meanders S. 73°
30' E., 18.20 chains; thence S. 47° 30' E., 17.00 chains; thence N. 61° 30' E.,
4.00 chains; thence S. 69° 30 1 E., 18.00 chains; thence N. 46° 45' E.~ 10.00
chains; thence N. 36° E., 20.00 chains; thence N. 10° E., 13.00 chains; thence
N. 40° 45' W., 11.00 chains; thence N. 89° 45' W., 3.00 chains; thence
N. 47° 30' W., 20.00 chains; thence N. 64° 30' W., 8.00 chains; thence
N. 49° 30' W., 9.06 chains to the meander corner of fractional section 9 and
16; thence leaving the meander line S. 35° 22' W., 56.36 chains to the
meander corner of sections 16 and 17 on the Southerly side of said lake and
the point of beginning. The described tract contains 268.91 acres.

Mountrail County
268.91 Acres
Rental $807.00
16.670% Royalty Rate
Stipulations:

**Standard 16-3** BLM Stipulation for Standard Oil and Gas Lease Stipulations
**CSU 12-5** BLM Stipulation CSU for Riparian Areas of Wetlands, Streams, and Rivers
**HQ-CR-1** BLM Lease Notice LN for Cultural Resource Protection
**HQ-MLA-1** BLM Lease Notice LN for Notice to Lessee Concerning Mineral Leasing Act Section 2(a)(2)(A)
**HQ-TES-1** BLM Lease Notice LN for Threatened and Endangered Species Act
**LN 14-2** BLM Lease Notice LN for Cultural Resources
**LN 14-3** BLM Lease Notice LN for Paleontological Resources
**LN 14-12** BLM Lease Notice LN for Paleontological Resource Inventory Requirement

Exhibit 4        Page 33 of 77

Kraken_000094

**LN 14-18** BLM Lease Notice LN for Air Resource Analysis
**LN 14-20** BLM Lease Notice LN for Migratory Bird Treaty Act
**LN 14-33** BLM Lease Notice LN for Cultural Inventory Requirement
**NSO 11-33** BLM Stipulation NSO for Wetlands, Lakes, and Ponds
**TL 13-15** BLM Stipulation TL for Waterfowl Nesting Habitat
EOI #MT00018232

## ND-2024-07-0734
## NDMT106370204

ND, North Dakota Field Office, COE:Sakakawea Lake & Garrison Dam, PD
T. 152  N., R. 93  W., FIFTH PRINCIPAL
    Sec. 27 LOTS 7;
    Sec. 32 LOTS 7.
Mountrail County
4.82 Acres
Rental $15.00
16.670% Royalty Rate
Agreements:
    **NDMT105396148** The land within this parcel is committed to Indian
    Communitization Agreement (CA) NDMT10539614 (NDM 101373), Bakken
    Formation, effective January 1, 2011, which includes the entire area of this parcel.
    The operator of this CA is Marathon Oil Company. The successful bidder should
    contact the CA operator to determine their rights under this CA. The CA operator
    may require the successful bidder to pay a proportionate cost of the well, including
    drilling, completing, equipping, and operating the well as a condition of participating
    in the CA.
    **NDMT105695501** The land within this parcel is committed to Indian
    Communitization Agreement (CA) NDMT105695501 (NDM110708) Bakken
    Formation, effective pending, which includes the entire area of this parcel. The
    operator of this CA is Marathon Oil Company. The successful bidder should contact
    the CA operator to determine their rights under this CA. The CA operator may require
    the successful bidder to pay a proportionate cost of the well, including drilling,
    completing, equipping, and operating the well as a condition of participating in the
    CA.
    **NDMT105482836** The land within this parcel is committed to Indian
    Communitization Agreement (CA) NDMT105482836 (NDM 110561), Bakken
    Formation, effective pending, which includes the entire area of this parcel. The
    operator of this CA is Slawson Exploration Company Inc.. The successful bidder
    should contact the CA operator to determine their rights under this CA. The CA
    operator may require the successful bidder to pay a proportionate cost of the well,
    including drilling, completing, equipping, and operating the well as a condition of
    participating in the CA.
    **NDMT105678431** The land within this parcel is committed to Indian
    Communitization Agreement (CA) NDMT105678431 (NDM 109821), Bakken
    Formation, effective pending, which includes the entire area of this parcel. The
    operator of this CA is Marathon Oil Company. The successful bidder should contact
    the CA operator to determine their rights under this CA. The CA operator may require
    the successful bidder to pay a proportionate cost of the well, including drilling,

Exhibit 4        Page 34 of 77

Kraken_000095

completing, equipping, and operating the well as a condition of participating in the CA.

**NDMT105685365** The land within this parcel is committed to Indian Communitization Agreement (CA) NDMT105685365 (NDM 101124) Bakken Formation, effective September 1, 2010, which includes the entire area of this parcel. The operator of this CA is Marathon Oil Company. The successful bidder should contact the CA operator to determine their rights under this CA. The CA operator may require the successful bidder to pay a proportionate cost of the well, including drilling, completing, equipping, and operating the well as a condition of participating in the CA.

Stipulations:

**Standard 16-3** BLM Stipulation for Standard Oil and Gas Lease Stipulations
**HQ-CR-1** BLM Lease Notice LN for Cultural Resource Protection
**HQ-MLA-1** BLM Lease Notice LN for Notice to Lessee Concerning Mineral Leasing Act Section 2(a)(2)(A)
**HQ-TES-1** BLM Lease Notice LN for Threatened and Endangered Species Act
**LN 14-12** BLM Lease Notice LN for Paleontological Resource Inventory Requirement
**COE 18-1** SMA Stipulation for Standard Stipulation for Lands Under Jurisdiction of Department of the Army, Corps of Engineers
**COE 18-2** SMA Stipulation for Corps of Engineers Standard Stipulation
**COE 18-3** SMA Stipulation for Section 10/404 Regulatory Stipulation
**COE 18-4** SMA Stipulation for Section 408 Stipulation

EOI #MT00019031

**ND-2024-07-6850**
**NDMT106370205**

ND, North Dakota Field Office, COE:Sakakawea Lake & Garrison Dam, ACQ
T. 153  N., R. 93  W., FIFTH PRINCIPAL
   Sec. 28 ACCR TO LOTS 1,2.

Mountrail County

273.22 Acres

Rental $822.00

50 % US Mineral Interest

16.670% Royalty Rate

Stipulations:

**Standard 16-3** BLM Stipulation for Standard Oil and Gas Lease Stipulations
**HQ-CR-1** BLM Lease Notice LN for Cultural Resource Protection
**HQ-MLA-1** BLM Lease Notice LN for Notice to Lessee Concerning Mineral Leasing Act Section 2(a)(2)(A)
**HQ-TES-1** BLM Lease Notice LN for Threatened and Endangered Species Act
**LN 14-12** BLM Lease Notice LN for Paleontological Resource Inventory Requirement
**COE 18-1** SMA Stipulation for Standard Stipulation for Lands Under Jurisdiction of Department of the Army, Corps of Engineers
**COE 18-2** SMA Stipulation for Corps of Engineers Standard Stipulation
**COE 18-3** SMA Stipulation for Section 10/404 Regulatory Stipulation
**COE 18-4** SMA Stipulation for Section 408 Stipulation

Exhibit 4     Page 35 of 77

Kraken_000096

EOI #MT00015973

## ND-2024-07-6870
## NDMT106370206

ND, North Dakota Field Office, COE:Sakakawea Lake & Garrison Dam, PD
T. 147 N., R. 94 W., FIFTH PRINCIPAL

    Sec. 24 POR OF LOT 12 WITHIN THE LINEAR CONFINES OF SEC. 19 T.
    147N, R. 93W (1.61+1.31).

Dunn County

2.92 Acres

Rental $9.00

16.670% Royalty Rate

Agreements:

    **NDMT105306119** The land within this parcel is committed to pending
Communitization Agreement (CA) NDM 104551, Bakken Formation, effective
pending, which includes the entire area of this parcel. The operator of this CA is
Enerplus Resources (USA) Corp. The successful bidder should contact the CA
operator to determine their rights under this CA. The CA operator may require the
successful bidder to pay a proportionate cost of the well, including drilling,
completing, equipping, and operating the well as a condition of participating in the
CA.

Stipulations:

    **Standard 16-3** BLM Stipulation for Standard Oil and Gas Lease Stipulations
    **HQ-CR-1** BLM Lease Notice LN for Cultural Resource Protection
    **HQ-MLA-1** BLM Lease Notice LN for Notice to Lessee Concerning Mineral
Leasing Act Section 2(a)(2)(A)
    **HQ-TES-1** BLM Lease Notice LN for Threatened and Endangered Species Act
    **LN 14-12** BLM Lease Notice LN for Paleontological Resource Inventory
Requirement
    **LN 14-18** BLM Lease Notice LN for Air Resource Analysis
    **LN 14-52** BLM Lease Notice LN for Lease Notice for US Army Corps of Engineers
administered lands within the exterior boundary of the Fort Berthold Indian
Reservation
    **COE 18-1** SMA Stipulation for Standard Stipulation for Lands Under Jurisdiction of
Department of the Army, Corps of Engineers
    **COE 18-2** SMA Stipulation for Corps of Engineers Standard Stipulation
    **COE 18-3** SMA Stipulation for Section 10/404 Regulatory Stipulation
    **COE 18-4** SMA Stipulation for Section 408 Stipulation

EOI #MT00018943

## ND-2024-07-6871
## NDMT106370207

ND, North Dakota Field Office, COE:Sakakawea Lake & Garrison Dam, ACQ
T. 147 N., R. 94 W., FIFTH PRINCIPAL

    Sec. 24 POR OF LOT 13 WITHIN THE LINEAR CONFINES OF SEC. 19
    T.147N, R93W (1.18+0.46);
    Sec. 24 POR OF LOT 10 WITHIN THE LINEAR CONFINES OF SEC. 13 & 14

Exhibit 4    Page 36 of 77

Kraken_000097

(0.08+0.96+3.07+0.19+0.60).

Dunn County

6.54 Acres

Rental $21.00

16.670% Royalty Rate

Agreements:

**NDMT105306119** The land within this parcel is committed to pending Communitization Agreement (CA) NDM 104551, Bakken Formation, effective pending, which includes the entire area of this parcel. The operator of this CA is Enerplus Resources (USA) Corp. The successful bidder should contact the CA operator to determine their rights under this CA. The CA operator may require the successful bidder to pay a proportionate cost of the well, including drilling, completing, equipping, and operating the well as a condition of participating in the CA.

For the following lands:

T. 147 N., R. 94 W., 5TH PM, Sec. 24 POR OF LOT 13 WITHIN THE LINEAR CONFINES OF SEC. 19 T.147N, R93W (1.18+0.46);

**NDMT105306338** The land within this parcel is committed to pending Communitization Agreement (CA) NDM 1054451, Bakken Formation, effective pending, which includes the entire area of this parcel. The operator of this CA is Marathon Oil Co. The successful bidder should contact the CA operator to determine their rights under this CA. The CA operator may require the successful bidder to pay a proportionate cost of the well, including drilling, completing, equipping, and operating the well as a condition of participating in the CA.

For the following lands:

T. 147 N., R. 94 W., 5TH PM, Sec. 24 POR OF LOT 10 WITHIN THE LINEAR CONFINES OF SEC. 13 & 14 (0.08+0.96+3.07+0.19+0.60);

Stipulations:

**Standard 16-3** BLM Stipulation for Standard Oil and Gas Lease Stipulations

**HQ-CR-1** BLM Lease Notice LN for Cultural Resource Protection

**HQ-MLA-1** BLM Lease Notice LN for Notice to Lessee Concerning Mineral Leasing Act Section 2(a)(2)(A)

**HQ-TES-1** BLM Lease Notice LN for Threatened and Endangered Species Act

**LN 14-12** BLM Lease Notice LN for Paleontological Resource Inventory Requirement

**LN 14-18** BLM Lease Notice LN for Air Resource Analysis

**LN 14-52** BLM Lease Notice LN for Lease Notice for US Army Corps of Engineers administered lands within the exterior boundary of the Fort Berthold Indian Reservation

**COE 18-1** SMA Stipulation for Standard Stipulation for Lands Under Jurisdiction of Department of the Army, Corps of Engineers

**COE 18-2** SMA Stipulation for Corps of Engineers Standard Stipulation

**COE 18-3** SMA Stipulation for Section 10/404 Regulatory Stipulation

**COE 18-4** SMA Stipulation for Section 408 Stipulation

EOI #MT00018945

Exhibit 4          Page 37 of 77

Kraken_000098

**ND-2024-07-0733 Split Estate**
**NDMT106370208**

ND, North Dakota Field Office, BLM, PD
T. 154 N., R. 96 W., FIFTH PRINCIPAL
    Sec. 33 SE1/4SE1/4.
McKenzie County
40 Acres
Rental $120.00
16.670% Royalty Rate
Agreements:

> **NDMT105726970** The land within this parcel is committed to Communitization Agreement (CA) NDM 112352, Bakken Formation, effective Pending, which includes the entire area of this parcel. The operator of this CA is Ovintiv Production Inc. The successful bidder should contact the CA operator to determine their rights under this CA. The CA operator may require the successful bidder to pay a proportionate cost of the well, including drilling, completing, equipping, and operating the well as a condition of participating in the CA.

Stipulations:

> **Standard 16-3** BLM Stipulation for Standard Oil and Gas Lease Stipulations
> **CSU 12-5** BLM Stipulation CSU for Riparian Areas of Wetlands, Streams, and Rivers
> **HQ-CR-1** BLM Lease Notice LN for Cultural Resource Protection
> **HQ-MLA-1** BLM Lease Notice LN for Notice to Lessee Concerning Mineral Leasing Act Section 2(a)(2)(A)
> **HQ-TES-1** BLM Lease Notice LN for Threatened and Endangered Species Act
> **LN 14-2** BLM Lease Notice LN for Cultural Resources
> **LN 14-12** BLM Lease Notice LN for Paleontological Resource Inventory Requirement
> **LN 14-18** BLM Lease Notice LN for Air Resource Analysis
> **LN 14-20** BLM Lease Notice LN for Migratory Bird Treaty Act
> **LN 14-33** BLM Lease Notice LN for Cultural Inventory Requirement
> **TL 13-15** BLM Stipulation TL for Waterfowl Nesting Habitat
> **TL 13-24** BLM Stipulation TL for Golden Eagle Previously Occupied Nests

EOI #MT00019048


**ND-2024-07-0178**
**NDMT106370209**

ND, North Dakota Field Office, FS:Dakota Prairies Grassland, PD
T. 135 N., R. 104 W., FIFTH PRINCIPAL
    Sec. 18 LOTS 1,2,4.
Slope County
108.98 Acres
Rental $327.00
16.670% Royalty Rate
Stipulations:

> **Standard 16-3** BLM Stipulation for Standard Oil and Gas Lease Stipulations

Exhibit 4          Page 38 of 77

Kraken_000099

**HQ-CR-1** BLM Lease Notice LN for Cultural Resource Protection
**HQ-MLA-1** BLM Lease Notice LN for Notice to Lessee Concerning Mineral Leasing Act Section 2(a)(2)(A)
**HQ-TES-1** BLM Lease Notice LN for Threatened and Endangered Species Act
**LN 14-12** BLM Lease Notice LN for Paleontological Resource Inventory Requirement
**LMG2020-LN-01** SMA Stipulation for Floodplain and Wetlands
**LMG2020-LN-02** SMA Stipulation for Threatened, Endangered, and Sensitive Plant or Animal Species
**LMG2020-LN-03** SMA Stipulation for Cultural Resources
**LMG2020-LN-04** SMA Stipulation for Paleontological Resources
**LMG2020-N-01 (Medora RD)** SMA Stipulation for Notice for Lands of the National Forest System Under Jurisdiction of Department of Agriculture
**LMG2020-NSO-01** SMA Stipulation for Slopes > 40%
For the following lands:
     T. 135 N., R. 104 W., FIFTH PRINCIPAL, Sec. 18 PORTIONS OF LOTS 1,2,4;
**LMG2020-NSO-06** SMA Stipulation for Sage Grouse Priority Habitat
**LMG2020-NSO-07** SMA Stipulation for Sharp-tailed Grouse Display Grounds
For the following lands:
     T. 135 N., R. 104 W., FIFTH PRINCIPAL, Sec. 18 portions of Lot 4;
**LMG2020-NSO-14** SMA Stipulation for Inventoried Roadless Areas
**LMG2020-TL-01** SMA Stipulation for Sharp-tailed Grouse Display Grounds
For the following lands:
     T. 135 N., R. 104 W., FIFTH PRINCIPAL, Sec. 18 Lot 2; portions of Lots 1,4;
EOI #MT00016263
FS Parcel#135-104-019


### ND-2024-07-0179
### NDMT106370210

ND, North Dakota Field Office, FS:Dakota Prairies Grassland, PD
T. 135 N., R. 104 W., FIFTH PRINCIPAL
    Sec. 18 E1/2NE1/4, E1/2NW1/4, NE1/4SE1/4.
Slope County
200 Acres
Rental $600.00
16.670% Royalty Rate
Stipulations:
**Standard 16-3** BLM Stipulation for Standard Oil and Gas Lease Stipulations
**HQ-CR-1** BLM Lease Notice LN for Cultural Resource Protection
**HQ-MLA-1** BLM Lease Notice LN for Notice to Lessee Concerning Mineral Leasing Act Section 2(a)(2)(A)
**HQ-TES-1** BLM Lease Notice LN for Threatened and Endangered Species Act
**LN 14-12** BLM Lease Notice LN for Paleontological Resource Inventory Requirement
**LMG2020-CSU-01** SMA Stipulation for Water, Wetlands, Woody Draws, Riparian, and Floodplains
For the following lands:

Exhibit 4     Page 39 of 77

Kraken_000100

T. 135 N., R. 104 W., FIFTH PRINCIPAL, Sec. 18 PORTIONS OF NENE;
**LMG2020-LN-01** SMA Stipulation for Floodplain and Wetlands
**LMG2020-LN-02** SMA Stipulation for Threatened, Endangered, and Sensitive Plant
or Animal Species
**LMG2020-LN-03** SMA Stipulation for Cultural Resources
**LMG2020-LN-04** SMA Stipulation for Paleontological Resources
**LMG2020-N-01 (Medora RD)** SMA Stipulation for Notice for Lands of the
National Forest System Under Jurisdiction of Department of Agriculture
**LMG2020-NSO-01** SMA Stipulation for Slopes > 40%
For the following lands:
    T. 135 N., R. 104 W., FIFTH PRINCIPAL, Sec. 18 portions of E2NE, SENW,
NESE;
**LMG2020-NSO-06** SMA Stipulation for Sage Grouse Priority Habitat
**LMG2020-NSO-14** SMA Stipulation for Inventoried Roadless Areas
For the following lands:
    T. 135 N., R. 104 W., FIFTH PRINCIPAL, Sec. 18 E1/2NW1/4;
**LMG2020-TL-01** SMA Stipulation for Sharp-tailed Grouse Display Grounds
For the following lands:
    T. 135 N., R. 104 W., FIFTH PRINCIPAL, Sec. 18 SENE, SENW, NESE;
PORTIONS OF NENE, NENW;
EOI #MT00016263
FS Parcel#135-104-019


**ND-2024-07-0163**
**NDMT106370211**

ND, North Dakota Field Office, FS:Dakota Prairies Grassland, ACQ
T. 135  N., R. 104  W., FIFTH PRINCIPAL
    Sec. 29 NW1/4.
Slope County
160 Acres
Rental $480.00
16.670% Royalty Rate
Stipulations:
  **Standard 16-3** BLM Stipulation for Standard Oil and Gas Lease Stipulations
  **HQ-CR-1** BLM Lease Notice LN for Cultural Resource Protection
  **HQ-MLA-1** BLM Lease Notice LN for Notice to Lessee Concerning Mineral
  Leasing Act Section 2(a)(2)(A)
  **HQ-TES-1** BLM Lease Notice LN for Threatened and Endangered Species Act
  **LN 14-12** BLM Lease Notice LN for Paleontological Resource Inventory
  Requirement
  **LMG2020-LN-01** SMA Stipulation for Floodplain and Wetlands
  **LMG2020-LN-02** SMA Stipulation for Threatened, Endangered, and Sensitive Plant
  or Animal Species
  **LMG2020-LN-03** SMA Stipulation for Cultural Resources
  **LMG2020-LN-04** SMA Stipulation for Paleontological Resources
  **LMG2020-N-01 (Medora RD)** SMA Stipulation for Notice for Lands of the
  National Forest System Under Jurisdiction of Department of Agriculture
  **LMG2020-NSO-06** SMA Stipulation for Sage Grouse Priority Habitat

Exhibit 4        Page 40 of 77

Kraken_000101

**LMG2020-NSO-07** SMA Stipulation for Sharp-tailed Grouse Display Grounds
For the following lands:

  T. 135 N., R. 104 W., FIFTH PRINCIPAL, Sec. 29 PORTIONS OF N2NW;
**LMG2020-NSO-14** SMA Stipulation for Inventoried Roadless Areas
**LMG2020-TL-01** SMA Stipulation for Sharp-tailed Grouse Display Grounds
For the following lands:

  T. 135 N., R. 104 W., FIFTH PRINCIPAL, Sec. 29 S2NW; PORTIONS OF
N2NW;
EOI #MT00016264
FS Parcel#135-104-022

### ND-2024-07-0164
### NDMT106370212

ND, North Dakota Field Office, FS:Dakota Prairies Grassland, ACQ
T. 135  N., R. 104  W., FIFTH PRINCIPAL

 Sec. 30 LOTS 1 thru 4.

Slope County

146.4 Acres

Rental $441.00

16.670% Royalty Rate

Stipulations:

 **HQ-CR-1** BLM Lease Notice LN for Cultural Resource Protection
 **HQ-MLA-1** BLM Lease Notice LN for Notice to Lessee Concerning Mineral
Leasing Act Section 2(a)(2)(A)
 **HQ-TES-1** BLM Lease Notice LN for Threatened and Endangered Species Act
 **LN 14-12** BLM Lease Notice LN for Paleontological Resource Inventory
Requirement
 **LMG2020-LN-01** SMA Stipulation for Floodplain and Wetlands
 **LMG2020-LN-02** SMA Stipulation for Threatened, Endangered, and Sensitive Plant
or Animal Species
 **LMG2020-LN-03** SMA Stipulation for Cultural Resources
 **LMG2020-LN-04** SMA Stipulation for Paleontological Resources
 **LMG2020-N-01 (Medora RD)** SMA Stipulation for Notice for Lands of the
National Forest System Under Jurisdiction of Department of Agriculture
 **LMG2020-NSO-01** SMA Stipulation for Slopes > 40%
For the following lands:

  T. 135 N., R. 104 W., FIFTH PRINCIPAL, Sec. 30 PORTIONS OF LOTS 1, 4;
 **LMG2020-NSO-06** SMA Stipulation for Sage Grouse Priority Habitat
 **LMG2020-NSO-07** SMA Stipulation for Sharp-tailed Grouse Display Grounds
For the following lands:

  T. 135 N., R. 104 W., FIFTH PRINCIPAL, Sec. 30 LOT 3; PORTIONS OF
LOTS 2, 4;
 **LMG2020-NSO-14** SMA Stipulation for Inventoried Roadless Areas
 **LMG2020-TL-01** SMA Stipulation for Sharp-tailed Grouse Display Grounds
For the following lands:

  T. 135 N., R. 104 W., FIFTH PRINCIPAL, Sec. 30 LOT 1; PORTIONS OF
LOT 2, 4;
EOI #MT00016264

Exhibit 4   Page 41 of 77

Kraken_000102

FS Parcel#135-104-022

**ND-2024-07-0165**
**NDMT106370213**

ND, North Dakota Field Office, FS:Dakota Prairies Grassland, ACQ
T. 135 N., R. 104 W., FIFTH PRINCIPAL
   Sec. 30 NE1/4, E1/2NW1/4, E1/2SW1/4.

Slope County

320 Acres

Rental $960.00

16.670% Royalty Rate

Stipulations:

   **Standard 16-3** BLM Stipulation for Standard Oil and Gas Lease Stipulations
   **HQ-CR-1** BLM Lease Notice LN for Cultural Resource Protection
   **HQ-MLA-1** BLM Lease Notice LN for Notice to Lessee Concerning Mineral
   Leasing Act Section 2(a)(2)(A)
   **HQ-TES-1** BLM Lease Notice LN for Threatened and Endangered Species Act
   **LN 14-12** BLM Lease Notice LN for Paleontological Resource Inventory
   Requirement
   **LMG2020-CSU-01** SMA Stipulation for Water, Wetlands, Woody Draws, Riparian,
   and Floodplains
   For the following lands:
      T. 135 N., R. 104 W., FIFTH PRINCIPAL, Sec. 30 PORTIONS OF NWNE,
   SENE;
   **LMG2020-LN-01** SMA Stipulation for Floodplain and Wetlands
   **LMG2020-LN-02** SMA Stipulation for Threatened, Endangered, and Sensitive Plant
   or Animal Species
   **LMG2020-LN-03** SMA Stipulation for Cultural Resources
   **LMG2020-LN-04** SMA Stipulation for Paleontological Resources
   **LMG2020-N-01 (Medora RD)** SMA Stipulation for Notice for Lands of the
   National Forest System Under Jurisdiction of Department of Agriculture
   **LMG2020-NSO-01** SMA Stipulation for Slopes > 40%
   For the following lands:
      T. 135 N., R. 104 W., FIFTH PRINCIPAL, Sec. 30 PORTIONS OF NE;
   **LMG2020-NSO-06** SMA Stipulation for Sage Grouse Priority Habitat
   **LMG2020-NSO-07** SMA Stipulation for Sharp-tailed Grouse Display Grounds
   For the following lands:
      T. 135 N., R. 104 W., FIFTH PRINCIPAL, Sec. 30 PORTIONS OF SENW,
   E2SW;
   **LMG2020-NSO-14** SMA Stipulation for Inventoried Roadless Areas
   **LMG2020-TL-01** SMA Stipulation for Sharp-tailed Grouse Display Grounds
   For the following lands:
      T. 135 N., R. 104 W., FIFTH PRINCIPAL, Sec. 30 NE, NENW; PORTIONS
   OF SENW, E2SW;

EOI #MT00016264

FS Parcel#135-104-022

Exhibit 4    Page 42 of 77

Kraken_000103

## STATISTICS

| | | |
|---|---|---|
| North Dakota Field Office | | |
| Forest Service Parcels/Acreage | 5 | 935.38 |
| Corp of Engineers | 4 | 287.50 |
| Split Estate | 2 | 308.91 |
| Havre Field Office | | |
| Split Estate | 2 | 561.66 |
| Miles City Field Office | | |
| BLM Surface | 5 | 887.34 |
| Split Estate | 9 | 2593.67 |
| Total Parcels/Acreage | 27 | 5574.46 |

Exhibit 4        Page 43 of 77

Kraken_000104

Stipulations

## BLM Stipulations

### _Standard 16-3-Oil And Gas Lease Stipulations_

ESTHETICS--To maintain esthetic values, all surface-disturbing activities, semi-permanent and permanent facilities may require special design including location, painting and camouflage to blend with the natural surroundings and meet the intent of the visual quality objectives of the Federal Surface Managing Agency (SMA).

EROSION CONTROL--Surface-disturbing activities may be prohibited during muddy and/or wet soil periods.

CONTROLLED OR LIMITED SURFACE USE STIPULATION --This stipulation may be modified, consistent with land use documents, when specifically approved in writing by the Bureau of Land Management (BLM) with concurrence of the SMA. Distances and/or time periods may be made less restrictive depending on the actual on-ground conditions. The prospective lessee should contact the SMA for more specific locations and information regarding the restrictive nature of this stipulation.

The lessee/operator is given notice that the lands within this lease may include special areas and that such areas may contain special values, may be needed for special purposes, or may require special attention to prevent damage to surface and/or other resources. Possible special areas are identified below. Any surface use or occupancy within such special areas will be strictly controlled, or if absolutely necessary, excluded. Use or occupancy will be restricted only when the BLM and/or the SMA demonstrates the restriction necessary for the protection of such special areas and existing or planned uses. Appropriate modifications to imposed restrictions will be made for the maintenance and operations of producing oil and gas wells.

After the SMA has been advised of specific proposed surface use or occupancy on the leased lands, and on request of the lessee/operator, the Agency will furnish further data on any special areas which may include:

100 feet from the edge of the rights-of-way from highways, designated county roads and appropriate federally-owned or controlled roads and recreation trails.

500 feet, or when necessary, within the 25-year flood plain from reservoirs, lakes, and ponds and intermittent, ephemeral or small perennial streams: 1,000 feet, or when necessary, within the 100-year flood plain from larger perennial streams, rivers, and domestic water supplies.

500 feet from grouse strutting grounds. Special care to avoid nesting areas associated with strutting grounds will be necessary during the period from March 1, to June 30. One-fourth mile from identified essential habitat of state and federal sensitive species. Crucial wildlife winter ranges during the period from December 1 to May 15, and in elk calving areas during the period from May 1 to June 30.

300 feet from occupied buildings, developed recreational areas, undeveloped recreational areas receiving concentrated public use and sites eligible for or designated as National Register sites.

Exhibit 4        Page 44 of 77

Kraken_000105

Seasonal road closures, roads for special uses, specified roads during heavy traffic periods and on areas having restrictive off-road vehicle designations.

On slopes over 30 percent or 20 percent on extremely erodible or slumping soils.

APPLICATIONS FOR PERMIT TO DRILL (APDs)--The appropriate BLM field offices are responsible for the receipt, processing, and approval of APDs. The APDs are to be submitted by oil and gas operators pursuant to the requirements found in Onshore Oil and Gas Order No. 1 -- Approval of Operations on Onshore Federal and Indian Oil and Gas Leases (Circular No. 2538). Additional requirements for the conduct of oil and gas operations can be found in the Code of Federal Regulations Title 43, Part 3160. Copies of Onshore Oil and Gas Order No. 1, and pertinent regulations, can be obtained from the BLM field offices in which the operations are proposed. Early coordination with these offices on proposals is encouraged.

CULTURAL AND PALEONTOLOGICAL RESOURCES--The SMA is responsible for assuring that the leased lands are examined to determine if cultural resources are present and to specify mitigation measures. Prior to undertaking any surface-disturbing activities on the lands covered by this lease, the lessee or operator, unless notified to the contrary by the SMA, shall:

1. Contact the appropriate SMA to determine if a site-specific cultural resource inventory is required. If an inventory is required, then:

2. Engage the services of a cultural resource specialist acceptable to the SMA to conduct a cultural resource inventory of the area of proposed surface disturbance. The operator may elect to inventory an area larger than the area of proposed disturbance to cover possible site relocation which may result from environmental or other considerations. An acceptable inventory report is to be submitted to the SMA for review and approval no later than that time when an otherwise complete application for approval of drilling or subsequent surface-disturbing operation is submitted.

3. Implement mitigation measures required by the SMA. Mitigation may include the relocation of proposed lease-related activities or other protective measures such as testing salvage and recordation. Where impacts to cultural resources cannot be mitigated to the satisfaction of the SMA, surface occupancy on that area must be prohibited.

The operator shall immediately bring to the attention of the SMA any cultural or paleontological resources discovered as a result of approved operations under this lease, and not disturb such discoveries until directed to proceed by the SMA.

ENDANGERED OR THREATENED SPECIES--The SMA is responsible for assuring that the leased land is examined prior to undertaking any surface-disturbing activities to determine effects upon any plant or animal species, listed or proposed for listing as endangered or threatened, or their habitats. The findings of this examination may result in some restrictions to the operator's plans or even disallow use and occupancy that would be in violation of the Endangered Species Act of 1973 by detrimentally affecting endangered or threatened species or their habitats.

The lessee/operator may, unless notified by the authorized officer of the SMA that the examination is not necessary, conduct the examination on the leased lands at his discretion and cost. This examination must be done by or under the supervision of a qualified resources

Exhibit 4          Page 45 of 77

Kraken_000106

specialist approved by the SMA. An acceptable report must be provided to the SMA identifying the anticipated effects of a proposed action on endangered or threatened species or their habitats.

### Standard 16-3-Standard Oil and Gas Lease Stipulations

ESTHETICS--To maintain esthetic values, all surface-disturbing activities, semi-permanent and permanent facilities may require special design including location, painting and camouflage to blend with the natural surroundings and meet the intent of the visual quality objectives of the Federal Surface Managing Agency (SMA).

EROSION CONTROL--Surface-disturbing activities may be prohibited during muddy and/or wet soil periods.

CONTROLLED OR LIMITED SURFACE USE STIPULATION --This stipulation may be modified, consistent with land use documents, when specifically approved in writing by the Bureau of Land Management (BLM) with concurrence of the SMA. Distances and/or time periods may be made less restrictive depending on the actual on-ground conditions. The prospective lessee should contact the SMA for more specific locations and information regarding the restrictive nature of this stipulation.

The lessee/operator is given notice that the lands within this lease may include special areas and that such areas may contain special values, may be needed for special purposes, or may require special attention to prevent damage to surface and/or other resources. Possible special areas are identified below. Any surface use or occupancy within such special areas will be strictly controlled, or if absolutely necessary, excluded. Use or occupancy will be restricted only when the BLM and/or the SMA demonstrates the restriction necessary for the protection of such special areas and existing or planned uses. Appropriate modifications to imposed restrictions will be made for the maintenance and operations of producing oil and gas wells.

After the SMA has been advised of specific proposed surface use or occupancy on the leased lands, and on request of the lessee/operator, the Agency will furnish further data on any special areas which may include:

100 feet from the edge of the rights-of-way from highways, designated county roads and appropriate federally-owned or controlled roads and recreation trails.

500 feet, or when necessary, within the 25-year flood plain from reservoirs, lakes, and ponds and intermittent, ephemeral or small perennial streams: 1,000 feet, or when necessary, within the 100-year flood plain from larger perennial streams, rivers, and domestic water supplies.

500 feet from grouse strutting grounds. Special care to avoid nesting areas associated with strutting grounds will be necessary during the period from March 1, to June 30. One-fourth mile from identified essential habitat of state and federal sensitive species. Crucial wildlife winter ranges during the period from December 1 to May 15, and in elk calving areas during the period from May 1 to June 30.

300 feet from occupied buildings, developed recreational areas, undeveloped recreational areas receiving concentrated public use and sites eligible for or designated as National Register sites.

Exhibit 4    Page 46 of 77

Kraken_000107

Seasonal road closures, roads for special uses, specified roads during heavy traffic periods and on areas having restrictive off-road vehicle designations.

On slopes over 30 percent or 20 percent on extremely erodible or slumping soils.

APPLICATIONS FOR PERMIT TO DRILL (APDs)--The appropriate BLM field offices are responsible for the receipt, processing, and approval of APDs. The APDs are to be submitted by oil and gas operators pursuant to the requirements found in Onshore Oil and Gas Order No. 1 -- Approval of Operations on Onshore Federal and Indian Oil and Gas Leases (Circular No. 2538). Additional requirements for the conduct of oil and gas operations can be found in the Code of Federal Regulations Title 43, Part 3160. Copies of Onshore Oil and Gas Order No. 1, and pertinent regulations, can be obtained from the BLM field offices in which the operations are proposed. Early coordination with these offices on proposals is encouraged.

CULTURAL AND PALEONTOLOGICAL RESOURCES--The SMA is responsible for assuring that the leased lands are examined to determine if cultural resources are present and to specify mitigation measures. Prior to undertaking any surface-disturbing activities on the lands covered by this lease, the lessee or operator, unless notified to the contrary by the SMA, shall:

1. Contact the appropriate SMA to determine if a site-specific cultural resource inventory is required. If an inventory is required, then:

2. Engage the services of a cultural resource specialist acceptable to the SMA to conduct a cultural resource inventory of the area of proposed surface disturbance. The operator may elect to inventory an area larger than the area of proposed disturbance to cover possible site relocation which may result from environmental or other considerations. An acceptable inventory report is to be submitted to the SMA for review and approval no later than that time when an otherwise complete application for approval of drilling or subsequent surface-disturbing operation is submitted.

3. Implement mitigation measures required by the SMA. Mitigation may include the relocation of proposed lease-related activities or other protective measures such as testing salvage and recordation. Where impacts to cultural resources cannot be mitigated to the satisfaction of the SMA, surface occupancy on that area must be prohibited.

The operator shall immediately bring to the attention of the SMA any cultural or paleontological resources discovered as a result of approved operations under this lease, and not disturb such discoveries until directed to proceed by the SMA.

ENDANGERED OR THREATENED SPECIES--The SMA is responsible for assuring that the leased land is examined prior to undertaking any surface-disturbing activities to determine effects upon any plant or animal species, listed or proposed for listing as endangered or threatened, or their habitats. The findings of this examination may result in some restrictions to the operator's plans or even disallow use and occupancy that would be in violation of the Endangered Species Act of 1973 by detrimentally affecting endangered or threatened species or their habitats.

The lessee/operator may, unless notified by the authorized officer of the SMA that the examination is not necessary, conduct the examination on the leased lands at his discretion and cost. This examination must be done by or under the supervision of a qualified resources

Exhibit 4        Page 47 of 77

Kraken_000108

specialist approved by the SMA.  An acceptable report must be provided to the SMA identifying the anticipated effects of a proposed action on endangered or threatened species or their habitats.

## BLM Stipulations CSU

### *CSU 12-5-Riparian Areas of Wetlands, Streams, and Rivers*

Surface occupancy or use will be subject to the following special operating constraint:

No disturbance of riparian areas of wetlands, intermittent, ephemeral, or perennial streams and rivers would be allowed except for essential road and utility crossings.

For the purpose of:
Protection of riparian habitat. (NDRMP, p. 20)

Any changes to this stipulation will be made in accordance with the land use plan and/or the regulatory provisions for such changes.

Exception, Modification, Waiver: This stipulation may be waived or reduced if circumstances change, or if the lessee can demonstrate that operations can be conducted without causing unacceptable impacts.  Exceptions to this limitation in any particular year may be specifically approved in writing by the authorized officer.  In all cases, the stipulation (including any modification) will be designed to present the least restrictive measure for avoiding unacceptable adverse impacts.

### *CSU 12-24-Soils, Sensitive Soils*

Surface occupancy and use is subject to the following operating constraints: prior to surface occupancy and use, prior to surface disturbance on sensitive soils, a reclamation plan must be approved by the administrative officer. Sensitive soils are determined using a combination of slope and soil erodibility. The plan must demonstrate the following:

  o no other practicable alternatives exist for relocating the activity,
  o the activity will be located to reduce impacts to soil and water resources,
  o site productivity will be maintained or restored,
  o surface runoff and sedimentation will be adequately controlled,
  o on- and off-site areas will be protected from accelerated erosion,
  o that no areas susceptible to mass wasting would be disturbed, and
  o surface-disturbing activities will be prohibited during extended wet periods.

Objective: To maintain the chemical, physical, and biotic properties of soils which includes maintaining soil productivity, soil stability, and soil biotic properties. This will prevent excessive erosion, potential mass wasting, and improve the likelihood of successful reclamation.

Exception: The AO may grant an exception to this stipulation if the operator can demonstrate that the proposed action will not contribute to degradation of the soil resource (e.g. excessive soil erosion, mass wasting, and/or lost productivity) or downslope resource conditions (e.g. reduced water quality due to sedimentation).

Modification: The AO may modify the area affected by this stipulation if it is determined that

Exhibit 4          Page 48 of 77

Kraken_000109

portions of the leasehold do not contain sensitive soils.

Waiver: The AO may waive this stipulation if it is determined that the entire leasehold does not contain sensitive soils.

### CSU 12-25-Riparian, Wetlands

Surface occupancy and use is subject to the following operating constraints: prior to surface occupancy and use within 300 feet of riparian and/or wetland areas, a plan must be approved by the AO with design features that demonstrate how all actions would maintain and/or improve the functionality of riparian/wetland areas. The plan would address:

o potential impacts to riparian and wetland resources,
o mitigation to reduce impacts to acceptable levels (including timing restrictions),
o post-project restoration, and
o monitoring (the operator must conduct monitoring capable of detecting early signs of changing riparian and/or
  wetland conditions).

Objective: To protect the unique biological and hydrological features associated with riparian and wetland areas. Disturbances adjacent to riparian and/or wetland areas (including road use) can adversely impact these sensitive areas. This stipulation would protect these features from indirect effects produced within the adjacent ground. This would also encompass the floodplain along most first to third order streams.

Exception: The AO may grant an exception to this stipulation if the operator can demonstrate that the proposed action would not adversely impact wetland or riparian function or associated water quality.

Modification: The area affected by this stipulation can be modified by the AO if it is determined that portions of the lease area do not contain wetlands or riparian areas.

Waiver: This stipulation can be waived by the AO if it is determined that the entire lease area does not contain wetlands or riparian areas.

### CSU 12-26-Big Game Crucial Winter Range

Surface occupancy and use is subject to the following operating constraint: prior to surface occupancy and use within crucial winter ranges for big game wildlife, a plan must be approved by the AO that maintains the functionality of habitat.

Objective: To facilitate long-term maintenance of big game wildlife populations and protect white-tailed deer, mule deer, elk, and antelope crucial winter ranges from disturbance during winter use season.

Exception: None

Modification: The boundaries of the stipulated area can be modified if the AO determines portions of the leasehold no longer contain crucial winter range for big game wildlife.

Exhibit 4        Page 49 of 77

Kraken_000110

Waiver: This stipulation can be waived if the AO determines the entire leasehold no longer contains crucial winter range for big game wildlife.

### CSU 12-27-Sharp-Tailed Grouse Leks and Nesting Habitat

Surface occupancy and use is subject to design features on or within 2 miles of sharp-tailed grouse lek sites to protect breeding, nesting, and brood-rearing habitats at a level capable of supporting the long-term populations associated with the lek.

Objective: To protect sharp-tailed grouse lek sites and nesting habitats.

Exception: The AO, in coordination with MFWP, may grant an exception if the action will not result in nest abandonment or decrease productivity, by interfering with breeding, nesting, feeding, or brood rearing activities.

Modification: The AO may modify the boundaries of the stipulated area in coordination with MFWP, if portions of the leasehold are no longer within 2 miles of a lek active within the past 5 years, or not considered sharp-tailed grouse habitat.

Waiver: The AO may waive this stipulation in coordination with MFWP if the entire leasehold is no longer within 2 miles of a lek, active within the past 5 years.

### CSU 12-28-Bighorn Sheep Habitat

Surface occupancy and use is subject to the following operating constraints: prior to surface occupancy and use a plan shall be prepared by the proponent and approved by the AO with confirmation from MFWP. The plan must demonstrate to the AO's satisfaction, the function and suitability of the habitat will not be impaired.

Objective: To protect and maintain bighorn sheep and their habitats, a BLM priority species for management.

Exception: The AO, in coordination with MFWP, may grant an exception if the action will not impair the function or suitability of the bighorn sheep habitat.

Modification: The AO, in coordination with MFWP, may modify the boundaries of the stipulated area if portions are no longer bighorn sheep habitat.

Waiver: The AO, in coordination with MFWP, may waive this stipulation if the entire leasehold is no longer bighorn sheep habitat.

### CSU 12-30-Sage-Grouse General Habitat Management Areas

Surface occupancy and use within 2 miles of the perimeter of a lek active within the past 5 years may be restricted or prohibited. Prior to such activities, a plan to mitigate impacts to breeding or nesting sage-grouse; or breeding, nesting, or brood rearing habitat will be prepared by the proponent and implemented upon approval by the AO.

Objective: To protect breeding, nesting and brood rearing activities and habitat.

Exhibit 4        Page 50 of 77

Kraken_000111

Exception: The AO may grant an exception if the action would not agitate or bother breeding, or nesting sage-grouse to a degree that causes or is likely to cause:

   o physical injury, or,
   o decrease productivity, by substantially interfering with normal breeding, feeding, nesting or brood rearing activities;
     or nest abandonment.

Modification: The AO may modify the boundaries of the stipulated area if portions of the leasehold are no longer within 2 miles of a lek, active within the past 5 years.

Waiver: The AO may waive this stipulation if no portion of the leasehold is within 2 miles of the perimeter of an active lek.

### CSU 12-33-VRM Classes II

In order to retain the existing character of the landscape (VRM Class II Objective), oil and gas development activities will be located, designed, constructed, operated, and reclaimed within 2 years from initiation of construction so that activities should not attract attention of the casual observer. This stipulation does not apply to maintenance or workover activities.

Objective: To protect visual resource values while allowing energy development and related activities to occur which have been mitigated to retain the existing character of the landscape.

Exception: None

Modification: None

Waiver: None

### CSU 12-35-Significant Cultural Resources, NRHP - Eligible Properties and Districts, And TCPs, NHLs And Historic Battlefields

Surface occupancy and use and surface disturbance is restricted within the Setting Consideration Zone where the integrity of the setting is a contributing element of NRHP significance of a property, for the following historic properties: Wolf Mountains Battlefield NHL and Battle Butte Battlefield ACEC; Reynolds Battlefield site and Reynolds Battlefield ACEC; Cedar Creek Battlefield site and Cedar Creek Battlefield ACEC; and the Long Medicine Wheel ACEC, and all significant Cultural Resources, NRHP-eligible Properties and Districts, and TCPs, NHLs and Historic Battlefields and the Lewis and Clark National Historic Trail. Prior to surface disturbance, occupancy or use within the Setting Consideration Zone of the identified historic properties a mitigation plan (Plan) must be submitted to the BLM by the applicant as a component of the APD (BLM Form 3160-3) or Sundry Notice (BLM Form 3160-5) – Surface Use Plan of Operations. The operator may not initiate surface-disturbing activities unless the BLM AO has approved the Plan or approved it with conditions. (b) The Plan must demonstrate to the AO's satisfaction that the infrastructure will either not be visible or will result in a weak contrast rating and would not have an adverse effect on the setting of the historic properties, ensuring the setting of historic properties.

Objective: To protect inadvertent impacts to significant cultural properties, districts, and their

Exhibit 4        Page 51 of 77

Kraken_000112

settings; NRHP-eligible properties and districts; TCPs or those designated for traditional use and the settings in which they occur; and those properties determined to be of particular importance to American Indian groups, and NHLs and historic sites eligible for the NRHP and the setting or viewshed in which they occur.

Exception: The BLM AO may grant an exception if it is determined that the action is of a scale, sited in a location, or otherwise designed so that the action will not result in a more than a weak contrast rating. The Plan may be subject to consultation with Montana SHPO, applicable tribes, and other interested parties.

Modification: The BLM AO may modify the area subject to the stipulation based on local evaluation. The stipulation may be modified based on negative or positive monitoring results from similar proposed actions on similar sites. The modification may be subject to consultation with Montana SHPO, applicable tribes, and other interested parties.

Waiver: The BLM AO determines that the entire lease area does not contribute to the setting of a historic property, the waiver may be subject to consultation with Montana SHPO, applicable tribes, and other interested parties.

### CSU 12-60-Cultural Resource Survey

An inventory of those portions of the leased lands subject to proposed disturbance may be required prior to any surface disturbance to determine if cultural resources are present and to identify needed mitigation measures. Prior to undertaking any surface-disturbing activities on the lands covered by this lease, the lessee or operator shall:

1. Engage the services of a cultural resource consultant acceptable to the Surface Management Agency (SMA) to conduct a cultural resource inventory of the area of proposed surface disturbance. The operator may elect to inventory an area larger than the standard ten-acre minimum to cover possible site relocation which may result from environmental or other considerations. An acceptable inventory report is to be submitted to the SMA for review and approval no later than that time when an otherwise complete application for approval of drilling or subsequent surface-disturbing operation is submitted.

2. Implement mitigation measures required by the SMA. Mitigation may include the relocation of proposed lease-related activities or other protective measures such as data recovery and extensive recordation. Where impacts to cultural resources cannot be mitigated to the satisfaction of the SMA, surface occupancy on that area must be prohibited. The lessee or operator shall immediately bring to the attention of the SMA any cultural resources discovered as a result of approved operations under this lease, and shall not disturb such discoveries until directed to proceed by the SMA.

Objective: Compliance with Section 106 of the National Historic Preservation Act is required for all actions which may affect cultural properties eligible to the National Register of Historic Places. Section 6 of the Oil and Gas Lease Terms (Form 3100-11) requires that operations be conducted in a manner that minimizes adverse impacts to cultural and other resources.

Exception: None

Exhibit 4          Page 52 of 77

Kraken_000113

Modification: None

Waiver: None

### *CSU 12-62-Soils - Sensitive Soils*

Surface occupancy and use will be controlled on sensitive soils.  Sensitive soils are determined using a combination of slope and soil erodibility.  Prior to surface disturbance on sensitive soils, a reclamation plan must be approved by the AO.  The plan must demonstrate the following:
(1) no other practicable alternatives exist for relocating the activity,
(2) the activity will be located to reduce impacts to soil and water resources,
(3) site productivity will be maintained or restored,
(4) surface runoff and sedimentation will be adequately controlled,
(5) on- and off-site areas will be protected from accelerated erosion,
(6) that no areas susceptible to mass wasting would be disturbed, and
(7) surface-disturbing activities will be prohibited during extended wet periods.

Objective: To maintain the chemical, physical, and biotic properties of soils, this includes maintaining soil productivity, soil stability, and soil biotic properties.  This will prevent excessive erosion, potential mass wasting, and improve the likelihood of successful reclamation.

Exception: The AO may grant an exception to this stipulation if the operator can demonstrate that the proposed action will not contribute to degradation of the soil resource (e.g., excessive soil erosion, mass wasting, and/or lost productivity) or downslope resource conditions (e.g., reduced water quality due to sedimentation).

Modification: The AO may modify the area affected by this stipulation if it is determined that portions of the leasehold do not contain sensitive soils.

Waiver: The AO may waive this stipulation if it is determined that the entire leasehold does not contain sensitive soils.

### *CSU 12-64-Visual Resources*

In order to retain the existing character of the landscape (VRM Class II Objective), oil and gas development activities will be located, designed, constructed, operated, and reclaimed so that activities should not attract attention to the casual observer within 2 years from initiation of construction.   This stipulation does not apply to the operation and maintenance activities.

Objective: To protect visual resource values while allowing energy development and related activities to occur that have been mitigated to retain the character of the existing area.

Exception: None

Modification: None

Waiver: None

### *CSU 12-67-Greater Sage-Grouse Nesting Habitat (General Habitat Management Areas)*

Exhibit 4        Page 53 of 77

Kraken_000114

Within Greater Sage-Grouse general habitat surface-disturbing or disruptive activities may be restricted or prohibited within 2 miles of Greater Sage-Grouse leks. Prior to surface-disturbing or disruptive activities a plan to maintain functionality of Greater Sage-Grouse habitat will be prepared by the proponent and implemented upon approval by the AO. This plan shall address how short-term and long-term direct and indirect effects to nesting and brood-rearing areas will be mitigated based on current science and research (Appendix E.5).

Objective: To protect the integrity of the habitat to maintain or improve Greater Sage-Grouse populations.

Exception: The AO may grant an exception if an environmental review determines that the action, as proposed or conditioned, would not compromise the functionality of the habitat for Greater Sage-Grouse and would meet the objective for Greater Sage-Grouse habitat and populations.

Modification: The AO may modify the area subject to the stipulation if an environmental analysis finds that a portion of the area is no longer Greater Sage-Grouse habitat and supports no Greater Sage-Grouse populations.

Waiver: This stipulation may be waived if no portion of the leasehold is within 2 miles of the perimeter of an active lek.

## BLM Lease Notice LN

### *HQ-CR-1-Cultural Resource Protection*

This lease may be found to contain historic properties and/or resources protected under National Historic Preservation Act (NHPA), American Indian Religious Freedom Act, Native American Graves Protection and Repatriation Act, E.O. 13007, or other statutes and executive orders. The BLM will not approve any ground-disturbing activities that may affect any such properties or resources until it completes its obligations under applicable requirements of the NHPA and other authorities. The BLM may require modification to exploration or development proposals to protect such properties, or disapprove any activity that is likely to result in adverse effects that cannot be successfully avoided, minimized, or mitigated.

### *HQ-MLA-1-Notice to Lessee Concerning Mineral Leasing Act Section 2(a)(2)(A)*

Provisions of the Mineral Leasing Act (MLA) of 1920, as amended by the Federal Coal Leasing Amendments Act of 1976, affect an entity's qualifications to obtain an oil and gas lease. Section 2(a)(2)(A) of the MLA, 30 U.S.C. 201(a)(2)(A), requires that any entity that holds and has held a Federal Coal Lease for 10 years beginning on or after August 4, 1976, and that is not producing coal in commercial quantities from each such lease cannot qualify for the issuance of any other lease granted under the MLA. 43 CFR 3472 explains coal lessee compliance with Section 2(a)(2)(A).

In accordance with the terms of this oil and gas lease with respect to compliance by the initial lessee with qualifications concerning Federal coal lease holdings, all assignees and transferees are hereby notified that this oil and gas lease is subject to cancellation if: (1) the initial lessee as assignor or as transferor has falsely certified compliance with Section 2(a)(2)(A) because of a denial or disapproval by a State Office of a pending coal action, i.e., arms-length assignment, relinquishment, or logical mining unit; (2) the initial lessee as assignor or as transferor is no longer

Exhibit 4        Page 54 of 77

Kraken_000115

in compliance with Section 2(a)(2)(A); or (3) the assignee or transferee does not qualify as a bona fide purchaser and, thus, has no rights to bona fide purchaser protection in the event of cancellation of this lease due to noncompliance with Section 2(a)(2)(A).

The lease case file, as well as in other Bureau of Land Management (BLM) records available through the State Office issuing this lease, contains information regarding assignor or transferor compliance with Section 2(a)(2)(A).

### HQ-TES-1-Threatened and Endangered Species Act

The lease area may now or hereafter contain plants, animals, or their habitats determined to be threatened, endangered, or other special status species. The BLM may recommend modifications to exploration and development proposals to further its conservation and management objective to avoid BLM-approved activity that would contribute to a need to list such a species or their habitat. The BLM may require modifications to or disapprove proposed activity that is likely to result in jeopardy to the continued existence of a proposed or listed threatened or endangered species or result in the destruction or adverse modification of a designated or proposed critical habitat. The BLM will not approve any ground-disturbing activity until it completes its obligations under applicable requirements of the Endangered Species Act as amended, 16 U.S.C. § 1531 et seq. including completion of any required procedure for conference or consultation.

### LN 14-1-Land Use Authorization

Land Use Authorizations incorporate specific surface land uses allowed on Bureau of Land Management (BLM) administered lands by authorized officers and those surface uses acquired by the BLM on lands administered by other entities. These BLM authorizations include rights-of-way, leases, permits, conservation easements, and Recreation and Public Purpose leases and patents.

The rights acquired, reserved, or withdrawn by the BLM for specified purposes include non-oil and gas leases, conservation easements, archeological easements, road easements, fence easements and administrative site withdrawals. The existence of such land use authorizations shall not preclude the leasing of the oil and gas. The locations of land use authorizations are noted on the oil and gas plats and in the BLM's automated database (LR2000). The plats are a visual source noting location; LR2000 provides location by legal description through the Geographic Cross Reference program.

The specifically authorized acreage for land use should be avoided by oil and gas exploration and development activities. All authorized surface land uses are valid claims to prior existing rights unless the authorization states otherwise.

The right of the Secretary to issue future land use authorizations on an oil and gas lease is reserved by provision of Section 29 of the Mineral Leasing Act, 30 U.S.C.

### LN 14-2-Cultural Resources

The Surface Management Agency is responsible for assuring that the leased lands are examined to determine if cultural resources are present and to specify mitigation measures.

This notice would be consistent with the present Montana State Office guidance for cultural

Exhibit 4        Page 55 of 77

Kraken_000116

resource protection related to oil and gas operations (NTL-MSO-85-1).

### *LN 14-2-Cultural Resources*

The Surface Management Agency is responsible for assuring that the leased lands are examined to determine if cultural resources are present and to specify mitigation measures.

This notice would be consistent with the present Montana State Office guidance for cultural resource protection related to oil and gas operations (NTL-MSO-85-1).

### *LN 14-3-Paleontological Resources*

The lessee or operator shall immediately bring to the attention of the Surface Management Agency (SMA) any paleontological resources or any other objects of scientific interest discovered as a result of approved operations under this lease, and shall leave such discoveries intact and undisturbed until directed to proceed by the SMA.

### *LN 14-11-Greater Sage-Grouse Habitat*

The lease may, in part or in total, contain important greater sage grouse habitats as identified by the BLM, either currently or prospectively. The operator may be required to implement specific measures to reduce impacts of oil and gas operations on the greater sage grouse populations and habitat quality. Such measures shall be developed during the application for permit to drill on-site and environmental review process and will be consistent with the lease rights granted.

### *LN 14-12-Paleontological Resource Inventory Requirement*

This lease has been identified as being located within geologic units rated as being moderate to very high potential for containing significant paleontological resources. The locations meet the criteria for class 3, 4 and/or 5 as set forth in the Potential Fossil Yield Classification System, WO IM 2008-009, Attachment 2-2. The BLM is responsible for assuring that the leased lands are examined to determine if paleontological resources are present and to specify mitigation measures. Guidance for application of this requirement can be found in WO IM 2008-009 dated October 15, 2007, and WO IM 2009-011 dated October 10, 2008.

Prior to undertaking any surface-disturbing activities on the lands covered by this lease, the lessee or project proponent shall contact the BLM to determine if a paleontological resource inventory is required. If an inventory is required, the lessee or project proponent will complete the inventory subject to the following:

● the project proponent must engage the services of a qualified paleontologist, acceptable to the BLM, to conduct the inventory.

● the project proponent will, at a minimum, inventory a 10-acre area or larger to incorporate possible project relocation which may result from environmental or other resource considerations.

● paleontological inventory may identify resources that may require mitigation to the satisfaction of the BLM as directed by WO IM 2009-011.

### *LN 14-12-Paleontological Resource Inventory Requirement*

Exhibit 4        Page 56 of 77

Kraken_000117

This lease has been identified as being located within geologic units rated as being moderate to very high potential for containing significant paleontological resources. The locations meet the criteria for class 3, 4 and/or 5 as set forth in the Potential Fossil Yield Classification System, WO IM 2008-009, Attachment 2-2. The BLM is responsible for assuring that the leased lands are examined to determine if paleontological resources are present and to specify mitigation measures. Guidance for application of this requirement can be found in WO IM 2008-009 dated October 15, 2007, and WO IM 2009-011 dated October 10, 2008.

Prior to undertaking any surface-disturbing activities on the lands covered by this lease, the lessee or project proponent shall contact the BLM to determine if a paleontological resource inventory is required. If an inventory is required, the lessee or project proponent will complete the inventory subject to the following:

● the project proponent must engage the services of a qualified paleontologist, acceptable to the BLM, to conduct the inventory.

● the project proponent will, at a minimum, inventory a 10-acre area or larger to incorporate possible project relocation which may result from environmental or other resource considerations.

● paleontological inventory may identify resources that may require mitigation to the satisfaction of the BLM as directed by WO IM 2009-011.

## *LN 14-14-Cultural Visual Setting*

The lease is located adjacent to known historic properties that are or may be eligible for listing on the National Register of Historic Places (NRHP). The lease may in part or whole contribute to the importance of the historic properties and values, and listing on the NRHP. The operator may be required to implement specific measures to reduce impacts of oil and gas operations on historic properties and values. These measures may include, but are not limited to, project design, location, painting and camouflage. Such measures shall be developed during the on-site inspection and environmental review of the application for permit to drill (APD), and shall be consistent with lease rights.

The goal of this Lease Notice is to provide information to the lessee and operator that would help design and locate oil and gas facilities to preserve the integrity and value of historical properties that are or may be listed on the National Register of Historic Places.

This notice is consistent with the present Montana guidance for cultural resource protection related to oil and gas operations (NTL-MSO-85-1).

## *LN 14-15-Sprague's Pipit*

The lease area may contain habitat for the federal candidate Sprague's pipit. The operator may be required to implement specific measures to reduce impacts of oil and gas operations on Sprague's pipits, their habitat and overall population. Such measures would be developed during the application for permit to drill and environmental review processes, consistent with lease rights.

If the U.S. Fish and Wildlife Service lists the Sprague's pipit as threatened or endangered under the Endangered Species Act, the BLM would enter into formal consultation on proposed permits that may affect the Sprague's pipit and its habitat. Restrictions, modifications, or denial of permits

Exhibit 4        Page 57 of 77

Kraken_000118

could result from the consultation process.

### *LN 14-18-Air Resource Analysis*

The lessee/operator is given notice that prior to project-specific approval, additional air resource analyses may be required in order to comply with the NEPA, FLPMA, and/or other applicable laws and regulations. Analyses may include equipment and operations information, emission inventory development, dispersion modeling or photochemical grid modeling for air quality and/or air quality related value impact analysis, and/or emission control determinations. These analyses may result in the imposition of additional project-specific control measures to protect air resources.

### *LN 14-18-Air Resource Analysis*

The lessee/operator is given notice that prior to project-specific approval, additional air resource analyses may be required in order to comply with the NEPA, FLPMA, and/or other applicable laws and regulations. Analyses may include equipment and operations information, emission inventory development, dispersion modeling or photochemical grid modeling for air quality and/or air quality related value impact analysis, and/or emission control determinations. These analyses may result in the imposition of additional project-specific control measures to protect air resources.

### *LN 14-19-Special Status Species*

The lease area may now or hereafter contain plants, animals, or their habitats determined to be threatened, endangered, or other special status species. BLM may recommend modifications to exploration and development proposals to further its conservation and management objective to avoid BLM-approved activity that will contribute to a need to list such a species or their habitat. BLM may require modifications to or disapprove proposed activity that is likely to result in jeopardy to the continued existence of a proposed or listed threatened or endangered species or result in the destruction or adverse modification of a designated or proposed critical habitat. BLM will not approve any ground-disturbing activity that may affect any such species or requirements of the ESA as amended, 16 U.S.C. § et seq., including completion of any required procedure for conference or consultation.

### *LN 14-20-Migratory Bird Treaty Act*

The Operator is responsible for compliance with provisions of the Act by implementing one of the following measures;

a) avoidance by timing; ground disturbing activities will not occur from April 15 to July 15,

b) habitat manipulation; render proposed project footprints unsuitable for nesting prior to the arrival of migratory birds (blading or pre-clearing of vegetation must occur prior to April 15 within the year and area scheduled for activities between April 15 and July 15 of that year to deter nesting, or

c) survey-buffer-monitor; surveys will be conducted by a BLM approved biologist within the area of the proposed action and a 300 foot buffer from the proposed project footprint between April 15 to July 15 if activities are proposed within this timeframe.

Exhibit 4    Page 58 of 77

Kraken_000119

If nesting birds are found, activities would not be allowed within 0.1 miles of nests until after the birds have fledged. If active nests are not found, construction activities must occur within 7 days of the survey. If this does not occur, new surveys must be conducted. Survey reports will be submitted to the appropriate BLM Office.

### *LN 14-20-Migratory Bird Treaty Act*

The Operator is responsible for compliance with provisions of the Act by implementing one of the following measures;

  a) avoidance by timing; ground disturbing activities will not occur from April 15 to July 15,

  b) habitat manipulation; render proposed project footprints unsuitable for nesting prior to the arrival of migratory
     birds (blading or pre-clearing of vegetation must occur prior to April 15 within the year and area scheduled for
     activities between April 15 and July 15 of that year to deter nesting, or

  c) survey-buffer-monitor; surveys will be conducted by a BLM approved biologist within the area of the proposed
     action and a 300 foot buffer from the proposed project footprint between April 15 to July 15 if activities are
     proposed within this timeframe.

 If nesting birds are found, activities would not be allowed within 0.1 miles of nests until after the birds have fledged. If active nests are not found, construction activities must occur within 7 days of the survey. If this does not occur, new surveys must be conducted. Survey reports will be submitted to the appropriate BLM Office.

### *LN 14-22-Cultural Resources Setting Consideration Zones*

This lease is known to contain historic properties or resources protected under NHPA that contain a Setting Consideration Zone where the integrity of the setting is known to be an important contributing element of NRHP significance of the property, and applies to the following historic properties: Wolf Mountains Battlefield NHL and Battle Butte Battlefield ACEC; Reynolds Battlefield site and Reynolds Battlefield ACEC; Cedar Creek Battlefield site and Cedar Creek Battlefield ACEC; and the Long Medicine Wheel ACEC, and all significant Cultural Resources, NRHP-eligible Properties and Districts, and TCPs, NHLs and Historic Battlefields and the Lewis and Clark National Historic Trail.

### *LN 14-23-Setback From Human Occupied Residences Requirement*

The Lease area may contain human occupied dwellings. Under Regulation 43 CFR 3101.1-2 and terms of the lease (BLM form 3100-11), the authorized officer may require reasonable measures to minimize adverse impacts to other resource values, land uses, and users not addressed in lease stipulations at the time operations are proposed. Such reasonable measures may include, but are not limited to, modification of siting or design of facilities, which may require relocating proposed operations up to 200 meters, but not off the leasehold.

The setback requirement of 500 feet from human occupied dwellings has been established based

Exhibit 4          Page 59 of 77

Kraken_000120

upon the best information available. The following condition of approval may be applied as a result of the Application for Permit to Drill (APD) process during the on-site inspection and the environmental review unless an acceptable plan for mitigation of impacts is reached between the resident, lessee and BLM:

• Facilities will not be allowed within 500 feet of human occupied residences.

The intent of this Lease Notice is to provide information to the lessee that would help design and locate oil and gas facilities to preserve the aesthetic qualities around human occupied dwellings.

### LN 14-33-Cultural Inventory Requirement

An inventory of those portions of the leased lands subject to proposed disturbance may be required prior to any surface disturbance to determine whether cultural resources are present and to identify needed mitigation measures. Prior to undertaking any surface-disturbing activities on the lands covered by this lease, the lessee or operator shall:

1. Contact the Surface Management Agency (SMA) to determine whether a cultural resource inventory is required. If an inventory is required, then:

2. The SMA will complete the required inventory; or the lessee or operator, at their option may engage the services of a cultural resource consultant acceptable to the SMA to conduct a cultural resource inventory of the area of proposed surface disturbance. The operator may elect to inventory an area larger than the standard ten-acre minimum to cover possible site relocation which may result from environmental or other considerations. An acceptable inventory report is to be submitted to the SMA for review and approval no later than that time when an otherwise complete application for approval of drilling or subsequent surface-disturbing operation is submitted.

3. Implement mitigation measures required by the SMA. Mitigation may include the relocation of proposed lease-related activities or other protective measures such as data recovery and extensive recordation. Where impacts to cultural resources cannot be mitigated to the satisfaction of the SMA, surface occupancy on that area must be prohibited. The lessee or operator shall immediately bring to the attention of the SMA any cultural resources discovered as a result of approved operations under this lease, and shall not disturb such discoveries until directed to proceed by the SMA.

### LN 14-33-Cultural Inventory Requirement

An inventory of those portions of the leased lands subject to proposed disturbance may be required prior to any surface disturbance to determine whether cultural resources are present and to identify needed mitigation measures. Prior to undertaking any surface- disturbing activities on the lands covered by this lease, the lessee or operator shall:

1. Contact the Surface Management Agency (SMA) to determine whether a cultural resource inventory is required. If an inventory is required, then:

2. The SMA will complete the required inventory; or the lessee or operator, at their option may engage the services of a cultural resource consultant acceptable to the SMA to conduct a cultural

Exhibit 4    Page 60 of 77

Kraken_000121

resource inventory of the area of proposed surface disturbance. The operator may elect to inventory an area larger than the standard ten-acre minimum to cover possible site relocation which may result from environmental or other considerations. An acceptable inventory report is to be submitted to the SMA for review and approval no later than that time when an otherwise complete application for approval of drilling or subsequent surface-disturbing operation is submitted.

3. Implement mitigation measures required by the SMA. Mitigation may include the relocation of proposed lease-related activities or other protective measures such as data recovery and extensive recordation. Where impacts to cultural resources cannot be mitigated to the satisfaction of the SMA, surface occupancy on that area must be prohibited. The lessee or operator shall immediately bring to the attention of the SMA any cultural resources discovered as a result of approved operations under this lease, and shall not disturb such discoveries until directed to proceed by the SMA.

### *LN 14-33-Cultural Inventory Requirement*

An inventory of those portions of the leased lands subject to proposed disturbance may be required prior to any surface disturbance to determine whether cultural resources are present and to identify needed mitigation measures. Prior to undertaking any surface- disturbing activities on the lands covered by this lease, the lessee or operator shall:

1. Contact the Surface Management Agency (SMA) to determine whether a cultural resource inventory is required. If an inventory is required, then:

2. The SMA will complete the required inventory; or the lessee or operator, at their option may engage the services of a cultural resource consultant acceptable to the SMA to conduct a cultural resource inventory of the area of proposed surface disturbance. The operator may elect to inventory an area larger than the standard ten-acre minimum to cover possible site relocation which may result from environmental or other considerations. An acceptable inventory report is to be submitted to the SMA for review and approval no later than that time when an otherwise complete application for approval of drilling or subsequent surface-disturbing operation is submitted.

3. Implement mitigation measures required by the SMA. Mitigation may include the relocation of proposed lease-related activities or other protective measures such as data recovery and extensive recordation. Where impacts to cultural resources cannot be mitigated to the satisfaction of the SMA, surface occupancy on that area must be prohibited. The lessee or operator shall immediately bring to the attention of the SMA any cultural resources discovered as a result of approved operations under this lease, and shall not disturb such discoveries until directed to proceed by the SMA.

### *LN 14-37-Greater Sage-Grouse Habitat Conservation*

The lessee/operator is given notice that prior to project-specific approval, the authorized officer may require mitigation measures and/or compensatory mitigation measures to conserve, enhance, and restore Greater Sage-Grouse (GRSG) habitat. The objectives of these requirements are to avoid, minimize, or compensate for unavoidable impacts associated with oil and gas development in order to provide a net conservation gain, which is a benefit or gain above baseline conditions,

Exhibit 4        Page 61 of 77

Kraken_000122

when the development occurs within Greater Sage-Grouse habitat as specified in the Record of Decision for the Field Office's Approved Resource Management Plan (Sept. 2015).

Site-specific GRSG habitat conservation, mitigation, or compensation requirements would be identified during the environmental review process and would be developed into the project proposal or as terms and conditions of the subsequent approval.

### *LN 14-39-Raptors*

The lease area may contain raptor nest sites active within the last 7 years. At the development stage when surface-disturbing activities are proposed, an active nest inventory of the project area may be required. If active nests are found within 1/4 mile of the proposed action, surface occupancy and use may be prohibited.  If active nests are found within 1/2 mile of the proposed action, surface occupancy and use may be restricted from March 1 through July 31. The BLM may require modification to exploration or development proposals to protect active raptor nests, or disapprove any activity that is likely to result in adverse effects that cannot be successfully avoided, minimized or mitigated.

### *LN 14-40-Big Game Winter Range and Migration Corridors*

The lease area may contain habitat for big game winter range and/or migration corridors delineated by Montana Fish, Wildlife and Parks. The lessee/operator is given notice that prior to project-specific approval, the authorized officer may require modifications to exploration and development proposals to conserve or restore habitat necessary to sustain local and regional big-game populations (Secretarial Order 3362, February 9, 2018 and 43 CFR 3101.1-2). The objective of the requirements would be to conserve, restore, minimize, avoid and/or limit activities that could impact habitat for big game winter range and/or migration corridors Site-specific requirements would be identified during environmental review processes and would be developed into the project proposal or as terms and conditions of the subsequent approval.

### *LN 14-52-Lease Notice for US Army Corps of Engineers administered lands within the exterior boundary of the Fort Berthold Indian Reservation*

Development of this lease may be subject to Tribal Resolutions 12-087-VJB, 12-137-VJB, and 17-038-FWF. Lessees are hereby notified that the lessee may be required to obtain a variance from the Tribal Business Council of the Three Affiliated Tribes of the Fort Berthold Indian Reservation if any proposed development is less than 0.5 miles from the  Missouri River or Little Missouri River, including Lake Sakakawea and designated sacred sites or villages in the Badlands.

### BLM Stipulation NSO

### *NSO 11-33-Wetlands, Lakes, and Ponds*

No surface occupancy or use is allowed within 200 feet of wetlands, lakes and ponds.

For the purpose of:
Protect wetlands. (NDRMP, p. 20)

Any changes to this stipulation will be made in accordance with the land use plan and/or the regulatory provisions for such changes.

Exhibit 4          Page 62 of 77

Kraken_000123

Exception, Modification, Waiver: This stipulation may be waived or reduced if circumstances change, or if the lessee can demonstrate that operations can be conducted without causing unacceptable impacts. Exceptions to this limitation in any particular year may be specifically approved in writing by the authorized officer. In all cases, the stipulation (including any modification) will be designed to present the least restrictive measure for avoiding unacceptable adverse impacts.

### NSO 11-69-Badlands, Rock Outcrop

Surface occupancy and use is prohibited on badlands and rock outcrop.

Objective: To prevent excessive soil erosion and to avoid disturbing areas subject to potential reclamation problems.

Exception: The AO may not grant exceptions to this stipulation.

Modification: The AO may modify the area affected by this stipulation if it is determined that portions of the leasehold do not include these types of areas.

Waiver: The AO may waive this stipulation if it is determined that the entire leasehold does not include these types of areas.

### NSO 11-70-Streams, Waterbodies, Riparian, Wetland, And Floodplains

Surface occupancy and use is prohibited within perennial or intermittent streams, lakes, ponds, reservoirs, 100-year floodplains, wetlands, and riparian areas.

Objective: To protect the unique biological and hydrological features and functions associated with perennial and intermittent streams, lakes, ponds, reservoirs, floodplains, wetlands, and riparian areas.

Exception: No exceptions would be allowed in streams, natural lakes, or wetlands. An exception may be granted by the AO for riparian areas, floodplains, and artificial ponds or reservoirs if the operator can demonstrate that:

    o there are no practicable alternatives to locating facilities in these areas,
    o the proposed actions would maintain or enhance resource functions, and
    o all reclamation goals and objectives would be met.

Modification: The AO may modify the boundaries of the stipulated area if it is determined that portions of the leasehold do not include these types of areas.

Waiver: The AO may waive this stipulation if it is determined that the entire leasehold does not include these types of areas.

### NSO 11-73-Raptors

Surface occupancy and use is prohibited within 0.25 mile of raptor nest sites active within the preceding 7 years.

Exhibit 4        Page 63 of 77

Kraken_000124

Objective: To protect nest sites of raptors identified as BLM priority species for management (burrowing owl, golden eagle, ferruginous hawk, Swainson's hawk, prairie falcon, and northern goshawk).

Exception: The AO may grant an exception if the action will not to result in nest territory abandonment.

Modification: The AO may modify the boundaries of the stipulated area if portions of the leasehold are no longer within 0.25 mile of raptor nest sites active within the past 7 years.

Waiver: The AO may waive this stipulation if the entire leasehold is no longer within 0.25 mile of raptor nest sites active within the past 7 years or if the habitat has been altered to an extent, future use by nesting raptors is unlikely.

## NSO 11-75-Piping Plover

Surface occupancy and use is prohibited in and within 0.25 mile of piping plover habitat.

Objective: To protect the nesting habitat of the federally threatened piping plover.

Exception: The AO, subject to consultation with the USFWS, grant an exception if the action will not result in nest territory abandonment or decrease productivity, by substantially interfering with normal breeding, feeding, or sheltering behavior.

Modification: The AO may modify the boundaries of the stipulated areas if portions of the leasehold are no longer within 0.25 mile of piping plover habitat.

Waiver: The AO may waive this stipulation if the entire leasehold is no longer within 0.25 mile of piping plover nesting habitat.

## NSO 11-78-Pallid Sturgeon Habitat

Surface occupancy and use is prohibited within 0.25 mile of the water's edge of the Missouri and Yellowstone Rivers.

Objective: To protect the habitat of the federally endangered pallid sturgeon.

Exception: The AO, subject to consultation with the USFWS, may grant an exception if the action will not impair habitat of the pallid sturgeon.

Modification: The AO may modify the boundaries of the stipulated area if portions of the leasehold are not within 0.25 mile of the water's edge of the Yellowstone or Missouri Rivers.

Waiver: The AO may waive this stipulation if the entire leasehold is no longer within 0.25 mile of the water's edge of the Yellowstone or Missouri Rivers.

## NSO 11-79-Sage-Grouse Habitat - Priority Areas, West Decker Restoration Area, South Carter Restoration Area

Surface occupancy and use is prohibited within sage-grouse priority areas, West Decker

Exhibit 4        Page 64 of 77

Kraken_000125

Restoration area, and South Carter Restoration Area.

Objective: To maintain and enhance the most important of habitats needed by priority sage-grouse populations.

(i) No waivers or modifications to a fluid mineral lease no-surface occupancy stipulation will be granted. The Authorized Officer may grant an exception to a fluid mineral lease no- surface occupancy stipulation only where the proposed action would not have direct, indirect, or cumulative effects on GRSG or its habitat; or,

(ii) Is proposed to be undertaken as an alternative to a similar action occurring on a nearby parcel, and would provide a clear conservation gain to GRSG.

Exceptions based on conservation gain
(ii) may only be considered in (a) PHMAs of mixed ownership where federal minerals underlie less than fifty percent of the total surface, or (b) areas of the public lands where the proposed exception is an alternative to an action occurring on a nearby parcel subject to a valid Federal fluid mineral lease existing as of the date of this RMP revision. Exceptions based on conservation gain must also include measures, such as enforceable institutional controls and buffers, sufficient to allow the BLM to conclude that such benefits will endure for the duration of the proposed action's impacts.

Any exceptions to this lease stipulation may be approved by the Authorized Officer only with the concurrence of the State Director. The Authorized Officer may not grant an exception unless the applicable state wildlife agency, the USFWS, and the BLM unanimously find that the proposed action satisfied (i) or (ii). Such finding shall initially be made by a team of one field biologist or other GRSG expert from each respective agency. In the event the initial finding is not unanimous, the finding may be elevated to the appropriate BLM State Director, USFWS State Ecological Services Director, and state wildlife agency head for final resolution. In the event their finding is not unanimous, the exception will not be granted. Approved exceptions will be made publicly available at least quarterly.

### NSO 11-81-Recreation

Surface occupancy and use is prohibited within developed recreation areas and undeveloped recreation areas receiving concentrated public use.

Objective: To protect developed recreation areas and undeveloped recreation areas receiving concentrated public use.

Exception: An exception to this stipulation may be granted by the AO if the project proponent submits a plan demonstrating that impacts from the proposed action are acceptable or can be adequately mitigated.

Modification: The boundaries of the stipulated area can be modified by the AO if the recreation area boundaries are changed.

Waiver: This stipulation can be waived if the AO determines that the entire leasehold or area no

Exhibit 4          Page 65 of 77

Kraken_000126

longer contains developed recreation areas or undeveloped recreation areas receiving concentrated public use.

## NSO 11-83-National Historic Trails

Stipulation: Surface occupancy and use is prohibited within the National Trail Management Corridor of designated National Historic Trails. Designated National Historic Trails include the Lewis and Clark Trail and the Nez Perce Trail.

Objective: To protect the nature and purpose; trail resources, qualities, values, and associated settings; and primary use or uses of the historic trail, in accordance with National Trail System Act.

Exception: An exception to this stipulation may be granted by the AO if the lessee or project proponent completes a comprehensive trail inventory, as outlined in Manual 6280, and presents a proposal which demonstrates resource values are not affected or that adverse impacts can be adequately mitigated to prevent impact to:

- o The nature and purposes of the National Trail.
- o National Trail resources, qualities, values, and associated settings.
- o National Trail primary use or uses.
- o The National Trail from the cumulative or trail-wide perspective.

Modification: None

Waiver: None

## NSO 11-137-National Register of Historic Places (NRHP) Eligible Properties/Districts

Occupancy and use is prohibited within the boundaries of cultural properties and archaeological/ historic districts determined to be eligible or potentially eligible to the National Register of Historic Places.

Objective: To protect significant cultural properties and archaeological districts and their settings, and to avoid disturbance or inadvertent impacts to these resources.

Exception: None

Modification: None

Waiver: None

## BLM Stipulation TL

### TL 13-15-Waterfowl Nesting Habitat

No seismic exploration is allowed within 500 feet of waterfowl nesting habitat during the

Exhibit 4    Page 66 of 77

Kraken_000127

following time period:
March 1 through July 1

This stipulation does not apply to the operation and maintenance of production facilities.

For the purpose of:
Protect nesting waterfowl. (NDRMP, p. 20)

Any changes to this stipulation will be made in accordance with the land use plan and/or the regulatory provisions for such changes.

Exception, Modification, Waiver: This stipulation may be waived or reduced if circumstances change, or if the lessee can demonstrate that operations can be conducted without causing unacceptable impacts. Exceptions to this limitation in any particular year may be specifically approved in writing by the authorized officer. In all cases, the stipulation (including any modification) will be designed to present the least restrictive measure for avoiding unacceptable adverse impacts.

### TL 13-24-Golden Eagle Previously Occupied Nests

No surface use is allowed within one-half mile of occupied Golden Eagle nests known to be occupied at least once within the seven previous years during the following time period:

February 15 to July 15

The stipulation does not apply to the operation and maintenance of production facilities.

For the purpose of:
Protect Golden Eagle nesting. (NDRMP, p. 20)

Any changes to this stipulation will be made in accordance with the land use plan and/or the regulatory provisions for such changes.

Exception, Modification, Waiver: This stipulation may be waived or reduced if circumstances change, or if the lessee can demonstrate that operations can be conducted without causing unacceptable impacts. Exceptions to this limitation in any particular year may be specifically approved in writing by the authorized officer. In all cases, the stipulation (including any modification) will be designed to present the least restrictive measure for avoiding unacceptable adverse impacts.

### TL 13-33-Raptors

Stipulation: Surface use is prohibited within 0.50 mile of active raptor nest sites from March 1 through July 31.

On the lands described below:

Objective: To protect nesting activities associated with raptors identified as BLM priority species for management.

Exhibit 4          Page 67 of 77

Kraken_000128

Exception: The AO may grant an exception if the action will not to result in nest territory abandonment or decrease productivity, by substantially interfering with normal breeding, feeding, or sheltering behavior.

Modification: The AO may modify the boundaries of the stipulated area if portions of the leasehold are no longer within 0.50 mile of an active raptor nest.

Waiver: The AO may waive this stipulation if the entire leasehold is no longer within 0.50 mile of an active raptor nest.

### TL 13-47-Sprague's Pipit

Surface occupancy and use is prohibited from April 15 through July 15 in Sprague's pipit habitat.

Objective: To protect Sprague's pipit habitat necessary for long-term maintenance of Sprague's pipit populations.

Exception: The AO may grant an exception if the operator submits a plan that demonstrates the impacts from the proposed action are acceptable or can be adequately mitigated.

Modification: The boundaries of the stipulated area may be modified if the AO determines that portions of the area no longer contain Sprague's pipit habitat. The dates for the timing restriction may be modified if new wildlife use information indicates that the dates are not valid for the leasehold. The AO may also modify the size and shape of the area based on studies documenting actual habitat suitability and/or local periods of actual use.

Waiver: This stipulation may be waived if the AO determines that the entire leasehold no longer contains Sprague's pipit habitat.

### TL 13-48-Winter Range - Big Game and Greater Sage-Grouse

Surface occupancy and use is prohibited from December 1 through May 15 in big game winter range.

Objective: To protect big game and Greater Sage-Grouse winter range from disturbance during the winter season and to facilitate long-term maintenance of wildlife populations.

Exception: The AO may grant an exception if the operator submits a plan that demonstrates the impacts from the proposed action are acceptable or can be adequately mitigated.

Modification: The boundaries of the stipulated area may be modified if the AO determines that portions of the area no longer contain viable winter range. The dates for the timing restriction may be modified if new wildlife use information indicates that the dates are not valid for the leasehold. The AO may also modify the size and shape of the area based on studies documenting actual habitat suitability and/or local periods of actual use.

Waiver: This stipulation may be waived if the AO determines that the entire leasehold no longer contains viable winter range.

Exhibit 4       Page 68 of 77

Kraken_000129

**SMA Stipulations**

## *COE 18-1-Standard Stipulation for Lands Under Jurisdiction of Department of the Army, Corps of Engineers*

The lands embraced in this lease issued under the Mineral Leasing Act of February 25, 1920 (41 Stat. 437; 30 U.S.C. 181 et seq.), as amended, or the Mineral Leasing Act for Acquired Lands of August 7, 1947 (61 Stat. 913; 30 U.S.C. 351 et seq.) being under the jurisdiction of the Department of the Army, Corps of Engineers, the lessee hereby agrees:

1. That all rights under this lease are subordinate to the rights of the United States to flood and submerge the lands, permanently or intermittently, in connection with the operation and maintenance of the above-named project.

2. That the United States shall not be responsible for damages to property or injuries to persons which may arise from or be incident to the use and occupation of the said premises, or for damages to the property of the lessee, or for injuries to the person of the lessee (if an individual), or for damages to the property or injuries to the person of the lessee's officers, agents, servants, or employees, or others who may be on said premises at their invitation or the invitation of anyone of them arising from or incident to the flooding of the said premises by the Government or flooding from any other cause, or arising from or incident to any other governmental activities; and the lessee shall hold the United States harmless from any and all such claims.

3. That the work performed by the lessee on the lands shall be under the general supervision of the District Engineer, Corps of Engineers, in direct charge of the project, and subject to such conditions and regulations as may be prescribed by him, and the plans and location for all structures, appurtenances thereto, and work on said lands shall be submitted to the said District Engineer for approval, in advance, of commencement of any work on said lands. The District Engineer shall have the right to enter on the premises, at any time, to inspect both the installation and operational activities of the lessee.

4. That no structure or appurtenance thereto shall be of a material or construction determined to create floatable debris.

5. That the construction and operation of said structures and appurtenances thereto shall be of such a nature as not to cause pollution of the soils and the waters of the project.

6. That the United States reserves the right to use the land jointly with the lessee in connection with the construction, operation, and maintenance of the Government project and to place improvements thereon or to remove materials therefrom, including sand and gravel and other construction material, as may be necessary in connection with such work, and the lessee shall not interfere, in any manner, with such work or do any act which may increase the cost of performing such work. If the cost of the work performed by the Government at and in connection with the project, including work performed on lands outside the property included in the lease, is made more expensive by reason of improvements constructed on the leased property by the lessee, the lessee shall pay to the United States money in an amount, as estimated by the Chief of Engineers, sufficient to compensate for the additional expense involved.

Waivers: None

Exhibit 4        Page 69 of 77

Kraken_000130

Exceptions:  None

Modifications:  None

## COE 18-2-Corps of Engineers Standard Stipulation

1. The Secretary of the Army or designee reserves the right to require cessation of operations if a national emergency arises or if the Army needs the leased property for a mission incompatible with lese operations.  On approval from higher authority, the commander will give the lessee written notice or, if time permits, request the BLM to give notice of the required suspension.  The lessee grees to this condition and waives compensation for its exercise.

2. If the commander or the commander's authorized representative discovers an imminent danger to safety or security which allows no time to consult BLM, that person may order such activities stopped immediately. The state BLM Director will be notified immediately, will review the order, and will determine the need for further remedial action.

3. If contamination is found in the operating area, the operator will immediately stop work and ask the commander or commander's representative for help.

4. Lessee liability for damage to improvements shall include improvements of the Department of Defense.

5. Before beginning to drill, the lessee must consult with third parties authorized to use real estate in the leased area and must consider programs for which third parties have contractual responsibility.

6. A license to conduct geophysical test on the leased area must be obtained separately from the installation commander or the District Commander.

7. Civil works only: conditions in BLM Form 3109-2, Stipulation for Lands Under Jurisdiction of Department of the Army Corps of Engineers, or successor form.

Waivers:  None

Exceptions:  None

Modifications:  None

## COE 18-3-Section 10/404 Regulatory Stipulation

Activities that extend beneath the flood control pool of Lake Sakakawea (1854 feet msl) will require United States Army Corps of Engineers (USACE) Regulatory review in accordance with Section 10/404 authorities (Rivers and Harbors Act and Clean Water Act respectively). For information regarding the Regulatory Program and permit applications see:

https://www.usace.army.mil/Missions/Civil-Works/Regulatory-Program-and-Permits/Obtain-a-Permit/.

Waivers:  None

Exhibit 4            Page 70 of 77

Kraken_000131

Exceptions: None

Modifications: None

## *COE 18-4-Section 408 Stipulation*

In accordance with Section 408 guidelines, applications associated with activities on or below lands and waters under the jurisdiction of the United States Army Corps of Engineers (USACE) are required to obtain written approval from USACE prior to initiating any activity on those areas. The Oil and Gas Management Plan (OGMP)/Programmatic Environmental Assessment (PEA) dated June 2020 outlines the process and requirements for such approval and can be found at:

(https://www.nwo.usace.army.mil/Missions/Dam-and-Lake-Projects/Oil-and-Gas-Development/).

Waivers: None

Exceptions: None

Modifications: None

## *LMG2020-CSU-01-Water, Wetlands, Woody Draws, Riparian, and Floodplains*

Surface occupancy or use is subject to the following special operating constraints.

Try to locate activities and facilities away from the water's edge and outside the riparian areas, woody draws, wetlands, and floodplains. If necessary to locate facilities in these areas, then:

• Deposit no waste material (silt, sand, gravel, soil, slash, debris, chemical or other material) below high water lines, in riparian areas, in the areas immediately adjacent to riparian areas or in natural drainageways (draws, land surface depressions or other areas where overland flow concentrates and flows directly into streams or lakes).

• Deposit no soil material in natural drainageways.

• Locate the lower edge of disturbed or deposited soil banks outside the active floodplain.

• Stockpile no topsoil or any other disturbed soil in the active floodplain.

• Locate drilling mud pits outside riparian areas, wetlands and floodplains. If location is unavoidable in these areas, seal and dike all pits to prevent leakage or use containerized mud systems.

For the purpose of: Protecting the biological and hydrologic features of water bodies, riparian areas, woody draws, wetlands, and floodplains.

Exceptions: The authorized officer may grant an exception to this stipulation if an environmental analysis determine that the impacts of the plan submitted by the operator are acceptable or can be adequately mitigated to protect the biological and hydrologic features of water bodies, riparian

Exhibit 4       Page 71 of 77

Kraken_000132

areas, woody draws, wetlands, and floodplains.

Modifications:  The boundaries of the stipulated area may be modified if the authorized officer determines that portions of the area do not include water bodies, riparian areas, woody draws, wetlands, and floodplains.

Waiver:  This stipulation may be waived if the authorized officer determines the entire leasehold no longer contains any riparian areas, woody draws, wetlands, or floodplains.

Any changes to this stipulation will be made in accordance with the land use plan and/or the regulatory provisions for such changes.  (For guidance on the use of this stipulation, see BLM Manual 1624 and 3101 or FS Manual 1950 and 2820.)

### LMG2020-LN-01-Floodplain and Wetlands

The lessee is hereby notified that this lease may contain land within a riparian ecosystem. All activities within this area may be highly restricted in order to comply with Executive Order 11988 – Floodplain Management and Executive Order 11990 - Protection of Wetlands, in order to preserve and restore or enhance the natural and beneficial values served by floodplains and wetlands.

Riparian ecosystems will be managed by the Forest Service to protect from conflicting uses in order to provide healthy, self-perpetuating plant and water communities that will have optimum diversity and density of understory and overstory vegetation. Occupancy and use of lands within riparian ecosystems proposed in a proposed Surface Use Plan of Operations will be considered in an environmental analysis done to identify the mitigation measures necessary to protect the riparian area. Special measures such as road design, well pad size and location or directional drilling, may be made part of the permit authorizing the activity.

### LMG2020-LN-02-Threatened, Endangered, and Sensitive Plant or Animal Species

The lease area may contain threatened and endangered species or habitat necessary for the continued existence of threatened, proposed, candidate or endangered species which are protected by the 1973 Endangered Species Act, as amended (16 USC 1531 et seq.) and implementing regulations (50 CFR 402 et seq.). The lease area may also contain habitat or species, which may require protective measures to prevent them from being listed as threatened or endangered; or result in a loss of viability or biological diversity (36 CFR 219.19 or 219.26). A biological evaluation of the leased lands may be required prior to surface disturbance to determine if endangered, threatened, proposed, candidate or sensitive plant or animal species or their habitat are present and to identify needed mitigation measures. Prior to undertaking any surface-disturbing activities on the lands covered by this lease, the lessee or operator shall:

1. Contact the Forest Service to determine if a biological evaluation is required. The Forest Service is responsible for ensuring that the leased land is examined through a biological evaluation, prior to undertaking any surface-disturbing activities, to determine effects upon any plant or animal species listed or proposed for listing as threatened, endangered, or a sensitive species.

2. The lessee or operator may choose to conduct the evaluation on the leased lands at their

Exhibit 4        Page 72 of 77

Kraken_000133

discretion and cost. This biological evaluation must be done by or under the supervision of a qualified biologist/botanist approved by the Forest Service. An acceptable report must be provided to the Forest Service identifying the anticipated effects of a proposed action on endangered, threatened, proposed, candidate or sensitive species. An acceptable biological evaluation is to be submitted to the Forest Service for review and approval no later than that time when an otherwise complete application for permit to drill or subsequent surface-disturbing operation is submitted.

3. Implement mitigation measures required by the Forest Service. Mitigation may include the relocation of proposed lease-related activities or other protective measures. The findings of the biological evaluation, analysis, and consultation may result in restrictions to the operator's plans or even disallow use and occupancy to comply with the 1973 Endangered Species Act (as amended), threatened and endangered species regulations, and Forest Service statutes and regulations.

If endangered, threatened, proposed, candidate or sensitive plant or animal species are discovered in the area after any required biological evaluation has concluded, an evaluation will be conducted to assess the effect of ongoing and proposed activities. Based on the conclusion drawn in the evaluation, additional restrictions or prohibitions may be imposed to protect the species or their habitats.

### *LMG2020-LN-03-Cultural Resources*

The Forest Service is responsible for assuring that the leased lands are examined to determine if cultural resources are present and to specify mitigation measures, in accordance with the Archaeological Resources Protection Act of 1979, the National Historic Preservation Act of 1966 (as amended), and the American Indian Religious Freedom Act of 1996. Prior to undertaking any surface-disturbing activities on the lands covered by this lease, the lessee or operator, unless notified to the contrary by the Forest Service, shall:

1. Contact the Forest Service to determine if a site-specific cultural resource inventory is required. If a survey is required, then:

2. Engage the services of a cultural resource specialist acceptable to the Forest Service to conduct a cultural resource inventory of the area of proposed surface disturbance. The operator may elect to inventory an area larger than the area of proposed disturbance to cover possible site relocation, which may result from environmental or other considerations. An acceptable inventory report is to be submitted to the Forest Service for review and approval at the time a surface-disturbing plan of operation is submitted.

3. Implement mitigation measures required by the Forest Service and BLM to preserve or avoid destruction of cultural resource values. Mitigation may include relocation of proposed facilities, testing, salvage, and recordation or other protective measures. All costs of the inventory and mitigation will be borne by the lessee or operator, and all data and materials salvaged will remain under the jurisdiction of the U.S. Government as appropriate.

The lessee or operator shall immediately bring to the attention of the Forest Service and BLM any cultural resources or any other objects of scientific interest discovered as a result of surface operations under this lease and shall leave such discoveries intact until directed to proceed by Forest Service and BLM.

Exhibit 4       Page 73 of 77

Kraken_000134

### *LMG2020-LN-04-Paleontological Resources*

The Forest Service is responsible for assuring that the leased lands are examined to determine if paleontological resources are present and to specify mitigation measures, in accordance with the Organic Act, the National Forest Management Act of 1976, the Paleontological Resources Preservation Act, and regulations at 36 CFR 291.

The term 'paleontological resource' means any fossilized remains, traces, or imprints of organisms, preserved in or on the earth's crust, that are of paleontological interest and that provide information about the history of life on earth, with the exception of those defined as archeological resources under the Archaeological Resources Protection Act of 1979, or cultural items as defined in the Native American Graves Protection and Repatriation Act.

Prior to undertaking any surface-disturbing activities on the lands covered by this lease, the lessee or operator, unless notified to the contrary by the Forest Service, shall:

1. Contact the Forest Service to determine if a site-specific paleontological inventory is required. The Forest Service is responsible for ensuring that the leased land is examined, prior to undertaking any surface-disturbing activities, to determine potential effects upon any paleontological resources.

2. The lessee or operator may, at their own discretion and cost, engage the services of a paleontological resource specialist acceptable to the Forest Service to conduct a paleontological resource inventory of the area of proposed surface disturbance. An acceptable inventory report is to be submitted to the Forest Service for review and approval at the time a surface-disturbing plan of operation is submitted.

3. Implement mitigation measures required by the Forest Service and Bureau of Land Management to preserve or avoid destruction of any paleontological resources. Mitigation may include relocation of proposed facilities, recovery (removal), and recordation, other protective measures, or a combination of mitigation procedures. All costs of the mitigation, preparation, and curation will be borne by the lessee or operator, and all data, reports, and specimens salvaged will remain under the jurisdiction of the U.S. Government as appropriate.

4. The lessee or operator shall immediately bring to the attention of the Forest Service any paleontological resources discovered as a result of surface operation under this lease and shall leave such discoveries intact until directed to proceed by the Forest Service.

### *LMG2020-N-01 (Medora RD)-Notice for Lands of the National Forest System Under Jurisdiction of Department of Agriculture*

The permittee/lessee must comply with all the rules and regulations of the Secretary of Agriculture set forth at Title 36, Chapter II, of the Code of Federal Regulations governing the use and management of the National Forest System when not inconsistent with the rights granted by the Secretary of Interior in the permit. The Secretary of Agriculture's rules and regulations must be complied with for (1) all use and occupancy of the National Forest System prior to approval of an exploration plan by the Secretary of the Interior, (2) uses of all existing improvements, such as forest development roads, within and outside the area permitted by the Secretary of the Interior,

Exhibit 4    Page 74 of 77

Kraken_000135

and (3) use and occupancy of the National Forest System not authorized by an exploration plan approved by the Secretary of the Interior.

All matters related to this stipulation are to be addressed to:

District Ranger, Medora Ranger District
US Forest Service
Dakota Prairie Grasslands
99 23rd Avenue West #B
Dickinson, ND 58601-3135

who is the authorized representative of the Secretary of Agriculture.

### *LMG2020-NSO-01-Slopes > 40%*

No surface occupancy or use is allowed on slopes greater than 40 percent.

For the purpose of: Protecting soil resources from loss of productivity, preventing erosion on steep slopes, soil mass movement, and resultant sedimentation.

Exceptions:  The authorized officer may grant an exception to this stipulation if an environmental analysis determines that the impacts of the plan submitted by the operator are acceptable or can be adequately mitigated to protect soil resources from loss of productivity, prevent erosion on steep slopes, soil mass movement, and resultant sedimentation.

Modifications:  The boundaries of the stipulated area may be modified if the authorized officer determines that portions of the area do not include slopes greater than 40 percent.

Waiver:  This stipulation may be waived if the authorized officer determines conditions have changed and the entire leasehold no longer contains any slopes greater than 40 percent.

Any changes to this stipulation will be made in accordance with the land use plan and/or the regulatory provisions for such changes.  (For guidance on the use of this stipulation, see BLM Manual 1624 and 3101 or FS Manual 1950 and 2820).

### *LMG2020-NSO-06-Sage Grouse Priority Habitat*

No surface occupancy or use is allowed within Sage-Grouse Priority Habitat Management Areas.

For the purpose of:  Protecting sage-grouse habitat in consideration of mixed ownership patterns from habitat fragmentation and loss and sage-grouse populations from disturbance inside Priority Habitat Management Areas while providing for energy development needs.

Exceptions:  The authorized officer may grant an exception if an environmental review determines that the action, as proposed or conditioned, would not impair the function or utility of the site for the current or subsequent seasonal habitat, life-history, or behavioral needs of sage-grouse and doing so would limit impacts to higher quality habitat or habitat connectivity on neighboring lands (e.g., state, private, etc.). The FS can and does grant exceptions if the FS, in coordination with the ND Game and Fish Department, determines that granting an exception would not adversely impact the population being protected and would improve management opportunities in areas of

Exhibit 4         Page 75 of 77

Kraken_000136

higher habitat value on neighboring lands.

Modifications:  The authorized officer may modify the area subject to the stipulation or the NSO criteria if, in consultation with North Dakota Game and Fish, an environmental review finds that a portion of the NSO area is nonessential, or it is identified through scientific research or monitoring that the existing criteria are inadequate (i.e., resulting in impacts to higher value habitat on other lands) or overly protective for maintaining the function or utility of the site for the seasonal habitat, life-history, or behavioral needs of the sage-grouse (e.g., reproductive display, daytime loafing/staging activities, nesting, etc.) or doing so would provide for more effective sage-grouse habitat management and conservation at the landscape scale.

Waiver:  This stipulation may be waived over the entire lease if, in coordination with the North Dakota Game and Fish Department, it is determined that the area holds limited value for sage-grouse life cycle needs compared to neighboring lands (e.g., state, private, etc.), as determined by the state wildlife agency, and doing so would lead to greater benefits to sage-grouse on those lands. Any changes to the stipulation will be made in accordance with the land and resource management plan and/or the regulatory provisions for such changes.

Any changes to this stipulation will be made in accordance with the land use plan and/or the regulatory provisions for such changes.  (For guidance on the use of this stipulation, see BLM Manual 1624 and 3101 or FS Manual 1950 and 2820).

### *LMG2020-NSO-07-Sharp-tailed Grouse Display Grounds*

No surface occupancy or use is allowed within 0.25 mile (line of sight) of a sharp-tailed grouse display grounds.

For the purpose of:  Preventing abandonment of display grounds, reduced reproductive success, and adverse habitat loss.

Exceptions:  The authorized officer may grant an exception to this stipulation if an environmental analysis determines that the impacts of the plan submitted by the operator are acceptable or can be adequately mitigated to prevent abandonment of display grounds, reduced reproductive success, and adverse habitat loss.

Modifications:  The boundaries of the stipulated area may be modified if the authorized officer determines that portions of the area do not include any display grounds that have been used during the last two breeding seasons. The boundary of the stipulated area may also be modified if the authorized officer determines that portions of the area can be occupied without adversely affecting sharp-tailed grouse or the display grounds.

Waiver:  This stipulation may be waived if the authorized officer determines conditions have changed and all display grounds within the leasehold or within the stipulated distance of the leasehold have not been used during the last two breeding seasons.

Any changes to this stipulation will be made in accordance with the land use plan and/or the regulatory provisions for such changes.  (For guidance on the use of this stipulation, see BLM Manual 1624 and 3101 or FS Manual 1950 and 2820).

Exhibit 4                    Page 76 of 77

Kraken_000137

## LMG2020-NSO-14-Inventoried Roadless Areas

No surface occupancy or use is allowed within those portions of inventoried roadless areas outside of a corridor within 0.25 miles of existing maintenance level 3, 4, and 5 roads, as described in the roadless areas CSU stipulation.

For the purpose of: Preventing landscape fragmentation and preserving roadless area values and characteristics

Exceptions: No conditions for an exception are anticipated, and approval of an exception would be unlikely.

Modifications: No conditions for a modification are anticipated, and approval of a modification would be unlikely.

Waiver: No conditions for a waiver are anticipated, and approval of a waiver would be unlikely.

Any changes to this stipulation will be made in accordance with the land use plan and/or the regulatory provisions for such changes. (For guidance on the use of this stipulation, see BLM Manual 1624 and 3101 or FS Manual 1950 and 2820).

## LMG2020-TL-01-Sharp-tailed Grouse Display Grounds

No surface use is allowed during the following time period(s). This stipulation does not apply to operation and maintenance of production facilities.

March 1 through June 15 within 1 mile (line of sight) of a sharp- tailed grouse display ground.

For the purpose of: Preventing abandonment of display grounds and reduced reproductive success.

Exceptions: The authorized officer may grant an exception to this stipulation if an environmental analysis determines that the impacts of the plan submitted by the operator are acceptable or can be adequately mitigated to prevent abandonment of display grounds and reduced reproductive success. An exception may be granted if the display ground has not been used by May 1 of the current year.

Modifications: The boundaries of the stipulated area may be modified if the authorized officer determines that portions of the area do not include display grounds that have been used during the last two breeding seasons.

Waiver: This stipulation may be waived if the authorized officer determines conditions have changed and all display grounds within the leasehold or within the stipulated distance from the leasehold have not been used during the past two breeding seasons.

Any changes to this stipulation will be made in accordance with the land use plan and/or the regulatory provisions for such changes. (For guidance on the use of this stipulation, see BLM Manual 1624 and 3101 or FS Manual 1950 and 2820.

Exhibit 4          Page 77 of 77