# EXHIBIT 6

Adrian A. Miller
Michelle M. Sullivan
Sullivan Miller Law PLLC
2812 1st Avenue North
Suite 225
Billings, MT 59101
Telephone:  406-403-7066
michelle.sullivan@sullivanmiller.com
adrian.miller@sullivanmiller.com

Brian D. Lee
LEE LAW OFFICE PC
P.O. Box 790, 158 Main Street
Shelby, MT 59474
Telephone: (406) 434-5244
Email: brian@leelawofficepc.com

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | | |
|---|---|---|
| PHOENIX ENERGY ONE, LLC f/k/a PHOENIX CAPITAL GROUP HOLDINGS, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> KRAKEN OIL AND GAS, LLC, KRAKEN OPERATING, LLC, and UNITED STATES BUREAU OF LAND MANAGEMENT, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Cause No. CV-25-65-BLG-TJC <br><br> **DECLARATION OF JUSTIN ARN** |

Exhibit 6

I, Justin Arn, hereby state under penalty of perjury as follows:

1.  I am over the age of eighteen and competent to testify to the matters set forth herein. The statements in this Declaration are based on my personal knowledge and experience.

2.  I am a professional landman with approximately nine years of experience in the oil and gas industry. I am a member of the American Association of Professional Landmen and hold a Registered Landman (RL) certification.

3. I have been employed by Phoenix Energy One, LLC ("Phoenix") for approximately 5½ years. During that time, I have managed and supervised teams of landmen, brokers, imagers, and lease agents. I have coordinated, overseen, and approved acquisition and due-diligence projects involving hundreds of millions of dollars in aggregate value.

4.  I am currently a Chief Land and Title Officer with Phoenix and a Partner. My responsibilities with Phoenix include evaluating oil and gas lease opportunities, reviewing lease sale notices and related disclosures, assessing title and regulatory risks, and participating in decisions regarding whether and on what terms Phoenix should acquire mineral interests or leases, including federal oil and gas leases.

5.  I was directly involved in Phoenix's evaluation of, bidding on, and acquisition of the federal oil and gas lease issued to Phoenix in connection with the August 2024

Exhibit 6

federal lease sale, identified as Lease No. MTM106370202 (the "Phoenix Lease"), covering lands associated with the Dagney wells (the "Parcel").

6. Prior to Phoenix submitting its bid at the August 2024 lease sale, I reviewed the publicly available lease sale notices, parcel lists, and related materials issued by the Bureau of Land Management ("BLM") for that sale as part of Phoenix's due diligence process.

7. My review of the lease sale materials for the August 2024 lease sale was conducted in the ordinary course and followed my standard procedures.

8. Nothing in the lease sale materials or related disclosures indicated that more than one communitization agreement covering the Parcel existed.

9. The only communitization agreement disclosed or identified prior to bidding in the lease sale materials was a communitization agreement executed in 2021 covering the Dagney 21-28 #1H well (the "2021 CA").

10. The lease sale materials did not disclose, reference, or identify any communitization agreements executed or amended in 2023 affecting the Parcel, including the Amended Communitization Agreement MTM111087for the Dagney 21-28 #1H well (the "Amended CA") and the Communitization Agreement MTM112222 covering the Dagney 33-21 #3H and #4H wells (the "New CA"). Phoenix is not a party to the New CA or the Amended CA (collectively, the "2023 CAs"), and it was not involved in the Parcel prior to obtaining its lease in 2024.

Exhibit 6

11.  BLM's lease sale materials also listed Kraken Oil and Gas, LLC ("Kraken") as the operator associated with the 2021 CA. According to the Montana Board of Oil and Gas online well files for the Dagney 33-21 #3H well (the "#3H Well") and the Dagney 33-21 #4H well (the "#4H Well"), the operator of the #3H Well and the #4H Well is Kraken Operating, LLC ("Kraken Operating"). Kraken Operating was the operator who submitted the permits to drill for each well, and Kraken Operating has always been the operator. If there were CAs covering the #3H and #4H wells, then the lease materials also listed the incorrect operator.

12. Prior to Phoenix submitting its bid or being awarded the Phoenix Lease, Phoenix did not receive notice from BLM that the Amended CA or the New CA affected the Parcel.

13.  None of the lease sale materials disclosed that the operator had kept revenue from the unleased federal minerals.

14.  Information that proceeds attributable to unleased federal minerals were not being held in a standard escrow account but, instead, retained by the operator would be material to a reasonable bidder's valuation of, and decision to bid on, a federal oil and gas lease.

15.  It is customary and reasonable for bidders to rely on BLM's lease sale notices and disclosed materials to identify existing communitization agreements affecting the lands offered for lease or identify any issues involving the standard escrow

Exhibit 6

account for unleased federal minerals. Phoenix relied on those disclosures in evaluating and bidding on the Phoenix Lease.

16. In my experience, bidders are not expected to independently search internal BLM files, IBLA dockets, or non-disclosed agency records to identify undisclosed communitization agreements affecting lease sale parcels. Rather, bidders reasonably rely on the lease sale notices and materials provided by BLM to disclose existing encumbrances on the lands offered for lease.

17. Communitization agreements are not recorded against the legal description of the minerals and, therefore, do not appear in the chain of title for the mineral estate.

18. Phoenix was not given any notice that the 2023 CAs existed by BLM after it was awarded the Lease. Phoenix was also not given any notice by BLM that the 2023 CAs existed after it executed the Lease.

19. Prior to December 2024, Phoenix did not have access to, and did not receive, copies of the 2023 CAs through any lease sale documentation, BLM correspondence, public posting, or other communication.

20. The first time Phoenix became aware of the existence of the 2023 CAs was in December 2024, after Phoenix demanded payment of revenues that should have been held in suspense. In response, Kraken Oil and/or Kraken Operating (collectively, "Kraken") provided copies of those agreements.

Exhibit 6

21.  Prior to receiving those documents from Kraken in December 2024, Phoenix had no reason to believe that the 2023 CAs existed or affected the Phoenix Lease or that the operator had kept revenue from the unleased federal minerals.

22. Prior to December 2024, neither I nor, to my knowledge, anyone else at Phoenix had actual knowledge of the existence of or any terms of the 2023 CAs.

23.  Based on my experience reviewing federal communitization agreements, the 2023 CAs are not standard communitization agreements. Section 5 of the 2023 CAs contains unique, non-standard language. Specifically, Section 5 contains provisions that materially affect royalty allocation and the treatment of unleased federal minerals in a manner that differs from customary practices and from BLM's own policies. A standard federal CA requires the operator to deposit revenue from unleased federal minerals into an interest-bearing escrow account after the operator accounts for the proportionate share of costs associated with the minerals.

24.  Had the 2023 CAs, or their terms, been disclosed in the lease sale materials prior to bidding, Phoenix would have considered those agreements material to its due-diligence review and would have evaluated the Phoenix Lease differently in determining whether and how to bid. Phoenix based its bid for the lease upon the understanding that a standard unleased mineral account existed. I do not believe Phoenix would have bid on the Parcel if it had known that Kraken had kept the unleased federal mineral revenue.

Exhibit 6

25.  I do not believe any bidder, other than perhaps Kraken, would have bid on the Parcel in the lease sale if BLM had given notice that the 2023 CAs existed and that the operator had kept unleased federal mineral revenue instead of depositing it into a standard escrow account. It is common knowledge in the industry that BLM requires interest-bearing escrow accounts for unleased federal minerals, requires the operator to deposit the unleased mineral revenue into it, and that those suspended funds are released to the ultimate lessee after the lessee pays its share of costs. In fact, Section 5 of a standard CA requires the lessee of unleased federal minerals to pay its proportionate share of costs before escrow funds are released.

26.  According to the online data available on the Montana Board of Oil and Gas's website for the #3H Well, the well was spud on October 10, 2020. According to online data available for the #4H Well, the well was spud on October 30, 2020.

27. I am unaware of any other federal CA which allocates production and/or revenue from unleased federal minerals to an operator or that has language like that found in a Compensatory Royalty Agreement ("CRA"). The language in Section 5 of the 2023 CAs is not language from a CA; it is language from a CRA. No bidder would bid on a lease if they knew that a CRA was in place because it makes no financial sense and is against BLM's own policies.

28.  Because Phoenix only became aware of the 2023 CAs from Kraken in 2024 and not BLM, it was confused and did not know BLM's position on the 2023 CAs.

Exhibit 6

Phoenix did not know, for example, whether BLM believed that the Phoenix Lease was subject to the 2023 CAs and, if so, whether BLM had a formal position in interpretation of the contradictory language in Section 5.

29.  Phoenix still does not know whether Kraken ever placed any unleased mineral proceeds in an escrow account or whether BLM understood what Kraken was doing with those proceeds.

30.  Phoenix waited for answers from BLM, but it eventually realized that BLM was not going to provide any additional information or documents, and it was not going to take any official position on the 2023 CAs.

Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.

Executed this 18th day of January, 2026

Signature: _____
Justin Arn (Jan 18, 2026 15:53:36 CST)
Email:  ja@phoenixenergy.com

Exhibit 6