# EXHIBIT 7

| Form 3100-11 (March 2023) **ORIGINAL** | **UNITED STATES DEPARTMENT OF THE INTERIOR BUREAU OF LAND MANAGEMENT** LEASE FOR OIL AND GAS | Serial Number **MTMT106370202** |
|---|---|---|

The undersigned (page 2) offers to lease all or any of the lands in Item 2 that are available for lease pursuant to the Mineral Lands Leasing Act of 1920, as amended and supplemented (30 U.S.C. 181 et seq.), the Mineral Leasing Act for Acquired Lands of 1947, as amended (30 U.S.C. 351-359), or _____ (other).

## READ INSTRUCTIONS BEFORE COMPLETING

1. Name  PHOENIX CAPITAL GROUP HOLDINGS LLC

   Street  18575 JAMBOREE RD STE 830

   City, State, Zip Code  IRVINE, CA 92612

2. This lease is for: *(Check Only One)*  ☐ PUBLIC DOMAIN LANDS  ☑ ACQUIRED LANDS (percent U.S. interest 50%)

   Surface managing agency if other than the Bureau of Land Management (BLM): _____  Unit/Project: _____

   Land included in lease:

   T. 26 N    R. 59 E    Meridian  PRINCIPAL MER    State  MT    County Richland

   Sec. 21  W1/2NW1/4, NW1/4SW1/4.

|  |  |
|---|---|
| Total acres in lease | 120.000 |
| Rental retained | $360.00 |

This lease is issued granting the exclusive right to drill for, mine, extract, remove and dispose of all the oil and gas (except helium) in the lands described in Item 2 together with the right to build and maintain necessary improvements thereupon for the term indicated below, subject to renewal or extension in accordance with the appropriate leasing authority. Rights granted are subject to applicable laws, the terms, conditions, and attached stipulations of this lease, the Secretary of the Interior's regulations and formal orders in effect as of lease issuance, and to regulations hereafter promulgated when not inconsistent with lease rights granted or specific provisions of this lease.

**For a competitive lease, this lease is issued to the high bidder pursuant to the highest bidder's duly executed bid form submitted under 43 CFR 3120 and is subject to the provisions of that bid and those specified on this form.**

Type and primary term of lease:

☑ Competitive lease (ten years)

☐ Other _____

THE UNITED STATES OF AMERICA

by _____ (BLM)

Chief, Fluids Adjudication Section          09/19/2024

(Title)                                    (Date)

EFFECTIVE DATE OF LEASE          **10/01/2024**

Continued on Page 2                    (Form 3100-11, page 1)

Exhibit 7

USA_001416

3. (a) Undersigned certifies that lessee shall comply with the Department of the Interior's nonprocurement debarment and suspension regulations as required by 2 CFR 1400 subpart B and shall communicate to comply with these regulations to persons with whom it does business related to this lease by including this term in its contracts and transactions.

(b) For leases that may be issued as a result of the Mineral Leasing Act (MLA) of 1920, the undersigned certifies that: (1) the lessee is a citizen of the United States; an association (including partnerships and trusts) of such citizens; a municipality; or a corporation organized under the laws of the United States or of any State or Territory thereof; (2) all parties holding an interest in the lease are in compliance with 43 CFR parts 3000 and 3100 and the leasing authorities cited herein; (3) they are in compliance with the acreage limitation requirements wherein the bidder's/lessee's chargeable interests, direct and indirect, in each public domain and acquired lands separately in the same State, do not exceed 246,080 acres in oil and gas leases (of which up to 200,000 acres may be in oil and gas options or 300,000 acres in leases in each leasing District in Alaska of which up to 200,000 acres may be in options); (4) the lessee is not considered a minor under the laws of the State in which the lands covered by this offer are located; (5) the lessee is in compliance with qualifications concerning Federal coal lease holdings provided in sec. 2(a)2 (A) of the MLA (Title 30 U.S.C. Section 201(a)(2)(A)); (6) the lessee is in compliance with reclamation requirements for all Federal oil and gas lease holdings as required by sec. 17(g) of the MLA (Title 30 U.S.C. Section 226(g)); and (7) the lessee is not in violation of sec. 41 of the MLA (Title 30 U.S.C. Section 195).

(c) For leases that may be issued as a result of this sale under the Department of the Interior Appropriations Act of 1981, the undersigned must: (1) be a citizen or national of the United States; a citizen of another country lawfully admitted for permanent residence; a private, public or municipal corporation organized under the laws of the United States or of any State or Territory thereof; an association (including partnerships and trusts) of such citizens, nationals, resident citizens of another country or private, public or municipal corporations; and (2) certify that all parties in interest are in compliance with 43 CFR part 3130 and the leasing authority cited herein.

(d) Undersigned agrees that signature to this offer constitutes acceptance of this lease, including all terms, conditions, and stipulations of which the lessee has been given notice, and any amendment or separate lease that may include any land described in this lease open to leasing at the time this lease was filed but omitted for any reason from this lease.

Duly executed this _____ day of _____, 20 _____

_____
(Signature and Title of Lessee or Attorney-in-fact)

_____    _____
(Name of President of Company)         (Name of Vice President of Company)

☐ See Attachment for additional principals

Title 18 U.S.C. Section 1001 and Title 43 U.S.C. Section 1212 make it a crime for any person knowingly and willfully to make to any Department or agency of the United States any false, fictitious, or fraudulent statements or representations as to any matter within its jurisdiction.

## LEASE TERMS

Sec. 1. Rentals - Rentals must be paid to proper office of lessor in advance of each lease year. Annual rental rates per acre or fraction thereof are:

(a) Competitive lease, $3.00 for the first 2 years; $5.00 for years 3 through 8; thereafter $15.00;
(b) Other, see attachment; or
as specified in regulations at the time this lease is issued.

If this lease or a portion thereof is committed to an approved cooperative or unit plan which includes a well capable of producing leased resources, and the plan contains a provision for allocation of production, royalties must be paid on the production allocated to this lease. However, annual rentals must continue to be due at the rate specified in (a) or (b) rentals for those lands not within a participating area.

Failure to pay annual rental, if due, on or before the anniversary date of this lease (or next official working day if office is closed) must automatically terminate this lease by operation of law. Rentals may be waived, reduced, or suspended by the Secretary upon a sufficient showing by lessee.

Sec. 2. Royalties - Royalties must be paid to proper office of lessor. Royalties must be computed in accordance with regulations on production removed or sold. Royalty rates are:

(a) Competitive lease, 16.67%;
(b) Other, see attachment; or
as specified in regulations at the time this lease is issued.

Lessor reserves the right to specify whether royalty is to be paid in value or in kind, and the right to establish reasonable minimum values on products after giving lessee notice and an opportunity to be heard. When paid in value, royalties must be due and payable on the last day of the month following the month in which production occurred. When paid in kind, production must be delivered, unless otherwise agreed to by lessor, in merchantable condition on the premises where produced without cost to lessor. Lessee must not be required to hold such production in storage beyond the last day of the month following the month in which production occurred, nor must lessee be held liable for loss or destruction of royalty oil or other products in storage from causes beyond the reasonable control of lessee.

Minimum royalty in lieu of rental of not less than the rental which otherwise would be required for that lease year must

Continued on Page 3                                    (Form 3100-11, page 2)

Exhibit 7

USA_001417

be payable at the end of each lease year beginning on or after a discovery in paying quantities. This minimum royalty may be waived, suspended, or reduced, and the above royalty rates may be reduced, for all or portions of this lease if the Secretary determines that such action is necessary to encourage the greatest ultimate recovery of the leased resources, or is otherwise justified.

An interest charge will be assessed on late royalty payments or underpayments in accordance with the Federal Oil and Gas Royalty Management Act of 1982 (FOGRMA) (30 U.S.C. 1701). Lessee must be liable for royalty payments on oil and gas lost or wasted from a lease site when such loss or waste is due to negligence on the part of the operator, or due to the failure to comply with any rule, regulation, order, or citation issued under FOGRMA or the leasing authority.

Sec. 3. Bonds - A bond must be filed and maintained for lease operations as required under regulations.

Sec. 4. Diligence, rate of development, unitization, and drainage - Lessee must exercise reasonable diligence in developing and producing, and must prevent unnecessary damage to, loss of, or waste of leased resources. Lessor reserves right to specify rates of development and production in the public interest and to require lessee to subscribe to a cooperative or unit plan, within 30 days of notice, if deemed necessary for proper development and operation of area, field, or pool embracing these leased lands. Lessee must drill and produce wells necessary to protect leased lands from drainage or pay compensatory royalty for drainage in amount determined by lessor.

Sec. 5. Documents, evidence, and inspection - Lessee must file with proper office of lessor, not later than 30 days after effective date thereof, any contract or evidence of other arrangement for sale or disposal of production. At such times and in such form as lessor may prescribe, lessee must furnish detailed statements showing amounts and quality of all products removed and sold, proceeds therefrom, and amount used for production purposes or unavoidably lost. Lessee may be required to provide plats and schematic diagrams showing development work and improvements, and reports with respect to parties in interest, expenditures, and depreciation costs. In the form prescribed by lessor, lessee must keep a daily drilling record, a log, information on well surveys and tests, and a record of subsurface investigations and furnish copies to lessor when required. Lessee must keep open at all reasonable times for inspection by any representative of lessor, the leased premises and all wells, improvements, machinery, and fixtures thereon, and all books, accounts, maps, and records relative to operations, surveys, or investigations on or in the leased lands. Lessee must maintain copies of all contracts, sales agreements, accounting records, and documentation such as billings, invoices, or similar documentation that supports costs claimed as manufacturing, preparation, and/or transportation costs. All such records must be maintained in lessee's accounting offices for future audit by lessor. Lessee must maintain required records for 6 years after they are generated or, if an audit or investigation is underway, until released of the obligation to maintain such records by lessor.

During existence of this lease, information obtained under this section will be closed to inspection by the public in accordance with the Freedom of Information Act (5 U.S.C. 552).

Sec. 6. Conduct of operations - Lessee must conduct operations in a manner that minimizes adverse impacts to the land, air, and water, to cultural, biological, visual, and other resources, and to other land uses or users. Lessee must take reasonable measures deemed necessary by lessor to accomplish the intent of this section. To the extent consistent with lease rights granted, such measures may include, but are not limited to, modification to siting or design of facilities, timing of operations, and specification of interim and final reclamation measures. Lessor reserves the right to continue existing uses and to authorize future uses upon or in the leased lands, including the approval of easements or rights-of-way. Such uses must be conditioned so as to prevent unnecessary or unreasonable interference with rights of lessee.

Prior to disturbing the surface of the leased lands, lessee must contact lessor to be apprised of procedures to be followed and modifications or reclamation measures that may be necessary. Areas to be disturbed may require inventories or special studies to determine the extent of impacts to other resources. Lessee may be required to complete minor inventories or short term special studies under guidelines provided by lessor. If in the conduct of operations, threatened or endangered species, objects of historic or scientific interest, or substantial unanticipated environmental effects are observed, lessee must immediately contact lessor. Lessee must cease any operations that would result in the destruction of such species or objects.

Sec. 7. Mining operations - To the extent that impacts from mining operations would be substantially different or greater than those associated with normal drilling operations, lessor reserves the right to deny approval of such operations.

Sec. 8. Extraction of helium - Lessor reserves the option of extracting or having extracted helium from gas production in a manner specified and by means provided by lessor at no expense or loss to lessee or owner of the gas. Lessee must include in any contract of sale of gas the provisions of this section.

Sec. 9. Damages to property - Lessee must pay lessor for damage to lessor's improvements, and must save and hold lessor harmless from all claims for damage or harm to persons or property as a result of lease operations.

Sec. 10. Protection of diverse interests and equal opportunity - Lessee must pay, when due, all taxes legally assessed and levied under laws of the State or the United States; accord all employees complete freedom of purchase; pay all wages at least twice each month in lawful money of the United States; maintain a safe working environment in accordance with standard industry practices; and take measures necessary to protect the health and safety of the public.

Lessor reserves the right to ensure that production is sold at reasonable prices and to prevent monopoly. If lessee operates a pipeline, or owns controlling interest in a pipeline or a company operating a pipeline, which may be operated accessible to oil derived from these leased lands, lessee must comply with section 28 of the Mineral Leasing Act of 1920.

Continued on Page 4

(Form 3100-11, page 3)

Exhibit 7

USA_001418

Lessee must comply with Executive Order No. 11246 of September 24, 1965, as amended, and regulations and relevant orders of the Secretary of Labor issued pursuant thereto. Neither lessee nor lessee's subcontractors must maintain segregated facilities.

Sec. 11. Transfer of lease interests and relinquishment of lease - As required by regulations, lessee must file with lessor any assignment or other transfer of an interest in this lease. Lessee may relinquish this lease or any legal subdivision by filing in the proper office a written relinquishment, which will be effective as of the date of filing, subject to the continued obligation of the lessee and surety to pay all accrued rentals and royalties.

Sec. 12. Delivery of premises - At such time as all or portions of this lease are returned to lessor, lessee must place affected wells in condition for suspension or abandonment, reclaim the land as specified by lessor and, within a reasonable period of time, remove equipment and improvements not deemed necessary by lessor for preservation of producible wells.

Sec. 13. Proceedings in case of default - If lessee fails to comply with any provisions of this lease, and the noncompliance continues for 30 days after written notice thereof, this lease will be subject to cancellation unless or

until the leasehold contains a well capable of production of oil or gas in paying quantities, or the lease is committed to an approved cooperative or unit plan or communitization agreement which contains a well capable of production of unitized substances in paying quantities. This provision will not be construed to prevent the exercise by lessor of any other legal and equitable remedy, including waiver of the default. Any such remedy or waiver will not prevent later cancellation for the same default occurring at any other time. Lessee will be subject to applicable previsions and penalties of FOGRMA (30 U.S.C. 1701).

Sec. 14. Heirs and successors-in-interest - Each obligation of this lease will extend to and be binding upon, and every benefit hereof will inure to the heirs, executors, administrators, successors, beneficiaries, or assignees of the respective parties hereto.

    A.  General:

        1.    The BLM will complete page 1 of the form.

        2.    For competitive leases, a bidder must submit a completed bid form (3000-002). For all other leases, the lessee must sign item 3. If additional principals need to be listed, please include those on a separate sheet. See 2 CFR 180.995 for the definition of principals.

**NOTICES**

This form is exempt from the Paperwork Reduction Act of 1995 (P.L. 104-13) under 5 CFR 1320.3(h)(1).

The Privacy Act of 1974 and the regulations in 43 CFR 2.48(d) provide that you be furnished with the following information in connection with information required by this oil and gas lease.

AUTHORITY: 30 U.S.C. 181 et seq.; 30 U.S.C. 351-359; 42 U.S.C. 6508.

PRINCIPAL PURPOSE: The information is to be used to process oil and gas leases.

ROUTINE USES: (1) The adjudication of the lessee's rights to the land or resources. (2) Documentation for public information in support of notations made on land status records for the management, disposal, and use of public lands and resources. (3) Transfer to appropriate Federal agencies when consent or concurrence is required prior to granting a right in public lands or resources. (4)(5) Information from the record and/or the record will be transferred to appropriate Federal, State, local or foreign agencies, when relevant to civil, criminal or regulatory investigations or prosecutions.

EFFECT OF NOT PROVIDING INFORMATION: Disclosure of the information is voluntary. If all the information is not provided, the lease may be rejected. See regulations at 43 CFR 3100.

Exhibit 7

USA_001419

Form 3000-2
(March 2023)

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF LAND MANAGEMENT
**COMPETITIVE OIL AND GAS OR
GEOTHERMAL RESOURCES LEASE BID**

Mineral Leasing Act of 1920 (30 U.S.C. 181 et seq.)
Mineral Leasing Act for Acquired Lands of 1947 (30 U.S.C. 351-359)
Geothermal Steam Act of 1970 (30 U.S.C. 1001-1025)
Department of the Interior Appropriations Act, Fiscal Year 1981 (42 U.S.C. 6508)

| Geographic State |
|---|
| MT |
| Date of Sale |
| 08/06/2024 |

| THE BID IS FOR *(check one)*: | AMOUNT OF TOTAL BID *(see instructions below)* | |
|---|---|---|
| ☑ Oil and Gas Serial/Parcel No. MT-2024-08-0360 | $765,580.00 | |
| ☐ Geothermal Serial/Parcel No. _____ | | |
| ☐ NPR-A Tract No. _____ | AMOUNT OF TOTAL BID | PAYMENT SUBMITTED WITH BID |
| ☐ Joint Bidders *(see instructions below)* | $ 765,580.00 | $ 4,660.00 |

The appropriate regulations applicable to this bid are: (1) for oil and gas leases—43 CFR 3120; (2) for National Petroleum Reserve-Alaska (NPR-A) leases—43 CFR 3132; and (3) for Geothermal resources leases—43 CFR 3203. (*See details concerning lease qualifications on next page.*)

I CERTIFY THAT (1) I have read and am in compliance with; and not in violation of the lessee qualification requirements under the applicable regulations for this bid; (2) this bid is not in violation of 18 U.S.C. 1860, which prohibits unlawful combination or intimidation of bidders; and (3) that this bid was arrived at independently and is tendered without collusion with any other bidder for the purpose of restricting competition.

**IMPORTANT NOTICE:** Execution of this form, where the offer is the high bid, constitutes a binding lease offer, including all applicable terms and conditions. Failure to comply with the applicable laws and regulations under which this bid is made will result in rejection of the bid and forfeiture of all monies submitted.

**Phoenix Capital Group Holdings, LLC**
_____
Print or Type Name of Lessee

**18575 Jamboree Road, Suite 830**
_____
Address of Lessee

| **Irvine** | **CA** | **92612** |
|---|---|---|
| (City) | (State) | (Zip Code) |

_____
Signature of Lessee or Bidder

Adam Ferrari
_____
(Name of President of Company for Lessee)

Lindsey Wilson
_____
(Name of Vice President of Company for Lessee)
☐ See Attachment for additional principals

---

**INSTRUCTIONS FOR OIL AND GAS OR GEOTHERMAL RESOURCES BID**
*(Except NPR-A)*

1. Separate bid form for each lease/parcel or block is required. Identify by the serial/parcel number assigned in the *Notice of Competitive Lease Sale.*

2. Bid must be accompanied by the national minimum acceptable bid (oil and gas: $10.00 per acre; geothermal: twenty percent of the total bid), the first year's rental (oil and gas: $3.00 per acre; geothermal: $2.00 per acre), and the administrative fee (see 43 CFR 3000.12). The remittance must be in the form specified: (1) for oil and gas leases in 43 CFR 3103.1-1; and (2) for geothermal resources leases in 43 CFR 3203.17. The remainder of the bonus bid, if any, must be submitted to the proper Bureau of Land Management (BLM) office within 10 working days for oil and gas, and 15 calendar days for geothermal, after the last day of the competitive auction. **Failure to submit the remainder of the bonus bid within the statutory (or regulatory) timeframe will result in rejection or revocation, as appropriate, of the bid offer and forfeiture of all monies paid.**

3. If the bidder is not the sole party in interest in the lease for which the bid is submitted, all other parties in interest may be required to furnish evidence of their qualifications upon written request by the BLM.

4. This bid may be executed (*signed*) before the competitive auction. If signed before the competitive auction, this form cannot be modified without being executed again. In view of this requirement, the bidder may wish to leave the AMOUNT OF TOTAL BID section blank so that final bid amount may be either completed by the bidder or the BLM at the close of the competitive auction.

5. See 2 CFR 180.995 for the definition of principals.

**INSTRUCTIONS FOR OIL AND GAS:**
NATIONAL PETROLEUM RESERVE--ALASKA (NPR-A)
SEALED BID

1. Separate bid form for each tract is required.

2. AMOUNT OF TOTAL BID must be in whole dollar figure. Bid must be accompanied by one-fifth of the amount of the bid. The remittance must be in the form specified in 43 CFR 3132 for a NPR-A lease bid.

3. Mark the envelope "Sealed Bid for NPR-A Oil and Gas Lease Sale". Be sure correct tract number on which the bid is submitted and date of bid opening are noted plainly on envelope. Use standard size envelopes not to exceed 4-1/2" x 10-1/2". No bid may be modified or withdrawn unless such modification or withdrawal is received prior to time fixed for opening of bids.

4. Mail or deliver bid to the proper BLM office or place indicated in the *Notice of Competitive Lease Sale.*

5. There is no limit to the number of joint bidders that may participate. If joint bidders is marked above, attach on a separate sheet the name and address of the additional bidders, percent of interest of each bidder (total of all bidders must equal 100%), and signature for each joint bidder.

6. See 2 CFR 180.995 for the definition of principals.

---

Title 18 U.S.C. Section 1001 and Title 43 U.S.C. Section 1212 make it a crime for any person knowingly and willfully to make to any Department or agency of the United States any false, fictitious, or fraudulent statements or representations as to any matter within its jurisdiction.

(Continued on page 2)

Exhibit 7

USA_001420

## QUALIFICATIONS

**For all leases that may be issued:** The bidder/lessee shall comply with the Departments of the Interior's nonprocurement debarment and suspension regulations as required by 2 CFR 1400 subpart B and shall communicate the requirement to comply with these regulations to persons with whom it does business related to this lease by including this term in its contracts and transactions.

**For leases that may be issued as a result of this sale under the Mineral Leasing Act (The Act) of 1920, as amended, the bidder must:** (1) Be a citizen of the United States; an association *(including partnerships and trusts)* of such citizens; a municipality; or a corporation organized under the laws of the United States or of any State or Territory thereof;  (2) Be in compliance with the acreage limitation requirements wherein the bidder's interests, direct and indirect, in oil and gas leases in the State identified do not exceed 246,080 acres each in public domain or acquired lands including acreage covered by this bid, of which not more than 200,000 acres are under options. If this bid is submitted for lands in Alaska, the bidder's holdings in each of the Alaska leasing districts do not exceed 300,000 acres, of which no more than 200,000 acres are under options in each district; (3) Be in compliance with Federal coal lease holdings as provided in sec. 2(a)2(A) of the Act (Title 30 U.S.C. Section 201(a)(2)(A)); (4) Be in compliance with reclamation requirements for all Federal oil and gas holdings as required by sec. 17 of the Act (Title 30 U.S.C. Section 226(g)); (5) Not be in violation of sec. 41 of the Act (Title 30 U.S.C. Section 195)); and (6) Certify that all parties in this bid are in compliance with 43 CFR parts 3000 and 3100 and the leasing authority cited herein.

**For leases that may be issued as a result of this sale under the Geothermal Steam Act of 1970, as amended, the bidder must:** (1) Be a citizen of the United States who is at least 18 years of age; an association of such citizens; a municipality; a corporation organized under the laws of the United States or of any State or Territory thereof; or a domestic governmental unit; and (2) Be in compliance with the acreage limitation requirements wherein the bidder's interests, direct and indirect, do not exceed 51,200 acres, and (3) Certify that all parties in this bid are in compliance with 43 CFR part 3200 and the leasing authority cited herein.

**For leases that may be issued as a result of this sale under the Department of the Interior Appropriations Act of 1981, the bidder must:** (1) Be a citizen or national of the United States; an alien lawfully admitted for permanent residence; a private, public or municipal corporation organized under the laws of the United States or of any State or Territory thereof; an association of such citizens, nationals, resident aliens or private, public or municipal corporations; and (2) Certify that all parties in interest in this bid are in compliance with 43 CFR part 3130 and the leasing authority cited herein.

## NOTICES

This form is exempt from the Paperwork Reduction Act of 1995 (P.L. 104-13) under 5 CFR 1320.3(h)(1).

The Privacy Act of 1974 and the regulations in 43 CFR 2.48(d) provide that you be furnished with the following information in connection with information required by this bid for a competitive oil and gas or geothermal resource lease.

AUTHORITY: 30 U.S.C. 181 et seq.; 30 U.S.C 351-359; 30 U.S.C. 1001-1025; 42 U.S.C. 6508.

PRINCIPAL PURPOSE: The information is to be used to process your bid.

ROUTINE USES: (1) The adjudication of the bidder's rights to resources for which this bid is made. (2) Documentation for public information. (3) Transfer to appropriate Federal agencies when consent or concurrence is required prior to granting a right in public lands or resources. (4)(5) Information from the record and/or the record will be transferred to appropriate Federal, State, local or foreign agencies, when relevant to civil, criminal or regulatory investigations or prosecutions.

EFFECT OF NOT PROVIDING INFORMATION: Disclosure of the information is voluntary. If all the information is not provided, your bid may be rejected.

(Form 3000-2, page 2)

Exhibit 7

USA_001421

MTMT106370202

## OIL AND GAS LEASE STIPULATIONS

**Stipulation:** ESTHETICS--To maintain esthetic values, all surface-disturbing activities, semi-permanent and permanent facilities may require special design including location, painting and camouflage to blend with the natural surroundings and meet the intent of the visual quality objectives of the Federal Surface Managing Agency (SMA).

EROSION CONTROL--Surface-disturbing activities may be prohibited during muddy and/or wet soil periods.

CONTROLLED OR LIMITED SURFACE USE STIPULATION --This stipulation may be modified, consistent with land use documents, when specifically approved in writing by the Bureau of Land Management (BLM) with concurrence of the SMA. Distances and/or time periods may be made less restrictive depending on the actual on-ground conditions. The prospective lessee should contact the SMA for more specific locations and information regarding the restrictive nature of this stipulation.

The lessee/operator is given notice that the lands within this lease may include special areas and that such areas may contain special values, may be needed for special purposes, or may require special attention to prevent damage to surface and/or other resources. Possible special areas are identified below. Any surface use or occupancy within such special areas will be strictly controlled, or if absolutely necessary, excluded. Use or occupancy will be restricted only when the BLM and/or the SMA demonstrates the restriction necessary for the protection of such special areas and existing or planned uses. Appropriate modifications to imposed restrictions will be made for the maintenance and operations of producing oil and gas wells.

After the SMA has been advised of specific proposed surface use or occupancy on the leased lands, and on request of the lessee/operator, the Agency will furnish further data on any special areas which may include:

100 feet from the edge of the rights-of-way from highways, designated county roads and appropriate federally-owned or controlled roads and recreation trails.

500 feet, or when necessary, within the 25-year flood plain from reservoirs, lakes, and ponds and intermittent, ephemeral or small perennial streams: 1,000 feet, or when necessary, within the 100-year flood plain from larger perennial streams, rivers, and domestic water supplies.

Bureau of Land Management                                    Standard 16-3

Miles City Field Office

Exhibit 7

USA_001422

MTMT106370202

500 feet from grouse strutting grounds. Special care to avoid nesting areas associated with strutting grounds will be necessary during the period from March 1, to June 30. One-fourth mile from identified essential habitat of state and federal sensitive species. Crucial wildlife winter ranges during the period from December 1 to May 15, and in elk calving areas during the period from May 1 to June 30.

300 feet from occupied buildings, developed recreational areas, undeveloped recreational areas receiving concentrated public use and sites eligible for or designated as National Register sites.

Seasonal road closures, roads for special uses, specified roads during heavy traffic periods and on areas having restrictive off-road vehicle designations.

On slopes over 30 percent or 20 percent on extremely erodible or slumping soils.

APPLICATIONS FOR PERMIT TO DRILL (APDs)--The appropriate BLM field offices are responsible for the receipt, processing, and approval of APDs. The APDs are to be submitted by oil and gas operators pursuant to the requirements found in Onshore Oil and Gas Order No. 1 -- Approval of Operations on Onshore Federal and Indian Oil and Gas Leases (Circular No. 2538). Additional requirements for the conduct of oil and gas operations can be found in the Code of Federal Regulations Title 43, Part 3160. Copies of Onshore Oil and Gas Order No. 1, and pertinent regulations, can be obtained from the BLM field offices in which the operations are proposed. Early coordination with these offices on proposals is encouraged.

CULTURAL AND PALEONTOLOGICAL RESOURCES--The SMA is responsible for assuring that the leased lands are examined to determine if cultural resources are present and to specify mitigation measures. Prior to undertaking any surface-disturbing activities on the lands covered by this lease, the lessee or operator, unless notified to the contrary by the SMA, shall:

1. Contact the appropriate SMA to determine if a site-specific cultural resource inventory is required. If an inventory is required, then:

2. Engage the services of a cultural resource specialist acceptable to the SMA to conduct a cultural resource inventory of the area of proposed surface disturbance. The operator may elect to inventory an area larger than the area of proposed disturbance to cover possible site relocation which may result from environmental or other considerations. An acceptable inventory report is to be submitted to the SMA for review and approval no later than that time when an otherwise complete application for approval of drilling or subsequent surface-disturbing operation is submitted.

3. Implement mitigation measures required by the SMA. Mitigation may include the relocation of proposed lease-related activities or other protective

Bureau of Land Management

Miles City Field Office

Standard 16-3

(Continued)

Exhibit 7

USA_001423

MTMT106370202

measures such as testing salvage and recordation. Where impacts to cultural resources cannot be mitigated to the satisfaction of the SMA, surface occupancy on that area must be prohibited.

The operator shall immediately bring to the attention of the SMA any cultural or paleontological resources discovered as a result of approved operations under this lease, and not disturb such discoveries until directed to proceed by the SMA.

ENDANGERED OR THREATENED SPECIES--The SMA is responsible for assuring that the leased land is examined prior to undertaking any surface-disturbing activities to determine effects upon any plant or animal species, listed or proposed for listing as endangered or threatened, or their habitats. The findings of this examination may result in some restrictions to the operator's plans or even disallow use and occupancy that would be in violation of the Endangered Species Act of 1973 by detrimentally affecting endangered or threatened species or their habitats.

The lessee/operator may, unless notified by the authorized officer of the SMA that the examination is not necessary, conduct the examination on the leased lands at his discretion and cost. This examination must be done by or under the supervision of a qualified resources specialist approved by the SMA. An acceptable report must be provided to the SMA identifying the anticipated effects of a proposed action on endangered or threatened species or their habitats.

**On the lands described below:**

All Lands

Bureau of Land Management

Miles City Field Office

Standard 16-3

(Continued)

Exhibit 7

USA_001424

MTMT106370202

## SOILS, SENSITIVE SOILS

**Stipulation:** Surface occupancy and use is subject to the following operating constraints: prior to surface occupancy and use, prior to surface disturbance on sensitive soils, a reclamation plan must be approved by the administrative officer. Sensitive soils are determined using a combination of slope and soil erodibility. The plan must demonstrate the following:

- o no other practicable alternatives exist for relocating the activity,
- o the activity will be located to reduce impacts to soil and water resources,
- o site productivity will be maintained or restored,
- o surface runoff and sedimentation will be adequately controlled,
- o on- and off-site areas will be protected from accelerated erosion,
- o that no areas susceptible to mass wasting would be disturbed, and
- o surface-disturbing activities will be prohibited during extended wet periods.

Objective: To maintain the chemical, physical, and biotic properties of soils which includes maintaining soil productivity, soil stability, and soil biotic properties. This will prevent excessive erosion, potential mass wasting, and improve the likelihood of successful reclamation.

Exception: The AO may grant an exception to this stipulation if the operator can demonstrate that the proposed action will not contribute to degradation of the soil resource (e.g. excessive soil erosion, mass wasting, and/or lost productivity) or downslope resource conditions (e.g. reduced water quality due to sedimentation).

Modification: The AO may modify the area affected by this stipulation if it is determined that portions of the leasehold do not contain sensitive soils.

Waiver: The AO may waive this stipulation if it is determined that the entire leasehold does not contain sensitive soils.

**On the lands described below:**

All Lands

Bureau of Land Management                    CSU 12-24

Miles City Field Office

Exhibit 7

USA_001425

MTMT106370202

# SIGNIFICANT CULTURAL RESOURCES, NRHP - ELIGIBLE PROPERTIES AND DISTRICTS, AND TCPS, NHLS AND HISTORIC BATTLEFIELDS

**Stipulation:** Surface occupancy and use and surface disturbance is restricted within the Setting Consideration Zone where the integrity of the setting is a contributing element of NRHP significance of a property, for the following historic properties: Wolf Mountains Battlefield NHL and Battle Butte Battlefield ACEC; Reynolds Battlefield site and Reynolds Battlefield ACEC; Cedar Creek Battlefield site and Cedar Creek Battlefield ACEC; and the Long Medicine Wheel ACEC, and all significant Cultural Resources, NRHP-eligible Properties and Districts, and TCPs, NHLs and Historic Battlefields and the Lewis and Clark National Historic Trail. Prior to surface disturbance, occupancy or use within the Setting Consideration Zone of the identified historic properties a mitigation plan (Plan) must be submitted to the BLM by the applicant as a component of the APD (BLM Form 3160-3) or Sundry Notice (BLM Form 3160-5) – Surface Use Plan of Operations. The operator may not initiate surface-disturbing activities unless the BLM AO has approved the Plan or approved it with conditions. (b) The Plan must demonstrate to the AO's satisfaction that the infrastructure will either not be visible or will result in a weak contrast rating and would not have an adverse effect on the setting of the historic properties, ensuring the setting of historic properties.

Objective: To protect inadvertent impacts to significant cultural properties, districts, and their settings; NRHP-eligible properties and districts; TCPs or those designated for traditional use and the settings in which they occur; and those properties determined to be of particular importance to American Indian groups, and NHLs and historic sites eligible for the NRHP and the setting or viewshed in which they occur.

Exception: The BLM AO may grant an exception if it is determined that the action is of a scale, sited in a location, or otherwise designed so that the action will not result in a more than a weak contrast rating. The Plan may be subject to consultation with Montana SHPO, applicable tribes, and other interested parties.

Modification: The BLM AO may modify the area subject to the stipulation based on local evaluation. The stipulation may be modified based on negative or positive monitoring results from similar proposed actions on similar sites. The modification may be subject to consultation with Montana SHPO, applicable tribes, and other interested parties.

Waiver: The BLM AO determines that the entire lease area does not contribute to the setting of a historic property, the waiver may be subject to consultation with Montana SHPO, applicable tribes, and other interested parties.

Bureau of Land Management

Miles City Field Office

CSU 12-35

Exhibit 7

USA_001426

MTMT106370202

**On the lands described below:**

All Lands

Bureau of Land Management

Miles City Field Office

CSU 12-35

(Continued)

Exhibit 7

USA_001427

MTMT106370202

## LEASE NOTICE

### Cultural Resource Protection

This lease may be found to contain historic properties and/or resources protected under National Historic Preservation Act (NHPA), American Indian Religious Freedom Act, Native American Graves Protection and Repatriation Act, E.O. 13007, or other statutes and executive orders. The BLM will not approve any ground-disturbing activities that may affect any such properties or resources until it completes its obligations under applicable requirements of the NHPA and other authorities. The BLM may require modification to exploration or development proposals to protect such properties, or disapprove any activity that is likely to result in adverse effects that cannot be successfully avoided, minimized, or mitigated.

Bureau of Land Management                                                HQ-CR-1

Miles City Field Office

Exhibit 7

USA_001428

MTMT106370202

## LEASE NOTICE

### Notice to Lessee Concerning Mineral Leasing Act Section 2(a)(2)(A)

Provisions of the Mineral Leasing Act (MLA) of 1920, as amended by the Federal Coal Leasing Amendments Act of 1976, affect an entity's qualifications to obtain an oil and gas lease. Section 2(a)(2)(A) of the MLA, 30 U.S.C. 201(a)(2)(A), requires that any entity that holds and has held a Federal Coal Lease for 10 years beginning on or after August 4, 1976, and that is not producing coal in commercial quantities from each such lease cannot qualify for the issuance of any other lease granted under the MLA. 43 CFR 3472 explains coal lessee compliance with Section 2(a)(2)(A).

In accordance with the terms of this oil and gas lease with respect to compliance by the initial lessee with qualifications concerning Federal coal lease holdings, all assignees and transferees are hereby notified that this oil and gas lease is subject to cancellation if: (1) the initial lessee as assignor or as transferor has falsely certified compliance with Section 2(a)(2)(A) because of a denial or disapproval by a State Office of a pending coal action, i.e., arms-length assignment, relinquishment, or logical mining unit; (2) the initial lessee as assignor or as transferor is no longer in compliance with Section 2(a)(2)(A); or (3) the assignee or transferee does not qualify as a bona fide purchaser and, thus, has no rights to bona fide purchaser protection in the event of cancellation of this lease due to noncompliance with Section 2(a)(2)(A).

The lease case file, as well as in other Bureau of Land Management (BLM) records available through the State Office issuing this lease, contains information regarding assignor or transferor compliance with Section 2(a)(2)(A).

Bureau of Land Management                                    HQ-MLA-1

Miles City Field Office

Exhibit 7

USA_001429

MTMT106370202

## LEASE NOTICE

### Threatened and Endangered Species Act

The lease area may now or hereafter contain plants, animals, or their habitats determined to be threatened, endangered, or other special status species. The BLM may recommend modifications to exploration and development proposals to further its conservation and management objective to avoid BLM-approved activity that would contribute to a need to list such a species or their habitat. The BLM may require modifications to or disapprove proposed activity that is likely to result in jeopardy to the continued existence of a proposed or listed threatened or endangered species or result in the destruction or adverse modification of a designated or proposed critical habitat. The BLM will not approve any ground-disturbing activity until it completes its obligations under applicable requirements of the Endangered Species Act as amended, 16 U.S.C. § 1531 et seq. including completion of any required procedure for conference or consultation.

Bureau of Land Management

Miles City Field Office

HQ-TES-1

Exhibit 7

USA_001430

MTMT106370202

## LEASE NOTICE

### Cultural Resources

The Surface Management Agency is responsible for assuring that the leased lands are examined to determine if cultural resources are present and to specify mitigation measures.

This notice would be consistent with the present Montana State Office guidance for cultural resource protection related to oil and gas operations (NTL-MSO-85-1).

Bureau of Land Management                                                    LN 14-2

Miles City Field Office

Exhibit 7

USA_001431

MTMT106370202

## LEASE NOTICE

### Paleontological Resource Inventory Requirement

This lease has been identified as being located within geologic units rated as being moderate to very high potential for containing significant paleontological resources. The locations meet the criteria for class 3, 4 and/or 5 as set forth in the Potential Fossil Yield Classification System, WO IM 2008-009, Attachment 2-2. The BLM is responsible for assuring that the leased lands are examined to determine if paleontological resources are present and to specify mitigation measures. Guidance for application of this requirement can be found in WO IM 2008-009 dated October 15, 2007, and WO IM 2009-011 dated October 10, 2008.

Prior to undertaking any surface-disturbing activities on the lands covered by this lease, the lessee or project proponent shall contact the BLM to determine if a paleontological resource inventory is required. If an inventory is required, the lessee or project proponent will complete the inventory subject to the following:

● the project proponent must engage the services of a qualified paleontologist, acceptable to the BLM, to conduct the inventory.

● the project proponent will, at a minimum, inventory a 10-acre area or larger to incorporate possible project relocation which may result from environmental or other resource considerations.

● paleontological inventory may identify resources that may require mitigation to the satisfaction of the BLM as directed by WO IM 2009-011.

Bureau of Land Management

Miles City Field Office

LN 14-12

Exhibit 7

USA_001432

MTMT106370202

## LEASE NOTICE

### Cultural Visual Setting

The lease is located adjacent to known historic properties that are or may be eligible for listing on the National Register of Historic Places (NRHP). The lease may in part or whole contribute to the importance of the historic properties and values, and listing on the NRHP. The operator may be required to implement specific measures to reduce impacts of oil and gas operations on historic properties and values. These measures may include, but are not limited to, project design, location, painting and camouflage. Such measures shall be developed during the on-site inspection and environmental review of the application for permit to drill (APD), and shall be consistent with lease rights.

The goal of this Lease Notice is to provide information to the lessee and operator that would help design and locate oil and gas facilities to preserve the integrity and value of historical properties that are or may be listed on the National Register of Historic Places.

This notice is consistent with the present Montana guidance for cultural resource protection related to oil and gas operations (NTL-MSO-85-1).

LN 14-14

Bureau of Land Management

Miles City Field Office

Exhibit 7

USA_001433

MTMT106370202

## LEASE NOTICE

### Air Resource Analysis

The lessee/operator is given notice that prior to project-specific approval, additional air resource analyses may be required in order to comply with the NEPA, FLPMA, and/or other applicable laws and regulations. Analyses may include equipment and operations information, emission inventory development, dispersion modeling or photochemical grid modeling for air quality and/or air quality related value impact analysis, and/or emission control determinations. These analyses may result in the imposition of additional project-specific control measures to protect air resources.

Bureau of Land Management

Miles City Field Office

LN 14-18

Exhibit 7

USA_001434

MTMT106370202

## LEASE NOTICE

### Special Status Species

The lease area may now or hereafter contain plants, animals, or their habitats determined to be threatened, endangered, or other special status species. BLM may recommend modifications to exploration and development proposals to further its conservation and management objective to avoid BLM-approved activity that will contribute to a need to list such a species or their habitat. BLM may require modifications to or disapprove proposed activity that is likely to result in jeopardy to the continued existence of a proposed or listed threatened or endangered species or result in the destruction or adverse modification of a designated or proposed critical habitat. BLM will not approve any ground-disturbing activity that may affect any such species or requirements of the ESA as amended, 16 U.S.C. § et seq., including completion of any required procedure for conference or consultation.

Bureau of Land Management

Miles City Field Office

LN 14-19

Exhibit 7

USA_001435

MTMT106370202

## LEASE NOTICE

### Migratory Bird Treaty Act

The Operator is responsible for compliance with provisions of the Act by implementing one of the following measures;

a) avoidance by timing; ground disturbing activities will not occur from April 15 to July 15,

b) habitat manipulation; render proposed project footprints unsuitable for nesting prior to the arrival of migratory
birds (blading or pre-clearing of vegetation must occur prior to April 15 within the year and area scheduled for
activities between April 15 and July 15 of that year to deter nesting, or

c) survey-buffer-monitor; surveys will be conducted by a BLM approved biologist within the area of the proposed
action and a 300 foot buffer from the proposed project footprint between April 15 to July 15 if activities are
proposed within this timeframe.

If nesting birds are found, activities would not be allowed within 0.1 miles of nests until after the birds have fledged. If active nests are not found, construction activities must occur within 7 days of the survey. If this does not occur, new surveys must be conducted. Survey reports will be submitted to the appropriate BLM Office.

LN 14-20

Bureau of Land Management

Miles City Field Office

Exhibit 7

USA_001436

MTMT106370202

## LEASE NOTICE

### Cultural Resources Setting Consideration Zones

This lease is known to contain historic properties or resources protected under NHPA that contain a Setting Consideration Zone where the integrity of the setting is known to be an important contributing element of NRHP significance of the property, and applies to the following historic properties: Wolf Mountains Battlefield NHL and Battle Butte Battlefield ACEC; Reynolds Battlefield site and Reynolds Battlefield ACEC; Cedar Creek Battlefield site and Cedar Creek Battlefield ACEC; and the Long Medicine Wheel ACEC, and all significant Cultural Resources, NRHP-eligible Properties and Districts, and TCPs, NHLs and Historic Battlefields and the Lewis and Clark National Historic Trail.

Bureau of Land Management                                             LN 14-22

Miles City Field Office

Exhibit 7

USA_001437

MTMT106370202

## LEASE NOTICE

### Setback From Human Occupied Residences Requirement

The Lease area may contain human occupied dwellings. Under Regulation 43 CFR 3101.1-2 and terms of the lease (BLM form 3100-11), the authorized officer may require reasonable measures to minimize adverse impacts to other resource values, land uses, and users not addressed in lease stipulations at the time operations are proposed. Such reasonable measures may include, but are not limited to, modification of siting or design of facilities, which may require relocating proposed operations up to 200 meters, but not off the leasehold.

The setback requirement of 500 feet from human occupied dwellings has been established based upon the best information available. The following condition of approval may be applied as a result of the Application for Permit to Drill (APD) process during the on-site inspection and the environmental review unless an acceptable plan for mitigation of impacts is reached between the resident, lessee and BLM:

   • Facilities will not be allowed within 500 feet of human occupied residences.

The intent of this Lease Notice is to provide information to the lessee that would help design and locate oil and gas facilities to preserve the aesthetic qualities around human occupied dwellings.

Bureau of Land Management

Miles City Field Office

LN 14-23

Exhibit 7

USA_001438

MTMT106370202

## LEASE NOTICE

### Cultural Inventory Requirement

An inventory of those portions of the leased lands subject to proposed disturbance may be required prior to any surface disturbance to determine whether cultural resources are present and to identify needed mitigation measures. Prior to undertaking any surface- disturbing activities on the lands covered by this lease, the lessee or operator shall:

1. Contact the Surface Management Agency (SMA) to determine whether a cultural resource inventory is required. If an inventory is required, then:

2. The SMA will complete the required inventory; or the lessee or operator, at their option may engage the services of a cultural resource consultant acceptable to the SMA to conduct a cultural resource inventory of the area of proposed surface disturbance. The operator may elect to inventory an area larger than the standard ten-acre minimum to cover possible site relocation which may result from environmental or other considerations. An acceptable inventory report is to be submitted to the SMA for review and approval no later than that time when an otherwise complete application for approval of drilling or subsequent surface-disturbing operation is submitted.

3. Implement mitigation measures required by the SMA. Mitigation may include the relocation of proposed lease-related activities or other protective measures such as data recovery and extensive recordation. Where impacts to cultural resources cannot be mitigated to the satisfaction of the SMA, surface occupancy on that area must be prohibited. The lessee or operator shall immediately bring to the attention of the SMA any cultural resources discovered as a result of approved operations under this lease, and shall not disturb such discoveries until directed to proceed by the SMA.

Bureau of Land Management

Miles City Field Office

LN 14-33

Exhibit 7

USA_001439

MTMT106370202

## LEASE NOTICE

### Raptors

The lease area may contain raptor nest sites active within the last 7 years. At the development stage when surface-disturbing activities are proposed, an active nest inventory of the project area may be required. If active nests are found within 1/4 mile of the proposed action, surface occupancy and use may be prohibited. If active nests are found within 1/2 mile of the proposed action, surface occupancy and use may be restricted from March 1 through July 31. The BLM may require modification to exploration or development proposals to protect active raptor nests, or disapprove any activity that is likely to result in adverse effects that cannot be successfully avoided, minimized or mitigated.

Bureau of Land Management                                          LN 14-39

Miles City Field Office

Exhibit 7

USA_001440

MTMT106370202

## LEASE NOTICE

### Big Game Winter Range and Migration Corridors

The lease area may contain habitat for big game winter range and/or migration corridors delineated by Montana Fish, Wildlife and Parks. The lessee/operator is given notice that prior to project-specific approval, the authorized officer may require modifications to exploration and development proposals to conserve or restore habitat necessary to sustain local and regional big-game populations (Secretarial Order 3362, February 9, 2018 and 43 CFR 3101.1-2). The objective of the requirements would be to conserve, restore, minimize, avoid and/or limit activities that could impact habitat for big game winter range and/or migration corridors Site-specific requirements would be identified during environmental review processes and would be developed into the project proposal or as terms and conditions of the subsequent approval.

Bureau of Land Management

Miles City Field Office

LN 14-40

Exhibit 7

MTMT106370202

## STREAMS, WATERBODIES, RIPARIAN, WETLAND, AND FLOODPLAINS

**Stipulation:** Surface occupancy and use is prohibited within perennial or intermittent streams, lakes, ponds, reservoirs, 100-year floodplains, wetlands, and riparian areas.

Objective: To protect the unique biological and hydrological features and functions associated with perennial and intermittent streams, lakes, ponds, reservoirs, floodplains, wetlands, and riparian areas.

Exception: No exceptions would be allowed in streams, natural lakes, or wetlands. An exception may be granted by the AO for riparian areas, floodplains, and artificial ponds or reservoirs if the operator can demonstrate that:

    o there are no practicable alternatives to locating facilities in these areas,
    o the proposed actions would maintain or enhance resource functions, and
    o all reclamation goals and objectives would be met.

Modification: The AO may modify the boundaries of the stipulated area if it is determined that portions of the leasehold do not include these types of areas.

Waiver: The AO may waive this stipulation if it is determined that the entire leasehold does not include these types of areas.

**On the lands described below:**

All Lands

Bureau of Land Management

Miles City Field Office

NSO 11-70

Exhibit 7

USA_001442

**Checklist: Verification that an Entity is Not Federally Suspended, Debarred, or Otherwise Ineligible**

The BLM must complete this checklist prior to issuing a lease, approving an agreement, or approving an assignment or transfer to an entity for a lease or agreement.

Name of Entity:_____Phoenix Capital Group Holdings, LLC_____

Name of Principal(s):_____Lindsey Wilson, Adam Ferrari_____

☒    Step 1: Navigate to SAM: SAM.gov

☒    Step 2: Select the Search Tab.

☒    Step 3: Select Entity Information in the Domain Information.

☒    Step 4: Select **Exclusions** in the Domain Information.

☒    Step 5: Query for the entity and principal(s)[1] acquiring interest in a Federal lease or agreement (individual who submits a proposal for or who enters the transaction, including an agent or representative).

☒    Step 6: Copy results of SAM.gov query for **entity** below:



---

[1] A principal is the entity's officer, director, owner, partner, or other person with management or supervisory responsibilities related to the transaction. *See,* 2 C.F.R. § 180.995.

Page 1 of 3

Exhibit 7

USA_001443

☒    Step 7: Copy results of SAM.gov query for **principal(s)** below:



☒    Step 8: Remain logged into SAM.GOV, and select **Responsibility/Qualification** in the Domain Information (same dropdown/field where Exclusions is listed as well).

☒    Step 9: Query for the entity and principal(s)[1] acquiring interest in a Federal lease or agreement (individual who submits a proposal for or who enters the transaction, including an agent or representative).

☒    Step 10: Copy results of SAM.gov query for (**Responsibility/Qualification**) for **entity** below:

**No matches found**
We couldn't find a match for your search criteria.

Please try another search or go back to previous results.

Go Back

Page 2 of 3

Exhibit 7

USA_001444

☐    Step 11: Copy results of SAM.gov query (**Responsibility/Qualification**) for **principal(s)** below:



☒    Step 12: Save a digital copy of this document and upload it into MLRS under the case action or case filing that initiated this review.

☒    Step 13: After uploading the file, remember to update the checkmark "Reviewed Federal Exclusion Lists" in the MLRS case action or case filing to document that you completed this review.

☒    Step 14: Print out this page and file it with the decision under the action that initiated this required review.

Page 3 of 3

Exhibit 7    *C. Rowland  9/6/24*

USA_001445