Brianne C. McClafferty
Holland & Hart LLP
401 North 31st Street, Suite 1200
P.O. Box 639
Billings, Montana 59103-0639
Telephone: 406.252.2166
Fax: 406.252.1669
*bcmcclafferty@hollandhart.com*

Matthew J. Salzman, *pro hac vice*
Holland & Hart LLP
2811 W. 66th Terrace
Mission Hills, KS 66208
Telephone: 913.558.1221
*mjsalzman@hollandhart.com*

Utsarga Bhattarai, *pro hac vice*
Holland & Hart LLP
555 17th Street, Suite 3200
Denver, CO 80202-3921
Telephone: 303.295.8168
*ubhattarai@hollandhart.com*

*Attorneys for Defendants Kraken Oil & Gas,
LLC, and Kraken Operating, LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | | |
|---|---|---|
| PHOENIX ENERGY ONE, LLC f/k/a PHOENIX CAPITAL GROUP HOLDINGS, LLC, | ) ) ) ) | Cause No. CV-25-65-BLG-TJC |
| Plaintiff, | ) ) ) | **DEFENDANTS KRAKEN OIL & GAS LLC AND KRAKEN OPERATING LLC'S REPLY IN** |
| KRAKEN OIL & GAS, LLC, KRAKEN OPERATING, LLC, and UNITED STATES BUREAU OF LAND MANAGEMENT, | ) ) ) ) ) | **SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, TO DISMISS** |
| Defendants. | ) ) ) | |

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................... ii

I.     The MLA's Statute of Limitations Bars Phoenix's Untimely
       Complaint. ...................................................................................................1

       A.     Phoenix's Complaint Challenges BLM's Authority to Make
              Decisions under the MLA—Not the Declaratory Judgment Act. ..........2

       B.     BLM Executing the Lease Subject to the Amended and New
              CAs Was a Final Decision. ..................................................................3

       C.     Events Occurring After the Limitations Period Expired Are
              Irrelevant. ...........................................................................................5

       D.     Phoenix's Purported Lack of Notice Is Not a Material Factual
              Dispute..................................................................................................6

II.    Laches Also Bars Phoenix's Claims................................................................8

       A.     Phoenix's Delay Was Unreasonable. ......................................................8

       B.     Phoenix's Unreasonable Delay Prejudices Kraken............................11

III.   IBLA Has Primary Jurisdiction. ...................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)..........................................................................................7

*Bank of N.Y. v. Foothills at MacDonald Ranch Master Ass'n*,
329 F. Supp. 3d 1221 (D. Nev. Sep. 7, 2018).......................................................2

*Bennett v. Spear*,
520 U.S. 154 (1997)..........................................................................................3

*Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*,
603 U.S. 799 (2024)..........................................................................................7

*Del Toro v. 360 P'ship LP*,
2021 U.S. Dist. LEXIS 211760 (C.D. Cal. Sep. 23, 2021) ..................................2

*Doan v. NSK Corp.*,
266 F. Supp. 2d 629 (E.D. Mich. June 9, 2003)..................................................5

*Gene R. And Mary J. Hilton*,
187 IBLA 1 (2015) ..........................................................................................5

*Impact Energy Res., LLC v. Salazar*,
693 F.3d 1239 (10th Cir. 2012) (per curiam) ......................................................7

*Impro Products, Inc. v. Block*,
722 F.2d 845 (D.C. Cir. 1983)..........................................................................6

*Levald, Inc. v. City of Palm Desert*,
998 F.2d 680 (9th Cir. 1993) ............................................................................2

*Nat'l Parks & Conservation Ass'n v. BLM*,
606 F.3d 1058 (9th Cir. 2010) ..........................................................................4

*Nationwide Mut. Ins. Co. v. Liberatore*,
408 F.3d 1158 (9th Cir. 2005) ..........................................................................2

*Nelson v. Hartford Ins. Co.*,
2012 U.S. Dist. LEXIS 165944 (D. Mont., Nov. 20, 2012)............................ 6-7

*Paul S. Coupey*,
    35 IBLA 112 (1978) ...................................................................................6

*Redlin v. United States*,
    921 F.3d 1133 (9th Cir. 2019) ....................................................................7

*S. Utah Wilderness All. v. Palma*,
    707 F.3d 1143 (10th Cir. 2013) ..................................................................4

### STATUTES

30 U.S.C. § 226..........................................................................................2

30 U.S.C. § 226-2.....................................................................................2, 7

30 U.S.C. § 226(j) .....................................................................................13

30 U.S.C. § 226(m)....................................................................................13

28 U.S.C. § 2201.........................................................................................2

### OTHER AUTHORITIES

43 C.F.R. § 3000.40 ..................................................................................13

Fed. R. Civ. P. 12(b)(1)...............................................................................1

Phoenix's Response does not create a genuine dispute concerning any fact *material* to statute of limitations, laches, or primary jurisdiction. Tellingly, Phoenix does not dispute *any* of the legislative history, court cases, or IBLA cases cited by Kraken. Phoenix's argument cites only two cases—both of which support Kraken's motion. The law does not support continuation of this untimely case.

## I.    The MLA's Statute of Limitations Bars Phoenix's Untimely Complaint.

Phoenix does not dispute the facts upon which Kraken's statute of limitations argument relies—the dates of BLM's decisions identified in Phoenix's Complaint and the Complaint's filing date.

Nor does Phoenix contest the congressional intent of the MLA's ninety-day statute of limitations (Doc. 51 at 11-12); that courts and IBLA *strictly* enforce it (*id*. at 13-17); that Phoenix failed to file this case within ninety days of the BLM decisions mentioned in the Complaint (*id.* at 17-19); or that the MLA's limitations period is jurisdictional, making dismissal separately proper under Rule 12(b)(1) (*id*. at 19-20 n.3). *See, generally*, Doc. 65.

Instead, Phoenix takes several untenable positions, including that it is not challenging the very BLM decisions it admits its Complaint asks the Court to declare "invalid."  Doc. 65 at 15.

### A.    Phoenix's Complaint Challenges BLM's Authority to Make Decisions under the MLA—Not the Declaratory Judgment Act.

Count-by-count, Kraken demonstrated that Phoenix's Complaint challenges BLM's decisions made under 30 U.S.C. § 226 and its implementing regulations; therefore, the MLA's statute of limitations, 30 U.S.C. § 226-2, applies. Doc. 51 at 11-13. Phoenix responds that its claims invoke the Declaratory Judgment Act, 28 U.S.C. § 2201 ("DJA"), not the MLA. Doc. 65 at 17-18.

But, the DJA "does not by itself confer federal subject-matter jurisdiction" and a party must "plead an independent basis for federal jurisdiction." *Nationwide Mut. Ins. Co. v. Liberatore*, 408 F.3d 1158, 1161 (9th Cir. 2005). Indeed, "if a claim for declaratory relief [can be] resolved through another form of action which has a specific limitations period, the specific period of time will govern." *Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 688-89 (9th Cir. 1993); *see also Del Toro v. 360 P'ship LP*, 2021 U.S. Dist. LEXIS 211760, at *14 (C.D. Cal. Sep. 23, 2021) ("The [DJA] provides no statute of limitations, but such claims are generally governed by the underlying claims that confer jurisdiction.")

Phoenix's Complaint relies on federal question jurisdiction. The only federal law raising a jurisdictional question therein is the MLA. Thus, the MLA's statute of limitations applies. Doc. 51 at 12-13; *see also Bank of N.Y. v. Foothills at MacDonald Ranch Master Ass'n*, 329 F. Supp. 3d 1221, 1234-35 (D. Nev. Sep. 7,

2

2018) (a plaintiff "cannot resurrect an expired claim by repackaging it as one for declaratory relief").

## B.    BLM Executing the Lease Subject to the Amended and New CAs Was a Final Decision.

As previously delineated, Phoenix's allegations challenged three BLM decisions—executing the Amended and New CAs, auctioning the lease, and executing the lease effective October 1, 2024. Doc. 51 at 17-18.[1] Anticipating (and mooting) Phoenix's argument that it could not have timely challenged BLM's decision concerning the Amended and New CAs in June 2023, Kraken invited the Court to assume that the limitations clock began after Phoenix acquired its interest on October 1, 2024. *Id.* at 19.

Phoenix, however, argues that BLM made no "final decisions" that Phoenix could have challenged. Doc. 65 at 18-21. This represents a complete reversal of position from Phoenix's Complaint (*see* Doc. 1 at 12-24) and is wrong as a matter of law.

A decision is final when (1) the agency's decision-making process reaches "consummation" because it is not "tentative" or "interlocutory" and (2) it determines "rights or obligations" or creates "legal consequences." *Bennett*, 520

---

[1] Each of these decisions pass the finality test. They were not tentative or interlocutory, and they created legal consequences for the involved parties and, of course, their successors-in-interest. *See Bennett v. Spear*, 520 U.S. 154, 177-78 (1997); Doc. 51 at 18 n.2.

3

U.S. at 178; Doc. 65 at 18. As of September 19, 2024, BLM had executed the lease to Phoenix, thereby consummating a decision which had legal consequences. *See S. Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1159 (10th Cir. 2013) ("Federal courts have repeatedly considered the act of issuing a lease to be final agency action which may be challenged in court." (citing cases)).

Oddly, Phoenix asserts that IBLA review was not available, but if it was, "IBLA's decision, not preliminary BLM action" would be the "final agency action." Doc. 65 at 18 n.3 (citing *Nat'l Parks & Conservation Ass'n v. BLM*, 606 F.3d 1058 (9th Cir. 2010)). Phoenix is wrong on both points. IBLA review was available. Doc. 51 at 27-29. And, *NPCA* held that IBLA's decision was the final decision when there was such a decision, but indicated that when a party like Phoenix fails to timely appeal to IBLA, the underlying BLM decision is the final decision. 606 F.3d at 1064-65.

Phoenix also asserts that "[t]here is no document that constitutes a 'final decision' of BLM to offer the Federal Minerals for lease subject to the 2023 CAs." Doc. 65 at 20 (original emphasis). Wrong again. Both the New and Amended CAs state "[a]ny party acquiring a Federal lease [from BLM] of the unleased Federal land included in the communitized area established hereunder, will be subject to this agreement as of the effective date of the Federal lease to said party(s)." Doc.

66 ¶ 21 (undisputed) (emphasis added).[2] BLM expressly decided that Phoenix, as a "party acquiring a Federal lease of the unleased Federal land" became "subject to" the New and Amended CAs "as of the effective date of the Federal lease," October 1, 2024. *Id*.

Consequently, at least by October 1, 2024, Phoenix could have pursued IBLA review or filed suit,[3] but it failed to timely do so.

## C.    Events Occurring After the Limitations Period Expired Are Irrelevant.

Phoenix relies on "correspondence" from mid-January to March 2025 attempting "to obtain a position from BLM on the validity and/or interpretation of the [Amended and New] CAs." Doc. 65 at 21. Phoenix argues that the statute never began running because BLM employees "refused to take any position." Doc. 65 at 14-16, 19. This argument fails as a matter of law for any one of three reasons.

First, these events occurred after the ninety-day period following October 1, 2024, meaning the statutory period already had expired. Doc. 51 at 23-24; *Doan v. NSK Corp.*, 266 F. Supp. 2d 629, 638 (E.D. Mich. June 9, 2003) ("Events or

---

[2] BLM's decision to execute the CAs was also an appealable final decision. *See e.g. Gene R. And Mary J. Hilton*, 187 IBLA 1, 3 (2015) (reviewing whether BLM's decision to approve a CA satisfied the MLA).

[3] Phoenix also could have filed upon becoming the successful bidder on August 6, 2024. Doc. 51 at 19.

actions occurring after the expiration of the limitations period cannot serve to extend that period.").

Second, Phoenix cannot rely on phone calls and emails with BLM employees as BLM's "official position." *See, e.g., Paul S. Coupey*, 35 IBLA 112, 116 (1978) ("reliance on erroneous advice by the BLM employees cannot estop the United States or confer on an applicant any right not authorized by law").

Third, Phoenix cannot make a prior final decision non-final by requesting an agency "interpretation" and trying to characterize the response as a new decision. In *Impro Products, Inc. v. Block*, a party characterized a USDA administrator's response to an inquiry about "USDA's position" as a final agency action. 722 F.2d 845, 850-51 (D.C. Cir. 1983). The court indicated that this argument was "patently specious" and "absurd" in part because allowing post-hac inquiries to reset the limitations period "would provide parties with an easy means to circumvent the statute of limitations." *Id.*

Allowing Phoenix to circumvent the statute of limitations would set perilous precedent and undermine the purpose of the MLA. Doc. 51 at 11-12.

### D.    Phoenix's Purported Lack of Notice Is Not a Material Factual Dispute.

Although Phoenix cannot genuinely dispute it had notice (*infra* Part II), its "no notice" claims (*e.g.*, Doc. 65 at 19) are not material to the statute of limitations. *Nelson v. Hartford Ins. Co.*, 2012 U.S. Dist. LEXIS 165944, at * 5 (D.

Mont., Nov. 20, 2012) ("material" facts are "those which may affect the outcome of the case") (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The MLA's limitations period is "not notice-based"; it "starts the clock on the date of 'the final decision of the Secretary,' not when notice of that decision is received." *Impact Energy Res., LLC v. Salazar*, 693 F.3d 1239, 1245 (10th Cir. 2012) (per curiam) (dismissing a case filed ninety days after plaintiff received notice because filing occurred ninety-six days after the decision).[4] The text of 30 U.S.C. § 226-2—"No action … shall be maintained unless such action is commenced or taken within ninety days after the final decision"—demonstrates it is a "finality-focused" limitation period that "start[s] the clock at finality," not notice.[5] *Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*, 603 U.S. 799, 813-14 (2024).[6]

---

[4] Courts may consider equitable tolling when a statutory period runs before an affected party has notice. Phoenix has not made and, therefore, waived this argument. Regardless, equitable tolling cannot apply because of Phoenix's own failure to timely do due diligence and file suit. *Infra* Part II; *Redlin v. United States*, 921 F.3d 1133, 1140 (9th Cir. 2019).

[5] Even if Phoenix filed an APA action, the MLA would still govern. *Impact Energy*, 693 F.3d at 1245.

[6] Phoenix's claims would be barred even if notice was required to trigger the MLA's statute of limitations. Phoenix admits it had actual notice on December 11 and 12, 2024, when Kraken sent Phoenix copies of the Amended and New CAs and explained how they impacted Phoenix's lease payments of production revenues—exactly what Phoenix's Complaint challenges—but Phoenix waited an additional 154 days to assert its claims. Doc. 65 at 13, 16.

7

BLM's final decision occurred at least by October 1, 2024, yet Phoenix did not file until May 15, 2025, allowing the statute of limitations to expire over two and a half times. Doc. 51 at 19. Phoenix's claims are barred as a matter of law.

## II.    Laches Also Bars Phoenix's Claims.

Laches can bar claims before the statutory period expires and is presumed to apply afterward. Doc. 51 at 21 (citing cases).

### A.    Phoenix's Delay Was Unreasonable.

Phoenix acknowledges this was a unique situation involving over six-years'-worth of production revenue commencing from a well on a vacated lease and continuing from other wells in the same spacing unit. Doc. 1, ¶¶ 11-15; Doc. 52-15 (internal Phoenix communications concerning the producing wells before it acquired the lease). Phoenix expected a windfall—to receive production revenue generated years before Phoenix acquired its interest. *Id*., Doc. 52-17 (Phoenix demanding release of revenue "from the inception" of Dagney #1H, #3H, and #4H).

Phoenix admits BLM notified it five times that the minerals were burdened by a CA and to contact Kraken "to determine [its] rights." But, instead, Phoenix accepted its lease without asking anyone for the CA. Doc. 65 at 11-12. In fact, Phoenix did not even review the language in the so-called "2021 CA" upon which is implies it relied; rather Phoenix admits that it "assumed" (incorrectly) that the

CA in this unique context would have only standard terms. *Id.* ("Phoenix assumed that the revenue … had been placed in a standard interest-bearing escrow account" which would be released to Phoenix).  Phoenix's failure to timely validate its assumption and its delay in filing for more than nine months after learning it was the "successful bidder" is unreasonable as a matter of law. Doc. 51 at 21-25.

Phoenix's only argument is that it received "no notice" of the "2023 CAs"— *i.e.*, the Amended and New CAs. Doc. 65 at 19, 22, 25, 26. Based on the undisputed facts, that assertion is false.[7] But, even if it were true, it still strikes out.

---

[7] As to the Amended CA covering Dagney #1, Phoenix argues that BLM's "Communitization Agreement (CA) MTM 111087" phrase gave notice of only the "2021 CA," *i.e.*, the original version of MTM 111087. Doc. 65 at 25-26. But Phoenix admits that CA was amended in June 2023, meaning its original terms no longer governed when BLM gave its notices beginning in December 2023. Doc. 65 at 8. Phoenix conveniently omits that the "Amended CA" is the same CA as the "2021 CA" with the same "MTM 111087" designation. Everyone agrees BLM gave Phoenix five notices of CA "MTM 111087." At the time, MTM 111087 was the Amended CA.

As to the New CA, MTM 112222, covering Dagney #3 and #4, although Phoenix argues that "[n]othing issued by BLM informed a potential bidder" of it (Doc. 65 at 25), Phoenix does not and cannot claim it was unaware such a CA existed. Phoenix's expected windfall included revenue from those two wells. *See, e.g.* Doc. 52-15; Doc. 52-17 (claiming Phoenix "is owed all revenue in suspense from the inception date of the Dagney #1H and the Dagney #3H & #4H"). Unlike Dagney #1H, Dagney #3H and #4H were not drilled on Phoenix's leased land, so Phoenix could only claim production revenue from those wells if it knew BLM had entered a CA pooling the federal minerals with the other interests in the spacing unit for those two wells. *See id.*; Doc. 1-2 at 7 (graphically demonstrating that Dagney #3H and #4H do not intersect Phoenix's leased tract (Tract 1 in the top left)). Phoenix necessarily had actual knowledge of the New CA.

First, BLM's five notices state "[t]he successful bidder should contact the CA operator [Kraken] to determine their rights" and Phoenix learned it was the successful bidder on August 6, 2024. *Id.* at 25; Doc. 52-16. Phoenix argues that it had no legal "duty to discover undisclosed instruments." Doc. 65 at 25. That is a red herring; BLM repeatedly told Phoenix it should contact Kraken as soon as it became the successful bidder. Using the ninety-day limitations period as a proxy for reasonability when applying laches, Phoenix should have acted much sooner than May 15, 2025—over nine months (282 days) after learning it was the successful bidder on August 6, 2024—strike one.

Second, Phoenix admits that when it finally contacted Kraken—although to demand payment of its incorrectly assumed windfall rather than to determine it rights—Kraken promptly explained how the CAs impacted Phoenix's rights to production revenue under its lease and provided copies of the Amended and New CAs by December 12, 2024. Doc. 65 at 13, 16. Even starting from this late date, using the ninety-day limitations period as a proxy, Phoenix should have filed this case by March 12, 2025—strike two.

Third, on February 3, 2025, Phoenix received a detailed response to its demand letter from undersigned counsel, setting forth how the CAs and lease govern Phoenix's rights to production revenue and, again, including copies of the

10

CAs. Doc. 52-19. Phoenix did not even file its Complaint within the ninety-day proxy period for applying laches from this February date—strike three.

Phoenix's assumption that the CAs would have standard language given this completely non-standard situation was unreasonable. Further, the same industry knowledge on which Phoenix relies for its (incorrect) assumption concerning what the CAs would say also should include knowing Phoenix had a maximum of ninety days to validate its assumption and take action if needed. Phoenix's repeated failure to act following admitted receipt of actual notice is anything but reasonable.

## B.    Phoenix's Unreasonable Delay Prejudices Kraken.

Phoenix maintains that its delay caused no prejudice because Kraken could not have relied on the Amended and New CAs because they were not executed until after Kraken spud the wells. Doc. 65 at 26-28. But Phoenix misrepresents Kraken's argument and, again, ignores the federal minerals' unique history.

Kraken was the original lessee and relied on that lease to drill Dagney #1H. *See* Doc. 66, ¶¶ 4, 6 (undisputed). That well's success would allow for pooling and the drilling of multiple additional wells in the spacing unit. *Id.* ¶ 9 (undisputed).

But Kraken's lease was one of those ordered to be vacated on May 1, 2020. *Id.* ¶ 10 (undisputed). It is extremely rare for a producing lease to be vacated because of the prejudice to the lessee's substantial investment in drilling the well(s). Kraken relied on BLM's indication that Kraken would be made whole.

11

Doc. 52-6 at 4 (April 15, 2021 email discussing Kraken's understanding in 2020 of an arrangement to address the issues created by vacatur).

Kraken then formally asked BLM for a CRA. *See* Doc. 52-9. Kraken timely appealed BLM's decision not to do so. *Id.* Afterward, BLM and Kraken executed the Amended and New CAs, with language in Section 5 that Kraken would be allocated "the percentage of production attributable to the unleased Federal land within the communitized area" until the effective date of a new lease. Doc. 1-1 at 2 (Amended CA); Doc. 1-2 at 3 (New CA).

Thus, from the award of Kraken's 2017 lease until the effective date of Phoenix's new lease, Kraken reasonably relied on allocation of these proceeds and accordingly invested millions to produce the production revenue. Phoenix's untimely challenge prejudices Kraken's reasonable expectations and settled rights.

## III.    IBLA Has Primary Jurisdiction.

Under the congressional framework of the MLA and the Department of the Interior's comprehensive regulatory scheme, Phoenix's claims should be first addressed (if at all) by IBLA—the specialized forum created for addressing exactly these types of claims. *See* Doc. 51 at 25-32. Phoenix does not contest that this case uniquely satisfies all four primary jurisdiction factors, which is an alternate basis for dismissal. *Compare id*. *with* Doc. 65 at 21-24.

12

Rather, Phoenix falsely asserts that "Kraken claims that Phoenix was required to invoke IBLA jurisdiction," then argues that IBLA appeal is "permissive and not mandatory." Doc. 65 at 21, 22. Phoenix conflates primary jurisdiction (which Kraken argued) with mandatory exhaustion of remedies (which Kraken did not argue). Doc. 51 at 24-32.

Phoenix also asserts that there was no BLM decision it could challenge before IBLA, focusing on "the 2023 CAs" (*i.e.*, the Amended and New CAs). Doc. 65 at 23. But, Phoenix admits that once its lease became effective, Phoenix was adversely affected by the CAs. *See*, *e.g.*, Doc. 1, Compl. ¶¶ 39, 108 ("The 2023 CAs affect the rights of Phoenix"). "[A]ny party adversely affected" by BLM's decisions involving CAs has IBLA appeal rights. Doc. 65 at 18 (citing 43 C.F.R. § 3000.40). Phoenix certainly could have initiated an IBLA action.

Phoenix ignores Kraken's cited cases demonstrating that challenges to BLM decisions involving the very statutes Phoenix invokes (30 U.S.C. §§ 226(m) and 226(j)) or validity of CAs virtually always proceed through IBLA. *See* Doc. 51 at 28-29. Nor does Phoenix cite (and nor has Kraken found) a single judicial opinion addressing these issues without the benefit of an IBLA opinion.

Yes, if Phoenix were to assert its claims before IBLA now, or had it done so when it finally chose to file them in this Court, IBLA would follow its precedent and dismissed the claims as untimely. Doc. 65 at 32-34. This is an additional

13

reason why the Court should apply the MLA's statute of limitations (rather than sending the case to IBLA) and grant the motion for summary judgment. *Id.*

Dated this 18th day of February, 2026.

/s/ *Brianne C. McClafferty*

/s/ *Matthew J. Salzman*
Brianne C. McClafferty
Matthew J. Salzman
Utsarga Bhattarai
Holland & Hart LLP

ATTORNEYS FOR DEFENDANTS
KRAKEN OIL AND GAS, LLC AND
KRAKEN OPERATING, LLC

14

15

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d), I certify that the above brief is printed with proportionately spaced Times New Roman text typeface of 14 points; is double-spaced, and the word count, calculated by Microsoft Office Word, is 3,250 words, excluding the caption, signature block, and Certificate of Compliance.

*/s/ Brianne C. McClafferty*

36936104_v11

15