Adrian A. Miller
Michelle M. Millhollin
Millhollin Miller Law PLLC
2812 1st Avenue North, Suite 225
Billings, MT 59101
Telephone: 406-605-3910
Email: adrian.miller@millhollinmiller.com
        michelle.millhollin@millhollinmiller.com

Brian D. Lee
LEE LAW OFFICE PC
P.O. Box 790, 158 Main Street
Shelby, MT 59474
Telephone: (406) 434-5244
Email: brian@leelawofficepc.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | | |
|---|---|---|
| PHOENIX ENERGY ONE, LLC f/k/a PHOENIX CAPITAL GROUP HOLDINGS, LLC, | ) ) ) ) | Cause No. CV-25-65-BLG-TJC |
| Plaintiff, | ) ) | **PLAINTIFF'S RESPONSE TO MOTION TO STAY** |
| vs. | ) ) ) | |
| KRAKEN OIL AND GAS, LLC, KRAKEN OPERATING, LLC, and UNITED STATES BUREAU OF LAND MANAGEMENT, | ) ) ) ) ) | |
| Defendants. | | |

## I.    BACKGROUND

Defendants Kraken Oil and Gas, LLC and Kraken Operating, LLC (collectively, "Kraken") request that the Court stay this case pending its decision on Kraken's Motion for Summary Judgment or, in the Alternative, to Dismiss ("SJ Motion") (Docs. 50 & 51) and Defendant BLM's Motion to Dismiss (Docs. 45 & 46). Kraken's argument is based upon a mischaracterization of those motions.

Although Kraken claims that its SJ Motion would be dispositive of all claims in this case, that is not true. Kraken's SJ Motion and its current request are premised upon its theory that: (1) all of Phoenix's claims are brought under the Mineral Leasing Act ("MLA") and (2) that a 90-day MLA statute of limitations is, accordingly, applicable. The first premise is wrong.[1] As Phoenix noted in its response to the SJ Motion, only two of Phoenix's seven claims for declaratory relief cite the MLA. Doc. 65, at 14. Specifically, the Complaint includes the following:

- Claims 1–2: Cite MLA provisions (potentially covered by Kraken's statute of limitations argument if the statute is applicable)
- Claims 3–6: Do not cite the MLA and are not subject to MLA statute of limitations argument.
- Claim 7: Contract interpretation clam. This claim arises under common law contract interpretation principles.

---

[1] The second premise is also incorrect for the reasons noted in Phoenix's Response to the SJ Motion, mainly that there was no final decision of BLM for Phoenix to appeal. *See* Doc. 65

Notably, Phoenix's seventh claim for relief is for contract interpretation based upon ambiguous language in the subject Communization Agreements (the "CAs"). Doc. 1, at ¶¶ 119-127. Thus, despite Kraken's argument that granting its SJ Motion would dispose of this lawsuit, five claims would remain. That is true even if BLM's Motion to Dismiss is also granted; nothing would preclude Phoenix from proceeding on its claims against Kraken in that circumstance.

Because, at best, Kraken's SJ Motion would dispose of two claims against it, there is no reason for the Court to grant Kraken's request for a stay. The parties will be required to proceed with this litigation regardless of what the Court does with the pending, partially dispositive motions.

Kraken also complains about the burden of discovery, but Kraken is the party who has been most aggressive with discovery requests. On September 30, 2025, Kraken served its first set of interrogatories, requests for admission, and requests for production on Phoenix. In its first set, Kraken propounded 70 requests for production and 71 requests for admission. Phoenix produced responsive documents on November 7, 2025. On January 13, 2026, Phoenix served its first set of interrogatories, requests for admission, and requests for production on Kraken. Kraken partially produced responsive documents on March 5, 2026. It did not produce the remainder of its responsive documents until May 27, 2026, after it filed its Motion to Stay.

Phoenix served its first set of interrogatories, requests for admission, and requests for production on BLM on February 2, 2026. BLM answered the interrogatories and requests for admission on April 21, 2026, after Phoenix granted several extensions. Despite BLM's counsel stating that it has responsive documents to produce, BLM still has not produced them. Kraken served its second set of discovery requests to Phoenix on April 7, 2026. Phoenix has responded to the interrogatories and requests for admission, and it will produce responsive documents to the two additional requests for production from Kraken within the next few weeks.

In short, Kraken has been aggressive in written discovery and Phoenix has been timely in its responses. If any party should be prepared to move forward, it is Kraken. Defendants, on the other hand, have taken several months to produce responsive documents to Phoenix, and BLM still has not done so.

Kraken's SJ Motion is not about protection from oppressive discovery. It is a request to halt the case at precisely the moment when Phoenix is preparing to move into depositions and expert discovery—the phases most likely to test Kraken's positions on finality, notice, and the accrual of the limitations period it now invokes as a jurisdictional shield. That is not good cause.

That is especially true here, where Kraken waited five months after filing its dispositive motion before seeking a stay, participated in written discovery, and now asks the Court to stop the case only as Phoenix is preparing to move into depositions

and expert discovery.[2] Kraken's timing matters. If Kraken truly believed discovery should have been stayed pending its dispositive motion, it could have moved for that relief in December (when it filed its SJ Motion) or February (when it was fully briefed). While a stay might be beneficial to Defendants given these tactics, it would prejudice Phoenix.

In its Complaint, Phoenix requested two alternative options for relief: (1) that Kraken pay Phoenix the revenue that it is owed under its Lease or (2) that its Lease be cancelled. Doc. 1, at p. 24. The Court's legal interpretation of a producing Lease is not an issue that should be delayed. If the final relief is cancellation of the Lease, it will affect the interests of all parties and significantly alter the responsibilities and rights regarding the wells at issue.

Notably, Phoenix agrees that it would be beneficial for all parties to find a less costly resolution and has offered to mediate this case. Instead of discussing mediation, Kraken filed its Motion to Stay. To be clear, Phoenix would agree to a stay of the proceedings <u>while</u> the parties participate in mediation. It will not, however, agree to stay the case while Kraken waits for a decision on its SJ Motion. Kraken's Motion should be denied.

---

[2] This case was filed in May 2025. Kraken and BLM could have filed their dispositive motions at any point, including when their answers were due. Both parties waited to file their motions until December, and now Kraken is using its own delay to justify its request for a stay.

## II.    ARGUMENT

A stay of discovery is not automatic simply because a dispositive motion is pending. The Federal Rules contain no blanket stay of discovery upon the filing of a Rule 12 or Rule 56 motion. *Flynn v. Nevada*, 345 F.R.D. 338, 343 & 352 (D. Nev. 2024) ("The Federal Rules of Civil Procedure do not provide for automatic or blanket stays of discovery when a potentially dispositive motion is pending."); *Skellerup Industries Ltd v. City of Los Angeles*, 163 F.R.D. 598, 600-01 (C.D. Ca. 1995); *Tesla, Inc. v. La. Auto. Dealers Ass'n,* 2025 WL 744151, at *3 (E.D. La. Mar. 7, 2025) ("No federal or local rule, statute, or binding case law automatically stays discovery pending a ruling on a motion to dismiss."). Courts have broad discretion to manage discovery. *Ivins v. Corrections Corp. of America*, 291 F.R.D. 517, 519 (D. Mont. 2013). However, a request to stay of discovery is governed by the "good cause" standard found in Fed. R. Civ. P. 26(c), which Kraken wholly ignores. *Depot, Inc. v. Caring for Montanans, Inc.*, 2016 WL 9506022, *1 (D. Mont.).

Importantly, Kraken is not timely asking for a stay of discovery. The parties have already engaged in extensive discovery, as Kraken admits. Instead, Kraken wants the Court to stay <u>additional</u> discovery right as Phoenix intends to proceed with depositions and expert discovery. When substantial discovery has already occurred, a motion to stay further discovery is generally disfavored. *Depot, Inc.*, 2016 WL at * 2 ("Given the complicated issues underlying this litigation and the advanced state

6

of discovery, the Court sees no reason to stay discovery pending consideration of the motion to dismiss."). There is no applicable authority that allows a party to halt a case after extensive discovery merely because that party suddenly decides that moving to the next phase of discovery is inconvenient.

Kraken's motion should be viewed for what it is: not an early request to avoid unnecessary discovery, but a late request to stop the case after Kraken obtained and pursued substantial written discovery and before Phoenix can test Kraken's positions through depositions. Kraken's authorities do not support that result. The cases cited by Kraken generally involve early motions directed to claims that would dispose of the entire action and could be resolved without discovery. Here, Kraken's SJ Motion is not dispositive of all claims, factual disputes remain relevant to Kraken's notice and accrual theory, and the parties have already completed substantial written discovery.

## A. Kraken cannot meet any potentially applicable standard for a stay.

Within the Ninth Circuit, district courts generally begin with Rule 26(c)'s "good cause" requirement and then apply related stay factors. Some courts use a two-part test, while others apply a more demanding third factor. The first two-part test requires a determination of: (1) whether the pending motion is potentially dispositive of the entire case, and (2) whether it can be decided without additional discovery. *Pacific Lumber Co. v. Nat'l Union Fire Ins. Co.*, 220 F.R.D. 349, 352

(N.D. Cal. 2003) (citing *Church of Scientology of San Francisco v. Internal Revenue Service*, 991 F.2d 560, 563 (9th Cir. 1993)). The second is the more demanding three-part test adopted by the District of Nevada, which additionally requires the court to take a "preliminary peek" at the merits and conclude there is "no question" the dispositive motion will prevail. *Kor Media Grp., LLC v. Green,* 294 F.R.D. 579, 581 (D. Nev. 2013). Kraken cannot satisfy any of the prongs of either test.

The first prong of both tests is fatal to Kraken's request for a stay. As explained above, Kraken's SJ Motion is not dispositive of the entire case. Even if the MLA statute of limitations is applicable as Kraken argues, it would only dispose of two of Phoenix's seven claims against Kraken. For example, there is no valid argument that Phoenix's seventh claim for interpretation of contractual language is in any way governed by the MLA statute of limitations. This is true whether BLM's Motion to Dismiss is granted or not. Nothing would prevent Phoenix from pursuing its claims against Kraken if BLM is dismissed from this matter.

Kraken also cannot meet the second prong. Despite claiming in its SJ Motion that there are no disputed facts, it is clear from Phoenix's Statement of Disputed Facts that there is an extensive, disputed factual record requiring discovery. Doc. 66. The main disputed facts revolve around whether BLM ever issued any decision that constitutes a "final decision" under the MLA and whether Phoenix had notice of it. Kraken believes that Phoenix was required to appeal CAs to which Phoenix is not a

party and which were issued before Phoenix had any interest in the subject minerals. Phoenix strongly disagrees with that contention, and it has cited extensive factual disputes in its Statement of Disputed Facts and Response to Kraken's SJ Motion. Docs. 66 & 65. The pending motions can be denied on the existing record and legal arguments. But if the Court is inclined to credit Kraken's notice and accrual theory, then continued discovery, not a stay, is the appropriate course. Kraken, for example, continues to seek discovery regarding whether Phoenix had notice of the disputed CAs prior to bidding on the Lease.

If the Court applies the three-part test, then Kraken also cannot meet the last prong. If the Court takes a preliminary peek at the merits, there are substantial disputed factual and legal issues. The chance that Kraken's SJ Motion will prevail is slim given that its motion rests wholly upon Kraken's efforts to redefine all of Phoenix's claims and to ignore the factual record. And, even if Kraken prevails, the SJ Motion is not dispositive of all claims against it. Since Kraken cannot satisfy any prong of any test promulgated to justify a stay, its request should be denied.

**B. Kraken cannot show good cause.**

Kraken also bears the burden to establish good cause under Fed. R. Civ. P. 26(c). *Twin City Fire Ins. Co. v. Employers Ins. of Wausau*, 124 F.R.D. 652, 653 (D.

Nev. 1989).[3] That burden requires more than generalized concerns about cost. *Id.* A party seeking a stay must make a particularized showing that discovery would impose undue burden or prejudice. *Id.* (showing that discovery may involve inconvenience and expense does not establish good cause); *Flynn*, 345 F.R.D. at 347 (ordinary inconvenience and expense do not satisfy Rule 26(c)).

Unlike the cases cited by Kraken in its supporting brief, the parties here have already engaged in significant, burdensome discovery; Kraken has led the charge. Kraken's SJ Motion was filed in December 2025 and fully briefed in February 2026. Yet Kraken waited until late May 2026 to ask for a stay. In the meantime, the parties engaged in substantial written discovery, exchanged thousands of pages of documents, and began preparing for the next phases of the case. For Kraken to suddenly request a stay now – a year after this case was filed, approximately three months after Kraken's SJ Motion was fully briefed, and right before the parties are about to begin depositions – makes little sense. It certainly does not show that there is an undue burden or prejudice. If Kraken truly believed discovery constituted an undue burden in this case, then it would have brought its motion months ago. It certainly should have done so before serving its second set of written discovery on Phoenix.

---

[3] Oddly, although Kraken is clearly asking for the Court to issue a protective order staying discovery under Rule 26(c), the rule is not cited a single time in Kraken's Motion; neither are the rule's good faith or good cause standards.

That timing undercuts Kraken's claim of good cause. Kraken did not seek protection from discovery when the dispositive motions were filed. Instead, it allowed discovery to proceed and now asks the Court to stop the case only when Phoenix is preparing to proceed with depositions, third-party discovery, and expert work. That is not good cause.

A stay at this point would prejudice Phoenix. It would interrupt the schedule, delay witness discovery, impair Phoenix's ability to complete factual development while memories and records remain fresh, and postpone resolution of claims involving lease-related production proceeds. *See, e.g., New York v. Hill*, 528 U.S. 110, 117 (2000) ("Delay can lead to a less accurate outcome as witnesses become unavailable and memories fade."). Further, if the Court ultimately determines that the Lease should be cancelled, then a stay will also postpone resolution of legal responsibilities, including costs, for the wells at issue. Kraken's delay in seeking a stay should weigh against granting one.

Notably, ordinary litigation expenses do not constitute good cause for a stay. Kraken's principal claim of prejudice is that discovery will cost money. But discovery is almost always expensive. Depositions, third-party discovery, and expert disclosures are ordinary features of federal litigation. Rule 26(c) requires something more than the fact that litigation will become more expensive as the case progresses; some extraordinary justification must be shown. *Flynn*, 345 F.R.D. at 347. Again,

11

the parties have already spent significant time and money on discovery, which belies Kraken's claim that a stay is suddenly required now.

Kraken has not identified any unusual or particularized burden. It has not shown that the remaining discovery is disproportionate, abusive, or unrelated to the claims and defenses. "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Feirro Cordero v. Stemilt AG Servs., LLC*, 142 F.4th 1201, 1207 (9th Cir. 2025) (internal quotations and citations omitted). Kraken simply argues that the parties may avoid cost if the pending motions are granted. That is true in virtually every case involving a dispositive motion. If that were enough, discovery would be stayed whenever a defendant filed a motion to dismiss or motion for summary judgment. Obviously, that is not the standard. Kraken's request for a stay must be denied.

## C. Kraken overstates the breadth of its SJ Motion.

Kraken relies heavily on the fact that BLM raises sovereign immunity and Kraken raises limitations arguments. But a jurisdictional argument does not automatically stay discovery. "Invoking immunity does not automatically translate into a stay of discovery." *Flynn*, 345 F.R.D. at 352. "The potential application of immunity to only a portion of the case is not grounds to stay all discovery, since that immunity does not eliminate the need for discovery on unaffected claims." *Id.* at 353-54. Courts may limit discovery to jurisdictional or threshold issues where

appropriate, but a blanket stay is not required merely because a defendant labels an argument jurisdictional.

That distinction matters here. BLM's sovereign-immunity argument may concern claims against BLM, but Kraken seeks to stay the entire litigation, including Phoenix's claims and discovery against Kraken. Kraken has not shown that BLM's sovereign-immunity motion eliminates Phoenix's need for discovery from Kraken. Nor has Kraken shown that the requested stay should extend to all discovery, including discovery relevant to the threshold issues themselves. And, as already explained, Kraken's SJ Motion would not dispose of all claims against it.

## D. A complete stay would prejudice Phoenix.

Kraken asserts Phoenix will not be prejudiced because Phoenix seeks money. That understates the prejudice caused by a stay and ignores Phoenix's actual claims. Phoenix has asked for damages against Kraken <u>or, alternatively</u>, for the Court to cancel its Lease and refund the money it paid for the Lease. Doc. 1, at p. 24. Phoenix is entitled to move its case forward under the scheduling order and under these claims.

Even if Phoenix was only seeking monetary relief, according to Kraken, a plaintiff seeking monetary relief would never suffer prejudice from delay. That is not the law. "[W]hen discovery is delayed or prolonged it can create case management problems that impede the Court's responsibility to expedite discovery

13

and cause unnecessary litigation expenses and problems." *Cuhaci v. Kouri Grp., LP*, 540 F. Supp. 3d 1184, 1186 (S.D. Fla. 2021) (quoting *Feldman v. Flood*, 176 F.R.D. 651, 652 (M.D. Fla. 1997)). There are no legal grounds to stay a case merely because a plaintiff is seeking monetary damages and a defendant has filed a dispositive motion. Such a combination frequently occurs in cases, and parties are still required to move forward with litigation.

Phoenix faces a form of prejudice unique to this case: ongoing, unrecoverable economic harm. Unlike a typical dispute over mineral revenue, there is no escrow account holding the funds at issue. Kraken has not placed any portion of production revenue from the Federal Minerals into escrow pending resolution of this litigation because it does not believe the CAs require it to do so. Every month this case is stayed, Kraken retains production revenue attributable to Phoenix's mineral rights, with no assurance those funds will be available at the conclusion of litigation. Phoenix bid $765,580 for this Lease based on the expectation that unleased mineral revenues had been accumulating in an interest-bearing escrow account as required by a standard CA. Kraken's position is that no such account exists and none of the revenue has been escrowed. A stay compounds this ongoing loss month-by-month.

If the Court decides to grant any relief, it should reject Kraken's request for a blanket stay. Specifically, Phoenix has informed all parties it will agree to stay the

case while the parties schedule and participate in mediation. This is the ideal time for mediation, as all the parties share risk and face the burden and cost of additional discovery. The factual record has been sufficiently developed to allow the parties to fully participate in a good faith mediation. If the Court is inclined to grant a stay, it should do so only for this purpose. Kraken's request for a blanket stay, which would function as an open-ended pause on Phoenix's ability to prosecute claims that will remain regardless of how the pending threshold motions are decided, should be denied.

## III.  CONCLUSION

For the reasons stated herein, Kraken's Motion for a Stay should be denied. In the alternate, the Court should grant a temporary stay solely while the parties schedule and attend mediation.

Dated this 1st day of June, 2026.

/s/ Adrian A. Miller
Adrian A. Miller
Michelle M. Sullivan
Millhollin Miller Law PLLC
2812 1st Avenue North, Suite 225
Billings, MT 59101
Telephone (406) 403-7066
adrian.miller@millhollinmiller.com
michelle.sullivan@millhollinmiller.com

Brian D. Lee
LEE LAW OFFICE PC
P.O. Box 790, 158 Main Street
Shelby, MT 59474
Telephone: (406) 434-5244
Email: brian@leelawofficepc.com

*Counsel for Plaintiff*

## CERTIFICATE OF COMPLIANCE

The undersigned, Adrian A. Miller, certifies that this Brief complies with the requirements of Rule 7.1(d)(2). The lines in this document are double spaced, except for footnotes and quoted and indented material, and the document is proportionately spaced with Times New Roman Font typeface consisting of fourteen characters per inch. The total word count is 3,325 excluding caption and certificates of compliance and service. The undersigned relies on the word count of the word processing system used to prepare this document.

/s/ Adrian A. Miller
Adrian A. Miller

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 1, 2026, the foregoing was served by the Clerk of the U.S. District Court of Montana, Billings Division, through the Court's CM/ECF system, which sent a notice of electronic filing to all counsel of record.

/s/ Adrian A. Miller
Adrian A. Miller